IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENT ALLEN WINTERS, et al.,

    Plaintiffs,

v.

DELORES JORDAN, et al.,

    Defendants.

_____/

No. 2:09-cv-00522 JAM KJN PS

<u>ORDER & FINDINGS AND RECOMMENDATIONS</u>

Presently before the court is a special motion to strike plaintiffs' Third Amended Complaint pursuant to California Code of Civil Procedure § 425.16 filed by defendant Judy Ford ("Ford"), and a related request for judicial notice. (Dkt. No. 69.) The court submitted this matter without oral argument.[1] (Dkt. No. 102.) The undersigned has fully considered the parties' briefs and the record in this case and, for the reasons that follow, will: (1) grant Ford's request for judicial notice, and (2) recommend that all of plaintiffs' claims against Ford be dismissed with prejudice.

////

---

[1] This action proceeds before this court pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9, 2010 (Dkt. No. 105).

## I. BACKGROUND[2]

Plaintiffs' operative complaint, the Third Amended Complaint,[3] is a wide-ranging, 25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants. (Dkt. No. 66.) In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the requirement that the pleading contain a short and plain statement of the claims alleged instead of recounting all of the evidence and arguments in support of those claims. (Dkt. No. 56 at 3.) The court had stated that "[t]his will be plaintiffs' last chance to comply." (Id.)

The claims against Ford arise out of an underlying internecine family dispute. The Third Amended Complaint alleges that in or around the year 2002, plaintiff Susan Winters's elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in Illinois and move to Nevada City, California, to live with the Armstrongs. (Third Am. Compl. at 4.) Plaintiffs allege that before plaintiffs returned to California, Joe Armstrong passed away and that Virginia Armstrong eventually transferred properties from the Armstrong Living Trust dated July 29, 1994, to the Virginia Armstrong Living Trust. (Id.)

////

---

[2] In an order dated September 24, 2009, the court ordered that all references to the minor plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint because those minors were not represented by an attorney or attorneys. (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)

[3] Plaintiffs filed the operative complaint under the title "Amended Complaint," notwithstanding this court's order that it be labeled "Third Amended Complaint." (Compare Dkt. No. 66 with Dkt No. 56 at 4.) The Third Amended Complaint supersedes plaintiffs' "Second Amended Complaint." (Dkt. No. 15.) As the court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt. No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second amendment of the original complaint.

Plaintiffs allege that Virginia Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon and Michael Armstrong. (Id.)

Relevant here, the relationship between Virginia Armstrong and plaintiffs resulted in proceedings in the Nevada County Superior Court. Plaintiffs allege that Delores Jordan and "adult protective services" unduly influenced Virginia Armstrong to file, on October 15, 2007, a request for a temporary restraining order against plaintiffs Susan and Brent Winters. (Third Am. Compl. at 5.) That petition for a restraining order was denied. (Id.)

In turn, however, plaintiff Susan Winters successfully petitioned the state court for a restraining order against Jordan. (Id.; Req. for Judicial Notice, Ex. 1-3, Dkt. No. 69.) On February 10, 2007, after entry of the restraining order against Jordan, Jordan allegedly trespassed on the plaintiffs' property in violation of the order. (Third Am. Compl. at 5.)

Jordan's alleged action resulted in her being named as a defendant in two actions in the Nevada County Superior Court: (1) a civil contempt hearing, and (2) a misdemeanor criminal complaint. (Id. at 6; Req. for Judicial Notice, Exs. 7, 12.) In short, defendant Ford, who is an attorney, was appointed by the Superior Court to represent Jordan in the civil contempt matter, which was ultimately dismissed. (Req. for Judicial Notice, Exs. 7, 11; Third Am. Compl. at 13.) Jordan also retained Ford to represent her in the criminal matter, which was also eventually dismissed by the district attorney's office. (Req. for Judicial Notice, Ex. 13, 15.) Plaintiffs' Third Amended Complaint does not allege that Ford's involvement in this matter extends beyond her representation of Jordan in the Superior Court actions.

Plaintiffs' Third Amended Complaint alleges the following claims against Ford: abuse of process (claim 6); violation of Fifth and Fourteenth Amendment due process rights (claim 8); trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); violation of

////

3

RICO statute, 18 U.S.C. 1962(d) (claim 31); loss of consortium (claim 36); and intentional infliction of emotional distress (claim 38).

In response to the filing of the Third Amended Complaint, Ford filed an "Anti-SLAPP Special Motion to Strike." (Dkt. No. 69.) Although Ford noticed her motion pursuant to California's Anti-SLAPP statute and Federal Rule of Civil Procedure 12(b)(6), her moving papers present the motion as a special motion to strike. The implications of pursuing only a special motion to strike are discussed below. Ford also filed an answer to the Third Amended Complaint on the same day she filed her special motion to strike. (Dkt. No. 70.)

Despite the court's previous order that plaintiffs file a separate opposition to each pending motion (Dkt. No. 89 at 6), plaintiffs filed a consolidated opposition, which addressed, in very little part, Ford's motion (see Dkt. No. 99). Plaintiffs filed their opposition on January 13, 2010, despite a court-ordered deadline of January 6, 2010. (Compare Dkt. No. 89 with Dkt. No. 99.) Although plaintiffs' opposition was untimely and need not be considered, the undersigned has fully considered that opposition in arriving at the findings and recommendations that follow.

II.   DISCUSSION

   A.   Ford's Request for Judicial Notice

In connection with her special motion to strike, Ford requests that the court take judicial notice of 14 documents, labeled as exhibits 1 through 13 and 15.[4] (See Req. for Judicial Notice, Dkt. No. 69, Doc. Nos. 69-3 & 69-4.) These exhibits consist of documents from the Nevada County Superior Court's file, including orders issued by the Superior Court and requests, motions, and declarations filed with the Superior Court. (See Doc. No. 69-4, Exs. 1-13, 15.)

The court may take judicial notice of filings in state court actions where the state court proceedings have a direct relation to the matters at issue. See, e.g., Betker v. U.S. Trust

---

[4] Perhaps due to an inadvertent error, exhibit 14 to the request for judicial notice is Ford's declaration in support of her special motion to strike, and Ford does not request that the court take judicial notice of that declaration. (See Doc. No. 69-4 at 67-70.)

1  Corp. (In re Heritage Bond Litig.), 546 F.3d 667, 670 n.1, 673 n.8 (9th Cir. 2008) (citing U.S.
2  ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992));
3  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Cactus Corner, LLC v. U.S. Dep't of
4  Agric., 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004); see also Reyn's Pasta Bella, LLC v. Visa
5  USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings
6  and other matters of public record."). Because all of the documents at issue are state court
7  records that directly relate to Ford's interactions with plaintiffs that form the basis of the dispute
8  before this court, the court grants Ford's request for judicial notice. However, the granting of
9  Ford's request for judicial notice is limited in that the court does not take notice of the truth of
10 any factual findings stated in the noticed documents. See Wyatt v. Terhune, 315 F.3d 1108, 1114
11 & n.5 (9th Cir. 2003) ("[W]e have held that taking judicial notice of findings of fact from another
12 case exceeds the limits of [Federal Rule of Evidence] 201.").

      B.      Ford's Special Motion to Strike

14       Ford contends that all of the claims against her—both claims brought pursuant to
15 federal law and state law—should be dismissed as a result of her special motion to strike, filed
16 pursuant to California's anti-SLAPP[5] statute, California Code of Civil Procedure § 425.16. The
17 Ninth Circuit Court of Appeals has summarized the purpose and general mechanics of
18 California's anti-SLAPP statute as follows:

> The anti-SLAPP statute establishes a procedure to expose and dismiss meritless and harassing claims that seek to chill the exercise of petitioning or free speech rights in connection with a public issue. Analysis of an anti-SLAPP motion to strike involves a two-step process. First, the defendant must show that the cause of action arises from any "act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue. . . ." Cal. Code Civ. P. § 425.16(b)(1).

---

[5] The acronym "SLAPP" stands for "strategic lawsuit against public participation." Jarrow Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 732 n.1, 74 P.3d 737, 739 n.1 (2003).

> If the court determines that the defendant has met this burden, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the merits. To establish a probability of prevailing, the plaintiff must show that "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

Kearny v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009) (footnote and citations omitted); accord Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839-40 (9th Cir. 2001); Jarrow Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 733, 74 P.3d 737, 740 (2003). The anti-SLAPP statute should be construed broadly. Mindys Cosmetics, Inc. v. Dakar, No. 09-55134, -- F.3d --, 2010 WL 2652480, at *1 (9th Cir. July 6, 2010) (citing Cal. Code Civ. P. § 425.16(a), and Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003)).

          1.     Scope of Ford's Anti-SLAPP Special Motion to Strike

Before turning to the application of the anti-SLAPP statute to the claims against Ford, the undersigned must address the scope of a special motion to strike filed pursuant to that statute. As explained below, the undersigned concludes that Ford's special motion to strike—even if otherwise meritorious—cannot serve as the basis for the dismissal of plaintiffs' claims premised on federal law.

Generally speaking, a party may bring an anti-SLAPP special motion to strike in federal court. Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005) (per curiam); Vess, 317 F.3d at 1109. But such a motion has limited reach. A party may seek to specially strike state law claims brought in federal court on the basis of the court's diversity subject matter jurisdiction and state law claims that are supplemental to federal claims in a federal question jurisdiction matter. See Hilton v. Hallmark Cards, 599 F.3d 894, 900 n.2 (9th Cir. 2010) (stating that "we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction") (citing United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999)); Globetrotter Software, Inc. v. Elan

Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the *Erie* analysis set forth in *Lockheed* the anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims."). However, a party may not use an anti-SLAPP special motion to strike to seek the dismissal of claims based on federal law, such as claims brought pursuant to 42 U.S.C. § 1983. See Hilton, 599 F.3d at 901 (stating that "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"); accord Restaino v. Bah (In re Bah), 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (holding that the anti-SLAPP statute does not apply to federal claims); Summit Media LLC v. City of Los Angeles, 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008) ("Several District Courts have determined that the Anti-SLAPP statute does not apply to federal question claims in federal court because such application would frustrate substantive federal rights."); Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007) (same); Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (same); Globetrotter Software, Inc., 63 F. Supp. 2d at 1130 (same).[6]

Here, plaintiffs have alleged some claims against Ford that are grounded in federal law and thus provide this court with federal question subject matter jurisdiction (see Third Am. Compl. at 2), and others that are premised on California state law. Nevertheless, Ford attempts through her special motion to strike to dismiss *all* of the claims against her. This she cannot do. Her special motion to strike does not reach the following five federal claims: claim 8, which alleges a violation of plaintiffs' Fifth and Fourteenth Amendment due process rights; claim 14, which alleges a violation of 42 U.S.C. § 1983; claim 15, which alleges a conspiracy in violation

---

[6] Decisions in this district, albeit unpublished, are in accord. See Barker v. Koff, No. 2:09-cv-00001-GEB-JFM, 2009 WL 2914146, at *2 (E.D. Cal. Sept. 9, 2009) (unpublished) (denying defendant's special motion to strike to the extent it sought dismissal of the federal claims alleged against them); Smith v. Cal. Dep't of Correction, No. CIV-F-06-0368 AWI SMS, 2006 WL 3518257, at *1 (E.D. Cal. Dec. 6, 2006) (unpublished) ("Anti-SLAPP may not be used against federal Section 1983 claims.").

of 42 U.S.C. § 1983; claim 18, which alleges a "civil conspiracy," ostensibly pursuant to 42 U.S.C. § 1983; and claim 31, which alleges a violation of 18 U.S.C. 1962(d). Accordingly, the undersigned will only address Ford's motion with respect to the following state law claims: claim 6, which alleges abuse of process; claim 13, which alleges a trespass to chattels; claim 36, which alleges "loss of consortium"; and claim 38, which alleges intentional infliction of emotional distress. The remaining claims are not the proper subject of an anti-SLAPP special motion to strike.

        2.      <u>Application of the Anti-SLAPP Statute to Plaintiffs' State Law Claims</u>

The state law claims asserted by plaintiffs against Ford are the proper subject of a special motion to strike. And Ford is correct that the only specific allegation in the Third Amended Complaint that relates to her conduct is plaintiffs' allegation that Ford failed to provide notice of hearings and filings in the cases between the Winters family and Ford's client, Jordan. (<u>See</u> Third Am. Compl. at 6, 13, and 15.) Accordingly, all of the allegations and state law claims against Ford arise out of her legal representation of Jordan in connection with the civil contempt hearing and the misdemeanor criminal action.

With respect to the first step of the anti-SLAPP analysis, Ford has demonstrated that the plaintiffs' state law claims arise from protected activity, i.e., the acts of which plaintiffs complain were taken in furtherance of Ford's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue. <u>See</u> Cal. Code Civ. P. § 425.16(b)(1); <u>see</u> <u>also</u> <u>Jarrow Formulas, Inc.</u>, 31 Cal. 4th at 733, 74 P.3d at 740. Such protected acts include the following: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under

////

////

consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."[7] Cal. Code Civ. P. § 425.16(e).

The allegations contained in the Third Amended Complaint indicate that Ford's conduct of which plaintiffs complain relates to her legal representation of Jordan in matters before the Nevada County Superior Court. Specifically, plaintiffs allege that Ford filed papers and appeared at hearings without providing notice to plaintiffs. (See, e.g., Third Am. Compl. at 15 ("Ford never noticed the Winters of any hearings or filings in Winters v. Jordan (#73025)").) California courts have held that claims against an attorney arising out of that attorney's representation of his or her client are the proper subject of an anti-SLAPP special motion to strike. See Rusheen v. Cohen, 37 Cal. 4th 1048, 1056, 128 P.3d 713, 717-18 (2006) ("A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike" (citation omitted).); Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at 740 (holding that malicious prosecution claim arising form attorney's representation of client was subject to anti-SLAPP statute); see also Zamos v. Stroud, 32 Cal. 4th 958, 965, 87 P.3d 802, 806 (2004) (same); Daniels v. Robbins, 182 Cal. App. 4th 204, 214-15, 105 Cal. Rptr. 3d 683, 691 (Ct. App. 2010) (noting lack of dispute that attorney's oral and written statements in prior judicial proceedings that gave rise to claims of malicious prosecution, abuse of process, negligence, and intentional infliction of emotional distress were protected activity under the anti-SLAPP statute); Cabral v. Martins, 177 Cal. App. 4th 471, 479-83, 99 Cal. Rptr. 3d 394, 401-04 (Ct. App. 2009) (claims arising from attorney's revision of a will, lodging of a will with the probate court, and representation of clients in probate proceedings were subject to anti-SLAPP motion); White v. Lieberman, 103 Cal. App. 4th 210, 221, 126 Cal. Rptr. 2d 608, 614-15

---

[7] A defendant moving to strike a claim arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding is not required to separately demonstrate that the statement concerned an issue of public significance. See Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123, 969 P.2d 564, 575 (1999).

1  (Ct. App. 2002) (holding that malicious prosecution claim against attorney arising from
2  attorney's representation of clients was subject to anti-SLAPP statute); Dowling v. Zimmerman,
3  85 Cal. App. 4th 1400, 1418-20, 103 Cal. Rptr. 2d 174, 188-90 (Ct. App. 2001) (attorney's
4  representation of clients in prior unlawful detainer action that gave rise to plaintiff's claims of
5  defamation, misrepresentation, and intentional and negligent infliction of emotional distress
6  against the attorney constituted protected activity). Accordingly, Ford has met the threshold
7  requirement of her special motion to strike.

8  Because Ford met her initial burden under the anti-SLAPP framework, the burden
9  would ordinarily shift to plaintiffs to demonstrate a probability of prevailing on the merits, i.e.,
10 that their complaint is "both legally sufficient and supported by a sufficient prima facie showing
11 of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."
12 Kearny, 590 F.3d at 648. Here, however, plaintiffs are unable to make such a showing as a
13 matter of law because Ford's conduct, insofar as plaintiffs' state law claims are concerned, is
14 protected by California's litigation privilege. That privilege, found at California Civil Code
15 § 47(b), provides, in part, that a publication or broadcast made as part of a judicial proceeding is
16 privileged. See also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232,
17 1241, 163 P.3d 89, 95 (Cal. 2007). The California Supreme Court recently summarized this
18 litigation privilege as follows:

> This privilege is absolute in nature, applying to all publications, irrespective of their maliciousness. The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action. The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.

24 Id. (citations and internal quotation marks omitted, modification in original). "[W]here the
25 gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily

related noncommunicative acts. . . ." Rusheen, 37 Cal. 4th at 1062, 128 P.3d at 722. The California Supreme Court has given this privilege "a broad interpretation" in furtherance of the purpose of the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241, 163 P.3d at 95. Thus, although the privilege was originally enacted with reference to claims of defamation, "'the privilege is now held applicable to any communication, whether or not it amounts to a publication . . . , and all torts except malicious prosecution.'" Rusheen, 37 Cal. 4th at 1057, 128 P.3d at 718 (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)).

Here, as discussed above, the allegations in the Third Amended Complaint and the judicially noticeable documents reflect that all of plaintiffs' state law tort claims alleged against Ford arise out of Ford's representation of Jordan as her court-appointed attorney in a civil contempt hearing and as her retained attorney in regards to a misdemeanor criminal matter. Specifically, plaintiffs' allegations as to Ford relate to her filings and appearances in court and communications with the court, all in relation to her representation of Jordan. Ford's actions are absolutely privileged. As a result, plaintiffs cannot demonstrate that they are entitled to a favorable judgment on their state law claims against Ford. Accordingly, the undersigned will recommend the dismissal with prejudice of all of plaintiffs' state law claims against Ford because Ford is absolutely immune under California's litigation privilege.[8]

////
////
////

---

[8] Because the undersigned concludes that plaintiffs' state law claims should be dismissed with prejudice pursuant to California's litigation privilege, these findings and recommendations do not reach Ford's arguments grounded in the Noerr-Pennington doctrine only insofar as Ford's anti-SLAPP special motion to strike is concerned.

C. The Remaining Claims Brought Pursuant to Federal Law

The undersigned will further recommend, pursuant to the court's screening authority under 28 U.S.C. § 1915(e)(B), that plaintiffs' remaining claims against Ford premised on federal law, i.e., claims 8, 14, 15, 18, and 31, be dismissed with prejudice.

Before reaching those claims, the undersigned addresses the initial confusion caused by Ford's moving papers. The general concern with Ford's briefing is that it is entirely unclear whether she intended to file a special motion to strike pursuant to California's anti-SLAPP statute *and* an alternative motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or only an anti-SLAPP special motion to strike that applies the Rule 12(b)(6) standard as the means of demonstrating why plaintiffs cannot meet the second step of the anti-SLAPP analysis. Ford's notice of motion describes her motion as an "Anti-SLAPP Special Motion to Strike," but one brought pursuant to both California Code of Civil Procedure *and* Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 69.) Moreover, a fair reading of Ford's memorandum in support of her motion suggests that Ford is requesting that the court apply the Rule 12(b)(6) standard only in assessing step two of the anti-SLAPP analysis. Confirming the confusion, plaintiffs' opposition brief suggests that plaintiffs believe that Ford filed two motions, a special motion to strike and a motion to dismiss pursuant to Rule 12(b)(6). (See Dkt. No. 99) Ford's reply brief further confuses the matter in that the title of that document appears to relate only to a special motion to strike, but the text of the brief refers to the motion as an "anti-SLAPP motion/motion to dismiss" and, at the same time, requests only that Ford's anti-SLAPP motion be granted. (Dkt. No. 103 at 1-2, 8-9.)

The undersigned will not construe Ford's motion as having alternatively moved to dismiss plaintiffs' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6). First, plaintiffs should not bear the brunt of Ford's ambiguous filing. Second, Ford filed an answer to plaintiffs' Third Amended Complaint on the same day she filed the present motion (Dkt. No. 70),

which suggests that Ford did not intend to file an alternative motion to dismiss pursuant to Rule 12(b)(6).

Nevertheless, because plaintiffs are proceeding in forma pauperis (Dkt. Nos. 55, 89 at 3), the undersigned addresses the remaining federal claims pursuant to its screening authority under the in forma pauperis statute. 28 U.S.C. § 1915(e)(2). The court's determination that a plaintiff may proceed in forma pauperis comes with the obligation to screen complaints brought by parties proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2); see also Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam); Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc). Pursuant to 28 U.S.C. § 1915(e)(2), the court is directed to dismiss a case filed pursuant to the in forma pauperis statute if, *at any time*, it determines that the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant. See also Lopez, 203 F.3d at 1126-27 ("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

As with their state law claims described above, all of plaintiffs' federal claims alleged against Ford relate to her representation of Jordan in connection with state court proceedings. As a result, Ford is immune under the Noerr-Pennington doctrine and plaintiffs cannot state a claim on which relief may be granted.[9]

"Under the Noerr-Pennington doctrine, those who petition all departments of the government for redress are generally immune from liability."[10] Empress LLC v. City & County

---

[9] Notwithstanding the confusion produced by Ford's briefing, Ford argued in her briefs that she is entitled to Noerr-Pennington immunity on all of plaintiffs' claims. Despite having an opportunity to respond to this argument, plaintiffs' opposition does not address in any material respect application of the Noerr-Pennington doctrine here.

[10] The Noerr-Pennington doctrine applies to petitioning activity before state governments and the federal government. See Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1059 (9th Cir. 1998). It also applies to "defensive" activity. Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180,1184 (9th Cir. 2005).

of San Francisco, 419 F3d 1052, 1056 (9th Cir. 2005) (citing Manistee Town Ctr. v. City of Glendale, 227 F.3d 1090, 1092 (9th Cir. 2000)). "The Noerr-Pennington doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved."[11] White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). And although this doctrine originated in the antitrust context, it is no longer limited to antitrust actions. Kearny, 590 F.3d at 644 ("The Supreme Court has since held that *Noerr-Pennington* principles 'apply with full force in other statutory contexts' outside antitrust.") (citing Sosa v. DIRECTV, 437 F.3d 923, 930 (9th Cir. 2006) (citing BE & K Constr. Co. v. NLRB, 536 U.S. 516, 525 (2002)).

Here, plaintiffs' federal claims against Ford are all premised on 42 U.S.C. § 1983 and the conspiracy provision of the RICO statute, 18 U.S.C. § 1962(d).[12] The Noerr-Pennington doctrine applies to petitioning activity that gives rise to a claim brought pursuant to 42 U.S.C. § 1983, a conspiracy claim alleged pursuant to 42 U.S.C. § 1983, and a claim brought pursuant to the RICO statute. See Sosa, 437 F.3d at 932-42 (holding that the Noerr-Pennington doctrine applies to a RICO claim); Empress LLC, 419 F.3d at 1056-57 (holding that Noerr-Pennington

---

[11] The Ninth Circuit Court of Appeals has applied the Noerr-Pennington doctrine to protect petitioning activity and "activity incidental to and in anticipation of petitioning activity." Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co., 669 F. Supp. 2d 1152, 1167 (C.D. Cal. 2009) (citing, in part, Sosa, 437 F.3d at 934-35 ("[I]n the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the Noerr-Pennington doctrine.")); see also Theme Prods., Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1007 (9th Cir. 2008) ("Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the Noerr-Pennington doctrine."); Sanders v. Brown, 504 F.3d 903, 912-13 (9th Cir. 2007) (stating that "*Noerr-Pennington* immunity protects private actors when they file court documents and enter contracts with the government" and holding that Noerr-Pennington immunity protects private parties from liability for negotiating and entering into settlements or other agreements with the government); Freeman, 410 F.3d at 1184 ("A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions . . . .").

[12] Plaintiffs' claims for violation of their due process rights (claim 8) and for civil conspiracy (claim 18) are in effect civil rights claims brought pursuant to 42 U.S.C. § 1983.

doctrine applies to claim brought pursuant to 42 U.S.C. § 1983 alleging a conspiracy between private individuals and government actors); Manistee, 227 F.3d at 1092 (applying Noerr-Pennington doctrine to Section 1983 claim). Plaintiffs' federal claims all arise out Ford's representation of Jordan, which includes acts of representing Jordan in court proceedings, filing papers with the court on Jordan's behalf, and communications with the Nevada County district attorney's office. Ford engaged in petitioning activity of the sort protected by the Noerr-Pennington doctrine. Accordingly, Ford is entitled to immunity with respect to plaintiffs' federal claims.

And although neither party briefed the issue, plaintiffs' pleadings do not suggest the possibility that their claims fall within the "sham" exception to the Noerr-Pennington doctrine.[13] In the context of the sham exception in relation to a defendant's previous defensive work, the plaintiff must show that the defendant's defensive activity was "objectively baseless" and that "the defense as a whole was 'a concealed attempt to interfere with the plaintiff's business relations.'" See Freeman, 410 F.3d at 1185. Here, based on the pleadings and judicially noticeable documents, that is not the case. Ford acted as Jordan's court-appointed attorney in the context of a civil contempt action and as a retained criminal defense attorney in a criminal proceeding, and all of plaintiffs' claims arise from those representations. Thus, plaintiffs' cannot show that Ford's defensive work was objectively baseless, and there is no possibility that the sham defense would apply here.

////

---

[13] In one of the few portions of the consolidated opposition brief filed by plaintiffs that responds to Ford's motion, plaintiffs appear to suggest that there exists a "conspiracy" exception to the Noerr-Pennington doctrine. (See Pls.' Opp'n to Special Mot. to Strike at 10, Dkt. No. 99.) The Ninth Circuit Court of Appeals has squarely rejected this argument. Empress LLC, 419 F.3d at 1057 ("[T]here is no 'conspiracy' exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights. In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens." (citation omitted).).

Accordingly, the undersigned will recommend that all of the federal claims against Ford be dismissed with prejudice.

IV. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that defendant Judy Ford's request for judicial notice is granted.

Furthermore, it is HEREBY RECOMMENDED that all claims alleged against defendant Judy Ford be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  <u>Id</u>.; <u>see</u> also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

DATED: July 19, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE