1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10    BRENT ALLEN WINTERS, et al.,

11             Plaintiffs,              No. 2:09-cv-00522 JAM KJN PS
        v.
12                                      FINDINGS AND RECOMMENDATIONS
      DELORES JORDAN, et al.,
13
             Defendants.
14    _____/

15          Presently before the court[1] is a motion to dismiss pursuant to Federal Rules of

16    Civil Procedure 12(b)(1) and 12(b)(6) filed by the following defendants: Nevada County

17    Superior Court Judges Thomas A. Anderson and Candace Heidelberger; Nevada County Superior

18    Court clerks Delores Spindler, Hilary Berardi (formerly known as Hilary Burget), Connie

19    Beckett, Audrey Golden, Kiira Jefferson, Teresa Long; and Nevada County Superior Court

20    Executive Officer/Clerk of Court Sean Metroka (on occasion referred to collectively as the

21    "Judicial Defendants").  (Dkt. No. 107.)  The court heard this matter on its law and motion

22    calendar on March 25, 2010.  Deputy Attorney General Daniel B. Alweiss appeared on behalf of

23    ////

24

25          [1]  This action proceeds before this court pursuant to Eastern District of California Local
      Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9,
26    2010 (Dkt. No. 105).

1  the moving defendants.  Plaintiffs, who are proceeding without counsel,[2] did not appear and, just

2  prior to the hearing, noticed their intent to rely on their written submissions.  (Dkt. No. 113.)

3  The undersigned has fully considered the parties' briefs and the record in this case and, for the

4  reasons that follow, recommends that the Judicial Defendants' motion to dismiss be granted.

5  I.      BACKGROUND[3]

6              Plaintiffs' operative complaint, the Third Amended Complaint,[4] is a wide-ranging,

7  25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants.

8  (Dkt. No. 66.)  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which

9  spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third

10  Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil

11  Procedure 8(a), including the requirement that the pleading contain a short and plain statement of

12  the claims alleged instead of recounting all of the evidence and arguments in support of those

13  claims.[5]  (Dkt. No. 56 at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to

14  comply."  (Id.)

15

16      [2] Although plaintiffs are proceeding without counsel in this action, the undersigned notes
    that plaintiff Brent Winters is alleged to be a licensed, practicing attorney.  (Third Am. Compl. at
17  21 (referring to Brent Allan Winters as "a licensed attorney"); see also Dkt. No. 89 at 13
    (alleging damage to "Brent Allan Winters's law practice").)

18      [3] In an order dated September 24, 2009, the court ordered that all references to the minor
    plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from
19  plaintiffs' Third Amended Complaint because those minors were not represented by an attorney
    or attorneys.  (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)
20
        [4] Plaintiffs filed the operative complaint under the title "Amended Complaint,"
21  notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare
    Dkt. No. 66 with Dkt No. 56 at 4.)  The Third Amended Complaint supersedes plaintiffs'
22  "Second Amended Complaint."  (Dkt. No. 15.)  As the court noted in a prior order, the Second
    Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt.
23  No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second
    amendment of the original complaint.
24
        [5] It appears that plaintiffs employed eight-point font size in their Third Amended
25  Complaint in an attempt to meet the page limit set by the court without sacrificing the
    voluminous and, in large part, confusing allegations that persist therein.
26

The claims against the Judicial Defendants at issue here are, in a sense, collateral to an underlying internecine family dispute.  The Third Amended Complaint alleges that plaintiff Susan Winters' elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in Illinois and move to Nevada City, California, to live with the Armstrongs.  (Third Am. Compl. at 4.)  Plaintiffs allege that before plaintiffs returned to California, Joe Armstrong passed away and Virginia Armstrong transferred properties from the Armstrong Living Trust dated July 29, 1994, to the Virginia Armstrong Living Trust.  (Id.)  Plaintiffs allege that Virginia Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon and Michael Armstrong.  (Id.)

Relevant here, the relationship between Virginia Armstrong and plaintiffs resulted in proceedings in the Nevada County Superior Court.[6]  Plaintiffs allege that Valerie Logsdon, an attorney for Virginia Armstrong, filed an unlawful detainer action against some of the plaintiffs.  (Id. at 5-6.)  Plaintiffs further allege that when they attempted to file an answer in the unlawful detainer action, the superior court clerks rejected the filing as untimely and entered an allegedly improper default judgment.  (Id. at 6.)  Plaintiffs allege that they were thus directed to file a motion to set aside the default judgment.  (Id.)

Plaintiffs also allege that they had an additional confrontation with court security officers at the courthouse and that Superior Court Judge Thomas Anderson eventually drafted an allegedly defamatory "personal memo" regarding the confrontation with court security and the court clerks that was inserted in each of the four Superior Court cases to which plaintiffs were parties.  (Id. at 7-8.)

////

---

[6] Plaintiffs allege that they obtained a permanent restraining order against defendant Delores Jordan, one of Virginia Armstrong's friends who had previously sought a restraining order against plaintiffs Susan and Brent Winters, seeking to keep the Winters family away from defendant Virginia Armstrong.  (Third Am. Compl. at 5.)

1          Furthermore, plaintiffs allege that Judge Anderson, on his own motion,

2   subsequently began proceedings against plaintiffs in connection with a restraining order "in

3   protection of Virginia Armstrong." (Id. at 7.)  Judge Anderson also allegedly appointed counsel

4   *sua sponte* for Virginia Armstrong, Dewey Harpainter, whom plaintiffs have also sued. (Id.)

5   Plaintiffs allege that Harpainter trespassed on the plaintiffs' property and that they eventually

6   sought a restraining order against Harpainter. (Id.)  Judge Anderson denied that application for a

7   restraining order. (Id. at 7-8.)

8          Plaintiffs also allege that Susan Winters filed a petition for conservatorship of

9   Virginia Armstrong, which Judge Anderson denied. (Id.)

10         Plaintiffs allege that the superior court clerks refused, on Judge Anderson's

11  orders, to file plaintiffs' papers seeking to dismiss the unlawful detainer and restraining order

12  actions, but that plaintiffs were able to set up a meeting with the court executive, Sean Metroka.

13  (Id. at 8-9.)  Plaintiffs allege that Metroka verbally berated them and informed them that he

14  would not dismiss the actions at issue. (Id.)  It appears, however, that the unlawful detainer

15  action was eventually dismissed and the restraining orders were vacated. (Id. at 9, 10.)

16         Plaintiffs also allege that in connection with a June 5, 2008 hearing before Judge

17  Anderson, Judge Anderson and court staff refused to turn on a court-provided hearing device for

18  Virginia Armstrong, who is a defendant in action before this court. (Id. at 9.)  They allege that

19  Judge Anderson also refused to file "objections" to the "personal memo" referenced above. (Id.)

20         Plaintiffs' Third Amended Complaint alleges the following claims against Nevada

21  County Superior Court Judge Thomas A. Anderson: abuse of process (claim 6); violation of

22  equal protection (claim 7); violation of Fifth and Fourteenth Amendment due process rights

23  (claim 8); trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil

24  conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); slander,

25  slander per se, libel and libel per se (claim 21); invasion of privacy (claim 25); violation of

26

4

plaintiffs' First Amendment right to petition for redress of grievances (claim 26); violation of plaintiffs' First Amendment right to religious expression (claim 27); violation of plaintiffs' Second Amendment right to keep and bear arms (claim 28); conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(d) (claim 31); respondeat superior liability for court staff's actions (claim 35); loss of consortium (claim 36); and intentional infliction of emotional distress (claim 38).

Plaintiffs allege the following claims against Nevada County Superior Court Judge Candace Heidelberger: abuse of process (claim 6); trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); violation of plaintiffs' First Amendment right to petition for redress of grievances (claim 26); conspiracy to violate the RICO statute (claim 31); loss of consortium (claim 36); and intentional infliction of emotional distress (claim 38).

With respect to the Nevada County Superior Court Staff, plaintiffs allege the following claims against Nevada County Superior Court Executive Officer/Clerk of Court Sean Metroka: abuse of process (claim 6); trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); violation of plaintiffs' First Amendment right to petition for redress of grievances (claim 26); violation of plaintiffs' Second Amendment right to keep and bear arms (claim 28); conspiracy to violate the RICO statute (claim 31); respondeat superior liability for court staff's actions (claim 33); loss of consortium (claim 36); and intentional infliction of emotional distress (claim 38).

Plaintiffs allege the same claims against Nevada County Superior Court clerks Teresa Long, Delores Spindler, and Audrey Golden as they alleged against court executive Metroka, except that they have not alleged a claims for respondeat superior liability against these

////

defendants (claim 33) and have not alleged a claim for violation of plaintiff's Second

Amendment right to keep and bear arms (claim 28) against defendants Long and Golden.

Plaintiffs allege the following claims against Nevada County Superior Court clerk

Kiira Jefferson: abuse of process (claim 6); trespass to chattels (claim 13); violation of 42 U.S.C.

§ 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy

(claim 18); conspiracy to violate the RICO statute (claim 31); loss of consortium (claim 36); and

intentional infliction of emotional distress (claim 38).

Finally, plaintiffs allege the following claims against Nevada County Superior

Court clerks Connie Beckett and Hilary Burget: abuse of process (claim 6); violation of Fifth and

Fourteenth Amendment due process rights (claim 8); trespass to chattels (claim 13); violation of

42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil

conspiracy (claim 18); violation of plaintiffs' First Amendment right to petition for redress of

grievances (claim 26); violation of plaintiffs' Second Amendment right to keep and bear arms

(claim 28); conspiracy to violate the RICO statute (claim 31); loss of consortium (claim 36); and

intentional infliction of emotional distress (claim 38).

The Judicial Defendants filed their motion to dismiss on the grounds that this

court lacks subject matter jurisdiction over the claims asserted against them, and, alternatively,

plaintiffs' Third Amended Complaint fails to state claims upon which relief can be granted. (See

generally Dkt. Nos. 107, 111.)  Plaintiffs filed an opposition to the motion to dismiss, which has

been of marginal assistance to the court because it is scattered, unfocused, and does not address

all of the Judicial Defendants' arguments in favor of dismissal.  (See Dkt. No. 110.)

Nonetheless, the undersigned has fully considered that opposition in arriving at the findings and

recommendations stated below.

////

////

II.   LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003) (citations and quotation marks omitted).  When ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  However, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) (collecting cases), cert. denied, 489 U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.").

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the

1   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

2   Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal,

3   129 S. Ct. at 1949).

4          The court accepts "all facts alleged as true and construes them in the light most

5   favorable to the plaintiff."  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1

6   (9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that

7   are contradicted by documents referred to in the complaint, and [the court does] not necessarily

8   assume the truth of legal conclusions merely because they are cast in the form of factual

9   allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must

10  construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a

11  plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it

12  appears at all possible that the plaintiff can correct the defect.[7]  See Lopez v. Smith, 203 F.3d

13  1122, 1130-31 (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule

14  12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

15  attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media

16  Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks

17  omitted).

18  III.   DISCUSSION

19         A.    Whether Judge Anderson, Judge Heidelberger, and Mr. Metroka are Entitled to
                 Eleventh Amendment Immunity
20

21         Judge Anderson, Judge Heidelberger, and Sean Metroka argue that they are

22  entitled to Eleventh Amendment immunity from suit on the grounds that they are "state officers,"

23  as defined by California Government Code § 811.9.  (Defs.' Mem. of P & A in Supp. of Mot. to

24

---

25         [7] Again, although plaintiffs are proceeding pro se, the undersigned notes that plaintiff
    Brent Winters is alleged to be a licensed, practicing attorney.
26

1  Dismiss at 3-4.)  Thus, they argue that they are not "persons" for the purpose of monetary

2  damage claims brought pursuant to 42 U.S.C. § 1983.  (Id.)  Plaintiffs contend that these

3  defendants acted outside of their official capacities and are therefore not entitled to Eleventh

4  Amendment Immunity.  (Pls.' Opp'n to Mot. to Dismiss at 8-10.)

5        The Eleventh Amendment prohibits federal courts from hearing suits brought

6  against a state by its own citizens or citizens of other states.  Brooks v. Sulphur Springs Valley

7  Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  State officials sued for monetary damages in

8  their official capacities are not "persons" within the meaning of Section 1983 and, therefore, are

9  generally entitled to the Eleventh Amendment immunity because such a suit is viewed as one

10 against the state itself.  Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007); see also Hafer v.

11 Melo, 502 U.S. 21, 25 (1991) ("Although state officials literally are persons, an official-capacity

12 suit against a state officer is not a suit against the official but rather is a suit against the official's

13 office.  As such it is no different from a suit against the State itself" (citation and quotation marks

14 omitted).).  In addition, claims seeking relief premised solely on a state's compliance with state

15 law are barred by the Eleventh Amendment.  See Suever v. Connell, 439 F.3d 1142, 1148 (9th

16 Cir. 2006).  Eleventh Amendment immunity for state officials acting in their official capacities is

17 limited to claims for damages and does not apply to a claim for prospective injunctive relief to

18 remedy ongoing violations of federal law.  See id.; Flint, 488 F.3d at 825 (citing Will v. Mich.

19 Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)).

20       Here, plaintiffs sued Judge Anderson, Judge Heidelberger, and Mr. Metroka in

21 both their "individual and official capacities."  (Third Am. Compl. at 1 (caption).)  As state

22 officials, see Cal. Gov't Code § 811.9(a), Judge Anderson, Judge Heidelberger, and Mr. Metroka

23 are plainly immune from suit under the Eleventh Amendment to the extent that plaintiffs have

24 ////

25 ////

26

1   alleged claims for damages against them in their official capacities.[8]  They do not have Eleventh

2   Amendment immunity against claims for prospective injunctive relief.

3          The question remains whether Judge Anderson, Judge Heidelberger, and

4   Mr. Metroka are immune from suit to the extent plaintiffs sued them in their *individual*

5   capacities.[9]  The Supreme Court has held that "state officials, sued in their individual capacities,

6   are 'persons' within the meaning of § 1983."  Hafer, 502 U.S. at 31.  Thus, "the Eleventh

7   Amendment does not erect a barrier against suits to impose 'individual and personal liability' on

8   state officials under § 1983."  Id. at 30-31 (citation omitted).  The Ninth Circuit Court of Appeals

9   has held that to succeed on the merits of a claim seeking to impose personal liability on a state

10  official, "a plaintiff must show only that 'the official, acting under color of state law, caused the

11  deprivation of a federal right.'"  Suever v. Connell, 579 F.3d 1047, 1061 (9th Cir. 2009) (citing

12  Hafer, 502 U.S. at 25).  In such a case, "the Eleventh Amendment is not implicated, because the

13  claim is truly against the individual, not the State."  Id.

14         In their discussion of Eleventh Amendment immunity, the Judicial Defendants

15  have not drawn distinctions between the claims against Judge Anderson, Judge Heidelberger, and

16  ////

17

---

18         [8]  The undersigned has not considered whether the remaining Judicial Defendants that are
    court employees are entitled to Eleventh Amendment Immunity.  The Ninth Circuit Court of
19  Appeals has held that Section 1983 claims against state court employees are barred by the
    Eleventh Amendment.  Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161
20  (9th Cir. 2003).  However, the Judicial Defendants have not asserted Eleventh Amendment
    Immunity on behalf of the Nevada County Superior Court employees other than the two judges
21  and the court executive officer.  Accordingly, the undersigned need not, and has not, considered
    whether these employees are entitled to Eleventh Amendment immunity.  See Katz v. Regents of
22  the Univ. of Cal., 229 F.3d 831, 834-35 (9th Cir. 2000) (stating that the Eleventh Amendment
    does not automatically destroy jurisdiction and that the court need not consider its applicability
23  where the State has not raised the issue).

24         [9]  The Judicial Defendants appear to argue that these defendants are immune from
    liability under the Eleventh Amendment because they were *acting* in their official capacities
25  when plaintiffs were allegedly injured.  (See Defs.' Op'n to Mot. to Dismiss at 4.)  However, the
    Supreme Court squarely rejected this argument in Hafer, 502 U.S. at 27.

26

1    Mr. Metroka in their official and individual capacities.  As a result, they do not specifically

2    address whether or why these defendants are immune from suit where sued as individuals.

3            Accordingly, although the undersigned concludes that Judge Anderson, Judge

4    Heidelberger and Mr. Metroka are entitled to Eleventh Amendment immunity to the extent that

5    they have been sued for damages in their official capacities, these defendants are not entitled to

6    Eleventh Amendment immunity to the extent they were sued in their individual capacities or

7    where prospective injunctive relief has been sought.  Whether these defendants are also entitled

8    to personal immunity based on absolute judicial immunity and absolute quasi-judicial immunity

9    is addressed below, after review of the Judicial Defendants' remaining "jurisdictional"

10   challenges to plaintiffs' Third Amended Complaint.

11       B.    Whether the Court Lacks Jurisdiction Over Plaintiffs' Claims Against the Judicial
               Defendants Because those Claims Are Barred By the Rooker-Feldman Doctrine,
12             Younger Abstention, or the Probate and Domestic Relations Exceptions to
               Jurisdiction
13

14            1.    Rooker-Feldman Doctrine

15            All of the Judicial Defendants argue that "[p]laintiffs' complaint is barred under

16   the *Rooker-Feldman* Doctrine" because "plaintiffs seek an order against Superior Court judges

17   asserting that their rulings were unconstitutional and actions by the court clerks, which related to

18   filing of papers in the underlying case, were unconstitutional."  (Defs.' Mem. of P & A in Supp.

19   of Mot. to Dismiss at 5.)  Plaintiffs argue that the Rooker-Feldman doctrine does not apply here

20   because (1) "[t]here are no already-decided cases that [plaintiffs] are challenging," and

21   (2) plaintiffs are not asking this court to "overturn or interfere with any decided opinions in

22   Nevada County Superior Court cases."  (Pls.' Opp'n to Mot. to Dismiss at 10.)

23            "'The *Rooker-Feldman* doctrine provides that federal district courts lack

24   jurisdiction to exercise appellate review over final state court judgments.'"  AmerisourceBergen

25   Corp. v. Roden, 495 F.3d 1143, 1153 (9th Cir. 2007) (citing Henrichs v. Valley View Dev.,

26

474 F.3d 609, 613 (9th Cir. 2007)).  "Essentially, the doctrine bars 'state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced' from asking district courts to review and reject those judgments."[10]

Henrichs, 474 F.3d at 613 (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S.

280, 284 (2005)); accord Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008).

The Rooker-Feldman doctrine may also apply, however, where the parties do not directly contest

the merits of a state court decision, but file an action that constitutes a "de facto" appeal from a

state court judgment.  Reusser, 525 F.3d at 859.  Such a de facto appeal exists where "claims

raised in the federal court action are 'inextricably intertwined' with the state court's decision

such that the adjudication of the federal claims would undercut the state ruling or require the

district court to interpret the application of state laws or procedural rules."  Id. (citation and

quotation marks omitted).  "Once a federal plaintiff seeks to bring a forbidden de facto

appeal . . ., that federal plaintiff may not seek to litigate an issue that is "inextricably intertwined"

with the state court judicial decision from which the forbidden de facto appeal is brought."  Noel,

341 F.3d at 1158.

////

---

[10]  In Noel v. Hall, the Ninth Circuit Court of Appeals provided the following "general
formulation" of Rooker-Feldman:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous
> decision by a state court, and seeks relief from a state court judgment
> based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in
> federal district court.  If, on the other hand, a federal plaintiff asserts as a
> legal wrong an allegedly illegal act or omission by an adverse party,
> *Rooker-Feldman* does not bar jurisdiction.  If there is simultaneously
> pending federal and state court litigation between the two parties dealing
> with the same or related issues, the federal district court in some
> circumstances may abstain or stay proceedings; or if there has been state
> court litigation that has already gone to judgment, the federal suit may be
> claim-precluded under § 1738.  But in neither of these circumstances does
> *Rooker-Feldman* bar jurisdiction.

341 F.3d 1148, 1164 (9th Cir. 2003).

1    Here, it does not appear from the Third Amended Complaint that plaintiffs are

2  attempting to directly appeal any order or judgment entered in the Nevada County Superior Court

3  proceedings, but the undersigned is concerned that plaintiffs might be attempting to litigate

4  issues that are inextricably intertwined with various state court decisions.  However, upon review

5  of the Third Amended Complaint and the Judicial Defendants' arguments in support of

6  application of the Rooker-Feldman doctrine, the undersigned cannot say with certainty which

7  precise issues the Judicial Defendants contend would form the basis of the court's abstention

8  under Rooker-Feldman.  Moreover, the Judicial Defendants have not provided a precise

9  statement of these issues and have provided no records from the Nevada County Superior Court

10  proceedings that would elucidate exactly *how* the Rooker-Feldman doctrine is implicated here.

11  This is so notwithstanding the fact that the court is entitled to review more than just the pleadings

12  in assessing its jurisdiction.  Warren, 328 F.3d at 1139; McCarthy, 850 F.2d at 560.  Without

13  more, the undersigned cannot conclude at this point in the proceedings that the Rooker-Feldman

14  doctrine robs the court of jurisdiction in this case.

15    2.    Younger Abstention

16    The Judicial Defendants further contend that the court may not exercise subject

17  matter jurisdiction over claims against them based on the abstention doctrine announced in

18  Younger v. Harris, 401 U.S. 37 (1971).  (Defs.' Mem. of P & A in Supp. of Mot. to Dismiss at

19  5:7-24.)  Their argument, which appears to have been made without consideration for the basic

20  elements of the Younger abstention doctrine, plainly fails.  Plaintiffs appear to *agree* that

21  Younger abstention applies here, although their opposition brief suggests that plaintiffs do not

22  fully comprehend the meaning of their assent.  (Pls.' Opp'n to Mot. to Dismiss at 10-11.)

23  Nevertheless, the court will independently assess its subject matter jurisdiction.  See, e.g., United

24  Investor Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 966-67 (9th Cir. 2004); Bank Julius

25  Baer & Co. v. Wikileaks, 535 F. Supp. 2d 980, 984 (N.D. Cal. 2008).

26

1          Abstention under <u>Younger</u>, through which a federal court seeks to avoid

2  interference with state court proceedings, "is a jurisprudential doctrine rooted in overlapping

3  principles of equity, comity, and federalism." <u>San Jose Silicon Valley Chamber of Commerce</u>

4  <u>Political Action Comm. v. City of San Jose</u>, 546 F.3d 1087, 1091-92 (9th Cir. 2008) (footnote

5  omitted).  A federal court "must abstain under *Younger* if four requirements are met: (1) a

6  state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests;

7  (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state

8  proceeding; and (4) the federal court action would enjoin the proceeding or have the practical

9  effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger*

10  disapproves." <u>Id</u>. at 1092 (citing <u>Gilbertson v. Albright</u>, 381 F.3d 965, 978 (9th Cir. 2004)

11  (en banc)).  <u>Younger</u> abstention applies not only where a federal action would interfere with a

12  state criminal proceeding, but also "to federal cases that would interfere with state civil cases and

13  state administrative proceedings." <u>Id</u>.  Abstention under <u>Younger</u> is the "exception rather than

14  the rule." <u>Id</u>.; <u>see also</u> <u>AmerisourceBergen Corp.</u>, 495 F.3d at 1148 ("[W]hen each of an

15  abstention doctrine's requirements are not strictly met, the doctrine should not be applied.").

16          The Judicial Defendants' argument based on <u>Younger</u> fails at the first step

17  because they have not provided the court with a record on which the undersigned can assess

18  whether ongoing state proceeding exists.  They only offer a half-hearted, inadequate argument

19  framed in the conditional tense, arguing that "to the extent that the Armstrong Trust litigation and

20  restraining orders are still ongoing issues in state court, than [*sic*] they qualify as ongoing state

21  judicial proceedings." (Defs.' Mem. of P & A in Supp. of Mot. to Dismiss at 5:18-19.)  Indeed,

22  the Judicial Defendants state that "[i]t is unclear whether the Armstrong Trust litigation and

23  restraining orders are still ongoing issues in state court." (<u>Id</u>. at 5:8-9.)  Nevertheless, they still

24  argue that "the to extent these are still ongoing state court issues matters, then *Younger*

25  abstention precludes this Court from exercising jurisdiction." (<u>Id</u>. at 5:9-10.)

26

Without an adequate record, the undersigned cannot determine whether the state court proceedings are ongoing.  The undersigned is not able to find that the elements of the Younger abstention doctrine have been "strictly" met on this record and in light of the Judicial Defendants' undeveloped, conditionally-phrased arguments.  Accordingly, the undesigned concludes that the Judicial Defendants' Younger abstention argument fails.

3.     The Domestic Relations and Probate Exceptions to Federal Jurisdiction

The Judicial Defendants also contend that the "trust and domestic relations exception" deprives the court of its subject matter jurisdiction over the claims alleged against them.  (Defs.' Mem. of P & A in Supp. of Mot. to Dismiss at 6:1-25.)  They argue that "[p]laintiffs "simply seek to use the federal court to (i) rewrite the terms of the Armstrong Trust, and (ii) countermand temporary restraining orders issued by the Superior Court associated with domestic relations between the elderly Virginia Armstrong, and her daughter, plaintiff Susan Winters."  (Id. at 6:20-23.)  For their part, plaintiffs argue that they would like to see the Armstrong Trust enforced.  (Pls.' Opp'n to Mot. to Dismiss at 11.)

As an initial matter, the Judicial Defendants' combined and terse discussion of the domestic relations exception and the trust exception, or probate exception, is unhelpful.  Although these exceptions are related, they are distinct doctrines.  See Marshall v. Marshall, 547 U.S. 293, 308 (2006).  Accordingly, the undersigned discusses these exceptions separately.

a.     Domestic Relations Exception

"The Supreme Court has long recognized that, when the relief sought relates primarily to domestic relations, a doctrine referred to as the domestic relations exception divests federal courts of jurisdiction."  Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943, 947 (9th Cir. 2008).  However, the Ninth Circuit Court of Appeals has held that "the domestic relations exception applies only to the diversity jurisdiction statute."  Id

////

15

1    Here, plaintiffs allege claims under 42 U.S.C. § 1983 and premise subject matter

2 jurisdiction on 28 U.S.C. § 1331.  They also allege state law claims under the court's

3 supplemental jurisdiction conferred in 28 U.S.C. § 1367.  (Third Am. Compl. at 2.)  Plaintiffs

4 have not invoked the court's diversity jurisdiction.  Accordingly, the undersigned concludes that

5 the domestic relations exception does not apply here.[11]

6                    b.      Probate Exception

7    The Supreme Court has also recognized a probate exception to federal

8 jurisdiction.  See Markham v. Allen, 326 U.S. 490, 494 (1946); see also Marshall, 547 U.S. at

9 308 ("Decisions of this Court have recognized a "probate exception," kin to the domestic

10 relations exception, to otherwise proper federal jurisdiction.").  In Marshall, the Supreme Court

11 specifically defined the scope of this limited exception, holding that "the probate exception

12 reserves to state probate courts the probate or annulment of a will and the administration of a

13 decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is

14 in the custody of a state probate court.  But it does not bar federal courts from adjudicating

15 matters outside those confines and otherwise within federal jurisdiction."[12]  547 U.S. at 311-12;

16

17    [11]  The Judicial Defendants rely, in part, on Thompson v. Thompson, 798 F.2d 1547,
1558 (9th Cir. 1986) (per curiam), where the Ninth Circuit Court of Appeals stated that "[e]ven

18 when a federal question is presented, federal courts decline to hear disputes which would deeply
involve them in adjudicating domestic matters. " (Defs.' Mem. of P & A in Supp. of Mot. to

19 Dismiss at 6:6-12.)  Their reliance on Thompson is unavailing in light of the 2008 Atwood
decision, where the Ninth Circuit Court of Appeals rejected the same reading of Thompson

20 offered by the Judicial Defendants and engaged in a significant discussion as to why the domestic
relations exception applies only where the court's subject matter jurisdiction is premised on the

21 diversity statute.  See Atwood, 513 F.3d at 946-47.

22    [12]  Unlike the domestic relations exception to diversity jurisdiction, the probate exception
appears to apply in cases premised on federal question jurisdiction.  The Marshall Court did not

23 specifically define the probate exception as an exception to diversity jurisdiction and discussed
the probate exception in terms of an exception to matters "otherwise within federal jurisdiction."

24 See 547 U.S. at 311-12.  The Marshall Court also did not specifically reverse the holding of
Ninth Circuit Court of Appeals, the court that produced the decision on review, that the probate

25 exception applies in federal question cases.  See Marshall v. Marshall, 392 F.3d 1118, 1132 (9th
Cir. 2004), rev'd. on other grounds, 547 U.S. 293 (2006).  Interpreting Marshall, the Sixth

26 Circuit Court of Appeals has expressly held that the probate exception applies in actions

1   <u>see also</u> <u>Thomas v. Artists Rights Enforcement Corp. (In re Kendricks)</u>, 572 F. Supp. 2d 1194,

2   1198 (C.D. Cal. 2008) ("Causes of action 'merely related' to probate matters are not within the

3   probate exception.").[13]  Thus, a federal district court may not exercise jurisdiction to (1) probate

4   or annul a will, (2) administer a decedent's estate, or (3) to dispose of property that is in the

5   custody of a state probate court.  <u>See</u> <u>Three Keys Ltd. v. SR Utility Holding Co.</u>, 540 F.3d 220,

6   227 (3d Cir. 2008).

7            Here, the Judicial Defendants have not identified the specific claims through

8   which plaintiffs purport have the court "re-write the terms of the Armstrong Trust."  (Defs.'

9   Mem. of P & A in Supp. of Mot. to Dismiss at 6:20-21.)  This is somewhat understandable given

10   the nature of the operative complaint, which alleges 38 claims for relief against over 60

11   defendants over the course of 25 pages.  At a minimum, plaintiffs' Third Amended Complaint

12   prays for, among other things, the following relief: "Reinstate and decree the enforcement of the

13   terms of the Armstrong Living Trust dated 29 July 1994 as originally drawn up by Joe Q.

14   Armstrong Sr. and Virginia Armstrong."  (Third Am. Compl. at 25.)  Yet it is unclear from the

15   record which of plaintiffs' claims serves as the predicate for this relief.  As with other

16   "jurisdictional" arguments forwarded by the Judicial Defendants, the undersigned is unable to

17   conclude with certainty at this point in the proceedings, and on the sparse record provided, that

18   the probate exception deprives the court of its jurisdiction over the entire case.

19   ////

20

21   premised on federal question jurisdiction.  <u>Jones v. Brennan</u>, 465 F.3d 304, 307 (6th Cir. 2006).

22       [13]  Since <u>Marshall</u>, the Ninth Circuit Court of Appeals has only addressed the probate

23   exception in a memorandum dispositions, where the court has confirmed the limited scope of the
probate exception.  <u>See</u> <u>Campi v. Chirco Trust UDT 02-11-97</u>, 223 Fed. Appx. 584, 585 (9th Cir.

24   2007) (stating that "[c]laims merely related to probate matters are not within the probate
exception" and holding that exception did not apply where plaintiff only alleged claims for fraud,

25   undue influence, and breach of fiduciary duties); <u>Gherini v. Lagomarsino</u>, 258 Fed. Appx. 81, 83
(9th Cir. 2007) (holding that exception did not apply where plaintiff asserted RICO and tort

26   claims and sought an *in personam* damages judgment against the defendants themselves).

C.      Absolute Judicial Immunity and Absolute Quasi-Judicial Immunity

The Judicial Defendants argue that, aside from their jurisdictional challenges to plaintiffs' claims, Judges Anderson and Heidelberger are entitled to absolute judicial immunity. (See Defs.' Mem. of P & A in Supp. of Mot. to Dismiss at 7-8.)  They further argue that the remaining Judicial Defendants are entitled to "absolute quasi-judicial immunity."  (Id. at 8-9.)

a.      Absolute Judicial Immunity: Judges Anderson and Heidelberger

The Judicial Defendants contend that Judges Anderson and Heidelberger are entitled to absolute immunity from plaintiffs' claims because all of the claims against them stem from their judicial acts.  (See Defs.' Mem. of P & A in Supp. of Mot. to Dismiss at 7-8.)  Although their brief is unfocused and nearly incomprehensible, plaintiffs essentially counter that these judges acted outside of their judicial roles.  (See Pls.' Opp'n to Mot. to Dismiss at 4-8.)

"Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities."  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004); see also Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim under § 1983 against the judge who entered the default, because the judge is absolutely immune for judicial acts.").  There are only two situations where judges are not absolutely immune: first, where the action is not taken in the judge's judicial capacity; and second, where the action, although judicial in nature, is taken in the complete absence of all jurisdiction.  Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999); see also Forrester v. White, 484 U.S. 219, 227 (1988) (suggesting a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform.").[14]  The following are factors relevant to the determination of whether a particular act is judicial in nature:

_____

[14]  The Supreme Court has held that "judicial immunity is not overcome by allegations of bad faith or malice."  Mireles, 502 U.S. at 11.

1   "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers;

2   (3) the controversy centered around a case then pending before the judge; and (4) the events at

3   issue arose directly and immediately out of a confrontation with the judge in his or her official

4   capacity."  Ashelman v. Pope, 793 F.2d 1072, 1075-76 (9th Cir. 1986) (en banc); accord

5   Duvall v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001).  Judicial defendants are not

6   immune from suits seeking prospective injunctive relief or where the defendants have not acted

7   in their judicial capacity.  See, e.g., Pulliam v. Allen, 466 U.S. 522, 541-42 (1984); Wolfe,

8   392 F.3d at 366; Ashelman, 793 F.2d at 1075.

9              Plaintiffs' allegations as to Judge Anderson's purported liability are wide-ranging

10  and at times incoherent.  However, plaintiffs' Third Amended Complaint appears to allege that

11  Judge Anderson's liability arises from the following: issuance and/or vacating of certain

12  retraining orders; failure to provide notice to plaintiffs of filings and hearings in a case;

13  appointment of counsel for Virginia Armstrong; dismissal of Susan Winters's request for

14  conservatorship of Virginia Armstrong; comments made to certain of plaintiffs related to the

15  dismissal of actions before the court; refusal to allow Virginia Armstrong (a *defendant* in this

16  case) to use a hearing device in the courtroom; the drafting of a memorandum, allegedly

17  containing defamatory statements, regarding the conduct of certain plaintiffs in the courthouse

18  and the filing of that memorandum in each case in which plaintiffs were a party; refusal to file

19  certain objections to an order directing a social worker to draft a second report regarding Virginia

20  Armstrong in a matter before the superior court, which caused an alleged delay in proceedings;

21  and comments made in open court regarding the Winters family's children that were allegedly

22  humiliating.  (Third Am. Compl. ¶¶ 41-42, 46-50, 53-55, 57, 62, 64-65, 69, 70-71, 74; see id. at

23  13-15, 23-24.)  Even assuming the truth of the allegations in the Third Amended Complaint,

24  Judge Anderson's actions arose in the course of his role as a judge and, accordingly, were

25  judicial acts.  See Mireles, 502 U.S. at 13 (stating that "we look to the particular act's relation to

26

a general function normally performed by a judge").  The actions occurred while Judge Anderson was either in the courtroom or in chambers, they are related to cases before the court, and plaintiffs' allegations arose out of an interaction with Judge Anderson while he was acting in his judicial capacity.  Accordingly, Judge Anderson is entitled to absolute judicial immunity for liability for damages.

With respect to plaintiffs' claims against Judge Heidelberger, it appears that the Third Amended Complaint alleges that Judge Heidelberger's liability arises from her role as the judge presiding over an unlawful detainer action in which a default judgment was allegedly wrongfully entered and where plaintiffs were required to file a motion to set aside the default judgment.  (See Third Am. Compl. ¶¶ 36, 64, 67, and at 13; see also Pls.' Opp'n to Mot. to Dismiss at 8.)  As the factual allegations as to Judge Heidelberger relate to her role in a case before her—and pertain to undeniably judicial acts—she is entitled to absolute immunity for liability for damages.

Although Judges Anderson and Heidelberger are entitled to absolute judicial immunity from liability for damages, their immunity does not extend to plaintiffs' claim for prospective injunctive relief.  The Judicial Defendants generally argue that absolute judicial immunity applies to both damages and injunctive relief based on application of the Anti-Injunction Act, 28 U.S.C. § 2283, which states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  It is unclear from the Judicial Defendants' briefs why this provision is applicable.  The Judicial Defendants have not identified any ongoing state-court proceedings or judgments that plaintiffs seek to stay or enjoin.  See Henrichs, 474 F.3d at 616 ("The Act's mandate extends not only to injunctions affecting pending proceedings, but also to injunctions against the execution or ////

1   enforcement of state judgments.").  Accordingly, their argument based on the Anti-Injunction Act

2   does not justify extending absolute judicial immunity to plaintiffs' claim for injunctive relief.

3              **b.**     <u>Absolute Quasi-Judicial Immunity for Court Employees</u>

4          The remaining Judicial Defendants, comprised of clerks/staff of the Nevada

5   County Superior Court, argue that they are entitled to absolute quasi-judicial immunity with

6   respect to plaintiffs' Section 1983 damages claims.  (<u>See</u> Defs.' Mem. of P & A in Supp. of Mot.

7   to Dismiss at 8-9.)  They argue that plaintiffs' allegations relate to the filing or non-filing of

8   documents with the Nevada County Superior Court and, thus, they are immune from a suit for

9   damages.  Plaintiffs appear to agree that the clerks' conduct at issue in the Third Amended

10   Complaint relates to the clerks' attempts to "prevent the Winters from filing their properly

11   prepared and timely pleadings."  (Pls.' Opp'n to Mot. to Dismiss at 2.)

12          "Court clerks have absolute quasi-judicial immunity from damages for civil rights

13   violations when they perform tasks that are an integral part of the judicial process."  <u>Mullis v.</u>

14   <u>U.S. Bankr. Court for Dist. of Nev.</u>, 828 F.2d 1385, 1390 (9th Cir. 1987); <u>accord</u> <u>Duvall</u>,

15   260 F.3d at 1142 & n.1 (Rymer, J., dissenting) (collecting cases).  In <u>Mullis</u>, the plaintiff's

16   complaint alleged that bankruptcy court clerks (1) failed to provide him with proper counseling

17   and notice regarding the Bankruptcy Code as required by statute, (2) accepted and filed an

18   incomplete bankruptcy petition; and (3) later refused to accept an amended petition.  828 F.2d at

19   1390.  The Ninth Circuit Court of Appeals held that even taking plaintiff's allegations as true,

20   these acts were "all properly . . . characterized as integral parts of the judicial process."  <u>Id</u>.  The

21   court reasoned that "[t]he clerk of court and deputy clerks are the officials through whom such

22   filing is done.  Consequently, the clerks qualify for quasi-judicial immunity unless these acts

23   were done in the clear absence of all jurisdiction."  <u>Id</u>.

24          Here, all of the allegations in the Third Amended Complaint directed at the

25   Nevada County Superior Court clerks relate to the court staff members' function of filing, or

26

refusing to file, court documents and/or assisting Judges Anderson and Heidelberger in carrying

out their judicial acts as described above.  These acts are integral parts of the judicial process.

Plaintiffs' opposition brief and accompanying declaration do not contradict this conclusion.

Accordingly, the court clerks are entitled to immunity from plaintiffs' damages claims.  They are

not, however, immune to the extent plaintiffs seek prospective injunctive relief.  See Ashelman,

793 F.2d at 1075 ("Judges and those performing judge-like functions are absolutely immune

from damage liability for acts performed in their official capacities.  Immunity does not extend,

however, to actions for prospective injunctive relief" (citation omitted).).[15]

D.    Whether the Third Amended Complaint Violates the Requirements of Federal
      Rule of Civil Procedure 8

Finally, the undersigned concludes that, insofar as plaintiffs' claims for injunctive

relief are concerned, the Third Amended Complaint violates the requirement of Federal Rule of

Civil Procedure 8 that a plaintiff provide "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Judicial Defendants contend that

plaintiffs' Third Amended Complaint should be dismissed for failing to comply with Rule 8(a),

and the undersigned generally agrees.  However, because all plaintiffs' claims for damages

alleged against the Judicial Defendants are barred by either Eleventh Amendment immunity or

personal immunities (i.e., absolute judicial immunity and quasi-absolute immunity) as described

////

---

[15]  Because the undersigned concludes that the Judicial Defendants are entitled to
immunity from the claims against them, these findings and recommendations do not address the
Judicial Defendants' additional argument that plaintiffs' thirty-third and thirty-fifth claims for
relief, which allege that Judge Anderson and Mr. Metroka are liable pursuant to 42 U.S.C.
§ 1983 under a respondeat superior theory of liability for the acts of court staff, should be
dismissed because respondeat superior is not a viable theory of liability under 42 U.S.C. § 1983.
The undersigned notes, however, that plaintiffs concede in their opposition brief that although
their thirty-third and thirty-fifth claims reference constitutional violations or violations of
plaintiffs' civil rights, they are *not* pursuing relief in these claims pursuant to 42 U.S.C. § 1983.
(Pls.' Opp'n to Mot. to Dismiss at 3 ("The Winters' Respondeat Superior claims are civil torts
not § 1983 civil-rights claims.").)

above, the undersigned only addresses plaintiffs' violations of Rule 8(a) as they pertain to claims

for injunctive relief.

Preliminarily, plaintiffs' Third Amended Complaint does not contain "a short and

plain statement of the claim showing that the [plaintiffs are] entitled to relief." Fed. R. Civ. P.

8(a)(2). Plaintiffs have demonstrated persistent difficulty with efficiently alleging their claims

and the supporting facts, despite the court's prior admonition that a complaint "is not the place to

set forth all of plaintiffs' evidence and supporting arguments nor to characterize at length the

defendants." (Dkt. No. 56 at 3.) These deficiencies, which extend to plaintiffs' request for

injunctive relief, persist notwithstanding the court's explicit instructions regarding the pleading

deficiencies and previous warning that the Third Amended Complaint would be "plaintiffs' last

chance to comply" with the applicable pleading requirements. (Id.)

Moreover, it is difficult to discern which claims, if any, give rise to the injunctive

relief plaintiffs seek with respect to the Judicial Defendants. The Third Amended Complaint

prays for the following prospective injunctive relief that might relate to the Judicial Defendants.

First, it seeks "a permanent injunction, upon proper motion, requiring . . . Court Administrator

Sean Metroka to adopt, and act upon, appropriate policies related to the hiring and supervision of

court clerks . . . ." (Third Am. Compl. at 25.) Second, and with no reference to any specific

defendant, the complaint prays for a "permanent injunction, upon proper motion, requiring

Defendants to cease and desist their harassment and abuse of the Winters Family and violations

of their fundamental, constitutional, civil, and common law rights and any other relief the Court

deems just and good." (Id.) Plaintiffs' first request for injunctive relief is insufficiently pled

because it consists of an injunction the court could not enforce—the court could not enforce an

injunction compelling the Nevada County Superior Court executive to adopt and follow

"appropriate policies." As to plaintiffs' second request, it is a general "obey the law" type of

injunction that the court is loathe to enter. Ruff v. County of Kings, No. CV-F-05-631

OWW/GSA, 2009 WL 5111766, at *18 (E.D. Cal. Dec. 18, 2009) (unpublished) (noting that blanket injunctions to obey the law are disfavored) (citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007)); accord C.F. v. Capistrano Unified Sch. Dist., 647 F. Supp. 2d 1187, 1193-94 (C.D. Cal. 2009).  Accordingly, plaintiffs' claims for injunctive relief should be dismissed.

IV.     CONCLUSION

        For the foregoing reasons, IT IS HEREBY RECOMMENDED that the Judicial Defendants' motion to dismiss (Dkt. No. 107) be granted and that plaintiffs' claims against defendants Thomas A. Anderson, Candace Heidelberger, Delores Spindler, Hilary Berardi (formerly known as Hilary Burget), Connie Beckett, Audrey Golden, Kiira Jefferson, Teresa Long, and Sean Metroka be dismissed with prejudice.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

////
////
////
////
////
////

1   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

2   (9th Cir. 1991).

3              IT IS SO RECOMMENDED.

4   DATED:  July 19, 2010

5

6

7                                 KENDALL J. NEWMAN
                              UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26