1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLEN WINTERS, et al.,

11          Plaintiffs,                    No. 2:09-cv-00522 JAM KJN PS

12   v.                                    ORDER & FINDINGS AND
                                           RECOMMENDATIONS
13   DELORES JORDAN, et al.,

14          Defendants.
     _____/

15

16          Presently before the court is a special motion to strike plaintiffs' Third Amended

17   Complaint pursuant to California Code of Civil Procedure § 425.16, a motion to dismiss pursuant

18   to Federal Rule of Civil Procedure 12(b)(6), and related requests for judicial notice, all filed by

19   defendant Valerie Logsdon ("Logsdon").  (Dkt. Nos. 72-76, 97.)  The court submitted this matter

20   without oral argument.[1]  (Dkt. No. 102.)  The undersigned has fully considered the parties' briefs

21   and the record in this case and, for the reasons that follow, will: (1) grant Logsdon's separately

22   filed requests for judicial notice, and (2) recommend that all of plaintiffs' claims against

23   Logsdon, except for plaintiff Christy Winters' civil battery claim, be dismissed with prejudice.

24   _____

25          [1]  This action proceeds before this court pursuant to Eastern District of California Local
     Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9,
26   2010 (Dkt. No. 105).

1  I.      BACKGROUND[2]

2          Plaintiffs' operative complaint, the Third Amended Complaint,[3] is a wide-ranging,

3  25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants.

4  (Dkt. No. 66.)  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which

5  spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third

6  Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil

7  Procedure 8(a), including the requirement that the pleading contain a short and plain statement of

8  the claims alleged instead of recounting all of the evidence and arguments in support of those

9  claims.  (Dkt. No. 56 at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to

10 comply."  (Id.)

11         The claims against Logsdon arise out of an underlying internecine family dispute

12 between the Winters family and defendant Virginia Armstrong.  The Third Amended Complaint

13 alleges that in or around the year 2002, plaintiff Susan Winters' elderly parents, Joe and Virginia

14 Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in Illinois and

15 move to Nevada City, California, to live with the Armstrongs.  (Third Am. Compl. at 4.)

16 Plaintiffs allege that before plaintiffs returned to California, Joe Armstrong passed away and that

17 Virginia Armstrong eventually transferred properties from the Armstrong Living Trust dated

18 July 29, 1994 to the Virginia Armstrong Living Trust.  (Id.)  Plaintiffs allege that Virginia

19

20         [2] In an order dated September 24, 2009, the court ordered that all references to the minor
21 plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from
   plaintiffs' Third Amended Complaint because those minors were not represented by an attorney
   or attorneys.  (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)
22
23         [3] Plaintiffs filed the operative complaint under the title "Amended Complaint,"
   notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare
24 Dkt. No. 66 with Dkt No. 56 at 4.)  The Third Amended Complaint supersedes plaintiffs'
   "Second Amended Complaint."  (Dkt. No. 15.)  As the court noted in a prior order, the Second
   Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt.
25 No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second
   amendment of the original complaint.

26

1   Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon,

2   who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia Armstrong's son and

3   an attorney. (Id.)

4          The relationship between Virginia Armstrong and plaintiffs resulted in several

5   proceedings in the Nevada County Superior Court.  Relevant here, Logsdon, acting as Virginia

6   Armstrong's attorney, filed an unlawful detainer action on her client's behalf seeking to evict

7   members of the Winters family from Ms. Armstrong's home.  (Third Am. Compl. at 5; Req. for

8   Judicial Notice, Ex. 1, Dkt. No. 75.)  In connection with the unlawful detainer action, plaintiffs

9   allege that an Assistant United States Attorney from Illinois wrote a letter to Logsdon "offering

10  any aid to help her evict the Winters from their home in Nevada City, California," and Logsdon

11  filed that letter in the unlawful detainer action.[4]  (Third Am. Compl. at 6.)  Plaintiffs further

12  allege that Logsdon caused declarations or other documents to be filed in connection with the

13  issuance of a restraining order by a judge of the Nevada County Superior Court.  (Id.)  Plaintiffs

14  also allege that on May 18, 2008, Logsdon physically pushed plaintiff Christy Winters while

15  Logsdon was being served with papers, causing Christy Winters to trip down some stairs.  (Id. at

16  16.)  Additionally, Logsdon represented Virginia Armstrong in estate planning matters, including

17  the transfer of property to the Virginia Armstrong Living Trust.  (Id. at 4.)

18          Plaintiffs' Third Amended Complaint alleges the following claims against

19  Logsdon: abuse of process (claim 6); battery (claim 9); trespass to chattels (claim 13); violation

20  of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15);

21  civil conspiracy (claim 18); "Slander, Libel, and Slander & Libel Per Se" (claim 21); breach of

22  contract (claim 22); conspiracy to violate the Racketeer Influenced and Corrupt Organizations

23  ////

24
     ─────────────────

25      [4] Plaintiffs attached this letter to their Second Amended Complaint, and Logsdon
     separately requests that the court take judicial notice of this letter in connection with her motion
26   to dismiss.  That request is denied, as the letter is not a judicially noticeable document.

1   Act ("RICO"), 18 U.S.C. 1962(d) (claim 31); loss of consortium (claim 36); and intentional

2   infliction of emotional distress (claim 38).

3          In response to the filing of the Third Amended Complaint, Logsdon filed a

4   combined anti-SLAPP special motion to strike and motion to dismiss.  (Dkt. No. 72.)  Curiously,

5   Logsdon also filed an answer to the Third Amended Complaint on the same day she filed her

6   special motion to strike and motion to dismiss.  (Dkt. No. 77.)

7          There are several, separately-filed motions pending before the court.  Despite the

8   court's previous order that plaintiffs file a separate opposition to each pending motion (Dkt.

9   No. 89 at 6), plaintiffs filed a consolidated opposition, which hardly addresses Logsdon's

10  motions (see Dkt. No. 99).  Plaintiffs filed their opposition on January 13, 2010, despite a court-

11  ordered deadline of January 6, 2010.  (Compare Dkt. Nos. 89 with 99.)  Although plaintiffs'

12  opposition was untimely and need not be considered, the undersigned has considered that

13  opposition in arriving at the findings and recommendations that follow.

14  II.   DISCUSSION

15         A.   Logsdon's Request for Judicial Notice

16         In connection with her special motion to strike, Logsdon filed a request for

17  judicial notice and a supplemental request for judicial notice.[5]  (Dkt. Nos. 75, 97.)  She requests

18  that the court take judicial notice of several documents from the Nevada County Superior Court's

19  file, including complaints, requests, motions, and declarations filed with the Superior Court.  In

20  essence, these documents relate to Logsdon's representation of Ms. Armstrong before the

21  Superior Court.

22         The court may take judicial notice of filings in state court actions where the state

23  court proceedings have a direct relation to the matters at issue.  See, e.g., Betker v. U.S. Trust

24  ─────────────

25         [5]  Logsdon makes additional requests for judicial notice scattered throughout her
    memorandum in support of her motions.  The undersigned addresses those requests below, as
    necessary.

26

                                                4

1  Corp. (In re Heritage Bond Litig.), 546 F.3d 667, 670 n.1, 673 n.8 (9th Cir. 2008) (citing U.S.

2  ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992));

3  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Cactus Corner, LLC v. U.S. Dep't of

4  Agric., 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004); see also Reyn's Pasta Bella, LLC v. Visa

5  USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings

6  and other matters of public record.").  Because all of the documents at issue are state court

7  records that directly relate to Logsdon's interactions with plaintiffs that form the basis of the

8  dispute before this court, the court grants Logsdon's request for judicial notice and supplemental

9  request for judicial notice.  However, the grant of these requests is limited in that the court does

10  not take notice of the truth of any factual findings stated in the noticed documents.  See Wyatt v.

11  Terhune, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003) ("[W]e have held that taking judicial notice

12  of findings of fact from another case exceeds the limits of [Federal Rule of Evidence] 201.").

13         B.     Logsdon's Anti-SLAPP Special Motion to Strike

14           Logsdon contends that all of the state law claims against her should be dismissed

15  as a result of her special motion to strike, filed pursuant to California's anti-SLAPP[6] statute,

16  California Code of Civil Procedure § 425.16.  Generally speaking, a party may bring an anti-

17  SLAPP special motion to strike in federal court.[7]  Thomas v. Fry's Elecs., Inc., 400 F. 3d 1206,

18  ////

---

19      [6]  The acronym "SLAPP" stands for "strategic lawsuit against public participation."

20  Jarrow Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 732 n.1, 74 P.3d 737, 739 n.1 (2003).

21      [7]  A party may seek to specially strike state law claims brought in federal court on the

22  basis of the court's diversity subject matter jurisdiction and state law claims that are
supplemental to federal claims in a federal question jurisdiction matter.  See Hilton v. Hallmark

23  Cards, 599 F.3d 894, 900 n.2 (9th Cir. 2010) (stating that "we have long held that the
anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity

24  jurisdiction") (citing United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d
963, 970-73 (9th Cir. 1999)); Globetrotter Software, Inc. v. Elan Computer Group, Inc.,

25  63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the *Erie* analysis set forth in
*Lockheed* the anti-SLAPP statute may be applied to state law claims which, as in this case, are
asserted pendent to federal question claims").

26

1   1206 (9th Cir. 2005) (per curiam).  The Ninth Circuit Court of Appeals has summarized the

2   purpose and general mechanics of California's anti-SLAPP statute as follows:

3           The anti-SLAPP statute establishes a procedure to expose and dismiss
            meritless and harassing claims that seek to chill the exercise of petitioning
4           or free speech rights in connection with a public issue.  Analysis of an
            anti-SLAPP motion to strike involves a two-step process.  First, the
5           defendant must show that the cause of action arises from any "act of that
            person in furtherance of the person's right of petition or free speech under
6           the United States or California Constitution in connection with a public
            issue. . . ."  Cal. Code Civ.  P. § 425.16(b)(1).
7
            If the court determines that the defendant has met this burden, it must then
8           determine whether the plaintiff has demonstrated a probability of
            prevailing on the merits.  To establish a probability of prevailing, the
9           plaintiff must show that "the complaint is both legally sufficient and
            supported by a sufficient prima facie showing of facts to sustain a
10          favorable judgment if the evidence submitted by the plaintiff is credited."

11

12  Kearny v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009) (footnote and citations

13  omitted); accord Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839-40 (9th Cir. 2001); Jarrow

14  Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 733, 74 P.3d 737, 740 (2003).  The anti-SLAPP

15  statute should be construed broadly.  Mindys Cosmetics, Inc. v. Dakar, No. 09-55134, -- F.3d --,

16  2010 WL 2652480, at *1 (9th Cir. July 6, 2010) (citing Cal. Code Civ. P. § 425.16(a), and

17  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003)).

18          Plaintiffs' state law claims consist of claim 6 (abuse of process), claim 9 (battery),

19  claim 21 (slander and libel), claim 36 (loss of consortium), and claim 38 (intentional infliction of

20  emotional distress).  The state law claims asserted by plaintiffs against Logsdon, except for the

21  claim of battery, are the proper subject of a special motion to strike.[8]  Those claims arise out of

22  Logsdon's representation of Virginia Armstrong in connection with an unlawful detainer action

23

24          [8] Because, as discussed below, the undersigned construes plaintiffs' twenty-second
        claim, for breach of contract, as a claim for legal malpractice premised on the advice provided by
25      Logsdon to Virginia Armstrong, that claim is also addressed below in the portion of this order
        resolving Logsdon's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

26

1   before the Nevada County Superior Court.[9]  In addition, plaintiffs' abuse of process claim

2   appears to allege that Logsdon filed certain declarations in another Superior Court proceeding.

3   (Third Am. Compl. at 13.)  However, plaintiffs' battery claim arises from alleged physical

4   contact between Logsdon and plaintiff Christy Winters that occurred when Logsdon was being

5   served with papers.  (Id. at 16.)  As alleged, Logsdon's contact with Christy Winters was not in

6   furtherance of the her right of petition or free speech and is thus not the proper subject of an anti-

7   SLAPP motion.  Accordingly, the undersigned will analyze Logsdon's anti-SLAPP motion with

8   respect to the state law claims against Logsdon, except for plaintiffs' battery claim.

9          With respect to the first step of the anti-SLAPP analysis, Logsdon has

10  demonstrated that plaintiffs' state law claims arise from protected activity, i.e., the acts of which

11  plaintiffs complain were taken in furtherance of her right of petition or free speech under the

12  United States Constitution or the California Constitution in connection with a public issue.  See

13  Cal. Code Civ. P. § 425.16(b)(1); see also Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at

14  740.  Such protected acts include the following: "(1) any written or oral statement or writing

15  made before a legislative, executive, or judicial proceeding, or any other official proceeding

16  authorized by law; (2) any written or oral statement or writing made in connection with an issue

17  under consideration or review by a legislative, executive, or judicial body, or any other official

18  proceeding authorized by law . . . ."[10]  Cal. Code Civ. P. § 425.16(e).

19  ////

20  _____

21      [9]  To the extent that any of plaintiffs' state law claims arise from Logsdon's estate
    planning representation related to the Virginia Armstrong Living Trust, Logsdon's activities are

22  intertwined with the unlawful detainer action in that the transfer of property out of an existing
    trust and into the Virginia Armstrong Living Trust pursuant to Logsdon's advice is what gave

23  rise to the unlawful detainer action and the eviction of the plaintiffs from the property at issue.

24      [10]  A defendant moving to strike a claim arising from a statement made before, or in
    connection with an issue under consideration by, a legally authorized official proceeding is not

25  required to separately demonstrate that the statement concerned an issue of public significance.
    See Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123, 969 P.2d 564, 575

26  (1999).

The allegations contained in the Third Amended Complaint indicate that Logsdon's conduct of which plaintiffs complain relates to her legal representation of Virginia Armstrong in an unlawful detainer action before the Nevada County Superior Court and another proceeding before that court.  California courts have held that claims against an attorney arising out of that attorney's representation of his or her client are the proper subject of an anti-SLAPP special motion to strike.  See Rusheen v. Cohen, 37 Cal. 4th 1048, 1056, 128 P.3d 713, 717-18 (2006) ("A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike" (citation omitted).); Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at 740 (holding that malicious prosecution claim arising from attorney's representation of client was subject to anti-SLAPP statute); see also Zamos v. Stroud, 32 Cal. 4th 958, 965, 87 P.3d 802, 806 (2004) (same); Daniels v. Robbins, 182 Cal. App. 4th 204, 214-15, 105 Cal. Rptr. 3d 683, 691 (Ct. App. 2010) (noting lack of dispute that attorney's oral and written statements in prior judicial proceedings that gave rise to claims of malicious prosecution, abuse of process, negligence, and intentional infliction of emotional distress were protected activity under the anti-SLAPP statute); Cabral v. Martins, 177 Cal. App. 4th 471, 479-83, 99 Cal. Rptr. 3d 394, 401-04 (Ct. App. 2009) (claims arising from attorney's revision of a will, lodging of a will with the probate court, and representation of clients in probate proceedings were subject to anti-SLAPP motion); White v. Lieberman, 103 Cal. App. 4th 210, 221, 126 Cal. Rptr. 2d 608, 614-15 (Ct. App. 2002) (holding that malicious prosecution claim against attorney arising from attorney's representation of clients was subject to anti-SLAPP statute); Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 1418-20, 103 Cal. Rptr. 2d 174, 188-90 (Ct. App. 2001) (attorney's representation of clients in prior unlawful detainer action that gave rise to plaintiff's claims of defamation, misrepresentation, and intentional and negligent infliction of emotional distress against the attorney constituted protected activity).  Accordingly, Logsdon has met the threshold requirement of her special motion to strike.

1    Because Logsdon met her initial burden under the anti-SLAPP framework, the

2    burden would ordinarily shift to plaintiffs to demonstrate a probability of prevailing on the

3    merits, i.e., that their complaint is "both legally sufficient and supported by a sufficient prima

4    facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

5    credited." Kearny, 590 F.3d at 648. Here, however, plaintiffs are unable to make such a showing

6    as a matter of law because Logsdon's conduct, insofar as plaintiffs' state law claims that are

7    properly the subject of an anti-SLAPP motion are concerned, is protected by California's

8    litigation privilege. That privilege, found at California Civil Code § 47(b), provides, in part, that

9    a publication or broadcast made as part of a judicial proceeding is privileged. See also Action

10   Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241, 163 P.3d 89, 95 (Cal.

11   2007). The California Supreme Court recently summarized this litigation privilege as follows:

12          This privilege is absolute in nature, applying to all publications,
            irrespective of their maliciousness. The usual formulation is that the
13          privilege applies to any communication (1) made in judicial or
            quasi-judicial proceedings; (2) by litigants or other participants authorized
14          by law; (3) to achieve the objects of the litigation; and (4) that [has] some
            connection or logical relation to the action. The privilege is not limited to
15          statements made during a trial or other proceedings, but may extend to
            steps taken prior thereto, or afterwards.
16

17   Id. (citations and internal quotation marks omitted, modification in original). "[W]here the

18   gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily

19   related noncommunicative acts. . . ." Rusheen, 37 Cal. 4th at 1062, 128 P.3d at 722. The

20   California Supreme Court has given this privilege "a broad interpretation" in furtherance of the

21   purpose of the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of

22   access to the courts without fear of being harassed subsequently by derivative tort actions."

23   Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241, 163 P.3d at 95. Thus, although the privilege

24   was originally enacted with reference to claims of defamation, "'the privilege is now held

25   applicable to any communication, whether or not it amounts to a publication . . . , and all torts

26

1   except malicious prosecution.'"  Rusheen, 37 Cal. 4th at 1057, 128 P.3d at 718 (quoting Silberg

2   v. Anderson, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)).

3                Here, as discussed above, the allegations in the Third Amended Complaint and the

4   judicially noticeable documents reflect that plaintiffs' state law tort claims, except their battery

5   claim, alleged against Logsdon arise out of Logsdon's representation of Virginia Armstrong in

6   court proceedings.  As a result, plaintiffs cannot demonstrate that they are entitled to a favorable

7   judgment on their state law claims subject to an anti-SLAPP motion.  Accordingly, the

8   undersigned will recommend the dismissal with prejudice of all of plaintiffs' state law claims

9   against Logsdon, except plaintiffs' claim for battery, because Logsdon is absolutely immune

10   under California's litigation privilege.

11        C.      Logsdon's Motion to Dismiss for Failure to State a Claim

12                Logsdon has also filed a motion pursuant to Federal Rule of Civil Procedure

13   12(b)(6) to dismiss the claims alleged against her for failure to state a claim on which relief can

14   be granted.[11]  The motion to dismiss addresses all the claims against Logsdon except for

15   plaintiffs' slander/libel claim (claim 21).  Because the undersigned has already concluded that

16   several of these claims should be dismissed as a result of Logsdon's special motion to strike and

17   California's litigation privilege, those claims will not be addressed below.  For the reasons that

18   follow, the undersigned will additionally recommend that plaintiffs' claims premised on federal

19   law (i.e., claims 14, 15, 18, and 31) and plaintiffs' claim for breach of contract be dismissed with

20   prejudice.  However, plaintiffs' ninth claim for relief, alleging that Logsdon committed battery

21   against Christy Winters, survives Logsdon's motion to dismiss.

22   ////

23

24         [11]  Logsdon simultaneously filed a motion to dismiss for failure to state a claim and an answer to plaintiffs' Third Amended Complaint.  (Dkt. Nos. 72, 77.)  By separate order, the

25   undersigned struck Logsdon's answer subject to refiling, if necessary, after the court fully resolves the pending motions filed by Logsdon.  (Dkt. No. 123.)

26

1        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

2    challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

3    Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

4    of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

5    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

6    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

7    motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

8    to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

9    1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949

10   (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the

11   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

12   Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal,

13   129 S. Ct. at 1949).

14        The court accepts "all facts alleged as true and construes them in the light most

15   favorable to the plaintiff."  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1

16   (9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that

17   are contradicted by documents referred to in the complaint, and [the court does] not necessarily

18   assume the truth of legal conclusions merely because they are cast in the form of factual

19   allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must

20   construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a

21   plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it

22   appears at all possible that the plaintiff can correct the defect.[12]  See Lopez v. Smith, 203 F.3d

23

24        [12]  Although plaintiffs are proceeding without counsel in this action, the undersigned
     notes that plaintiff Brent Winters is alleged to be a licensed, practicing attorney.  (Third Am.
25   Compl. at 21 (referring to Brent Allan Winters as "a licensed attorney"); see also Dkt. No. 89 at
     13 (alleging damage to "Brent Allan Winters's law practice").)

26

1122, 1130-31 (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule

12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media

Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks

omitted).

### 1.   Plaintiffs' Claim for Battery Under California Law

Plaintiffs allege that Logsdon committed civil battery against plaintiff Christy

Winters.  In a section entitled "Battery," plaintiffs allege the following:

> **05/15/08**— Assault and Battery of Christy Winters.  The Winters served
> papers upon attorney Valerie Logsdon.  As they were walking down the
> steps to leave, Defendant Logsdon intentionally and voluntarily pushed
> Christy Winters's chest, forcing Christy Winters down the steps causing
> Christy to trip down the steps.

(Third Am. Compl. at 16.)

Under California law, "[t]he elements of civil battery are: (1) defendant

intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's

person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact

caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler, 171 Cal. App. 4th 516,

526-27, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); accord Tekle v. United States, 511 F.3d 839,

855 (9th Cir. 2007) (same).

Plaintiff Christy Winters has sufficiently alleged a claim for civil battery.  She

alleges that Logsdon intentionally pushed her, which, at least for pleading purposes, can be

interpreted as a harmful or offensive contact.  The allegations also suggest that the contact was

not consented to by Christy Winters and that the contact caused some injury, damage, loss or

harm to Christy Winters.  Accordingly, Logsdon's motion to dismiss will be denied insofar as

plaintiff Christy Winters is concerned.  As to the remaining plaintiffs', however, this specific

////

1    claim of battery should be dismissed with prejudice because the alleged contact relates only to a

2    single plaintiff, Christy Winters.[13]

3              Logsdon requests that the court take judicial notice of allegations contained in the

4    Second Amended Complaint that suggest that this incident occurred while plaintiffs were

5    "intruding on Ms. Logsdon's privacy and property." (Dkt. No. 72 at 20.)  Logsdon intimates that

6    these facts would support a defense of justification based on an uninvited entry onto Logsdon's

7    property. (Id. at 20-21.)  The undersigned denies Logsdon's request and will not take judicial

8    notice of the allegations in the Second Amended Complaint for the purpose of construing the

9    Third Amended Complaint because an amended complaint is complete in itself and supersedes

10   previously filed complaints.  See, e.g., Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The

11   amended complaint supersedes the original, the latter being treated thereafter as non-existent.");

12   see also Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (describing as

13   "well-established" the "doctrine that an amended pleading supersedes the original pleading").  As

14   pled in the Third Amended Complaint, plaintiff Christy Winters' claim for battery survives a

15   motion to dismiss for failure to state a claim.

16              2.   Plaintiffs' Claim for Breach of Contract Under California Law

17             Plaintiffs also allege a claim for breach of contract against Logsdon.  This claim

18   alleges that Virginia Armstrong improperly transferred the property at 11318 Via Vista in

19   Nevada City, California, out of an existing trust and into the Virginia Armstrong Living Trust

20   based on "false advice" provided by Logsdon, Virginia Armstrong's estate planning attorney.

21   (Third Am. Compl. at 22.)  The undersigned agrees with Logsdon that although this claim is

22   entitled "Breach of Contract," it is more accurately a claim for legal malpractice.  The claim

23   ////

24   _____

25          [13]  Plaintiffs have alleged other battery claims against numerous defendants in connection
       with incidents other than the incident involving Logsdon and Christy Winters.  Those claims of
       battery as to other defendants are not at issue here.

26

                                               13

1   arises from legal advice allegedly provided by Logsdon to Virginia Armstrong, and the complaint

2   does not allege the existence of any contractual obligation between Logsdon and plaintiffs.[14]

3          Under California law, the elements of a legal malpractice claim are: "(1) the duty

4   of the attorney to use such skill, prudence, and diligence as members of his or her profession

5   commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

6   between the breach and the resulting injury; and (4) actual loss or damage resulting from the

7   attorney's negligence."  Wilkinson v. Zelen, 167 Cal. App. 4th 37, 46, 83 Cal. Rptr. 3d 779, 785

8   (Ct. App. 2008) (citing Budd v. Nixen, 6 Cal. 3d 195, 200, 491 P.2d 433 (1971)).  Logsdon

9   argues that plaintiffs' claims should be dismissed with prejudice because plaintiffs cannot

10  establish that Logsdon owed a duty to them, either as parties to an attorney-client relationship or

11  as intended third-party beneficiaries (Dkt. No. 72 at 11-15).  See, e.g., Goldberg v. Frye, 217 Cal.

12  App. 3d 1258, 1267, 266 Cal. Rptr. 483, 488 (Ct. App. 1990) ("A key element of any action for

13  professional malpractice is the establishment of a duty by the professional to the claimant.

14  Absent duty there can be no breach and no negligence.").  Whether an attorney sued for

15  malpractice owes a duty to a particular plaintiff is a question of law.  See, e.g., Martorana v.

16  Marlin & Saltzman, 175 Cal. App. 4th 685, 693, 96 Cal. Rptr. 3d 172, 178 (Ct. App. 2009)

17  (citing Goodman v. Kennedy, 18 Cal. 3d 335, 342, 556 P.2d 737 (1976)).

18         The California Supreme Court has stated that "[t]o be sure, an attorney will

19  normally be held liable for malpractice only to the client with whom the attorney stands in privity

20  of contract, and not to third parties."  Borissoff v. Taylor & Faust, 33 Cal. 4th 523, 529, 93 P.3d

21

22         [14]  To the extent that plaintiffs would argue that they are pursuing a breach of contract
    claim, they have failed to state a claim on which relief can be granted.  Under California law,
23  "[t]he standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's
    performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff
24  therefrom."  See, e.g., Abdelhamid v. Fire Ins. Exch., 182 Cal. App. 4th 990, 999, 106 Cal. Rptr.
    3d 26, 32-33 (Ct. App. 2010) (citations and quotation marks omitted).  Plaintiffs have alleged
25  none of these elements and, given the number of opportunities plaintiffs have been given to
    amend their complaint, the undersigned concludes that plaintiffs would be unable to amend their
26  pleading to state a cognizable claim for breach of contract.

1  337, 340 (2004).  Generally, where a fiduciary hires an attorney to provide advice regarding trust

2  administration, neither the trust nor the beneficiaries are considered to be the attorney's clients

3  for the purpose of establishing the existence of a duty.  Id.

4         Here, none of the plaintiffs is alleged to be Logsdon's client or in privity of

5  contract with Logsdon.  To the contrary, plaintiffs repeatedly allege that Logsdon is Virginia

6  Armstrong's attorney, not theirs.  (See, e.g., Third Am. Compl. at 22.)  Accordingly, Logsdon

7  owed no duty to plaintiffs insofar as a privity of contract theory is concerned.

8         Additionally, a liberal reading of plaintiffs' pleadings indicates that only plaintiff

9  Susan Winters is alleged to a beneficiary of any trust at issue in this case and, accordingly, no

10  duty could run to the remaining plaintiffs.  (See, Third Am. Compl. at 22.)  Thus, claims of legal

11  malpractice by plaintiffs other than Susan Winters fail and should be dismissed.

12         As to Susan Winters, and assuming she is a trust beneficiary, California courts

13  have held that beneficiaries of trusts and estates may not sue an attorney for legal malpractice as

14  a result of advice provided by the attorney regarding administration of the trust or estate unless

15  those beneficiaries are intended third-party beneficiaries.  See, e.g., Saks v. Damon Raike & Co.,

16  7 Cal. App. 4th 419, 430-31, 8 Cal. Rptr. 2d 869, 877 (Ct. App. 1992) (holding that beneficiaries

17  of a testamentary trust could not sue attorney and real estate broker for negligence related to

18  advice provided to the trustee that caused damage to the trust); Goldberg, 217 Cal. App. 3d at

19  1267-69, 266 Cal. Rptr. at 488-89 (holding that legatees under a will were not intended third

20  party beneficiaries to whom an attorney for the administrator of the estate owed a duty for the

21  purposes of a legal malpractice claim); see also Moore v. Anderson Zeigler Disharoon Gallagher

22  & Gray, 109 Cal. App. 4th 1287, 1307, 135 Cal. Rptr. 2d 888, 902 (Ct. App. 2003) (holding that

23  an attorney does not owe beneficiaries under a will a duty to evaluate and ascertain the

24  testamentary capacity of a client seeking to amend a will or to make a new will, or to preserve

25  ////

26

1    evidence of that evaluation).[15]  Nothing in the Third Amended Complaint suggests that Susan

2    Winters was an intended third-party beneficiary under California law.

3              Under certain circumstances, an intended third-party beneficiary of a contract to

4    provide legal services who is expressly named in the legal services contract may be owed a duty

5    by an attorney.  See, e.g., Borissoff, 33 Cal. 4th at 530, 93 P.3d at 341; see also Bily v. Arthur

6    Young & Co., 3 Cal. 4th 370, 406 n.16, 834 P.2d 745, 767 n.16 (1992) ("It is possible the audit

7    engagement contract might expressly identify a particular third party or parties so as to make

8    them express third party beneficiaries of the contract. Third party beneficiaries may under

9    appropriate circumstances possess the rights of parties to the contract."); B.L.M. v. Sabo &

10   Dietsch, 55 Cal. App. 4th 823, 831-32, 64 Cal. Rptr. 2d 335, 340 (applying the principle from

11   Bily to a legal malpractice claim).  However, there is no indication in the Third Amended

12   Complaint or plaintiffs' written opposition to Logsdon's motion that plaintiffs were intended

13   third-party beneficiaries named in a contract between Virginia Armstrong and Logsdon for the

14   provision of legal services.

15             Based on the foregoing, the undersigned will recommend that plaintiffs' breach of

16   contract claim alleged against Logsdon, which the court construes as claim for legal malpractice,

17   be dismissed with prejudice.

18   ////

19   ////

20

21             [15]  There is some authority under California law that an intended beneficiary of a trust
22   may potentially sue an attorney for malpractice where that intended beneficiary is expressly
     named in the trust instrument and the express bequest in that beneficiary's favor fails as a result
23   of the attorney's negligence in drafting or executing the instrument.  See Chang v. Lederman,
     172 Cal. App. 4th 67, 82, 90 Cal. Rptr. 3d 758, 770 (Ct. App. 2009).  However, the court in
24   Chang held that "where there is a question about whether the third-party beneficiary was, in fact,
     the decedent's intended beneficiary—where intent is placed in issue—the lawyer will not be held
25   accountable to the potential beneficiary." Id. at 82-83, 90 Cal. Rptr. 3d at 770-71.  Based on the
     allegation in the Third Amended Complaint, Susan Winters is akin to the disappointed potential
26   beneficiary in Chang.

1          3.      <u>Plaintiffs' Section 1983 Claims Against Logsdon</u>

2          Plaintiffs have also sued "All Defendants" for violation of 42 U.S.C. § 1983

3 (claim 14), for a conspiracy to violate 42 U.S.C. § 1983 (claim 15), and for "civil conspiracy,"

4 which appears to be an additional claim alleging a conspiracy in violation of Section 1983.  (<u>See</u>

5 Third Am. Compl. at 19-20.)  Logsdon, a lawyer in private practice, moves to dismiss these

6 claims for failure to state a claim on the grounds that: (1) plaintiffs have not alleged that Logsdon

7 participated in any act that deprived plaintiffs of their constitutional rights, (2) plaintiffs have

8 alleged no specific facts that Logsdon acted under the color of law, and (3) plaintiffs' allegations

9 regarding violations of Section 1983 and a conspiracy are conclusory.  Logsdon's arguments are

10 well-taken.

11          "Section 1983 imposes civil liability upon an individual who 'under color [of state

12 law]... subjects or causes to be subjected, any citizen of the United States...to the deprivation of

13 any rights, privileges or immunities secured by the Constitution and laws.'"  <u>Franklin v. Fox</u>,

14 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. § 1983).  "To state a claim under § 1983, a

15 plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

16 the United States was violated, and (2) that the alleged violation was committed by a person

17 acting under the color of State law."  <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th

18 Cir. 2006) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)); <u>accord</u> <u>Nurre v. Whitehead</u>, 580 F.3d

19 1087, 1092 (9th Cir. 2009).  Conclusory allegations of a violation of Section 1983 or a

20 conspiracy to violate Section 1983 will not survive a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Simmons v.</u>

21 <u>Sacramento County Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of

22 plaintiff's second amended complaint as a result of plaintiff's "conclusory allegations" of a

23 conspiracy to deprive him of his constitutional rights in violation of Section 1983).

24          Plaintiffs' allegations in support of their Section 1983 claims are conclusory and,

25 on this basis alone, claims 14, 15 and 18 should be dismissed as to Logsdon.  For example,

26

plaintiffs do not allege which of their specific constitutional rights were violated.  Nevertheless, the undersigned will address additional grounds why plaintiffs' claims fail as alleged against Logsdon.

As to claim 14, alleging that all defendants, including Logsdon, individually violated plaintiffs' constitutional rights, plaintiffs allege:

> Paragraphs above incorporated by reference.  Defendants, by their actions and acting under the color of law, subjected Plaintiffs, and caused Plaintiffs to be subjected, to the deprivations of their rights, privileges, and immunities secured by the Constitution and laws of the State of California and of the United States of America, Plaintiffs claim damages under 42 U.S.C. § 1983 for their injuries set forth above.

(Third Am. Compl. at 19.)[16]  In addition to the conclusory nature of plaintiffs' allegations, any claim by plaintiffs that Logsdon, as an individual, violated plaintiffs' rights fails because Logsdon is a private actor and thus was not acting under color of state law.  See, e.g., Simmons, 318 F.3d at 1161 (holding that, under settled law, "Plaintiff cannot sue Mirante's counsel under § 1983, because he is a lawyer in private practice who was not acting under color of state law"); accord Briley v. California, 564 F.2d 849, 855 (9th Cir. 1977) ("We have repeatedly held that a privately-retained attorney does not act under color of state law for purposes of actions brought under the Civil Rights Act."); cf., Miranda v. Clark County, Nev., 319 F.3d 465, 468 (9th Cir. 2003) (holding that a public defender was not a state actor within the meaning of 42 U.S.C. § 1983) (citing Polk County v. Dodson, 454 U.S. 312, 324-25 (1981)).  Regarding Logsdon's individual conduct relative to plaintiffs, plaintiffs allege that Logsdon pursued an unlawful detainer action in state court as an attorney retained by Virginia Armstrong, filed a declaration or other papers in another proceeding in state court, and provided estate planning advice to Virginia

////

---

[16]  Although plaintiffs incorporate the remainder of their complaint by reference, the rest of the Third Amended Complaint and plaintiffs' opposition to Logsdon's motion do not suggest exactly how Logsdon individually violated plaintiffs' civil rights.

1   Armstrong.  These are the acts of an attorney in private practice, not a state actor.  Accordingly,

2   plaintiffs' fourteenth claim should be dismissed with prejudice as to Logsdon.

3           Plaintiffs' Section 1983 conspiracy claims, claims 15 and 18, are also fatally

4   flawed.  In their fifteenth claim, plaintiffs allege that "Defendants Logsdon, Michael Armstrong,

5   Jordan, Wade, Harpainter, and Ford worked in concert with Defendants from the Nevada County

6   Superior Court, Sheriff's Department, Adult Protective Services, and other agencies."  (Third

7   Am. Compl. at 20.)  They allege that a state court judge entered a restraining order "on his own

8   motion."  (Id.)  Additionally, plaintiffs allege that defendants Logsdon and Harpainter "worked in

9   concert with" with defendants Chelsey and Frooman.  (Id.)  Elsewhere in the Third Amended

10   Complaint, defendant Harpainter is alleged to have been an attorney that the Nevada County

11   Superior Court appointed for Virginia Armstrong in connection with certain restraining order

12   proceedings before that court.  (Id. at 7.)  Defendants Chelsey and Frooman are alleged to be

13   Assistant United States Attorneys in Illinois who were prosecuting plaintiff Brent Winters, an

14   attorney, on criminal charges and wrote a letter to Logsdon offering assistance with the unlawful

15   detainer action.  (Id. at 6, 24.)  Plaintiffs' eighteenth claim is largely redundant of the fifteenth

16   claim, at least as it relates to allegations against Logsdon.

17           "A private individual may be liable under § 1983 if she conspired or entered joint

18   action with a state actor."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); see also Kirtley v.

19   Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) ("While generally not applicable to private parties, a

20   § 1983 action can lie against a private party when he is a willful participant in joint action with

21   the State or its agents" (citation and quotation marks omitted).).  "To establish liability for a

22   conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or

23   meeting of the minds" to violate constitutional rights."  Crowe v. County of San Diego, 593 F.3d

24   841, 875 (9th Cir. 2010) (citation and quotation marks omitted).  Although the Supreme Court

25   has articulated several alternative tests for determining whether a private individual's actions

26

amount to state action, Franklin, 312 F.3d at 445, the "joint action" test is relevant here.  The

joint action test applies where, as here, state officials and private parties are alleged to have acted

in concert to effectuate a particular deprivation of constitutional rights and "focuses on whether

the state has so far insinuated itself into a position of interdependence with the private actor that

it must be recognized as a joint participant in the challenged activity."  Id. (citation, quotation

marks, and modifications omitted).  "The plaintiff must show 'an agreement or meeting of the

minds to violate constitutional rights,' and '[t]o be liable, each participant in the conspiracy need

not know the exact details of the plan, but each participant must at least share the common

objective of the conspiracy.'"  Crowe, 593 F.3d at 875 (quoting Franklin, 312 F.3d at 441).

As an initial matter, it bears repeating that plaintiffs' allegations regarding a

conspiracy between state actors and private actors are vague and conclusory and, for that reason

alone, cannot survive the motion to dismiss.  See Simmons, 318 F.3d at 1161 ("Plaintiff's

conclusory allegations that the lawyer was conspiring with state officers to deprive him of due

process are insufficient."); Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000)

(stating that "a bare allegation of . . . joint action will not overcome a motion to dismiss" (citation

and quotation marks omitted)); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) (stating

that "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a

claim under the Civil Rights Act" (citation and quotation marks omitted, modifications in

original).).  It also bears repeating that plaintiffs have not alleged which of their constitutional

rights has been violated.

Plaintiffs have not alleged facts constituting a plausible claim of a conspiracy

between Logsdon and state actors to deprive them of their constitutional rights.  Although,

plaintiffs vaguely allege that Logsdon conspired with others, the allegations in the Third

Amended Complaint indicate a lack of interdependence between state and private actors.  As far

as the unlawful detainer action is concerned, plaintiffs only allege that Assistant United States

1  Attorneys Frooman and Chelsey offered aid to Logsdon.  An offer of assistance does not suggest

2  the level of interdependence that will support a Section 1983 conspiracy under a joint action

3  theory.  In terms of joint action related to the entry of certain restraining orders, plaintiffs allege

4  joint action, but also that Judge Anderson of the Nevada County Superior Court acted on his

5  "own motion."  None of plaintiffs' allegations suggest a common goal of depriving plaintiffs of

6  their rights, or any interdependence among the alleged members of the conspiracy.  Taken

7  together with the conclusory and vague allegations in the Third Amended Complaint, plaintiffs'

8  conspiracy claims alleged against Logsdon should be dismissed with prejudice.

9                    4.    Plaintiffs' RICO conspiracy claim

10          Finally, Logsdon moves to dismiss plaintiffs' thirty-first claim for relief, which

11  alleges that "All Defendants"—over sixty defendants including private actors, state court judges

12  and employees, law enforcement, and local agencies—conspired to commit racketeering activity

13  in violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am. Compl. at

14  24.)  Plaintiffs allege all defendants in this case conspired to "maintain a federal prosecution

15  against Plaintiff Brent Winters in Illinois."  (Id.)  They further allege that on July 9, 2002,

16  defendant Jan Paul Miller agreed with an individual named Michael McCuskey and defendant

17  Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters on false

18  charges" knowing that the presiding judge was biased.  (Id.)  They also allege that "Agent

19  Pogue," who is not a defendant here, contributed to the conspiracy by testifying based on

20  "conjecture" at Brent Winters' sentencing hearing.  (Id.)  In addition, they vaguely allege an

21  undefined "pattern of misrepresentation" intended to "defraud the Winters of their rights and

22  their property."  (Id.)  Moreover, plaintiffs allege the "concealment of critical data," including a

23  memorandum drafted by Judge Anderson of the Nevada County Superior Court.  (Id.)  Plaintiffs

24  do not allege any specific facts with respect to Logsdon.

25  ////

26

1       "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

2  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

3  (5) causing injury to plaintiff's 'business or property.'" Living Designs, Inc., E.I. Dupont de

4  Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted). "To

5  state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least

6  two predicate acts." Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations

7  omitted). Furthermore, a plaintiff must also show that the injury to his business or property was

8  proximately caused by the prohibited conduct and that he has suffered a concrete financial loss.

9  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083, 1086 (9th Cir. 2002).

10       Plaintiffs' RICO conspiracy claim should be dismissed for several reasons. First,

11  the allegations are of such a vague and conclusory nature such that they do not state a plausible

12  claim for relief under the RICO statute. Second, plaintiffs have not pled two predicate acts of

13  "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1). Third, plaintiffs have not

14  alleged a "concrete financial loss" or injury to business or property proximately caused by the

15  conspiracy. At most, plaintiffs' opposition to Logsdon's motion to dismiss alleges that the

16  purported RICO conspiracy damaged plaintiff Brent Winters' law practice, but provides no

17  information about the nature of the injury or a concrete financial loss. Nothing contained in

18  plaintiffs' Third Amended Complaint or opposition brief suggests that they can amend their

19  pleading to state a plausible claim for relief. Accordingly, plaintiffs' thirty-first claim for relief

20  should be dismissed with prejudice.

21  IV.   CONCLUSION

22       For the foregoing reasons, IT IS HEREBY ORDERED that defendant Valerie

23  Logsdon's requests for judicial notice, except as otherwise noted above, are granted.

24       Furthermore, it is HEREBY RECOMMENDED that all claims alleged against

25  defendant Valerie Logsdon, except for the ninth claim for relief for civil battery as alleged by

26

1   plaintiff Christy Winters only, be dismissed with prejudice.  The battery claim may proceed

2   against Logsdon, but only with respect to plaintiff Christy Winters.

3          These findings and recommendations are submitted to the United States District

4   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5   days after being served with these findings and recommendations, any party may file written

6   objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

7   document should be captioned "Objections to Magistrate Judge's Findings and

8   Recommendations."  Any response to the objections shall be filed with the court and served on

9   all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

10  objections within the specified time may waive the right to appeal the District Court's order.

11  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

12  (9th Cir. 1991).

13         IT IS SO ORDERED AND RECOMMENDED.

14  DATED:  July 19, 2010

15

16

17  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

23