1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLEN WINTERS, et al.,

11            Plaintiffs,              No. 2:09-cv-00522 JAM KJN PS

12        v.                          FINDINGS AND RECOMMENDATIONS

13   DELORES JORDAN, et al.,

14            Defendants.

15   _____/

16            Presently before the court is defendant Michael Armstrong's ("Michael

17   Armstrong") motion to dismiss plaintiffs' Third Amended Complaint pursuant to Federal Rule of

18   Civil Procedure 12(b)(6).  (See Dkt. No. 82, 85.)  The court submitted this matter without oral

19   argument.[1]  (Dkt. No. 102.)  The undersigned has fully considered the parties' briefs and the

20   record in this case and, for the reasons that follow, will recommend that: (1) Michael

21   Armstrong's motion be granted, and (2) all of plaintiffs' claims alleged against Michael

22   Armstrong be dismissed with prejudice.

23   ////

24

25        [1]  This action proceeds before this court pursuant to Eastern District of California Local
     Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9,
26   2010 (Dkt. No. 105).

I.    BACKGROUND[2]

Plaintiffs' operative complaint, the Third Amended Complaint,[3] is a wide-ranging, 25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants. (Dkt. No. 66.)  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the requirement that the pleading contain a short and plain statement of the claims alleged instead of recounting all of the evidence and arguments in support of those claims.  (Dkt. No. 56 at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to comply."  (Id.)

The allegations in the Third Amended Complaint that are specific to Michael Armstrong are few.  More generally, the claims against Michael Armstrong arise out of an underlying internecine family dispute between the Winters family and defendant Virginia Armstrong.  The Third Amended Complaint alleges that in or around the year 2002, plaintiff Susan Winters' elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in Illinois and move to Nevada City, California, to live with the Armstrongs.  (Third Am. Compl. at 4.)  Plaintiffs allege that before plaintiffs returned to California, Joe Armstrong passed away and that Virginia Armstrong eventually transferred

---

[2]  In an order dated September 24, 2009, the court ordered that all references to the minor plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint because those minors were not represented by an attorney or attorneys.  (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)

[3]  Plaintiffs filed the operative complaint under the title "Amended Complaint," notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt. No. 66 with Dkt No. 56 at 4.)  The Third Amended Complaint supersedes plaintiffs' "Second Amended Complaint."  (Dkt. No. 15.)  As the court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt. No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second amendment of the original complaint.

1  properties, including the residence at 11318 Via Vista in Nevada City, California, from the

2  Armstrong Living Trust dated July 29, 1994, to the Virginia Armstrong Living Trust.  (Id.)

3  Plaintiffs allege that Virginia Armstrong took these actions due, in part, to the undue influence of

4  defendants Valerie Logsdon, who was Virginia Armstrong's attorney, and Michael Armstrong,

5  Virginia Armstrong's son, who is an attorney.  (Id.)

6          The relationship between Virginia Armstrong and plaintiffs resulted in several

7  proceedings in the Nevada County Superior Court.  Relevant here, Logsdon, acting as Virginia

8  Armstrong's attorney, filed an unlawful detainer action on her client's behalf seeking to evict

9  members of the Winters family from Ms. Armstrong's home.  (Third Am. Compl. at 5; Req. for

10  Judicial Notice, Ex. 1, Dkt. No. 75.)  In connection with the unlawful detainer action, and

11  relevant to claims alleged against Michael Armstrong, plaintiffs allege that an Assistant United

12  States Attorney from Illinois wrote a letter to defendant Logsdon "offering any aid to help her

13  evict the Winters from their home in Nevada City, California."  (Third Am. Compl. at 6, 21.)

14  Plaintiffs further allege that Michael Armstrong caused declarations or other documents to be

15  filed in connection with the issuance of a restraining order, which was favorable to plaintiff

16  Susan Winters, by a judge of the Nevada County Superior Court.  (Id. at 6.)

17          Plaintiffs' Third Amended Complaint alleges the following claims against

18  Michael Armstrong: abuse of process (claim 6); trespass to chattels (claim 13); violation of 42

19  U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil

20  conspiracy (claim 18); "Slander, Libel, and Slander & Libel Per Se" (claim 21); conspiracy to

21  violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(d)

22  (claim 31); loss of consortium (claim 36); and intentional infliction of emotional distress (claim

23  38).  In response to the filing of the Third Amended Complaint, Michael Armstrong filed a

24  motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. Nos. 82, 85.)

25  ////

26

1    There are several, separately-filed motions pending before the court.  Despite the

2 court's previous order that plaintiffs file a separate opposition to each pending motion (Dkt.

3 No. 89 at 6), plaintiffs filed a consolidated opposition.  (See Dkt. No. 99.)  Plaintiffs filed their

4 opposition on January 13, 2010, despite a court-ordered deadline of January 6, 2010.

5 (Compare Dkt. Nos. 89 with 99.)  Although plaintiffs' opposition was untimely and need not be

6 considered, the undersigned has considered that opposition in arriving at the findings and

7 recommendations that follow.

8    II.    LEGAL STANDARDS

9    A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

10 challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

11 Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

12 of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

13 plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

14 also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

15 motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

16 to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

17 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949

18 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the

19 court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

20 Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal,

21 129 S. Ct. at 1949).

22    The court accepts "all facts alleged as true and construes them in the light most

23 favorable to the plaintiff."  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1

24 (9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that

25 are contradicted by documents referred to in the complaint, and [the court does] not necessarily

26

1    assume the truth of legal conclusions merely because they are cast in the form of factual

2    allegations." <u>Paulsen</u>, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must

3    construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a

4    plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it

5    appears at all possible that the plaintiff can correct the defect.[4]  <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d

6    1122, 1130-31 (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule

7    12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

8    attached to the complaint, and matters properly subject to judicial notice." <u>Outdoor Media</u>

9    <u>Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks

10   omitted).

11   III.    <u>DISCUSSION</u>

12          A.    <u>Plaintiffs' Section 1983 Claims Against Michael Armstrong</u>

13          Plaintiffs sued "All Defendants" for violation of 42 U.S.C. § 1983 (claim 14), for

14   engaging in a conspiracy to violate 42 U.S.C. § 1983 (claim 15), and for "civil conspiracy,"

15   which appears to be an additional claim alleging a conspiracy to violate Section 1983.  (<u>See</u>

16   Third Am. Compl. at 19-20.)  Michael Armstrong moves to dismiss these claims for failure to

17   state a claim on the grounds that: (1) plaintiffs have not alleged that he participated in any act that

18   deprived plaintiffs of their constitutional or statutory rights, and (2) plaintiffs have alleged no

19   specific facts that he acted under the color of law.  His arguments, although tersely stated, are

20   persuasive.

21          "Section 1983 imposes civil liability upon an individual who 'under color [of state

22   law]... subjects or causes to be subjected, any citizen of the United States...to the deprivation of

23

24        [4] Although plaintiffs are proceeding without counsel in this action, the undersigned notes
     that plaintiff Brent Winters is alleged to be a licensed, practicing attorney.  (Third Am. Compl. at
25   21 (referring to Brent Allan Winters as "a licensed attorney"); <u>see also</u> Dkt. No. 89 at 13
     (alleging damage to "Brent Allan Winters's law practice")).)

26

1   any rights, privileges or immunities secured by the Constitution and laws.'" <u>Franklin v. Fox</u>,

2   312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C. § 1983).  "To state a claim under § 1983, a

3   plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

4   the United States was violated, and (2) that the alleged violation was committed by a person

5   acting under the color of State law." <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th

6   Cir. 2006) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)); <u>accord</u> <u>Nurre v. Whitehead</u>, 580 F.3d

7   1087, 1092 (9th Cir. 2009).  Conclusory allegations of a violation of Section 1983 or a

8   conspiracy to violate Section 1983 will not survive a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Simmons v.</u>

9   <u>Sacramento County Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of

10  plaintiff's second amended complaint as a result of plaintiff's "conclusory allegations" of a

11  conspiracy to deprive him of his constitutional rights in violation of Section 1983).

12          Plaintiffs' allegations in support of their Section 1983 claims are conclusory and,

13  on this basis alone, claims 14, 15 and 18 should be dismissed as to Michael Armstrong.  For

14  example, plaintiffs do not allege which of their specific constitutional rights were violated and

15  how specifically Michael Armstrong participated in such a violation.  Nevertheless, the

16  undersigned will address additional grounds why plaintiffs' claims fail as alleged against Michael

17  Armstrong.

18          As to claim 14, alleging that all defendants, including Michael Armstrong,

19  individually violated plaintiffs' constitutional rights, plaintiffs allege:

20              Paragraphs above incorporated by reference.  Defendants, by their actions
                and acting under the color of law, subjected Plaintiffs, and caused
21              Plaintiffs to be subjected, to the deprivations of their rights, privileges, and
                immunities secured by the Constitution and laws of the State of California
22              and of the United States of America, Plaintiffs claim damages under 42
                U.S.C. § 1983 for their injuries set forth above.

23

24  ////

25  ////

26

1   (Third Am. Compl. at 19.)[5]  In addition to the conclusory nature of plaintiffs' allegations, their

2   claim that Michael Armstrong, as an individual, violated plaintiffs' rights fails because plaintiffs

3   have not alleged any constitutional right that was purportedly violated.  Moreover, dismissal is

4   warranted because Michael Armstrong is a private actor and thus was not acting under color of

5   state law.  "To determine whether a private actor acts under color of state law, [the court] must

6   evaluate whether the alleged infringement of federal rights is 'fairly attributable' to the

7   government even though committed by private actors."  Florer v. Congregation Pidyon

8   Shevuyim, 603 F.3d 1118, 1122 (9th Cir. 2010) (citation omitted) (stating, in addition, that

9   "[t]here must be such a close nexus between the State and the challenged action that seemingly

10  private behavior may be fairly treated as that of the State itself" (citation and quotation marks

11  omitted)).  Nothing in the Third Amended Complaint or plaintiffs' written opposition suggests as

12  much.  Insofar as his individual acts are concerned, Michael Armstrong is alleged to have unduly

13  influenced his mother, Virginia Armstrong, to transfer certain trust assets from one trust to

14  another.  (Third. Am. Compl. at 4.)  This is the act of a private individual, not a state actor.

15  Accordingly, plaintiffs' fourteenth claim should be dismissed with prejudice as to Michael

16  Armstrong.

17          Plaintiffs' Section 1983 conspiracy claims, claims 15 and 18, are also fatally

18  flawed.  In their fifteenth claim, plaintiffs allege that "Defendants Logsdon, Michael Armstrong,

19  Jordan, Wade, Harpainter and Ford worked in concert with Defendants from the Nevada County

20  Superior Court, Sheriff's Department, Adult Protective Services, and other agencies."  (Third

21  Am. Compl. at 20.)  However, they also allege that a state court judge entered a restraining order

22  "on his own motion."  (Id.)  Additionally, plaintiffs allege that defendants Logsdon and

23  Harpainter "worked in concert with" with defendants Chelsey and Frooman.  (Id.)  Elsewhere in

24  ───────────────

25          [5]  Although plaintiffs incorporate the remainder of their complaint by reference, the rest
    of the Third Amended Complaint and plaintiffs' opposition to the pending motion do not suggest
    exactly how Michael Armstrong individually violated plaintiffs' civil rights.

26

1   the Third Amended Complaint, defendant Harpainter is alleged to have been an attorney that the

2   Nevada County Superior Court appointed for Virginia Armstrong in connection with certain

3   restraining order proceedings before that court.  (Id. at 7.)  Defendants Chelsey and Frooman are

4   alleged to be Assistant United States Attorneys in Illinois who were prosecuting plaintiff Brent

5   Winters, an attorney, on criminal charges and wrote a letter to defendant Logsdon offering

6   assistance with the unlawful detainer action.  (Id. at 6, 24.)  Plaintiffs' eighteenth claim is largely

7   redundant of the fifteenth claim, at least as it relates to allegations against Michael Armstrong.

8              "A private individual may be liable under § 1983 if [he] conspired or entered joint

9   action with a state actor."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); see also Kirtley v.

10  Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) ("While generally not applicable to private parties, a

11  § 1983 action can lie against a private party when he is a willful participant in joint action with

12  the State or its agents" (citation and quotation marks omitted).).  "To establish liability for a

13  conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or

14  meeting of the minds" to violate constitutional rights."  Crowe v. County of San Diego, 593 F.3d

15  841, 875 (9th Cir. 2010) (citation and quotation marks omitted).  Although the Supreme Court

16  has articulated several alternative tests for determining whether a private individual's actions

17  amount to state action, Franklin, 312 F.3d at 445, the "joint action" test is relevant here.  The

18  joint action test applies where, as here, state officials and private parties are alleged to have acted

19  in concert to effectuate a particular deprivation of constitutional rights and "focuses on whether

20  the state has so far insinuated itself into a position of interdependence with the private actor that

21  it must be recognized as a joint participant in the challenged activity."  Id. (citation, quotation

22  marks, and modifications omitted).  "The plaintiff must show 'an agreement or meeting of the

23  minds to violate constitutional rights,' and '[t]o be liable, each participant in the conspiracy need

24  not know the exact details of the plan, but each participant must at least share the common

25  objective of the conspiracy.'"  Crowe, 593 F.3d at 875 (quoting Franklin, 312 F.3d at 441).

26

As an initial matter, it bears repeating that plaintiffs' allegations regarding a conspiracy between state actors and private actors are vague and conclusory and, for that reason alone, cannot survive the motion to dismiss.  See Simmons, 318 F.3d at 1161 ("Plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient."); Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (stating that "a bare allegation of . . . joint action will not overcome a motion to dismiss" (citation and quotation marks omitted)); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) (stating that "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act" (citation and quotation marks omitted, modifications in original).).  It also bears repeating that plaintiffs have not alleged which of their constitutional rights has been violated.

Plaintiffs have not alleged facts constituting a plausible claim of a conspiracy between Michael Armstrong and state actors to deprive them of their constitutional rights. Although, plaintiffs vaguely allege that Michael Armstrong conspired with others, the allegations in the Third Amended Complaint indicate a lack of interdependence between state and private actors.  As far as the unlawful detainer action is concerned, plaintiffs only allege that Assistant United States Attorneys Frooman and Chelsey offered aid to defendant Logsdon.  An offer of assistance does not suggest the level of interdependence that will support a Section 1983 conspiracy under a joint action theory.  In terms of joint action related to the entry of certain restraining orders, plaintiffs allege joint action, but also allege that Judge Anderson of the Nevada County Superior Court acted on his "own motion."  None of plaintiffs allegations suggest a common goal of depriving plaintiffs of their rights, or any interdependence among the alleged members of the conspiracy.  Taken together with the conclusory and vague allegations in the Third Amended Complaint, plaintiffs' conspiracy claims alleged against Michael Armstrong should be dismissed.

1          B.      Plaintiffs' RICO Conspiracy Claim

2          Michael Armstrong also moves to dismiss plaintiffs' thirty-first claim for relief,

3   which alleges that "All Defendants"—over sixty defendants including private actors, state court

4   judges and employees, law enforcement, and local agencies—conspired to commit racketeering

5   activity in violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am.

6   Compl. at 24.)  Plaintiffs allege that all defendants in this case conspired to "maintain a federal

7   prosecution against Plaintiff Brent Winters in Illinois."  (Id.)  They further allege that on July 9,

8   2002, defendant Jan Paul Miller agreed with an individual named Michael McCuskey and

9   defendant Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters

10  on false charges" knowing that the presiding judge was biased.  (Id.)  They also allege that

11  "Agent Pogue," who is not a defendant here, contributed to the conspiracy by testifying based on

12  "conjecture" at Brent Winters's sentencing hearing.  (Id.)  In addition, they vaguely allege an

13  undefined "pattern of misrepresentation" intended to "defraud the Winters of their rights and

14  their property."  (Id.)  Moreover, plaintiffs allege the "concealment of critical data," including a

15  memorandum drafted by Judge Anderson of the Nevada County Superior Court.  (Id.)  Plaintiffs

16  do not allege any specific facts with respect to Michael Armstrong.

17          "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

18  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

19  (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

20  Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted).  "To

21  state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least

22  two predicate acts."  Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations

23  omitted).  Furthermore, a plaintiff must also show that the injury to his business or property was

24  proximately caused by the prohibited conduct and that he has suffered a concrete financial loss.

25  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083, 1086 (9th Cir. 2002).

26

1    Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

2    the allegations are of such a vague and conclusory nature that they do not state a plausible claim

3    for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

4    "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

5    alleged a "concrete financial loss" or injury to business or property proximately caused by the

6    conspiracy.  At most, plaintiffs' opposition to Michael Armstrong's motion to dismiss alleges

7    that the purported RICO conspiracy damaged plaintiff Brent Winters's law practice, but provides

8    no information about the nature of the injury or a concrete financial loss.  Nothing contained in

9    plaintiffs' Third Amended Complaint or opposition brief suggests that they can amend their

10   pleading to state a plausible claim for relief.  Accordingly, plaintiffs' thirty-first claim for relief

11   should be dismissed with prejudice.

12       C.    Plaintiffs' State Law Claims for Abuse of Process and Slander/Libel

13       Plaintiffs allege that Michael Armstrong, defendant Logsdon, and several

14   defendants employed in the clerk's office of the Nevada County Superior Court "abused process

15   of the court," by "improperly and with malice causing false allegations to be filed in Nevada

16   County (case file #73025 *Winters v. Jordan*) against Plaintiffs."[6]  (Third Am. Compl. at 13.)  In

17   essence, plaintiffs allege that Michael Armstrong and others, who were not parties to a case

18   pending in the Nevada County Superior Court, interfered with that case by filing "declarations

19   and pleadings" in order to paint plaintiffs in a bad light.  (See id.)  In addition, plaintiffs allege in

20   their twenty-first claim for relief that Michael Armstrong, among others, committed "Slander,

21   ////

22

23       [6] As alleged in the Third Amended Complaint, this action in Nevada County Superior
     Court involved plaintiffs Brent and Susan Winters' application for a restraining order against

24   defendant Delores Jordan, a friend of defendant Virginia Armstrong.  Jordan is alleged to have
     trespassed on the residence at 11318 Via Vista, which is part of the trust property for which

25   Michael Armstrong is trustee, and paid to have the locks on the doors changed in order to keep
     the Winters' family members away from Virginia Armstrong.  (See Third Am. Compl. at 5-6.)

26

1  Libel, Slander & Libel Per Se" through "false accusations, both spoken and written to the court."

2  (Id. at 21.)

3           Michael Armstrong argues that plaintiffs' claims for abuse of process and

4  slander/libel should be dismissed with prejudice as to him because his conduct is protected by

5  California's absolute litigation privilege.  That privilege, found at California Civil Code § 47(b),

6  provides, in part, that a publication or broadcast made as part of a judicial proceeding is

7  privileged.  See also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232,

8  1241, 163 P.3d 89, 95 (Cal. 2007).  The California Supreme Court recently summarized this

9  litigation privilege as follows:

10              This privilege is absolute in nature, applying to all publications,
                irrespective of their maliciousness.  The usual formulation is that the
11              privilege applies to any communication (1) made in judicial or
                quasi-judicial proceedings; (2) by litigants or other participants authorized
12              by law; (3) to achieve the objects of the litigation; and (4) that [has] some
                connection or logical relation to the action.  The privilege is not limited to
13              statements made during a trial or other proceedings, but may extend to
                steps taken prior thereto, or afterwards.

14

15  Id. (citations and internal quotation marks omitted, modification in original).  The California

16  Supreme Court has given this privilege "a broad interpretation" in furtherance of the purpose of

17  the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the

18  courts without fear of being harassed subsequently by derivative tort actions."  Id.  "Any doubt as

19  to whether the privilege applies is resolved in favor of applying it."  Adams v. Superior Court,

20  2 Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992); accord Sengchanthalangsy v.

21  Accelerated Recovery Specialists, Inc., 473 F. Supp. 2d 1083, 1087 (S.D. Cal. 2007); Lambert v.

22  Carneghi, 158 Cal. App. 4th 1120, 1138, 70 Cal. Rptr. 3d 626, 639 (Ct. App. 2008).  Thus,

23  although the privilege was originally enacted with reference to claims of defamation, "'the

24  privilege is now held applicable to any communication, whether or not it amounts to a

25  publication . . . , and all torts except malicious prosecution.'"  Rusheen v. Cohen, 37 Cal. 4th

26

1    1048, 1057, 128 P.3d 713, 718 (2006) (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212, 786

2    P.2d 365 (1990)); see also  Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241-42 (noting that the

3    litigation privilege applies to claims of slander, libel, and abuse of process, among other types of

4    claims).  The privilege applies "regardless whether the communication was made with malice or

5    the intent to harm" and "does not depend on the publisher's motives, morals, ethics or intent."

6    Kashian v. Harriman,98 Cal. App. 4th 892, 913, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002)

7    (citation and quotation marks omitted).

8              The litigation privilege applies to the abuse of process and slander/libel claims

9    against Michael Armstrong.  Plaintiffs' allegations in support of these claims reveal that Michael

10   Armstrong's acts consist of communications with the Superior Court made in connection with a

11   judicial proceeding, whether by filing of declarations or documents or making statements to that

12   court.[7]  (See Third Am. Compl. at 13, 21.)  The undersigned concludes that the privilege applies

13   notwithstanding plaintiffs' objection that Michael Armstrong was not a party to the state court

14   proceedings.  Although Michael Armstrong's moving papers are not the model of clarity and do

15   not explain in great detail his role in the underlying state court litigation, application of

16   California's litigation privilege does not turn on whether the person asserting the privilege was a

17   party to the underlying litigation; he or she need only be connected or related to the proceedings.

18   See, e.g., Castaline v. Aaron Mueller Arts, No. C 09-02543 CRB, 2010 WL 583944, at *4 (N.D.

19   Cal. Feb. 16, 2010) (unpublished) (stating that the phrase "other participants authorized by law"

20

21          [7]  For example, under California law, the "tort of abuse of process arises when one uses
     the court's process for a purpose other than that for which the process was designed."  Rusheen,
22   37 Cal. 4th at 1056, 128 P.3d at 718.  "To succeed in an action for abuse of process, a litigant
     must establish that the defendant (1) contemplated an ulterior motive in using the process, and
23   (2) committed a willful act in the use of the process not proper in the regular conduct of the
     proceedings."  Id.  Here, plaintiffs allege that Michael Armstrong abused the Nevada County
24   Superior Court's process by filing "false allegations" contained in declarations and pleadings in a
     pending case.  The California Supreme Court has specifically held that the litigation privilege
25   applies to an abuse of process claim "alleging the filing of false or perjurious testimony or
     declarations."  Id. at 1058, 128 P.3d at 719 (collecting cases).

26

1  includes non-parties who have a "substantial interest in the outcome of the pending litigation")

2  (citing Costa v. Superior Court, 157 Cal. App. 3d 673, 677-78, 204 Cal. Rptr. 1, 4 (Ct. App.

3  1984)); Adams, 2 Cal. App. 4th at 529, 3 Cal. Rptr. 2d at 52 (stating that "the privilege is not

4  restricted to the actual parties to the lawsuit but need merely be connected or related to the

5  proceedings").  Here, Michael Armstrong was connected to and participated in the underlying

6  litigation, which related to the protection and well-being of his mother, by allegedly filing

7  declarations or making statements to the court.  Thus, he had a logical connection to that

8  litigation.[8]  The conclusion that the privilege applies under the facts presented is further

9  supported by the fact that the California Supreme Court has given the privilege a broad

10 interpretation, and any doubt regarding whether the privilege applies should be resolved in favor

11 of applying the privilege.  Accordingly, the undersigned will recommend that Michael

12 Armstrong's motion to dismiss plaintiffs' claims for abuse of process and slander/libel be

13 granted and that these claims be dismissed with prejudice.

14        D.    Plaintiffs' State Law Claim for Trespass to Chattels

15             Plaintiffs further allege that all defendants, including Michael Armstrong,

16 committed the tort of trespass to chattels.  (Third Am. Compl. at 19.)

17             "[T]he tort of trespass to chattels allows recovery for interferences with

18 possession of personal property not sufficiently important to be classed as conversion, and so to

19 compel the defendant to pay the full value of the thing with which he has interfered."  Intel Corp.

20 v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has

21 stated that "[t]respass remains as an occasional remedy for minor interferences, resulting in some

22 _____

23        [8]  Michael Armstrong's moving papers state: "Any actions taken by MICHAEL
   ARMSTRONG were in support of the efforts taken to alleviate the Elder Abuse, Domestic
24 Violence, and other harassment and illegal acts taken by plaintiffs against his mother, VIRGINIA
   ARMSTRONG.  All actions taken by this answering defendant should be deemed legal,
25 privileged or based on a duty."  (Memo. of P. & A. in Supp. of Michael Armstrong's Motion to
   Dismiss at 6, Dkt. No. 85.)

26
                              14

1  damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of

2  conversion." Id. at 1351, 71 P.3d at 302 (citation omitted, modification in original).

3          As to Michael Armstrong, and indeed as to all defendants, plaintiffs have not

4  specified the chattel or chattels with which each defendant interfered, which in turn proximately

5  caused them harm. See id. at 1350-51, 71 P.3d at 302 ("Under California law, trespass to

6  chattels lies where an intentional interference with the possession of personal property has

7  proximately caused injury" (citation and quotation marks omitted).). Insofar as any property is

8  concerned, plaintiffs have only alleged that Michael Armstrong influenced Virginia Armstrong to

9  transfer a piece of *real property* from one trust to another. (Third Am. Compl. at 4.) This is not

10  an interference with "possession of personal property," which appears to be the crux of the tort of

11  trespass to chattels.[9] Accordingly, plaintiffs' claim for trespass to chattels should be dismissed

12  with prejudice as to Michael Armstrong.

13          E.      Plaintiffs' State Law Claim for Loss of Consortium

14          In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

15  liable for loss of consortium. (Third Am. Coml. at 25.) Although plaintiffs incorporate the

16  remainder of their complaint by reference, their allegations are limited to the following:

17          Paragraphs above incorporated by reference. Plaintiffs Brent, Susan,
            Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered
18          loss of consortium with each other and their grandmother as a result of the
            actions of the Defendants.

19

20  (Id.)

21          One California court has cited with approval a California practice manual that

22  defines the tort of loss of consortium as having the following four elements:

23

24          [9] The term "chattel" is defined as "[m]ovable or transferable property; esp., personal
     property." Black's Law Dictionary at 229 (7th ed. 1999). To the extent that a real property
25   interest is concerned, the term "chattel real" is defined as "a real-property interest that is less than
     a freehold or fee, such as a leasehold." Id.

26

                                              15

(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury;

(2) a tortious injury to the plaintiff's spouse;

(3) loss of consortium suffered by the plaintiff; and

(4) the loss was proximately caused by the defendant's act.

Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App. 2007) (citation omitted).  Additionally, "[a] cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." Id. at 746, 54 Cal. Rptr. 3d at 531 (Ct. App. 2007).   Additionally, the Ninth Circuit Court of Appeals recently explained:

> To support a loss of consortium claim, marital spouses must allege that their partner suffered an injury that is "sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired." *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); *Anderson v. Northrop Corp.*, 203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury may be physical or psychological, but psychological injury must "rise [ ] to the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be] sufficient to substantially disturb the marital relationship." *Anderson*, 250 Cal.Rptr. at 195, quoting *Molien*, 167 Cal.Rptr. 831, 616 P.2d at 813.

Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008) (modifications in original).

The undersigned will recommend that plaintiffs' loss of consortium claim be dismissed with prejudice because they have failed to allege a plausible claim for relief.  First, plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship has been more than superficially affected.  Second, plaintiffs have not alleged any facts regarding how the acts of Michael Armstrong proximately caused any loss of consortium.  Plaintiffs' allegations of causation are general as to all defendants and are conclusory in nature.  Third, under California law, parents may not pursue a claim loss of filial consortium, and children may

not pursue a claim for loss of parental consortium.  See <u>Baxter v. Superior Court</u>, 19 Cal. 3d 461,

466, 563 P.2d 871, 874 (1977); <u>Borer v. Am. Airlines, Inc.</u>, 19 Cal. 3d 441, 453, 563 P.2d 858,

866 (1977); <u>Meighan v. Shore</u>, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App.

1995).  Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark and Jill Winters,

as the court previously ordered that references to these minors be stricken from the Third

Amended Complaint.  Finally, it would appear facially improper that plaintiffs could recover for

loss of consortium with "their grandmother," Virginia Armstrong, whom they have named as a

defendant in this case.  Plaintiffs have failed to meet the pleading requirements to state a

cognizable claim for relief, and the undersigned has no reason to believe that these deficiencies

could be cured through amendment.

       F.      <u>Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress</u>

        Finally, Michael Armstrong seeks to dismiss plaintiffs' thirty-eighth claim for

relief, which seeks damages for intentional infliction of emotional distress ("IIED") against "All

Defendants."  (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED

claim contains only bare factual allegations and legal conclusions, which are stated generally

against all defendants:

> Paragraphs above incorporated by reference.All [*sic*] Defendants acted
> with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
> Defendants' conduct on dates referenced above was extreme and
> outrageous. Defendants' conduct is the proximate cause of their distress.
> Each Plaintiff suffers severe emotional distress as a result of all
> Defendants' conduct.

(<u>Id</u>.)

        To state a claim for intentional infliction of emotional distress under California

law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

conduct by the defendant with the intention of causing, or reckless disregard of the probability of

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

1   (3) actual and proximate causation of the emotional distress by the defendant's outrageous

2   conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

3   quotation marks omitted).  The California Supreme Court has explained that "outrageous"

4   conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

5   civilized community," and that "the defendant's conduct must be intended to inflict injury or

6   engaged in with the realization that injury will result."  Id. (citations and quotation marks

7   omitted).

8           As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare

9   factual allegations that incorporate the remainder of the Third Amended Complaint by reference.

10  Plaintiffs do not allege facts demonstrating that Michael Armstrong's acts rose to the level of

11  "extreme and outrageous" behavior as defined under California, that any of the plaintiffs suffered

12  severe or extreme emotional distress, or that Michael Armstrong's conduct proximately caused

13  any particular plaintiff's emotional distress.  Accordingly, the undersigned will recommend that

14  this claim be dismissed as to Michael Armstrong.  The undersigned will recommend dismissal

15  with prejudice because nothing in the Third Amended Complaint or plaintiffs' written opposition

16  brief suggests that the identified pleading deficiencies can be cured through amendment.  In their

17  consolidated opposition brief, plaintiffs continue their conclusory allegations regarding the IIED

18  claim as to all "Responding Defendants."  (Dkt. No. 89 at 10.)  In an attempt to substantiate that

19  the Responding Defendants' engaged in outrageous conduct, plaintiffs explain that they "were

20  unlawfully thrown out of their lawfully possessed home, [and were] physically abused in the

21  middle of the night."  (Id.)  Yet there is no suggestion in the opposition brief or the Third

22  Amended Complaint that this was Michael Armstrong's conduct.

23  ////

24  ////

25  ////

26

IV.     CONCLUSION

         For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

         1.     Defendant Michael Armstrong's motion to dismiss the Third Amended Complaint (Dkt. No. 82, 85) be granted; and

         2.     All of plaintiffs' claims alleged against Michael Armstrong be dismissed with prejudice.

         These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

         IT IS SO RECOMMENDED.

DATED:  July 19, 2010



                                              _____
                                              KENDALL J. NEWMAN
                                              UNITED STATES MAGISTRATE JUDGE

19