1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLEN WINTERS, et al.,

11          Plaintiffs,                No. 2:09-cv-00522 JAM KJN PS
              v.
12
     DELORES JORDAN, et al.,
13
            Defendants.               FINDINGS AND RECOMMENDATION
14   _____/

15          Presently before the court is defendant Virginia Armstrong's ("Virginia

16   Armstrong" or "Armstrong") motion to dismiss plaintiffs' Third Amended Complaint pursuant to

17   Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 84.)  The court submitted this matter

18   without oral argument.[1]  (Dkt. No. 102.)  The undersigned has fully considered the parties' briefs

19   and the record in this case and, for the reasons that follow, will recommend that: (1) Armstrong's

20   motion be granted in part; (2) the civil battery claim alleged on Joy Winters's behalf be dismissed

21   without prejudice; and (3) all of plaintiffs' remaining claims alleged against Armstrong, except

22   for plaintiff Christy Winters's civil battery claim (claim 9) and plaintiffs' breach of contract

23   claim (claim 22), be dismissed with prejudice.

24   _____

25          [1] This action proceeds before this court pursuant to Eastern District of California Local
     Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9,
26   2010 (Dkt. No. 105).

I.      BACKGROUND[2]

Plaintiffs' operative complaint, the Third Amended Complaint,[3] is a wide-ranging, 25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants. (Dkt. No. 66.)  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the requirement that the pleading contain a short and plain statement of the claims alleged instead of recounting all of the evidence and arguments in support of those claims.  (Dkt. No. 56 at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to comply."  (Id.)

The claims alleged in the Third Amended Complaint arise from an underlying family dispute between plaintiffs, who are part of the Winters family, and defendant Virginia Armstrong.  Virginia Armstrong is the mother of plaintiff Susan Winters.

The Third Amended Complaint alleges that in or around the year 2002, plaintiff Susan Winters's elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in Illinois and move to Nevada City, California to live with the Armstrongs.  (Third Am. Compl. at 4.)  Plaintiffs allege that before plaintiffs returned to California, Joe Armstrong passed away and that Virginia Armstrong eventually transferred

_____

[2]  The court previously ordered that all references to the minor plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint because those minors were not represented by counsel.  (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)

[3]  Plaintiffs filed the operative complaint under the title "Amended Complaint," notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt. No. 66 with Dkt No. 56 at 4.)  The Third Amended Complaint supersedes plaintiffs' "Second Amended Complaint."  (Dkt. No. 15.)  As the court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt. No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second amendment of the original complaint.

properties, including the residence at 11318 Via Vista in Nevada City, California, from the Armstrong Living Trust dated July 29, 1994 to the Virginia Armstrong Living Trust.  (Id.) Plaintiffs allege that Virginia Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon, who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia Armstrong's son, who is also an attorney.  (Id.)  They further allege that these actions violated the terms of a trust indenture and the California Probate Code.  (Id.)

The relationship between Armstrong and plaintiffs resulted in several proceedings in the Nevada County Superior Court.  Relevant here, Logsdon, acting as Armstrong's attorney, filed an unlawful detainer action on her client's behalf seeking to evict members of the Winters family from Armstrong's home.  (Third Am. Compl. at 5.)  In connection with the unlawful detainer action, and relevant to claims alleged against Virginia Armstrong, plaintiffs allege that an Assistant United States Attorney from Illinois wrote a letter to Logsdon "offering any aid to help her evict the Winters from their home in Nevada City, California."  (Id. at 6, 21.)  Plaintiffs further allege that Virginia Armstrong caused declarations or other documents to be filed in connection with the issuance of a restraining order by a Nevada County Superior Court judge that was favorable to the Winters family, and that her attorney improperly sought a separate, ex parte restraining order against members of the Winters family from the Superior Court.  (See id. at 6, 13-14.)

Plaintiffs' Third Amended Complaint alleges the following claims against Virginia Armstrong: abuse of process (claim 6); violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution (claim 7); civil battery (claim 9); trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); "Slander, Libel, and Slander & Libel Per Se" (claim 21); breach of contract (claim 22); violation of the First Amendment of the U.S. Constitution (claim 26); conspiracy to violate the Racketeer Influenced and Corrupt

1  Organizations Act ("RICO"), 18 U.S.C. 1962(d) (claim 31); loss of consortium (claim 36); and

2  intentional infliction of emotional distress (claim 38).  In response to the filing of the Third

3  Amended Complaint, Virginia Armstrong filed a motion to dismiss pursuant to Federal Rule of

4  Civil Procedure 12(b)(6).  (Dkt. No. 84.)

5  There are several, separately-filed motions pending before the court.  Despite the

6  court's previous order that plaintiffs file a separate opposition to each pending motion (Dkt. No.

7  89 at 6), plaintiffs filed a consolidated opposition.  (See Dkt. No. 99.)  Plaintiffs filed their

8  opposition on January 13, 2010, despite a court-ordered deadline of January 6, 2010.

9  (Compare Dkt. Nos. 89 with 99.)  Although plaintiffs' opposition was untimely and need not be

10  considered, the undersigned has considered that opposition in arriving at the findings and

11  recommendations that follow.

12  II.    LEGAL STANDARDS

13  A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

14  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

15  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

16  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

17  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

18  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

19  motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

20  to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

21  1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

22  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

24  Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

25  1949).

26

1      The court accepts "all facts alleged as true and construes them in the light most

2  favorable to the plaintiff." County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1

3  (9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that

4  are contradicted by documents referred to in the complaint, and [the court does] not necessarily

5  assume the truth of legal conclusions merely because they are cast in the form of factual

6  allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must

7  construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a

8  plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it

9  appears at all possible that the plaintiff can correct the defect.[4]  See Lopez v. Smith, 203 F.3d

10  1122, 1130-31 (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule

11  12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

12  attached to the complaint, and matters properly subject to judicial notice." Outdoor Media

13  Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks

14  omitted).

15  III.   DISCUSSION

16      A.   Plaintiffs' Section 1983 Claims Against Armstrong

17      Plaintiffs have alleged five claims against Virginia Armstrong that constitute

18  claims brought pursuant to 42 U.S.C. § 1983.  First, plaintiffs allege that Virginia Armstrong

19  violated plaintiffs' Fourteenth Amendment rights of equal protection under the law (claim 7), and

20  allege that: "Without any notice or opportunity to be heard allowed to Plaintiffs, Judge Anderson

21  and attorney David Silber, together, by ex parte agreement, imposed a restraining order against

22  Susan Winters, Cacey Winters, and Christy Winters."  (Third Am. Compl. at 14.)  Second,

23

24      [4]  Although plaintiffs are proceeding without counsel in this action, the undersigned notes
that plaintiff Brent Winters is alleged to be a licensed, practicing attorney.  (Third Am. Compl. at
25  21 (referring to Brent Allan Winters as "a licensed attorney"); see also Dkt. No. 89 at 13
(alleging damage to "Brent Allan Winters's law practice").)

26

1  plaintiffs allege generalized, non-specific claims against "All Defendants" for violation of 42

2  U.S.C. § 1983 (claim 14), for engaging in a conspiracy to violate 42 U.S.C. § 1983 (claim 15),

3  and for "civil conspiracy," which appears to be an additional claim alleging a conspiracy to

4  violate Section 1983.  (See id. at 19-20.)  Finally, plaintiffs allege that Virginia Armstrong

5  violated plaintiffs' First Amendment right to petition for the redress of grievances insofar as

6  plaintiffs were prevented from responding to "false statements" in proceedings before the Nevada

7  County Superior Court.  (See id. at 23.)

8         Virginia Armstrong challenges all of these claims as failing to state a claim on

9  which relief can be granted.  The undersigned will first address plaintiffs' generalized Section

10  1983 claims and then address the more specifically alleged constitutional violations.

11              1.      Express Section 1983 Claims (Claims 14, 15 and 18)

12         Virginia Armstrong moves to dismiss claims 14, 15, and 18, which expressly

13  allege violations of Section 1983, for failure to state a claim on the grounds that: (1) plaintiffs

14  have not alleged that she participated in any act that deprived plaintiffs of their constitutional or

15  statutory rights, and (2) plaintiffs have alleged no specific facts that she acted under the color of

16  law.  Her arguments, although tersely stated, are persuasive.

17         "Section 1983 imposes civil liability upon an individual who 'under color [of state

18  law] . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation

19  of any rights, privileges or immunities secured by the Constitution and laws.'"  Franklin v. Fox,

20  312 F.3d 423, 444 (9th Cir. 2002) (quoting 42 U.S.C. § 1983).  "To state a claim under § 1983, a

21  plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

22  the United States was violated, and (2) that the alleged violation was committed by a person

23  acting under the color of State law."  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th

24  Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)); accord Nurre v. Whitehead, 580 F.3d

25  1087, 1092 (9th Cir. 2009).  Conclusory allegations of a violation of Section 1983 or a

26

conspiracy to violate Section 1983 will not survive a motion to dismiss.  See, e.g., Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of plaintiff's second amended complaint as a result of plaintiff's "conclusory allegations" of a conspiracy to deprive him of his constitutional rights in violation of Section 1983).

Plaintiffs' allegations in support of their Section 1983 claims alleged in claims 14, 15, and 18 are conclusory and, on this basis alone, these claims should be dismissed as to Virginia Armstrong.  For example, plaintiffs do not allege which of their specific constitutional rights were violated and specifically how Virginia Armstrong participated in such alleged violations.  Nevertheless, the undersigned will address additional grounds why plaintiffs' claims fail as alleged against Armstrong.

As to claim 14, alleging that "All Defendants," including Virginia Armstrong, individually violated plaintiffs' constitutional rights, plaintiffs allege:

> Paragraphs above incorporated by reference.  Defendants, by their actions and acting under the color of law, subjected Plaintiffs, and caused Plaintiffs to be subjected, to the deprivations of their rights, privileges, and immunities secured by the Constitution and laws of the State of California and of the United States of America. Plaintiffs claim damages under 42 U.S.C. § 1983 for their injuries set forth above.

(Third Am. Compl. at 19.)  In addition to the conclusory nature of plaintiffs' allegations, their claim that Virginia Armstrong, as an individual, violated plaintiffs' rights fails because plaintiffs have not alleged any constitutional right that was purportedly violated.[5]  Moreover, dismissal is warranted because Armstrong is a private actor and thus was not acting under color of state law.  To determine whether a private actor acts under color of state law, the court must evaluate

---

[5] Although plaintiffs incorporate the remainder of their complaint by reference, the rest of the Third Amended Complaint and plaintiffs' opposition to the pending motion do not suggest exactly how Virginia Armstrong individually violated plaintiffs' civil rights.  To the extent that plaintiffs are alleging that Armstrong's alleged violations of plaintiffs' First and Fourteenth Amendment rights are the basis for the express Section 1983 claims, their claims would be redundant.  In any event, plaintiffs' First Amendment and Fourteenth Amendment equal protection claims are subject to dismissal for the reasons stated below.

whether the alleged infringement of federal rights is "fairly attributable" to the government even though it is alleged to have been committed by private actors.  See Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  The Supreme Court has explained that "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (citation and quotation marks omitted)).  Nothing in the Third Amended Complaint or plaintiffs' written opposition suggests as much.  Accordingly, plaintiffs' fourteenth claim should be dismissed with prejudice as to Virginia Armstrong.

Plaintiffs' Section 1983 conspiracy claims, claims 15 and 18, are also fatally flawed.  In their fifteenth claim, plaintiffs allege that "Defendants Logsdon, Michael Armstrong, Jordan, Wade, Harpainter, and Ford worked in concert with Defendants from the Nevada County Superior Court, Sheriff's Department, Adult Protective Services, and other agencies." (Third Am. Compl. at 20.)  These claims make no specific reference to Virginia Armstrong.  Moreover, they allege that a state court judge, Judge Anderson, entered a restraining order "on his own motion." (Id.; see also id. at 7)  Additionally, plaintiffs allege that defendants Logsdon and Harpainter "worked in concert with" with defendants Chelsey and Frooman. (Id.)  Elsewhere in the Third Amended Complaint, defendant Harpainter is alleged to be an attorney that the Nevada County Superior Court appointed for Virginia Armstrong in connection with certain restraining order proceedings before that court. (Id. at 7.)  Defendants Chelsey and Frooman are alleged to be Assistant United States Attorneys in Illinois who were prosecuting plaintiff Brent Winters, an attorney, on criminal charges and wrote a letter to defendant Logsdon offering assistance with the unlawful detainer action. (Id. at 6, 24.)  Plaintiffs' eighteenth claim is largely redundant of the fifteenth claim, at least as it relates to allegations against Virginia Armstrong.

"A private individual may be liable under § 1983 if [he] conspired or entered joint

action with a state actor." Franklin, 312 F.3d at 441; see also Kirtley, 326 F.3d at 1092 ("While

generally not applicable to private parties, a § 1983 action can lie against a private party when he

is a willful participant in joint action with the State or its agents." (citation and quotation marks

omitted)).  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate

the existence of an agreement or meeting of the minds' to violate constitutional rights." Crowe

v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (quoting Mendocino Envtl. Ctr. v.

Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999)).  Although the Supreme Court has

articulated several alternative tests for determining whether a private individual's actions amount

to state action, Franklin, 312 F.3d at 445, the "joint action" test is relevant here.  The joint action

test applies where, as here, state officials and private parties are alleged to have acted in concert

to effectuate a particular deprivation of constitutional rights and "focuses on whether the state

has so far insinuated itself into a position of interdependence with the private actor that it must be

recognized as a joint participant in the challenged activity." Id. (citation, quotation marks, and

modifications omitted).  "The plaintiff must show 'an agreement or meeting of the minds to

violate constitutional rights,' and '[t]o be liable, each participant in the conspiracy need not know

the exact details of the plan, but each participant must at least share the common objective of the

conspiracy.'" Crowe, 608 F.3d at 440 (modification in original) (quoting Franklin, 312 F.3d at

441).

        As an initial matter, it bears repeating that plaintiffs' allegations regarding a

conspiracy between state actors and private actors are vague and conclusory and, for that reason

alone, cannot survive the motion to dismiss.  See Simmons, 318 F.3d at 1161 ("Plaintiff's

conclusory allegations that the lawyer was conspiring with state officers to deprive him of due

process are insufficient."); Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000)

(stating that "a bare allegation of . . . joint action will not overcome a motion to dismiss" (citation

and quotation marks omitted)); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) (stating

1  that "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a

2  claim under the Civil Rights Act" (citation and quotation marks omitted, modifications in

3  original)).  It also bears repeating that insofar as the fifteenth and eighteenth claims are

4  concerned, plaintiffs have not alleged which of their constitutional rights has been violated.

5           Plaintiffs have not alleged facts constituting a plausible claim of a conspiracy

6  between Virginia Armstrong and state actors to violate plaintiffs' constitutional rights.

7  Although, plaintiffs vaguely allege that Virginia Armstrong's lawyers conspired with others, the

8  allegations in the Third Amended Complaint indicate a lack of interdependence between state

9  and private actors.  As far as the unlawful detainer action is concerned, plaintiffs only allege that

10  Assistant United States Attorneys Frooman and Chelsey offered aid to defendant Logsdon, one of

11  Virginia Armstrong's attorneys.  An offer of assistance does not suggest the level of

12  interdependence that will support a Section 1983 conspiracy under a joint action theory.  In terms

13  of joint action related to the entry of certain restraining orders, plaintiffs conclusorily allege joint

14  action, but also that Judge Anderson of the Nevada County Superior Court acted on his "own

15  motion."  None of plaintiffs allegations suggests a common goal of depriving plaintiffs of their

16  rights, or any interdependence among the alleged members of the conspiracy.  Taken together

17  with the conclusory and vague allegations in the Third Amended Complaint, plaintiffs'

18  conspiracy claims alleged against Virginia Armstrong should be dismissed.

19           2.    Fourteenth Amendment Equal Protection Claim (Claim 7)

20           Virginia Armstrong also moves to dismiss plaintiffs' claim that she violated

21  plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment on the ground

22  that she could not have violated plaintiffs' equal protection rights because she is not a "state

23  actor."  As to Virginia Armstrong, plaintiffs' seventh claim for relief alleges, in relevant part:

24  "**02/05/08**—Without any notice or opportunity to be heard allowed to Plaintiffs, Judge Anderson

25  and attorney David Silber, [Virginia Armstrong's attorney,] together, by ex parte agreement,

26

1    imposed a restraining order against Susan Winters, Cacey Winters, and Christy Winters."[6]

2    (Third Am. Compl. at 14 (emphasis in original).)

3            Plaintiffs' claim is fairly characterized as alleging a "joint action" conspiracy

4    under 42 U.S.C. § 1983[7] to enter an ex parte restraining order between a private actor, Virginia

5    Armstrong or her attorney, and a state court judge.  The undersigned is skeptical of this claim at

6    the outset because it appears that plaintiffs are alleging no more than that Virginia Armstrong's

7    attorney applied for an ex parte restraining order on her behalf and that the Nevada County

8    Superior Court granted the request.  Even assuming that there is a factual basis to apply the joint

9    action test as to plaintiffs' claim, plaintiffs' conspiracy claim fails because there is no allegation

10   regarding how the conspiracy effectuated a violation of plaintiffs' equal protection rights.

11           There are several ways in which a plaintiff may state a cognizable equal protection

12

13        [6]  The undersigned notes that plaintiffs' claim that Judge Anderson and Silber entered into an ex parte agreement to enter a restraining order against some of the plaintiffs on February 5, 2008, appears at odds with the remainder of the Third Amended Complaint. Nowhere else in the operative pleading, which details numerous restraining orders entered by the Nevada County Superior Court, is it alleged that Judge Anderson entered a restraining order on or around February 5, 2008.  Instead, plaintiffs allege that on April 21, 2008, Judge Anderson instituted proceedings regarding a restraining order against several members of the Winters family to protect Virginia Armstrong from them, and that he entered a temporary restraining order on April 25, 2008.  (See Third Am. Compl. at 7.)

18        [7]  To the extent that plaintiffs' equal protection claim is based on 42 U.S.C. § 1985(3), it fails.  "To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States."  Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)).  "The language requiring intent to deprive equal protection . . .  means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin, 403 U.S. at 102; see also Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) ("We have extended § 1985(3) to protect non-racial groups only if 'the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or . . . Congress has indicated through legislation that the class require[s] special protection'" (citation omitted, modifications in original).)  Because plaintiffs' Third Amended Complaint does not set forth facts sufficient to support conclusions that defendants engaged in a conspiracy to violate plaintiffs' rights based on their membership in any class, any conspiracy claim under 42 U.S.C. § 1985(3) fails.

1   claim.  For example, a plaintiff show that "defendants acted with an intent or purpose to

2   discriminate against the plaintiff based upon membership in a protected class."  Lee v. City of

3   L.A., 250 F.3d 668, 686 (9th Cir. 2001) (citations and quotation marks omitted).  More relevant

4   here, a plaintiff may also establish a "class of one" equal protection claim by showing that a state

5   actor "intentionally, and without rational basis, treated the plaintiff differently from others

6   similarly situated."  N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)

7   (stating also that "[a] class of one plaintiff must show that the discriminatory treatment was

8   intentionally directed just at him, as opposed . . . to being an accident or a random act" (citation

9   and quotation marks omitted, modification in original)).  Here, plaintiffs' Third Amended

10  Complaint does not allege facts, as opposed to mere conclusions, that they are members of a

11  protected class or that they were intentionally treated differently than others who were similarly

12  situated.  Thus, plaintiffs have not alleged a plausible equal protection claim against Virginia

13  Armstrong.  Nor does it appear that plaintiffs could allege facts that would support such a claim

14  if given the opportunity to do so.  Accordingly, plaintiffs' equal protection claim should be

15  dismissed with prejudice.

16                      3.      First Amendment Claim (Claim 26)

17              In their twenty-sixth claim for relief, plaintiffs allege that judges and court staff at

18  the Nevada County Superior Court and Virginia Armstrong violated plaintiffs' First Amendment

19  rights to petition for the redress of grievances by preventing their access to the Superior Court to

20  file papers and otherwise respond to written and spoken allegations in proceedings before that

21  court.  (Third Am. Compl. at 23.)  Although a plaintiff may allege that his access to the courts

22  was impeded and thus caused a deprivation of his First Amendment right to petition the

23  government, see, e.g., BE & K Constr. Co. v. NLRB, 536 U.S. 516, 525 (2002), plaintiffs here

24  have simply failed to allege any facts demonstrating how Virginia Armstrong, a private

25  individual who is not a member of the Superior Court's staff, effectuated or participated in such a

26

1  deprivation.  Accordingly, plaintiffs have failed to allege a plausible First Amendment claim

2  against Virginia Armstrong, and their twenty-sixth claim for relief should be dismissed with

3  prejudice.

4          B.     <u>Plaintiffs' Federal RICO Conspiracy Claim (Claim 31)</u>

5          Virginia Armstrong also moves to dismiss plaintiffs' thirty-first claim for relief,

6  which alleges that "All Defendants"— over sixty defendants including private actors, state court

7  judges and employees, law enforcement, and local agencies —conspired to commit racketeering

8  activity in violation of the RICO statute, <u>see</u> 18 U.S.C. §§ 1962(d), 1964(c).  (<u>See</u> Third Am.

9  Compl. at 24.)  Plaintiffs allege that all defendants in this case conspired to "maintain a federal

10  prosecution against Plaintiff Brent Winters in Illinois."  (<u>Id</u>.)  They further allege that on July 9,

11  2002, defendant Jan Paul Miller agreed with an individual named Michael McCuskey and

12  defendant Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters

13  on false charges" knowing that the presiding judge was biased.  (<u>Id</u>.)  They also allege that

14  "Agent Pogue," who is not a defendant here, contributed to the conspiracy by testifying based on

15  "conjecture" at Brent Winters's sentencing hearing.  (<u>Id</u>.)  In addition, they vaguely allege an

16  undefined "pattern of misrepresentation" intended to "defraud the Winters of their rights and

17  their property."  (<u>Id</u>.)  Moreover, plaintiffs allege the "concealment of critical data," including a

18  memorandum drafted by Judge Anderson of the Nevada County Superior Court.  (<u>Id</u>.)  Plaintiffs

19  do not allege any specific facts with respect to Virginia Armstrong.

20          "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

21  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

22  (5) causing injury to plaintiff's 'business or property.'"  <u>Living Designs, Inc., E.I. Dupont de</u>

23  <u>Nemours & Co.</u>, 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted).  "To

24  state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least

25  two predicate acts."  <u>Clark v. Time Warner Cable</u>, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations

26

1  omitted).  Furthermore, a plaintiff must also show that the injury to his business or property was

2  proximately caused by the prohibited conduct and that he has suffered a concrete financial loss.

3  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083, 1086 (9th Cir. 2002).

4          Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

5  the allegations are of such a vague and conclusory nature that they do not state a plausible claim

6  for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

7  "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

8  alleged a "concrete financial loss" or injury to business or property proximately caused by the

9  conspiracy.  At most, plaintiffs' opposition to Virginia Armstrong's motion to dismiss alleges

10 that the purported RICO conspiracy damaged plaintiff Brent Winters's law practice, but provides

11 no information about the nature of the injury or a concrete financial loss.  Nothing contained in

12 plaintiffs' Third Amended Complaint or opposition brief suggests that they can amend their

13 pleading to state a plausible claim for relief.  Accordingly, plaintiffs' thirty-first claim for relief

14 should be dismissed with prejudice.

15      C.      Plaintiffs' State Law Claims for Abuse of Process and Slander/Libel (Claims 6
                and 21)
16

17          In their sixth claim for relief, plaintiffs allege that Virginia Armstrong is liable for

18 the state law tort of abuse of process.  (Third Am. Compl. at 13-14.)  Specifically, they allege

19 that Virginia Armstrong, and defendants Logsdon and Jordan, violated California law by filing

20 an unlawful detainer action seeking to evict members of the Winters from Virginia Armstrong's

21 home.  (Id. at 13.)  In addition, plaintiffs allege that Virginia Armstrong, her attorney, defendant

22 Silber, and defendants who are judges or staff at the Nevada County Superior Court "abused the

23 court's judicial process" by: (1) hiding from the Winters family "all knowledge of a hearing of

24 David Silber before biased Judge Anderson" related to an application for a restraining order, and

25 (2) "improperly and with malice assert[ing] false allegations against Plaintiffs without evidence

26

1   in order to impose restraining orders on the Winters." (Id.)  Moreover, plaintiffs allege in their

2   twenty-first claim for relief that Virginia Armstrong, among others, committed "Slander, Libel,

3   Slander & Libel Per Se" through "false accusations, both spoken and written to the court"

4   between December 2007 and the present.  (Id. at 21.)

5           Virginia Armstrong argues that plaintiffs' claims for abuse of process and

6   slander/libel should be dismissed with prejudice as to her because her conduct is protected by

7   California's absolute litigation privilege.  That privilege, found at California Civil Code § 47(b),

8   provides, in part, that a publication or broadcast made as part of a judicial proceeding is

9   privileged.  See also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232,

10  1241, 163 P.3d 89, 95 (Cal. 2007).  The California Supreme Court recently summarized this

11  litigation privilege as follows:

12          This privilege is absolute in nature, applying to all publications,
            irrespective of their maliciousness.  The usual formulation is that the
13          privilege applies to any communication (1) made in judicial or
            quasi-judicial proceedings; (2) by litigants or other participants authorized
14          by law; (3) to achieve the objects of the litigation; and (4) that [has] some
            connection or logical relation to the action.  The privilege is not limited to
15          statements made during a trial or other proceedings, but may extend to
            steps taken prior thereto, or afterwards.

16

17  Id. (citations and internal quotation marks omitted, modification in original).  The California

18  Supreme Court has given this privilege "a broad interpretation" in furtherance of the purpose of

19  the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the

20  courts without fear of being harassed subsequently by derivative tort actions."  Id.  "Any doubt as

21  to whether the privilege applies is resolved in favor of applying it."  Adams v. Superior Court, 2

22  Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992); accord Sengchanthalangsy v.

23  Accelerated Recovery Specialists, Inc., 473 F. Supp. 2d 1083, 1087 (S.D. Cal. 2007); Lambert v.

24  Carneghi, 158 Cal. App. 4th 1120, 1138, 70 Cal. Rptr. 3d 626, 639 (Ct. App. 2008).  Thus,

25  although the privilege was originally enacted with reference to claims of defamation, "'the

26

privilege is now held applicable to any communication, whether or not it amounts to a

publication . . . , and all torts except malicious prosecution.'"  Rusheen v. Cohen, 37 Cal. 4th

1048, 1057, 128 P.3d 713, 718 (2006) (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212, 786

P.2d 365 (1990)); see also Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241-42 (noting that the

litigation privilege applies to claims of slander, libel, and abuse of process, among other types of

claims).  The privilege applies "regardless whether the communication was made with malice or

the intent to harm" and "does not depend on the publisher's motives, morals, ethics or intent."

Kashian v. Harriman,98 Cal. App. 4th 892, 913, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002)

(citation and quotation marks omitted).

        The litigation privilege bars the abuse of process and slander/libel claims against

Virginia Armstrong.  Plaintiffs' allegations in support of these claims reveal that Virginia

Armstrong's acts occurred in the context of: (1) filing an unlawful detainer action to evict

individuals from her home, (2) appearing through her attorney at a court hearing at which she

sought a restraining order, and (3) communicating with the Superior Court in connection with

judicial proceedings, whether by filing declarations or documents or making statements to that

court.  (See Third Am. Compl. at 13, 21.)  All of this conduct was made in judicial or

quasi-judicial proceedings by a party or her attorney to achieve the objects of the litigation, and it

has some connection or logical relation to the action.  See Action Apartment Ass'n, Inc., 41 Cal.

4th at 1241-42.  Accordingly, California's absolute litigation privilege applies to Virginia

Armstrong's conduct, and plaintiffs' sixth and twenty-first claims for relief should be dismissed

with prejudice as to Virginia Armstrong.

        D.    Plaintiffs' State Law Claim for Civil Battery (Claim 9)

        In their ninth claim for relief, plaintiffs allege that Virginia Armstrong committed

civil battery against Joy Winters and Christy Winters on December 14, 2007.  (Third Am.

Compl. at 17.)  They allege, in relevant part:

16

**12/14/07**—Virginia Armstrong was in the hallway of 11318 Via Vista talking with Joy Winters . . . . Virginia Armstrong struck Joy Winters in the face. Joy Winters did not authorize the offensive touch of Virginia Armstrong. Christy Winters saw the battery by Virginia Armstrong of Joy Winters and said, "Grandma, don't hit Joy." Virginia Armstrong then attempted to hit Christy Winters in the face, lost her balance and began falling backwards. Virginia grabbed Christy Winters's long hair to break her fall. Christy Winters experienced great pain from Virginia Armstrong putting the weight of her whole body on Christy Winters's hair. Christy Winters did not authorize the offensive touch of Virginia Armstrong.

(Id.) Virginia Armstrong moves to dismiss this claim on the grounds that: (1) "there are no factual allegations concerning any actual physical contact between moving parties and Plaintiffs"; and (2) "[i]t is ridiculous to think or believe that Virginia Armstrong could or would commit a battery against any of the Plaintiffs." (Doc. No. 84-1 at 14.)

Under California law, "[t]he elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); accord Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (same).

As an initial matter, the undersigned will recommend the dismissal, without prejudice, of the claim of civil battery alleged on behalf of Joy Winters. The court previously ordered that "all references to the minor plaintiffs are stricken from plaintiffs' Third Amended Complaint" because those minors are not represented by counsel. (See Dkt. No. 68; see also Dkt. Nos. 68, 80, and 89 at 2 n.1.) Joy Winters is one of three such minor plaintiffs who may not appear in this action without counsel. Accordingly, any claim of civil battery alleged on Joy Winters's behalf should be dismissed without prejudice.

The undersigned will also recommend dismissal, with prejudice, of plaintiffs' civil battery claim as to all plaintiffs other than Joy Winters, whose dismissal will be

1  recommended without prejudice, and Christy Winters, whose civil battery claim is discussed

2  below.  Plaintiffs' Third Amended Complaint does not allege any facts that could possibly

3  support a plausible claim of battery committed by Virginia Armstrong against any of the other

4  plaintiffs.

5          Contrary to Virginia Armstrong's arguments, plaintiff Christy Winters has

6  sufficiently alleged a claim of civil battery against Virginia Armstrong.  She alleges that Virginia

7  Armstrong intentionally grabbed her hair while falling, after Armstrong had attempted to hit her

8  in the face.  Christy Winters also alleges that the contact was offensive and harmful, and caused

9  her "great pain."  These allegations are sufficient at the pleading stage.  Accordingly, plaintiff

10  Christy Winters's civil battery claim survives Virginia Armstrong's motion to dismiss.

11          E.      Plaintiffs' State Law Claim for Trespass to Chattels (Claim 13)

12          Plaintiffs further allege that all defendants, including Virginia Armstrong,

13  committed the tort of trespass to chattels.  (Third Am. Compl. at 19.)

14          "[T]he tort of trespass to chattels allows recovery for interferences with

15  possession of personal property not sufficiently important to be classed as conversion, and so to

16  compel the defendant to pay the full value of the thing with which he has interfered."  Intel Corp.

17  v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has

18  stated that "[t]respass remains as an occasional remedy for minor interferences, resulting in some

19  damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of

20  conversion."  Id. at 1351, 71 P.3d at 302 (citation omitted, modification in original).

21          As to Virginia Armstrong, and indeed as to all defendants, plaintiffs have not

22  specified the chattel or chattels with which each defendant interfered, which in turn proximately

23  caused them harm.  See id. at 1350-51, 71 P.3d at 302 ("Under California law, trespass to

24  chattels lies where an intentional interference with the possession of personal property has

25  proximately caused injury" (citation and quotation marks omitted)).  Insofar as any property is

26

concerned, plaintiffs have only alleged that Virginia Armstrong transferred a piece of *real property* from one trust to another.  (Third Am. Compl. at 4.)  This is not an interference with "possession of personal property," which appears to be the crux of the tort of trespass to chattels.[8]  Accordingly, plaintiffs' claim for trespass to chattels should be dismissed with prejudice as to Virginia Armstrong.

> F.   Plaintiffs' State Law Claim for Breach of Contract (Claim 22)

In their twenty-second claim for relief, plaintiffs allege that Virginia Armstrong breached a contract with plaintiffs with respect to ownership of the real property at 11318 Via Vista in Nevada City, California.  (Third Am. Compl. at 22.)  In essence, plaintiffs allege that Virginia Armstrong orally promised to convey or transfer that real property, which resides in a trust, to plaintiffs Brent and Susan Winters if they moved to California from Illinois and "being available to Virginia," and that this constituted a contract.  (Id.)

Under California law, "[t]he standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  See, e.g., Abdelhamid v. Fire Ins. Exch., 182 Cal. App. 4th 990, 999, 106 Cal. Rptr. 3d 26, 32-33 (Ct. App. 2010) (citations and quotation marks omitted).

In seeking dismissal of this state law breach of contract claim, Virginia Armstrong only argues that plaintiffs have failed to "set forth the contract between the parties with sufficient certainty to show any right on the plaintiff's part to performance on the defendant's part." (Memo. of P. & A. in Supp. of Mot. to Dismiss at 17 (citing Hays v. Temple, 23 Cal. App. 2d 690, 694, 73 P.2d 1248, 1250 (Ct. App. 1937)).)  Contrary to Virginia Armstrong's argument,

---

[8]  The term "chattel" is defined as "[m]ovable or transferable property; esp., personal property." Black's Law Dictionary at 229 (7th ed. 1999).  To the extent that a real property interest is concerned, the term "chattel real" is defined as "a real-property interest that is less than a freehold or fee, such as a leasehold." Id.

however, the purported contract between her and plaintiffs Brent and Susan Winters is alleged

with sufficient certainty to show plaintiffs' right to performance on Armstrong's part.  The

contract, as alleged, is simple: The Winters family agreed to sell their house in Illinois and move

to Nevada City, California to be "available" to Virginia Armstrong in exchange for transfer of the

home at 11318 Via Vista in Nevada City, California to plaintiffs Brent and Susan Winters.

Plaintiffs allege that this oral agreement was entered into, that plaintiffs fulfilled their obligation

to move to Nevada City, that Virginia Armstrong breached this agreement by transferring the

property from one trust to another so as to preclude transfer to Brent and Susan Winters, and that

plaintiffs suffered damages in the form of loss of an ownership of the property.

        Although Virginia Armstrong might have other defenses to formation or

enforcement of the purported contract, she has not identified them in her moving papers.

Without more than the thin, unexplained argument offered in the moving papers, the undersigned

cannot conclude that dismissal of plaintiffs' breach of contract is warranted.

        G.     Plaintiffs' State Law Claim for Loss of Consortium (Claim 36)

        In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

liable for loss of consortium.  (Third Am. Compl. at 25.)  Although plaintiffs incorporate the

remainder of their complaint by reference, their allegations are limited to the following:

> Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan,
> Jeremiah, Cacey, Jennifer, Christy, Joy, Calrk, and Jill Winters suffered
> loss of consortium with each other and their grandmother as a result of the
> actions of the Defendants.

(Id.)

        One California court has cited with approval a California practice manual that

defines the tort of loss of consortium as having the following four elements:

> (1) a valid and lawful marriage between the plaintiff and the person
> injured at the time of the injury;
>
> (2) a tortious injury to the plaintiff's spouse;

1    (3) loss of consortium suffered by the plaintiff; and

2    (4) the loss was proximately caused by the defendant's act.

3  Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App.

4  2007) (citation omitted).  Additionally, "[a] cause of action for loss of consortium is, by its

5  nature, dependent on the existence of a cause of action for tortious injury to a spouse."  Id. at

6  746, 54 Cal. Rptr. 3d at 531 (Ct. App. 2007).  Additionally, the Ninth Circuit Court of Appeals

7  recently explained:

8          To support a loss of consortium claim, marital spouses must allege that
           their partner suffered an injury that is "sufficiently serious and disabling to
9          raise the inference that the conjugal relationship is more than superficially
           or temporarily impaired."  Molien v. Kaiser Found. Hosp., 27 Cal.3d 916,
10         167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); Anderson v. Northrop Corp.,
           203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury
11         may be physical or psychological, but psychological injury must "rise [ ] to
           the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be]
12         sufficient to substantially disturb the marital relationship."  Anderson, 250
           Cal.Rptr. at 195, quoting Molien, 167 Cal.Rptr. 831, 616 P.2d at 813.
13

14  Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008)

15  (modifications in original).

16         The undersigned will recommend that plaintiffs' loss of consortium claim be

17  dismissed with prejudice because they have failed to allege a plausible claim for relief.  First,

18  plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship

19  has been more than superficially affected.  Second, plaintiffs have not alleged any facts regarding

20  how the acts of Virginia Armstrong proximately caused any loss of consortium.  Plaintiffs'

21  allegations of causation are general as to all defendants and are conclusory in nature.  Third,

22  under California law, parents may not pursue a claim loss of filial consortium, and children may

23  not pursue a claim for loss of parental consortium.  See Baxter v. Superior Court, 19 Cal. 3d 461,

24  466, 563 P.2d 871, 874 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858,

25  866 (1977); Meighan v. Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App.

26

1   1995).  Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark, and Jill

2   Winters, as the court previously ordered that references to these minors be stricken from the

3   Third Amended Complaint.  Finally, it would appear facially improper that plaintiffs could

4   recover for loss of consortium with Virginia Armstrong, "their grandmother," who they have

5   named as a defendant in this case.  Plaintiffs have failed to meet the pleading requirements to

6   state a plausible claim for relief, and the undersigned has no reason to believe that these

7   deficiencies could be cured through amendment.

8          H.      Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress
                   (Claim 38)
9

10         Finally, Virginia Armstrong seeks to dismiss plaintiffs' thirty-eighth claim for

11  relief, which seeks damages for intentional infliction of emotional distress ("IIED") against "All

12  Defendants."  (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED

13  claim contains only bare factual allegations and legal conclusions, which are stated generally

14  against all defendants:

15              Paragraphs above incorporated by reference.All [*sic*] Defendants acted
                with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
16              Defendants' conduct on dates referenced above was extreme and
                outrageous. Defendants' conduct is the proximate cause of their distress.
17              Each Plaintiff suffers severe emotional distress as a result of all
                Defendants' conduct.
18

19  (Id.)

20         To state a claim for intentional infliction of emotional distress under California

21  law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

22  conduct by the defendant with the intention of causing, or reckless disregard of the probability of

23  causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

24  (3) actual and proximate causation of the emotional distress by the defendant's outrageous

25  conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

26

1   quotation marks omitted).  The California Supreme Court has explained that "outrageous"

2   conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

3   civilized community," and that "the defendant's conduct must be intended to inflict injury or

4   engaged in with the realization that injury will result."  Id. (citations and quotation marks

5   omitted).

6              As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare

7   factual allegations that incorporate the remainder of the Third Amended Complaint by reference.

8   Plaintiffs do not allege facts demonstrating that Virginia Armstrong's acts rose to the level of

9   "extreme and outrageous" behavior as defined under California, that any of plaintiffs suffered

10  severe or extreme emotional distress, or that Virginia Armstrong's conduct proximately caused

11  any particular plaintiff's emotional distress.  Accordingly, the undersigned will recommend that

12  this claim be dismissed as to Virginia Armstrong.  The undersigned will recommend dismissal

13  with prejudice because nothing in the Third Amended Complaint or plaintiffs' written opposition

14  brief suggests that the identified pleading deficiencies can be cured through amendment.  In their

15  consolidated opposition brief, plaintiffs continue their conclusory allegations regarding the IIED

16  claim as to all "Responding Defendants."  (Dkt. No. 89 at 10.)  In an attempt to substantiate that

17  the Responding Defendants' engaged in outrageous conduct, plaintiffs explain that they "were

18  unlawfully thrown out of their lawfully possessed home, [and were] physically abused in the

19  middle of the night."  (Id.)  Yet there is no suggestion in the opposition brief or the Third

20  Amended Complaint that the elderly Virginia Armstrong's physically abused plaintffs in the

21  middle of the night.  Moreover, as to Virginia Armstrong, any claim arising out of her act of

22  filing an unlawful detainer action in the Nevada County Superior Court is barred by California's

23  absolute litigation privilege.  See, e.g., Silberg, 50 Cal. 3d at 215, 786 P.2d at 371 (recognizing

24  that the absolute litigation privilege found in California Civil Code § 47 applies to tort liability

25  premised on a claim of intentional infliction of emotional distress).

26

IV.      CONCLUSION

   For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

   1. Defendant Virginia Armstrong's motion to dismiss the Third Amended Complaint (Dkt. No. 84) be granted in part.

   2. The civil battery claim alleged on Joy Winters's behalf be dismissed without prejudice.

   3. All of the remaining claims alleged against Virginia Armstrong, except for plaintiff Christy Winters's civil battery claim (claim 9) and plaintiffs' breach of contract claim (claim 22), be dismissed with prejudice.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

   IT IS SO RECOMMENDED.

DATED:  July 26, 2010

           _____
           KENDALL J. NEWMAN
           UNITED STATES MAGISTRATE JUDGE