1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10    BRENT ALLEN WINTERS, et al.,

11              Plaintiffs,                    No. 2:09-cv-00522 JAM KJN PS

12         v.

      DELORES JORDAN, et al.,

13
                Defendants.                    FINDINGS AND RECOMMENDATION
14    _____/

15              Presently before the court is defendants Burrows Security Forces' ("Burrows")

16    and Ryan Arbuckle's ("Arbuckle") joint motion to dismiss plaintiffs' Third Amended Complaint

17    pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 79.)  The court submitted this

18    matter without oral argument.[1]  (Dkt. No. 102.)  The undersigned has fully considered the parties'

19    briefs and the record in this case and, for the reasons that follow, will recommend that:

20    (1) Burrows and Arbuckle's motion be granted, and (2) all of plaintiffs' claims alleged against

21    Burrows and Arbuckle be dismissed with prejudice.

22    ////

23

24

      _____

25         [1]  This action proceeds before this court pursuant to Eastern District of California Local
      Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9,
26    2010 (Dkt. No. 105).

I.      BACKGROUND[2]

Plaintiffs' operative complaint, the Third Amended Complaint,[3] is a wide-ranging, 25-page complaint that alleges, in eight-point font, 38 claims for relief against 61 defendants. (Dkt. No. 66.)  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the requirement that the pleading contain a short and plain statement of the claims alleged instead of recounting all of the evidence and arguments in support of those claims.  (Dkt. No. 56 at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to comply."  (Id.)

The allegations in the Third Amended Complaint regarding Arbuckle and Burrows are, in essence, collateral to an underlying internecine family dispute between the Winters family, of whom plaintiffs are a part, and defendant Virginia Armstrong, who is plaintiff Susan Winters's mother and grandmother to several of the plaintiffs.  Relevant here, this family dispute gave rise to several proceedings in the Nevada County Superior Court, which resulted in two alleged incidents between Arbuckle and some of the plaintiffs.

Burrows is a private security company that provided security services to the Nevada County Superior Court at the time of the alleged, relevant incidents.  At the time of the

_____

[2]  The court previously ordered that all references to the minor plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint because those minors were not represented by counsel.  (Dkt. No. 80; see also Dkt. Nos. 68, 89 at 2 n.1.)

[3]  Plaintiffs filed the operative complaint under the title "Amended Complaint," notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt. No. 66 with Dkt No. 56 at 4.)  The Third Amended Complaint supersedes plaintiffs' "Second Amended Complaint."  (Dkt. No. 15.)  As the court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment of the original complaint (Dkt. No. 56 at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second amendment of the original complaint.

events that serve as the basis of plaintiffs' claims against Arbuckle and Burrows, Arbuckle was employed by Burrows as security personnel at the Nevada County Superior Court and staffed the courthouse's metal detector.  (See Third Am. Compl. at 5-6.)

The two incidents relevant to this motion are alleged to have unfolded as follows. The first alleged incident involves Arbuckle and plaintiffs Cacey and Jennifer Winters, who had traveled to the Nevada County Superior Court.  Although it is unclear from the operative pleading why these plaintiffs were present at the courthouse, the Third Amended Complaint alleges the following:

> 29.  On January 21, 2008, Cacey and Jennifer Winters went to the Nevada County courthouse. Cacey and Jennifer went through the security check. They had to depend upon the actions of Defendant Arbuckle in order to enter the courthouse. Jennifer and Cacey both wore belts.  Jennifer's belt rang the alarm but Arbuckle did not stop Jennifer. Cacey's belt rang the alarm and he stopped her.

> 30.  Arbuckle made her come back through and take her belt off. Cacey believes Arbuckle was sexually harassing her.  He is over six feet tall and three times Cacey Winters' weight. She was physically threatened because he came so close to her body and watched intensely as she took off her belt. She faced him. Jennifer looked at the security guard as he was making Cacey take off her belt and was embarrassed to watch. The security deputy enjoyed humiliating Cacey. He undressed her with his eyes. She had to pull her shirt up to take off her belt.

(Third Am. Compl. at 5.)  Plaintiffs further allege that they filed a complaint with the Nevada County Sheriff's Department.  (Id.)  They allege that, at first, under-sheriff Kimball initially called plaintiff Brent Winters and informed him that Arbuckle would be fired.  However, and it is unclear exactly what plaintiffs are intending to convey in this allegation, plaintiffs contend that Kimball subsequently wrote to plaintiffs "and said they (Cacey and Jennifer) were satisfied with how the Sheriff's Department had handled the situation."  (Id.)  Plaintiffs allegedly "responded that they were not satisfied," and they allege that Arbuckle still works at the courthouse.  (Id.)

The second incident at the courthouse is alleged to have involved Arbuckle and plaintiff Brent Winters.  On April 4, 2008, several members of the Winters family entered the

1    courthouse to attend a hearing.  Plaintiffs allege that "[a]s plaintiff Brent Winters entered the

2    courthouse, Arbuckle "security deputy" assaulted Brent Winters, threatened him with arrest, and

3    challenged him to step outside and fight."  (Third Am. Compl. at 6.)  They further allege that as

4    the Winters family left the courthouse, "Arbuckle again attempted to assault Brent Winters and

5    get him to fight with him."  (Id.)

6            Plaintiffs' Third Amended Complaint contains no material factual allegations

7    against Burrows.[4]  However, it alleges the following eleven claims against Arbuckle: civil battery

8    (claim 9); civil assault (claim 10); "Sexual Assault and Harassment" (claim 11); trespass to

9    chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42

10   U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); violation of the First Amendment of the

11   U.S. Constitution (claim 26); conspiracy to violate the Racketeer Influenced and Corrupt

12   Organizations Act ("RICO"), 18 U.S.C. 1962(d) (claim 31); loss of consortium (claim 36); and

13   intentional infliction of emotional distress (claim 38).  Claims 13, 14, 15, 18, 31, 36, and 38 are

14   also alleged against Burrows by virtue of the fact that plaintiffs have alleged these claims against

15   "All Defendants."  In response to plaintiffs' Third Amended Complaint, Arbuckle and Burrows

16   filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 79.)

17           There are several, separately-filed motions pending before the court.  Despite the

18   court's previous order that plaintiffs file a separate opposition to each pending motion (Dkt. No.

19   89 at 6), plaintiffs filed a consolidated opposition.  (See Dkt. No. 99.)  Plaintiffs filed their

20   opposition on January 13, 2010, despite a court-ordered deadline of January 6, 2010.

21   (Compare Dkt. Nos. 89 with 99.)  Although plaintiffs' opposition was untimely and need not be

22   _____

23       [4] As to Burrows, the Third Amended only alleges that Burrows failed to establish "right
     policy and custom," which "has encouraged, and shown acquiescence in, violations of Plaintiffs'
24   Fourth and Fourteenth Amendment rights."  (Third Am. Compl. at 3.)  However, the remainder
     of plaintiffs' operative pleading contains no additional allegations in this regard and gives no
25   indication that plaintiffs are pursuing claims against Burrows that pertain to alleged violations of
     plaintiffs' Fourth and/or Fourteenth Amendment rights.

26

considered, the undersigned has, out of an abundance of caution, considered that opposition in

arriving at the findings and recommendations that follow.

II.    LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

1949).

The court accepts "all facts alleged as true and construes them in the light most

favorable to the plaintiff."  County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1241 n.1

(9th Cir. 2009).  The court is "not, however, required to accept as true conclusory allegations that

are contradicted by documents referred to in the complaint, and [the court does] not necessarily

assume the truth of legal conclusions merely because they are cast in the form of factual

allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The court must

construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a

plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it

1  appears at all possible that the plaintiff can correct the defect.[5]  See Lopez v. Smith, 203 F.3d

2  1122, 1130-31 (9th Cir. 2000) (en banc).  In ruling on a motion to dismiss pursuant to Rule

3  12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits

4  attached to the complaint, and matters properly subject to judicial notice." Outdoor Media

5  Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks

6  omitted).

7  III.    DISCUSSION

8          A.    Plaintiffs' Section 1983 Claims Against Arbuckle and Burrows (Claims 14, 15,
9                and 18)

10         Plaintiffs sued "All Defendants" for violation of 42 U.S.C. § 1983 (claim 14), for

11 engaging in a conspiracy to violate 42 U.S.C. § 1983 (claim 15), and for "civil conspiracy,"

12 which appears to be an additional claim alleging a conspiracy to violate Section 1983.  (See

13 Third Am. Compl. at 19-20.)  Arbuckle and Burrows move to dismiss these claims for failure to

14 state a claim on the grounds that: (1) neither Arbuckle nor Burrows are, or are alleged to be, state

15 actors or took action under color of state law; and (2) plaintiffs have not alleged that Arbuckle or

16 Burrows participated in any act that deprived plaintiffs of their constitutional or statutory rights.

17         "Section 1983 imposes civil liability upon an individual who 'under color [of state

18 law] . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation

19 of any rights, privileges or immunities secured by the Constitution and laws.'" Franklin v. Fox,

20 312 F.3d 423, 444 (9th Cir. 2002) (quoting 42 U.S.C. § 1983).  "To state a claim under § 1983, a

21 plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

22 the United States was violated, and (2) that the alleged violation was committed by a person

23

24      [5]  Although plaintiffs are proceeding without counsel in this action, the undersigned notes
    that plaintiff Brent Winters is alleged to be a licensed, practicing attorney.  (Third Am. Compl. at
25  21 (referring to Brent Allan Winters as "a licensed attorney"); see also Dkt. No. 89 at 13
    (alleging damage to "Brent Allan Winters's law practice").)
26

acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th

Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  Conclusory allegations of a violation

of Section 1983 or a conspiracy to violate Section 1983 will not survive a motion to dismiss.

See, e.g., Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003)

(affirming dismissal of plaintiff's second amended complaint as a result of plaintiff's

"conclusory allegations" of a conspiracy to deprive him of his constitutional rights in violation of

Section 1983); Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusionary

allegations, unsupported by facts, have consistently been rejected as insufficient to state a claim

under the Civil Rights Act.").

          As an initial matter, the undersigned rejects Arbuckle and Burrows's argument

that plaintiffs' Section 1983 claims should be dismissed with prejudice as to them on the grounds

that plaintiffs have not alleged that Arbuckle or Burrows are "state actors."  Although plaintiffs

have not made such an express allegation, and dismissal without prejudice would be warranted

on that basis, it is apparent from plaintiffs' opposition brief that plaintiffs might be able to allege

action under color of state law in an amended pleading.  To determine whether a private actor

acts under color of state law, the court must evaluate whether the alleged infringement of federal

rights is "fairly attributable" to the government even though it is alleged to have been committed

by private actors.  See Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  The Supreme

Court has explained that "state action may be found if, though only if, there is such a close nexus

between the State and the challenged action that seemingly private behavior may be fairly treated

as that of the State itself."  Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531

U.S. 288, 295 (2001) (citation and quotation marks omitted)).  Plaintiffs' opposition suggests that

Burrows contracts with Nevada County to provide security services at the Nevada County

Superior Court's courthouse entrance.  This suggests, at least at the pleading stage, the existence

of a possible sufficient nexus between Burrows or its employees and a state actor, Nevada

1    County, to support an allegation that acts undertaken by Arbuckle or Burrows were under color

2    of state law.

3           Nevertheless, the undersigned will recommend that claims 14, 15, and 18 be

4    dismissed as to Arbuckle and Burrows with prejudice.  As to claim 14, alleging that "All

5    Defendants" individually violated plaintiffs' constitutional rights, plaintiffs allege:

6                  Paragraphs above incorporated by reference.  Defendants, by their actions
                   and acting under the color of law, subjected Plaintiffs, and caused
7                  Plaintiffs to be subjected, to the deprivations of their rights, privileges, and
                   immunities secured by the Constitution and laws of the State of California
8                  and of the United States of America, Plaintiffs claim damages under 42
                   U.S.C. § 1983 for their injuries set forth above.
9

10   (Third Am. Compl. at 19.)[6]  Plaintiffs' fourteenth claim for relief should be dismissed with

11   prejudice because plaintiffs' allegations related to this claim are conclusory to a fatal degree.

12   Plaintiffs have only alleged a series of legal conclusions, which are unsupported by any factual

13   allegations substantiating a violation of Section 1983.  See Sherman, 549 F.2d at 1290; see also

14   Caviness, 590 F.3d at 812 ("[C]onclusory allegations of law and unwarranted inferences are

15   insufficient to defeat a motion to dismiss for failure to state a claim" (citation and quotation

16   marks omitted, modification in original).).  Additionally, plaintiffs' Third Amended Complaint

17   fails to plead an essential element of a Section 1983 claim—it does not allege a particular right

18   secured by the Constitution or laws of the United States that was purportedly violated by either

19   Arbuckle or Burrows.  See Long, 442 F.3d at 1185.  Nothing stated in the remainder of the Third

20   Amended Complaint or plaintiffs' opposition brief suggests that these pleading deficiencies

21   could be remedied through the filing of a fourth amended complaint.

22   _____

23          [6]  Although plaintiffs incorporate the remainder of their complaint by reference, the rest
     of the Third Amended Complaint and plaintiffs' opposition to the pending motion do not suggest
24   exactly how Arbuckle or Burrows individually violated plaintiffs' civil rights.  To the extent that
     plaintiffs are alleging that Arbuckle's alleged violations of plaintiffs' First Amendment rights are
25   the basis for the express Section 1983 claims, their claims would be redundant.  In any event,
     plaintiffs' First Amendment claim is subject to dismissal for the reasons stated below.

26

Plaintiffs' Section 1983 conspiracy claims, claims 15 and 18, are also fatally flawed.  As an initial matter, the undersigned notes that plaintiffs have not alleged any specific facts relating to Arbuckle's or Burrows's participation in conspiracies that give rise to these claims.  In their fifteenth claim, with no mention of Arbuckle or Burrows, plaintiffs allege that "Defendants Logsdon, Michael Armstrong, Jordan, Wade, Harpainter, and Ford worked in concert with Defendants from the Nevada County Superior Court, Sheriff's Department, Adult Protective Services, and other agencies." (Third Am. Compl. at 20.)  However, they also allege that a state court judge entered a restraining order "on his own motion." (Id.)  Additionally, plaintiffs allege that defendants Logsdon and Harpainter "worked in concert with" with defendants Chelsey and Frooman. (Id.)  Elsewhere in the Third Amended Complaint, defendant Harpainter is alleged to have been an attorney that the Nevada County Superior Court appointed for Virginia Armstrong in connection with certain restraining order proceedings before that court. (Id. at 7.)  Defendants Chelsey and Frooman are alleged to be Assistant United States Attorneys in Illinois who were prosecuting plaintiff Brent Winters, an attorney, on criminal charges and wrote a letter to defendant Logsdon offering assistance with the unlawful detainer action. (Id. at 6, 24.)  Plaintiffs' eighteenth claim is largely redundant of the fifteenth claim, at least as it relates to allegations, or the lack thereof, against Arbuckle and Burrows.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999)).  The agreement need not be overt, however, and "may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id. (citation and quotation marks omitted).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Id. (quoting United Steelworkers of

1   Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)).

2          Plaintiffs' fifteenth and eighteenth claims for relief fail insofar as Arbuckle and

3   Burrows are concerned.  Initially, it bears repeating that plaintiffs have alleged no facts regarding

4   Arbuckle or Burrows insofar as any Section 1983 conspiracy is concerned.  Moreover, plaintiffs

5   have not alleged facts supporting the existence of an agreement between Arbuckle or Burrows

6   and any other party to violate plaintiffs' constitutional rights.  In their opposition, plaintiffs rely

7   on the allegation that the Nevada County sheriff has "authority" over Burrows with respect to the

8   provision of courthouse security.  However, this allegation still does not suggest an agreement to

9   violate plaintiffs' constitutional rights.  Finally, as with their fourteenth claim for relief, plaintiffs

10  have not alleged any constitutional right or law of the United States that was purportedly violated

11  by either Arbuckle or Burrows.

12         The undersigned concludes that plaintiffs have failed to state a claim on which

13  relief can be granted and that no amendment could cure plaintiffs' fatally deficient pleading.

14  Accordingly, the undersigned will recommend the dismissal of plaintiffs' fourteenth, fifteenth,

15  and eighteenth claims for relief with prejudice.

16         B.     Plaintiffs' First Amendment Claim (Claim 26)

17         In their twenty-sixth claim for relief, plaintiffs allege that judges and court staff at

18  the Nevada County Superior Court, who are defendants in this action, along with defendant

19  Virginia Armstrong and Arbuckle violated plaintiffs' First Amendment rights to petition for the

20  redress of grievances by preventing plaintiffs access to the Superior Court to file papers and

21  otherwise respond to written and spoken allegations in proceedings before that court.  (Third Am.

22  Compl. at 23.)  Arbuckle and Burrows[7] move to dismiss this claim, although more out of a

23  generalized sense of outrage and incredulity than on any substantive legal grounds.  Nevertheless,

24  it is apparent from the face of plaintiffs' pleading that this claim fails as a matter of law.

25

26         [7] Burrows is not expressly named as a defendant with respect to this claim.

The First Amendment to the U.S. Constitution provides a constitutional right to petition the government for a redress of grievances, which includes a "reasonable right of access to the courts." Hudson v. Palmer, 468 U.S. 517, 523 (1984); see also Cal. Motor Transport Co v. Trucking Unlimited, 404 U.S. 508, 612 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (stating, in the context of a First Amendment retaliation claim, that "[t]he right of access to the courts is subsumed under the first amendment right to petition the government for redress of grievances").  Although a right of reasonable access to the courts exists generally, plaintiffs' claim, which must relate to Arbuckle's interaction with Cacey Winters insofar a claim alleged against Arbuckle and Burrows is concerned, fails for at least two reasons.  First, plaintiffs' Third Amended Complaint in no way alleges that Cacey Winters was exercising her First Amendment right of petition when the incident with Arbuckle occurred.[8]  For example, that pleading is silent with respect to Cacey Winters's purpose for visiting the court that day.  Second, and more fundamentally, the Third Amended Complaint does not allege that Cacey Winters suffered any actual or threatened injury resulting from the alleges inadequate access to the court, which is a requirement of an "access to courts" claim and, more generally, Article III standing.  See Barren v. Harrington, 152 F.3d 1193, 1195 (9th Cir. 1998) ("To state a valid claim for denial of access to the courts, a plaintiff must allege an actual injury.") (citing Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)); see also, e.g., Long Beach Area Chamber of Commerce v. City of Long Beach, 603 F.3d 684, 689 (9th Cir. 2010) ("To establish Article III standing, a plaintiff must show that it has suffered an 'injury in fact' that is (a) concrete and particularized and

---

[8]  Plaintiffs allege, generally and in conclusory manner, that they were prevented from filing written documents with the court and making oral statements at hearings.  (Third Am. Compl. at 23.)  However, these allegations, even though of a conclusory nature, are consistent with the factual allegations related to claims against the Nevada County Superior Court judges and staff members, not the allegations related to either Cacey or Brent Winters's interactions with Arbuckle.

1  (b) actual or imminent, not conjectural or hypothetical, that the injury is fairly traceable to the

2  challenged action of the defendant, and that it is likely, as opposed to merely speculative, that the

3  injury will be redressed by a favorable decision" (citation and quotation marks omitted).).  Even

4  taking plaintiffs' allegations as true and assuming that Cacey Winters was engaged in petitioning

5  activity merely by entering the courthouse, Cacey Winters was not actually denied reasonable

6  access to the Nevada County Superior Court.  At most, Cacey Winters was minimally delayed

7  from entering the courthouse as a result of a security screening.  It can hardly be said that such

8  alleged incidents constitute an actual injury relative to a claim for denial of reasonable access to

9  the courts.

10         Accordingly, plaintiffs have failed to allege a plausible First Amendment claim

11  against Arbuckle or Burrows.  Because nothing in the Third Amended Complaint or plaintiffs'

12  opposition suggests that these deficiencies can be cured through amendment, the undersigned

13  will recommend that plaintiffs' twenty-sixth claim for relief be dismissed with prejudice.

14         C.     Plaintiffs' RICO Conspiracy Claim (Claim 31)

15         Arbuckle and Burrows also move to dismiss plaintiffs' thirty-first claim for relief,

16  which alleges that "All Defendants"—over sixty defendants including private actors, state court

17  judges and employees, law enforcement, and local agencies—conspired to commit racketeering

18  activity in violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am.

19  Compl. at 24.)  Plaintiffs allege that all defendants in this case conspired to "maintain a federal

20  prosecution against Plaintiff Brent Winters in Illinois."  (Id.)  They further allege that on July 9,

21  2002, defendant Jan Paul Miller agreed with an individual named Michael McCuskey and

22  defendant Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters

23  on false charges" knowing that the presiding judge was biased.  (Id.)  They also allege that

24  "Agent Pogue," who is not a defendant here, contributed to the conspiracy by testifying based on

25  "conjecture" at Brent Winters's sentencing hearing.  (Id.)  In addition, they vaguely allege an

26

1    undefined "pattern of misrepresentation" intended to "defraud the Winters of their rights and

2    their property." (Id.)  Moreover, plaintiffs allege the "concealment of critical data," including a

3    memorandum drafted by Judge Anderson of the Nevada County Superior Court. (Id.)  Other than

4    including their names in a laundry list of over 40 defendants, plaintiffs do not allege any specific

5    facts with respect to Arbuckle's or Burrows's participation in this alleged conspiracy.

6              "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

7    enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

8    (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

9    Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted).  "To

10   state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least

11   two predicate acts."  Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations

12   omitted).  Furthermore, a plaintiff must also show that the injury to his business or property was

13   proximately caused by the prohibited conduct and that he has suffered a concrete financial loss.

14   Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083, 1086 (9th Cir. 2002).

15             Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

16   the allegations are of such a vague and conclusory nature that they do not state a plausible claim

17   for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

18   "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

19   alleged a "concrete financial loss" or injury to business or property proximately caused by the

20   conspiracy.  At most, plaintiffs' opposition to the present motion to dismiss alleges that the

21   purported RICO conspiracy damaged plaintiff Brent Winters's law practice, but provides no

22   information about the nature of the injury or a concrete financial loss.  Nothing contained in

23   plaintiffs' Third Amended Complaint or opposition brief suggests that they can amend their

24   pleading to state a plausible claim for relief.  Accordingly, plaintiffs' thirty-first claim for relief

25   should be dismissed with prejudice.

26

D.     Plaintiffs' State Law Claim for Civil Battery (Claim 9)

In their ninth claim for relief, plaintiffs list Arbuckle's name along with several other defendants against whom plaintiffs allege a claim of civil battery.  However, this portion of the operative pleading alleges no facts with respect to how Arbuckle[9] allegedly battered any of the plaintiffs.  (See Third Am. Compl. at 15-16.)  Having considered the remaining allegations that pertain to Arbuckle and Burrows, the undersigned concludes that plaintiffs' battery claim should be dismissed with prejudice.

Under California law, "[t]he elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); accord Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (same).

Plaintiffs' battery claim fails at the first element.  Nowhere in the Third Amended Complaint do plaintiffs allege any physical contact between Arbuckle or any of the plaintiffs.  Accordingly, plaintiffs have failed to allege a legally cognizable claim of civil battery against Arbuckle or Burrows, Arbuckle's employer.  Accordingly, the undersigned will recommend that plaintiffs' battery claim alleged against Arbuckle be dismissed with prejudice, and that this claim also be dismissed with prejudice to the extent that plaintiffs intended to allege a claim of battery against Burrows.

E.     Plaintiffs' State Law Claim for Civil Assault (Claim 10)

Plaintiffs further allege that Arbuckle assaulted plaintiff Brent Winters at the courthouse.  In addition to the allegations related above, plaintiffs further allege the following:

////

---

[9] Burrows is not expressly named as a defendant with respect to this claim.

**03/21/08**—Arbuckle attempted to force a physical altercation as Brent Allan Winters entered the Nevada County Courthouse in the presence of the Winters Family. Arbuckle, by words coupled with acts, baited Brent Winters, while standing close to Brent, challenging him to a fist fight saying, maybe you would like to step outside with me.  Thus did Arbuckle put Brent Winters in apprehension of an immediate battery.

(Third Am. Compl. at 17 (emphasis in original.)[10]  In essence, Arbuckle and Burrows[11] move to dismiss this claim on the grounds that: (1) "there are no allegations reflecting any intent to inflict harmful contact by moving parties which led anyone in the WINTERS family to fear imminent or immediate injury," and (2) the defense of consent vitiate plaintiffs' claim because Arbuckle's request for mutual combat would require the consent of Brent Winters before any physical altercation would ensure.  (See Defs.' Memo. of P. & A. in Supp. of Mot. to Dismiss at 8.)

"'A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm.'"  Thing v. La Chusa, 48 Cal. 3d 644, 649, 771 P.2d 814, 816 (1989) (quoting Lowry v. Standard Oil Co. of Cal., 63 Cal. App. 2d 1, 7, 146 P.2d 57, 60 (Ct. App. 1944)).  "Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."  Lowry, 63 Cal. App. 2d at 6-7, 146 P.2d at 60.  "The tort of assault is complete when the anticipation of harm occurs."  Kiseskey v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d 222, 232, 192 Cal. Rptr. 492, 498 (Ct. App. 1983).[12]  "Mere words, however threatening, will not amount to an assault."

---

[10]  The undersigned notes that in different portions of the Third Amended Complaint, plaintiffs allege that the incident between Arbuckle and plaintiff Brent Winters occurred on different dates.  (Compare Third Am. Compl. at 6 (alleging that the incident took place on April 4, 2008, and id. at 17 (alleging that the incident took place on March 21, 2008).)  Based on the similarity of the factual allegations in both portions of the Third Amended Complaint, the undersigned presumes that only one incident occurred between Arbuckle and Brent Winters.

[11]  Burrows is not expressly named as a defendant with respect to this claim.

[12]  In an appeal involving an allegation of an assault by law enforcement personnel, the Ninth Circuit Court of Appeals stated that the plaintiff "would need to establish that (1) the officers threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to him that they were about to carry out the threat; (3) he did not consent to the conduct; (4) he was

1    B.E. Witkin et al., 5 Witkin Summ. of Cal. Law (Torts) § 383 (10th ed. 2005 & 2009 Supp.)

2    (citing Restatement (Second) of Torts § 31 (2010)).

3              Here, Brent Winters only alleges that Arbuckle challenged him to a "fist fight

4    saying, maybe you would like to step outside with me." (See Third Am. Compl. at 17.)  These

5    allegations of an invitation to fight, even if taken as true, fail to substantiate that Arbuckle had

6    the unlawful intent to inflict *immediate* injury on Brent Winters.  At most, it was an unaccepted

7    invitation to a fight through the use of words, which does not amount to a prima facie case of

8    civil assault.  And although plaintiffs allege in conclusory fashion that Arbuckle's challenge to

9    Brent Winters was accomplished through "words coupled with acts," there are no factual

10   allegations suggesting any acts in furtherance of an alleged assault other than the allegation that

11   Arbuckle stood near Brent Winters.  Accordingly, the undersigned will recommend that

12   plaintiffs' assault claim be dismissed with prejudice.

13        F.    Plaintiffs' State Law Claim for "Sexual Assault and Harassment" (Claim 11)

14             Arbuckle and Burrows[13] also move to dismiss plaintiffs' claim of "Sexual Assault

15   and Harassment," which relates to Arbuckle's interaction with plaintiff Cacey Winters at the

16   Nevada County courthouse, wherein Arbuckle, a courthouse security officer, allegedly required

17   Cacey Winters to pass through a metal detector twice and watched her "intensely," or "undressed

18   her with his eyes," while Cacey Winters complied with his command to remove her belt after that

19   belt set off the metal detector's alarm.  (See Third Am. Compl. at 5.)[14]  Although it is apparent

20   ───────────────────

21   harmed; and (5) the officers' conduct was a substantial factor in causing the harm."  Tekle, 511
     F.3d at 855 (citing Judicial Council of Cal., Civil Jury Instructions No. 1301 (2006)).

22        [13]  Burrows is not expressly named as a defendant with respect to this claim.

23        [14]  As with the assault claim addressed above, plaintiffs contradictorily allege that the
     incident between Arbuckle and Cacey Winters occurred on two different dates.  In the
24   preliminary allegations of the Third Amended Complaint, plaintiffs allege that this incident took
     place on January 21, 2008.  (Third Am. Compl. at 5.)  Later in that pleading, plaintiffs allege that
25   this incident took place on "02/08." (Id. at 18.)  Nevertheless, the undersigned will presume that
     plaintiffs' are only alleging a single incident between Arbuckle and Cacey Winters.

26

that the sexual assault aspect of this claim is one alleging civil assault under California common law, the "sexual harassment" component of this claim is unclear with respect to identification of the statute or other authority pursuant to which it is brought.[15]   Arbuckle and Burrows challenge this claim on the grounds that: (1) insofar as this claim is one for civil assault, plaintiffs have not sufficiently alleged that Arbuckle demonstrated an unlawful intent to inflict immediate injury on Cacey Winters; and (2) insofar as the claim is one for sexual harassment, plaintiffs must intend to bring this claim pursuant to California Civil Code § 51.9, and plaintiff cannot sufficiently plead a claim thereunder.

Plaintiffs' claim of "Sexual Assault and Harassment" fails to the extent that it is a claim for civil assault under California law.  As Arbuckle and Burrows argue, none of the facts alleged in the Third Amended Complaint suggests that Arbuckle demonstrated an unlawful intent to inflict immediate injury on Cacey Winters.  See Lowry, 63 Cal. App. 2d at 6-7, 146 P.2d at 60. Taking the facts alleged as true, Arbuckle made Cacey Winters travel through a metal detector twice, made her take off her belt, and leered at her while she removed her belt.  These facts do not demonstrate that Arbuckle intended to inflict immediate injury on Cacey Winters.

Insofar as the "sexual harassment" component of this claim is concerned, the undersigned agrees with Arbuckle and Burrows that plaintiffs appear to be pursuing a sexual harassment claim pursuant to California Civil Code § 51.9, which provides a claim for relief arising from sexual harassment in business relationships outside of the workplace.  See Hughes v. Pair, 46 Cal. 4th 1035, 1044, 209 P.3d 963, 971 (2009).[16]  Plaintiffs have not pled, and cannot plead, a legally cognizable claim pursuant to Section 51.9.  In relevant part, Section 51.9

[15]  The undersigned notes that plaintiffs offer no clarification regarding Cacey Winters's sexual harassment claim in their untimely filed written opposition to the pending motion.

[16]  Although Arbuckle and Burrows assert that California Civil Code § 51.9 falls within the Unruh Civil Rights Act, Cal. Civ. Code § 51, the California Supreme Court has clarified that Section 51.9 is not part of the Unruh Civil Rights Act.  Hughes, 46 Cal. 4th at 1044 n.1, 209 P.3d at 971 n.1.

17

provides:

> (a) A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves *all of the following elements*:
>
> (1) There is a business, service, or professional relationship between the plaintiff and defendant. . . .
>
> (2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe.
>
> (3) There is an inability by the plaintiff to easily terminate the relationship.
>
> (4) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described in paragraph (2).

Cal. Civ. Code § 51.9(a) (emphasis added).

Plaintiff Cacey Winters's claim should be dismissed for at least two reasons. First, even assuming that Cacey Winters has sufficiently alleged that she had a qualifying relationship with Arbuckle, which is doubtful, the Third Amended Complaint does not allege that Arbuckle's conduct was "pervasive or severe." Cal. Civ. Code § 51.9(a)(2). To establish "pervasive or severe" conduct, a plaintiff must show that the "alleged sexually harassing conduct was sufficiently pervasive or severe as to alter the conditions of the business relationship." Hughes, 46 Cal. 4th at 1048, 209 P.3d at 974. Arbuckle's conduct was not "pervasive" because his interaction with Cacey Winters was an isolated incident. See id. at 1049, 209 P.3d at 974 ("To be *pervasive*, the sexually harassing conduct must consist of more than a few isolated incidents" (citation and quotation marks omitted).). Moreover, Arbuckle's conduct did not constitute a "severe" isolated incident because it is not akin to a physical assault or threat thereof. See id. at 1049, 209 P.3d at 975.

Second, Cacey Winters's Section 51.9 claim fails because she cannot prove that she was unable to "easily terminate the relationship." See Cal. Civ. Code § 51.9(a)(3). Cacey

1    Winters has not alleged that she was forcibly detained during this incident and could not have left

2    the courthouse at any time.  Moreover, she also has not alleged that she was prevented from

3    proceeding through the security area such that she was unable to conduct her business at the

4    Superior Court that day.  Thus, she cannot satisfy the basic elements of a Section 51.9 claim.

5           Based on the foregoing, the undersigned will recommend that plaintiffs' claim for

6    "Sexual Assault and Harassment" be dismissed with prejudice.

7           G.    Plaintiffs' State Law Claim for Trespass to Chattels (Claim 13)

8           Plaintiffs further allege that all defendants, including Arbuckle and Burrows,

9    committed the tort of trespass to chattels.  (Third Am. Compl. at 19.)

10          "[T]he tort of trespass to chattels allows recovery for interferences with

11   possession of personal property not sufficiently important to be classed as conversion, and so to

12   compel the defendant to pay the full value of the thing with which he has interfered."  Intel Corp.

13   v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has

14   stated that "[t]respass remains as an occasional remedy for minor interferences, resulting in some

15   damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of

16   conversion."  Id. at 1351, 71 P.3d at 302 (citation omitted, modification in original).

17          Beyond vague allegations and legal conclusions, plaintiffs have not alleged that

18   Arbuckle or Burrows specifically interfered with any particular chattel belonging to plaintiffs,

19   which in turn proximately caused harm to plaintiffs.[17]  See id. at 1350-51, 71 P.3d at 302 ("Under

20   California law, trespass to chattels lies where an intentional interference with the possession of

21   personal property has proximately caused injury" (citation and quotation marks omitted).).

22   Nothing in plaintiffs' Third Amended Complaint or written opposition suggests that plaintiffs

23

24          [17]  The term "chattel" is defined as "[m]ovable or transferable property; esp., personal
     property."  Black's Law Dictionary at 229 (7th ed. 1999).  To the extent that a real property
25   interest is concerned, the term "chattel real" is defined as "a real-property interest that is less than
     a freehold or fee, such as a leasehold."  Id.
26

could cure this fundamental failing through amendment.  Accordingly, the undersigned will

recommend that plaintiffs' claim for trespass to chattels be dismissed with prejudice as to

Arbuckle and Burrows.

   H. <u>Plaintiffs' State Law Claim for Loss of Consortium (Claim 36)</u>

   In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

liable for loss of consortium.  (Third Am. Coml. at 25.)  Although plaintiffs incorporate the

remainder of their complaint by reference, their allegations are limited to the following:

> Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan,
> Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered
> loss of consortium with each other and their grandmother as a result of the
> actions of the Defendants.

(<u>Id</u>.)

   One California court has cited with approval a California practice manual that

defines the tort of loss of consortium as having the following four elements:

> (1) a valid and lawful marriage between the plaintiff and the person
> injured at the time of the injury;
>
> (2) a tortious injury to the plaintiff's spouse;
>
> (3) loss of consortium suffered by the plaintiff; and
>
> (4) the loss was proximately caused by the defendant's act.

<u>Hahn v. Mirda</u>, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App.

2007) (citation omitted).  Additionally, "[a] cause of action for loss of consortium is, by its

nature, dependent on the existence of a cause of action for tortious injury to a spouse."  <u>Id</u>. at

746, 54 Cal. Rptr. 3d at 531 (Ct. App. 2007).  Additionally, the Ninth Circuit Court of Appeals

recently explained:

> To support a loss of consortium claim, marital spouses must allege that
> their partner suffered an injury that is "sufficiently serious and disabling to
> raise the inference that the conjugal relationship is more than superficially
> or temporarily impaired." *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916,

167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); *Anderson v. Northrop Corp.*,
203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same). The injury
may be physical or psychological, but psychological injury must "rise [ ] to
the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be]
sufficient to substantially disturb the marital relationship." *Anderson*, 250
Cal.Rptr. at 195, quoting *Molien*, 167 Cal.Rptr. 831, 616 P.2d at 813.

Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008)
(modifications in original).

   The undersigned will recommend that plaintiffs' loss of consortium claim be
dismissed with prejudice because they have failed to allege a plausible claim for relief. First,
plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship
has been more than superficially affected. Second, plaintiffs have not alleged any facts regarding
how the acts of Arbuckle or Burrows proximately caused any loss of consortium. Plaintiffs'
allegations of causation are general as to all defendants and are conclusory in nature. Third,
under California law, parents may not pursue a claim loss of filial consortium, and children may
not pursue a claim for loss of parental consortium. See Baxter v. Superior Court, 19 Cal. 3d 461,
466, 563 P.2d 871, 874 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858,
866 (1977); Meighan v. Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App.
1995). Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark, and Jill
Winters, as the court previously ordered that references to these minors be stricken from the
Third Amended Complaint. Finally, it would appear facially improper that plaintiffs could
recover for loss of consortium with "their grandmother," Virginia Armstrong, who they have
named as a defendant in this case. Plaintiffs have failed to meet the pleading requirements to
state a cognizable claim for relief, and the undersigned has no reason to believe that these
deficiencies could be cured through amendment.

////

////

1     I.    <u>Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress</u>
<u>(Claim 38)</u>

2

3          Finally, Arbuckle and Burrows move to dismiss plaintiffs' thirty-eighth claim for

4 relief, which seeks damages for intentional infliction of emotional distress ("IIED") against "All

5 Defendants." (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED

6 claim contains only bare factual allegations and legal conclusions, which are stated generally

7 against all defendants:

8         Paragraphs above incorporated by reference.All [*sic*] Defendants acted
          with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
9         Defendants' conduct on dates referenced above was extreme and
         outrageous. Defendants' conduct is the proximate cause of their distress.
10        Each Plaintiff suffers severe emotional distress as a result of all
         Defendants' conduct.

11

12 (<u>Id</u>.)

13          To state a claim for intentional infliction of emotional distress under California

14 law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

15 conduct by the defendant with the intention of causing, or reckless disregard of the probability of

16 causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

17 (3) actual and proximate causation of the emotional distress by the defendant's outrageous

18 conduct." <u>Hughes v. Pair</u>, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

19 quotation marks omitted).  The California Supreme Court has explained that "outrageous"

20 conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

21 civilized community," and that "the defendant's conduct must be intended to inflict injury or

22 engaged in with the realization that injury will result."  <u>Id</u>. (citations and quotation marks

23 omitted).

24          As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare

25 factual allegations that incorporate the remainder of the Third Amended Complaint by reference.

26

Plaintiffs do not allege facts demonstrating that Arbuckle's acts rose to the level of "extreme and outrageous" behavior as defined under California, that any of plaintiffs suffered severe of extreme emotional distress, or that Arbuckle's conduct proximately caused any particular plaintiff's emotional distress.  At most, Arbuckle made plaintiff Cacey Winters pass through a metal detector twice and stared at her while she removed her belt, and tried to pick a fight with plaintiff Brent Winters.  Even assuming the truth of plaintiffs' allegations, Arbuckle's acts do not rise to the level of extreme and outrageous conduct required to state a cognizable IIED claim. Accordingly, the undersigned will recommend that this claim be dismissed as to Arbuckle and Burrows.

The undersigned will recommend dismissal with prejudice because nothing in the Third Amended Complaint or plaintiffs' written opposition brief suggests that the identified pleading deficiencies can be cured through amendment.  In their consolidated opposition brief, plaintiffs continue their conclusory allegations regarding the IIED claim as to all "Responding Defendants." (Dkt. No. 89 at 10.)  In an attempt to substantiate that the Responding Defendants' engaged in outrageous conduct, plaintiffs explain that they "were unlawfully thrown out of their lawfully possessed home, [and were] physically abused in the middle of the night." (Id.)  Yet there is no suggestion in the opposition brief or the Third Amended Complaint that these acts are attributable to Arbuckle or Burrows.

IV.   CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Defendants Burrows Security Forces' and Ryan Arbuckle's motion to dismiss the Third Amended Complaint (Dkt. No. 79) be granted; and

2.      All of plaintiffs' claims alleged against defendants Burrows Security Forces and Ryan Arbuckle be dismissed with prejudice.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

DATED:  July 29, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE