IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENT ALLEN WINTERS, et al.,

      Plaintiffs,             No. 2:09-cv-00522 JAM KJN PS

   v.

DELORES JORDAN, et al.,

      Defendants.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Presently before the court is defendant Dewey Harpainter's motion to dismiss plaintiffs' Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (<u>See</u> Dkt. No. 131.)  Because oral argument would not materially aid the resolution of the pending motion, this matter was submitted on the briefs and record without a hearing.  <u>See</u> Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g).  (Dkt. No. 102.)  The undersigned has fully considered the parties' briefs and the record in this case and, for the reasons that follow, recommends that all of plaintiffs' claims against Harpainter, except the claim of trespass on land asserted by plaintiffs Cacey and Jennifer Winters, be dismissed with prejudice.

_____

[1] This action proceeds before this court pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

1

I.      BACKGROUND

Plaintiffs' Third Amended Complaint[2] is a wide-ranging, 25-page complaint that alleges, in eight-point font, over two-dozen claims for relief against over 60 defendants.[3] (Dkt. No. 66.)  Several of plaintiffs' claims are alleged against "All Defendants," with no differentiation in regards to the alleged conduct of each defendant that supports each such claim. In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the requirement that the pleading contain a short and plain statement of the claims alleged instead of recounting all of the evidence and arguments in support of those claims.[4]  (Order and Findings & Recommendations, Aug. 24, 2009, at 3.)  The court had stated that "[t]his will be plaintiffs' last chance to comply."  (Id.)

Generally, the claims against Harpainter arise out of an underlying family dispute between the Winters family and defendant Virginia Armstrong, who is, among other things, the mother of plaintiff Susan Winters and grandmother to other plaintiffs.  The Third Amended

_____

[2]      Plaintiffs filed the operative complaint under the title "Amended Complaint," notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt. No. 66 with Order and Findings & Recommendations, Aug. 24, 2009, at 4, Dkt No. 56.)  The Third Amended Complaint supersedes plaintiffs' "Second Amended Complaint" (Dkt. No. 15).  As the court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment of the original complaint (Order and Findings & Recommendations, Aug. 24, 2009, at 1 n.1), and the operative Third Amended Complaint represents plaintiffs' second amendment of the original complaint.

[3]      In an order dated September 24, 2009, the court ordered that all references to the minor plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint because those minors were not represented by an attorney or attorneys. (Order, Sept. 24, 2009, Dkt. No. 68; see also Order, Nov. 13, 2009, at 2 n.1, Dkt. No. 89.)  On February 1, 2011, the court dismissed these minor plaintiffs from this action without prejudice. (Order, Feb. 1, 2011, Dkt. No. 221.)

[4]      It appears that plaintiffs employed eight-point font size in their Third Amended Complaint in an attempt to meet the page limit set by the court without sacrificing the voluminous and, in large part, confusing allegations that persist therein.

1   Complaint alleges that in or around the year 2002, plaintiff Susan Winters's elderly parents, Joe

2   and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their house in

3   Illinois and move to Nevada City, California, to live with the Armstrongs.  (Third Am. Compl.

4   at 4.)  Plaintiffs allege that before plaintiffs permanently returned to California, Joe Armstrong

5   passed away and that Virginia Armstrong eventually transferred properties, including the

6   residence at 11318 Via Vista in Nevada City, California, from the Armstrong Living Trust dated

7   July 29, 1994, to the Virginia Armstrong Living Trust.  (Id.)  Plaintiffs allege that Virginia

8   Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon,

9   who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia Armstrong's son.

10  (Id.)

11          The relationship between Virginia Armstrong and plaintiffs, which apparently

12  gave rise to allegations of possible elder abuse, resulted in several proceedings in the Nevada

13  County Superior Court.  For example, restraining orders were sought by other named defendants

14  to keep plaintiffs away from Virginia Armstrong, and plaintiff Susan Winters sought a restraining

15  order to keep certain of the named defendants away from Virginia Armstrong.  Relevant here, on

16  April 21, 2008, a judge of the Nevada County Superior Court, Judge Thomas Anderson,

17  "instituted proceedings for restraining orders" against plaintiffs Susan Winters, Brent Winters,

18  and all of their children, and such restraining order was allegedly for the protection of Virginia

19  Armstrong.  (Third Am. Compl. ¶ 46.)  That same day, Judge Anderson, on his own motion,

20  appointed Harpainter, an attorney, to represent Virginia Armstrong "to prosecute the restraining

21  orders."  (Id. ¶ 47.)  All of plaintiffs' claims against Harpainter arise from Harpainter's

22  representation of Virginia Armstrong and predominantly involve Harpainter's filings with and

23  representations in the Nevada County Superior Court.

24          Also relevant to plaintiffs' claims against Harpainter, plaintiffs allege that on

25  May 1, 2008, "Harpainter tried to clandestinely trespass" into plaintiff's home, "alleging he was

26  trying to find his client Virginia and was concerned about her well-being."  (Third Am. Compl.

1   ¶ 51.)  On May 14, 2008, plaintiffs Cacey and Jennifer Winters allegedly filed for a restraining

2   order against Harpainter because, in part, they feared for their safety.  (Id. ¶ 56.)  Judge Anderson

3   allegedly denied the application for a restraining order, stating: "I appointed this attorney and this

4   is not what Restraining Orders are for."  (Id. ¶ 57 (quotation marks omitted).)

5           Plaintiffs' Third Amended Complaint alleges the following claims against

6   Harpainter: abuse of process (claim 6); violation of plaintiffs' rights of equal protection

7   (claim 7); violation of plaintiffs' Fifth Amendment and Fourteenth Amendment due process

8   rights (claim 8); trespass to land (claim 12); trespass to chattels (claim 13), which is alleged

9   against "All Defendants"; violation of 42 U.S.C. § 1983 (claim 14), which is alleged against "All

10   Defendants"; civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15), which is alleged

11   against "All Defendants"; civil conspiracy (claim 18), which is alleged against "All Defendants";

12   "Slander, Libel, and Slander & Libel Per Se" (claim 21); violation of plaintiffs' First Amendment

13   rights of religious expression (claim 27); conspiracy to violate the Racketeer Influenced and

14   Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(d) (claim 31), which is alleged against

15   "All Defendants"; loss of consortium (claim 36), which is alleged against "All Defendants"; and

16   intentional infliction of emotional distress (claim 38), which is alleged against "All Defendants."

17   In response to the filing of the Third Amended Complaint, Harpainter filed a motion to dismiss

18   pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

19   II.    LEGAL STANDARDS

20           A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or

21   12(h)(3) challenges the court's subject matter jurisdiction.  Federal district courts are courts of

22   limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

23   jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

24   contrary affirmatively appears." A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003)

25   (citations and quotation marks omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court

26   determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

action.").  When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court

takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.

2004).  However, the court is not restricted to the face of the pleadings and "may review any

evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489

U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.

2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

pleadings or by presenting extrinsic evidence.").  "When subject matter jurisdiction is challenged

under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

order to survive the motion."  Tosco Corp. v. Communities for a Better Env't., 236 F.3d 495, 499

(9th Cir. 2001) (per curiam), abrogated on other grounds by Hertz Corp v. Friend, 130 S. Ct.

1181 (2010); see also Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir.

2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit

'affidavits or any other evidence properly before the court . . ..  It then becomes necessary for the

party opposing the motion to present affidavits or any other evidence necessary to satisfy its

burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation

omitted, modification in original)).

           A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

(2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v.

1  Iqbal, 129 S. Ct. 1937, 1949 (2009)).   "'A claim has facial plausibility when the plaintiff pleads

2  factual content that allows the court to draw the reasonable inference that the defendant is liable

3  for the misconduct alleged.'"   Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812

4  (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).   The court accepts all of the facts alleged in

5  the complaint as true and construes them in the light most favorable to the plaintiff.   Corrie v.

6  Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).   The court is "not, however, required to accept as

7  true conclusory allegations that are contradicted by documents referred to in the complaint, and

8  [the court does] not necessarily assume the truth of legal conclusions merely because they are

9  cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

10  omitted).

11          The court must construe a pro se pleading liberally to determine if it states a claim

12  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

13  opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

14  Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

15  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

16  construed, particularly where civil rights claims are involved").   In ruling on a motion to dismiss

17  pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

18  pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

19  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

20  quotation marks omitted).

21  III.    DISCUSSION

22          A.    Harpainter's Arguments Premised on Jurisdictional and Abstention Doctrines

23          At the outset, Harpainter argues that this court lacks jurisdiction over plaintiffs'

24  claims or should abstain from adjudicating those claims on the basis of the Rooker-Feldman

25  doctrine, the Younger abstention doctrine, the trust and domestic relations exception to federal

26  subject matter jurisdiction, and the probate exception to federal subject matter jurisdiction.  (See

1  County Defendants' Mot. to Dismiss at 5-7.)  It readily appears that Harpainter simply copied the

2  same unsuccessful arguments offered by other defendants who previously moved to dismiss

3  plaintiff's Third Amended Complaint.  (See, e.g., Mot. to Dismiss, Feb. 16, 2010, Dkt. No. 107.)

4  Harpainter's jurisdictional and abstention arguments premised on the above-referenced doctrines

5  and principles are unpersuasive for the same reasons provided in the undersigned's previously

6  entered findings and recommendations, which were adopted in full.  (See Findings &

7  Recommendations, July 20, 2010, at 11-17, Dkt. No. 144, adopted by, Order, Sept. 14, 2010,

8  Dkt. No. 177.)

9           B.      Harpainter's Arguments Premised on California's Litigation Privilege

10          Next, Harpainter argues that plaintiffs' claims are barred by the absolute litigation

11  privilege provided in California Civil Code § 47(b).  The undersigned assumes that Harpainter

12  argues that all of the claims alleged against him are barred by the privilege because Harpainter

13  does not specify which claims he believes are subject to the privilege.  Although the undersigned

14  agrees that claims six and twenty-one should be dismissed pursuant to the litigation privilege,

15  and that claims thirty-six and thirty-eight are subject to the privilege in part, the remaining claims

16  are not subject to that privilege.

17          California's litigation privilege, found at California Civil Code § 47(b), provides,

18  in part, that a publication or broadcast made as part of a judicial proceeding is privileged.  See

19  also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241, 163 P.3d 89,

20  95 (2007).  The California Supreme Court recently summarized this litigation privilege as

21  follows:

22          This privilege is absolute in nature, applying to all publications,
            irrespective of their maliciousness.  The usual formulation is that the
23          privilege applies to any communication (1) made in judicial or
            quasi-judicial proceedings; (2) by litigants or other participants authorized
24          by law; (3) to achieve the objects of the litigation; and (4) that [has] some
            connection or logical relation to the action.  The privilege is not limited to
25          statements made during a trial or other proceedings, but may extend to
            steps taken prior thereto, or afterwards.

26

Id. (citations and internal quotation marks omitted, modification in original).  "[W]here the gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily related noncommunicative acts. . . ."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1062, 128 P.3d 713, 722 (2006).  The California Supreme Court has given this privilege "a broad interpretation" in furtherance of the purpose of the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241, 163 P.3d at 95.  Thus, although the privilege was originally enacted with reference to claims of defamation, "'the privilege is now held applicable to any communication, whether or not it amounts to a publication . . . , and all torts except malicious prosecution.'"  Rusheen, 37 Cal. 4th at 1057, 128 P.3d at 718 (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)).

Plaintiffs' sixth claim for relief alleges that on March 21, 2008, Harpainter and other defendants abused the court's process by asserting "false allegations against Plaintiffs in order to impose false restraining orders."  (Third Am. Compl. at 13.)  Plaintiffs' twenty-first claim for relief alleges that from December 2007 to present, Harpainter defamed plaintiffs by making false spoken and written accusations or allegations to the Nevada County Superior Court.  (See Third Am. Compl. at 21.)  Insofar as claims six and twenty-one are concerned, Harpainter's filings and representations were made in his capacity as court-appointed counsel for Virginia Armstrong in the course of judicial proceedings.  These acts fall within California's absolute litigation privilege and, accordingly, the undersigned recommends that claims six and twenty-one be dismissed with prejudice as to Harpainter.

Plaintiffs' claims for loss of consortium and intentional infliction of emotional distress, claims thirty-six and thirty-eight, are also barred by the litigation privilege to the extent that those claims are premised on Harpainter's filings with and representations made in the Nevada County Superior Court in connection with Harpainter's representation of Virginia Armstrong.  However, plaintiffs' claims are so vague and conclusory that the undersigned cannot

8

1    determine whether any other conduct by Harpainter is alleged to support claims thirty-six and

2    thirty-eight.  In any event, both claims thirty-six and thirty-eight are subject to dismissal on

3    additional grounds as discussed below.

4            The remaining claims alleged against Harpainter are not subject to the absolute

5    litigation privilege.  Claims twelve and thirteen, which allege claims for trespass to land and

6    trespass to chattels, respectively, do not involve a communication or publication made in a

7    judicial or quasi-judicial proceeding or any related non-communicative act.  Accordingly, those

8    claims are not subject to the privilege.

9            Additionally, California's absolute litigation privilege does not apply to claims

10   seven, eight, fourteen, fifteen, eighteen, twenty-seven, and thirty-one.  These claims allege

11   violations of plaintiffs' constitutional rights, implicating 42 U.S.C. § 1983, or violations of the

12   RICO statute, 31 U.S.C. § 1962(d).[5]  California's litigation privilege does not apply to alleged

13   violations of federal statutes such as 42 U.S.C. § 1983.  See Kimes v. Stone, 84 F.3d 1121, 1127

14   (9th Cir. 1996); see also Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 851 (9th Cir. 2004);

15   Oei v. N. Star Capital Acquisitions, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006).  Accordingly,

16   claims seven, eight, fourteen, fifteen, eighteen, twenty-seven, and thirty-one are not subject to

17   dismissal as a result of California's litigation privilege.

18           C.     Plaintiffs' Section 1983 Claims (Claims 7, 8, 14, 15, 18, and 27)

19           Plaintiffs' seventh, eighth, fourteenth, fifteenth, eighteenth, and twenty-seventh

20   claims for relief allege that Harpainter violated plaintiffs' constitutional rights.  All of these

21   claims, which are expressly or impliedly brought pursuant to 42 U.S.C. § 1983, are subject to

22   dismissal with prejudice.

23           "Section 1983 imposes civil liability upon an individual who under color of state

24

25        [5] Plaintiffs' eighteenth claim alleges a claim for "civil conspiracy."  As stated in previous
     dispositions, the undersigned construes this claim as an additional claim brought pursuant to Section
26   1983. (See, e.g., Findings & Recommendations, July 27, 2010, at 6-10, Dkt. No. 147, adopted by,
     Order, Sept. 14, 2010, Dkt. No. 180.)

9

1   law subjects or causes, any citizen of the United States to the deprivation of any rights, privileges

2   or immunities secured by the Constitution and laws." <u>Franklin v. Fox</u>, 312 F.3d 423, 444 (9th

3   Cir. 2002) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two

4   essential elements: (1) that a right secured by the Constitution or laws of the United States was

5   violated, and (2) that the alleged violation was committed by a person acting under the color of

6   State law." <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing <u>West v.</u>

7   <u>Atkins</u>, 487 U.S. 42, 48 (1988)); <u>accord</u> <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir.

8   2009), <u>cert. denied</u>, 130 S. Ct. 1937 (2010). Conclusory allegations of a violation of Section

9   1983 or a conspiracy to violate Section 1983 will not survive a motion to dismiss. <u>See</u>, <u>e.g.</u>,

10  <u>Simmons v. Sacramento County Superior Court</u>, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming

11  dismissal of plaintiff's second amended complaint as a result of plaintiff's "conclusory

12  allegations" of a conspiracy to deprive him of his constitutional rights in violation of Section

13  1983).

14          As an initial matter, several of plaintiffs' claims—claims seven, fourteen, fifteen,

15  and eighteen—are alleged in so conclusory a manner that they should be dismissed for that

16  reason alone. For example, plaintiffs' seventh claim, alleging a violation of plaintiffs' equal

17  protection rights, only asserts only that *Judge Anderson* denied plaintiff Susan Winters's petition

18  for conservatorship of Virginia Armstrong "while accepting Defendant Harpainter's naked and

19  false allegations of the Winters." (Third Am. Compl. at 14.) This claim does not even allege

20  actionable conduct on Harpainter's part. Additionally, plaintiffs' allegations in support of their

21  Section 1983 claims asserted in claims fourteen, fifteen, and eighteen do not identify which of

22  their specific constitutional rights were violated and how Harpainter specifically participated in

23  such alleged violations. Nevertheless, the undersigned will address additional grounds why

24  plaintiffs' constitutional claims fail as alleged against Harpainter.

25          Plaintiffs' seventh, eighth, fourteenth, fifteenth, eighteenth, twenty-seventh claims

26  for relief are subject to dismissal with prejudice because Harpainter is a private actor and was not

1  acting under color of state law.  To determine whether a private actor acts under color of state

2  law, the court evaluates whether the alleged infringement of federal rights is "fairly attributable"

3  to the government even though committed by private actors.  Kirtley v. Rainey, 326 F.3d 1088,

4  1092 (9th Cir. 2003).  Insofar as the alleged constitutional violations are concerned, Harpainter

5  acted as court-appointed counsel for Virginia Armstrong and represented and advocated for

6  Virginia Armstrong in connection with court proceedings.  Such representation does not support

7  that Harpainter's acts were fairly attributable to the state such that Harpainter was acting under

8  color of state law.  See, cf., Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding that a

9  public defender does not act under color of state law when performing traditional functions as

10  counsel in a criminal proceeding); accord Miranda v. Clark County, Nev., 319 F.3d 465, 468 (9th

11  Cir. 2003) (en banc) (same); see also Kirtley, 326 F.3d at 1092-96 (holding that a private attorney

12  appointed by the state to represent a minor in court proceedings as counsel or guardian ad litem

13  does not act under color of state law for the purpose of a Section 1983 claim).  Insofar as his

14  individual acts are concerned, Harpainter acted as private individual, not a state actor.

15  Accordingly, plaintiffs' seventh, eighth, fourteenth, and twenty-seventh claims should be

16  dismissed with prejudice as to Harpainter.

17          Plaintiffs' Section 1983 conspiracy claims—claims fifteen and eighteen—are also

18  fatally flawed.  In their fifteenth claim, plaintiffs allege that "Defendants Logsdon, Michael

19  Armstrong, Jordan, Wade, Harpainter, and Ford worked in concert with Defendants from the

20  Nevada County Superior Court, Sheriff's Department, Adult Protective Services, and other

21  agencies." (Third Am. Compl. at 20.)  However, they also allege that a state court judge, Judge

22  Anderson, entered a restraining order "on his own motion." (Id.)  Additionally, plaintiffs allege

23  that defendants Logsdon and Harpainter "worked in concert with" with defendants Chelsey and

24  Frooman.  (Id.)  Elsewhere in the Third Amended Complaint, defendants Chelsey and Frooman

25  are alleged to be Assistant United States Attorneys in Illinois who were prosecuting plaintiff

26  Brent Winters, an attorney, on criminal charges and wrote a letter to defendant Logsdon offering

11

1    assistance with the unlawful detainer action.  (Id. at 6, 24.)  Plaintiffs' eighteenth claim is largely

2    redundant of the fifteenth claim, at least as it relates to allegations against Harpainter.

3            "A private individual may be liable under § 1983 if [he] conspired or entered joint

4    action with a state actor."  Franklin, 312 F.3d at 441; see also Kirtley, 326 F.3d at 1092 ("While

5    generally not applicable to private parties, a § 1983 action can lie against a private party when he

6    is a willful participant in joint action with the State or its agents" (citation and quotation marks

7    omitted).).  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate

8    the existence of an agreement or meeting of the minds to violate constitutional rights."  Crowe v.

9    County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (citation and quotation marks omitted).

10   Although the Supreme Court has articulated several alternative tests for determining whether a

11   private individual's actions amount to state action, see Franklin, 312 F.3d at 445, the "joint

12   action" test is relevant here.  The joint action test applies where, as here, state officials and

13   private parties are alleged to have acted in concert to effectuate a particular deprivation of

14   constitutional rights and "focuses on whether the state has so far insinuated itself into a position

15   of interdependence with the private actor that it must be recognized as a joint participant in the

16   challenged activity."  Id. (citation, quotation marks, and modifications omitted).  "The plaintiff

17   must show 'an agreement or meeting of the minds to violate constitutional rights,' and '[t]o be

18   liable, each participant in the conspiracy need not know the exact details of the plan, but each

19   participant must at least share the common objective of the conspiracy.'"  Crowe, 608 F.3d at

20   440 (quoting Franklin, 312 F.3d at 441).

21           As an initial matter, it bears repeating that plaintiffs' allegations regarding a

22   conspiracy between state actors and private actors are vague and conclusory and, for that reason

23   alone, cannot survive the motion to dismiss.  See Simmons, 318 F.3d at 1161 ("Plaintiff's

24   conclusory allegations that the lawyer was conspiring with state officers to deprive him of due

25   process are insufficient.");  Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000)

26   (stating that "a bare allegation of . . . joint action will not overcome a motion to dismiss" (citation

and quotation marks omitted)); <u>Price v. Hawaii</u>, 939 F.2d 702, 707-08 (9th Cir. 1991) (stating

that "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a

claim under the Civil Rights Act" (citation and quotation marks omitted, modifications in

original).), <u>cert. denied</u>, 503 U.S. 938 (1992), and <u>Paty v. Price</u>, 503 U.S. 938 (1992).  It also

bears repeating that plaintiffs have not alleged which of their constitutional rights has been

violated insofar as the conspiracy claims are concerned.

Plaintiffs have not alleged facts constituting a plausible claim of a conspiracy

between Harpainter and state actors to deprive plaintiffs of their constitutional rights.  Although

plaintiffs vaguely allege that Harpainter conspired with others, the allegations in the Third

Amended Complaint indicate a lack of interdependence between state and private actors.  As far

as the unlawful detainer action is concerned, plaintiffs only allege that Assistant United States

Attorneys Frooman and Chelsey offered aid to defendant Logsdon.  An offer of assistance does

not suggest the level of interdependence that will support a Section 1983 conspiracy under a joint

action theory.  In terms of joint action related to the entry of certain restraining orders, plaintiffs

allege joint action, but also that Judge Anderson of the Nevada County Superior Court acted on

his "own motion."  None of plaintiffs allegations suggest a common goal of depriving plaintiffs

of their rights, or any interdependence among the alleged members of the conspiracy.  Taken

together with the conclusory and vague allegations in the Third Amended Complaint, plaintiffs'

conspiracy claims alleged against Harpainter should be dismissed with prejudice.

D.      <u>Trespass to Land and Trespass to Chattels (Claims 12 and 13)</u>

Harpainter also moves to dismiss plaintiffs' twelfth and thirteen claims for relief,

which allege that Harpainter committed trespass to land and trespass to chattels, respectively.

(<u>See</u> Third Am. Compl. at 19.)

As noted above, plaintiffs allege that on May 1, 2008, Harpainter entered Virginia

Armstrong's home located at 11318 Via Vista in Nevada City, California, to check on Virginia

Armstrong, and that plaintiffs were also residing in that home at the time.  (<u>See</u> Third Am.

1   Compl. at 7, 19.)  Plaintiffs further allege that Harpainter entered the home without knocking or

2   permission, that this act constituted a trespass on land, and that Harpainter was not licensed or

3   privileged to enter the home.  (Id. at 19.)  Harpainter moves to dismiss this claim only on the

4   grounds that: (1) plaintiffs failed to state sufficient facts supporting a claim for civil trespass[6];

5   and (2) plaintiffs lack standing to bring such a claim because although plaintiffs were residing in

6   Virginia Armstrong's residence, plaintiffs did not own the property.  (Def.'s Mot. to Dismiss at

7   7.)  He offers no legal authority in support of these contentions, which span five lines of text.

8           California Courts of Appeal have summarized the tort of trespass onto land as

9   follows:  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land

10  of another.  Such invasions are characterized as intentional torts, regardless of the actor's

11  motivation.  Where there is a consensual entry, there is no tort, because lack of consent is an

12  element of the [theory underlying the tort]. . . ."  Church of Christ in Hollywood v. Superior

13  Court, 99 Cal. App. 4th 1244, 1252, 121 Cal. Rptr. 2d 810, 815-16 (Ct. App. 2002); accord

14  Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1141, 281 Cal. Rptr. 827, 837 (Ct.

15  app. 1991); Civic W. Corp. v. Zila Indus., Inc., 66 Cal. App. 3d 1, 16-17, 135 Cal. Rptr. 915, 925

16  (Ct. App. 1977).  As derived from an applicable California jury instruction, the elements of the

17  intentional tort of trespass can be stated as follows in this case: (1) plaintiffs owned, leased,

18  occupied, or controlled the property; (2) Harpainter intentionally, recklessly, or negligently

19  entered plaintiffs' property; (3) Harpainter lacked permission for the entry or Harpainter

20  exceeded the scope of such permission; (4) plaintiffs were actually harmed; and (5) Harpainter's

21  entry was a substantial factor in causing plaintiffs' harm.  See Judicial Council of Cal. Civ. Jury

22  Instruction 2000 (Sept. 2010 Suppl.).[7]

23

24      [6]  Harpainter does not assert what the elements of an action for civil trespass are or which
    elements are the subject of his motion to dismiss.

25

26      [7]  See also Johnson v. County of Contra Costa, No. C 09-01241 WHA, 2010 WL 3491425,
    at *15 (N.D. Cal. Sept. 3, 2010) (unpublished) ("Under California law, a plaintiff must prove: (1)

1         Here, taking plaintiffs' allegations as true, plaintiffs have alleged a prima facie

2  case of trespass against Harpainter to the extent that the claim is asserted by plaintiffs Cacey and

3  Jennifer Winters.  Plaintiffs allege that Harpainter intentionally entered the home in which

4  plaintiffs were lawfully residing, that Harpainter entered the home *without* permission, and that

5  plaintiffs Cacey and Jennifer Winters suffered harm in the form of fear for their safety and

6  ultimately sought a restraining order against Harpainter.  (See Third Am. Compl. at 7, 19 (italics

7  added).)  None of the other plaintiffs have alleged harm as a result of Harpainter's alleged

8  trespass.  Harpainter's assertion that plaintiffs lack standing to pursue a trespass claim because

9  they do not own the property is unavailing at this stage in the proceedings because it is not an

10  essential element of a claim of trespass that the plaintiff actually "own" the property in question.

11  See Capogeannis v. Superior Court, 12 Cal. App. 4th 668, 674, 15 Cal. Rptr. 2d 796, 799 (Ct.

12  App. 1993) ("California has adhered firmly to the view that [the] cause of action for trespass is

13  designed to protect *possessory*–not necessarily ownership–interests in land from unlawful

14  interference.") (citation and quotation marks omitted); Smith v. Cap Concrete, Inc., 133 Cal.

15  App. 3d 769, 184 Cal. Rptr. 308, (Ct. App. 1982) ("The proper plaintiff in an action for trespass

16  to real property is the person in actual possession; no averment or showing of title is

17  necessary."); see also 5 Witkin, Cal. Proc., Pleading, §§ 631-32 (5th ed. 2008).  Harpainter offers

18  no authority to the contrary; indeed, his argument is entirely unsupported by legal authority.

19  Accordingly, the claim of trespass on land asserted by plaintiffs Cacey and Jennifer Winters may

20  proceed.  However, this claim should be dismissed with respect to the remaining plaintiffs.

21         In their thirteenth claim for relief, plaintiffs further allege that "All Defendants,"

22  including Harpainter, committed the tort of trespass to chattels.  (Third Am. Compl. at 19.)

23  "[T]he tort of trespass to chattels allows recovery for interferences with possession of personal

24  ───────────────────────────

25  the plaintiff's ownership or control of the property, (2) the defendant's intentional, reckless, or
   negligent entry on the property, (3) lack of permission to enter the property, or acts in excess of the
   permission, (4) actual harm, and (5) the defendant's conduct as a substantial factor in causing the

26  harm.").

1   property not sufficiently important to be classed as conversion, and so to compel the defendant to

2   pay the full value of the thing with which he has interfered." Intel Corp. v. Hamidi, 30 Cal. 4th

3   1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has stated that "[t]respass

4   remains as an occasional remedy for minor interferences, resulting in some damage, but not

5   sufficiently serious or sufficiently important to amount to the greater tort" of conversion." Id. at

6   1351, 71 P.3d at 302 (citation omitted, modification in original).

7         As to Harpainter, and indeed as to all defendants, plaintiffs have not specified the

8   chattel or chattels with which each defendant interfered, which in turn proximately caused them

9   harm.  See Intel Corp., 30 Cal. 4th at 1350-51, 71 P.3d at 302 ("Under California law, trespass to

10  chattels lies where an intentional interference with the possession of personal property has

11  proximately caused injury" (citation and quotation marks omitted).).  Accordingly, plaintiffs'

12  claim for trespass to chattels should be dismissed with prejudice as to Harpainter.

13         E.    Plaintiffs' RICO Conspiracy Claim (Claim 31)

14         Harpainter moves to dismiss plaintiffs' thirty-first claim for relief, which alleges

15  that "All Defendants"—over sixty defendants including private actors, state court judges and

16  employees, law enforcement, and local agencies—conspired to commit racketeering activity in

17  violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am. Compl. at 24.)

18  Plaintiffs allege that all defendants in this case conspired to "maintain a federal prosecution

19  against Plaintiff Brent Winters in Illinois."  (Id.)  They further allege that on July 9, 2002,

20  defendant Jan Paul Miller agreed with an individual named Michael McCuskey and defendant

21  Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters on false

22  charges" knowing that the presiding judge was biased.  (Id.)  They also allege that "Agent Pogue"

23  contributed to the conspiracy by testifying based on "conjecture" at Brent Winters's sentencing

24  hearing.  (Id.)  In addition, they vaguely allege an undefined "pattern of misrepresentation"

25  intended to "defraud the Winters of their rights and their property."  (Id.)  Moreover, plaintiffs

26  allege the "concealment of critical data," including a memorandum drafted by Judge Anderson of

16

1   the Nevada County Superior Court.  (Id.)  Other than including his names in a laundry list of over

2   40 defendants, plaintiffs do not allege any specific facts with respect to the Harpainter's

3   participation in this alleged conspiracy.

4          "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

5   enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

6   (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

7   Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted), cert.

8   denied, 547 U.S. 1192 (2006).  "To state a RICO claim, one must allege a 'pattern' of

9   racketeering activity, which requires at least two predicate acts."  Clark v. Time Warner Cable,

10  523 F.3d 1110, 1116 (9th Cir. 2008) (citations omitted).  Furthermore, a plaintiff must also show

11  that the injury to his business or property was proximately caused by the prohibited conduct and

12  that he has suffered a concrete financial loss.  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083,

13  1086 (9th Cir. 2002).

14         Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

15  the allegations are of such a vague and conclusory nature that they do not state a plausible claim

16  for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

17  "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

18  alleged a "concrete financial loss" or injury to business or property proximately caused by the

19  conspiracy.  At most, plaintiffs' opposition to the present motion to dismiss alleges that the

20  purported RICO conspiracy damaged plaintiff Brent Winters's law practice, but provides no

21  information about the nature of the injury or a concrete financial loss.  Nothing contained in

22  plaintiffs' Third Amended Complaint or opposition brief suggests that they can amend their

23  pleading to state a plausible claim for relief.  Accordingly, plaintiffs' thirty-first claim for relief

24  should be dismissed with prejudice as to Harpainter.

25         F.     Plaintiffs' State Law Claim for Loss of Consortium (Claim 36)

26                In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

17

liable for loss of consortium.  (Third Am. Compl. at 25.)  Although plaintiffs incorporate the

remainder of their complaint by reference, their allegations are limited to the following:

> Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan, Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered loss of consortium with each other and their grandmother as a result of the actions of the Defendants.

(Id.)

One California court has cited with approval a California practice manual that

defines the tort of loss of consortium as having the following four elements:

> (1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury;
>
> (2) a tortious injury to the plaintiff's spouse;
>
> (3) loss of consortium suffered by the plaintiff; and
>
> (4) the loss was proximately caused by the defendant's act.

Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App.

2007) (citation omitted); see also Malone v. Marriott Int'l., Inc., No. EDCV 09-01980 VAP

(DTBx), 2010 WL 4537828, at *6 (C.D. Cal. Oct. 29, 2010) (unpublished) (citing Hahn for the

elements of a claim of loss of consortium).  Additionally, "[a] cause of action for loss of

consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to

a spouse."  Hahn, 147 Cal. App. 4th at 746, 54 Cal. Rptr. 3d at 531.  Additionally, the Ninth

Circuit Court of Appeals has explained:

> To support a loss of consortium claim, marital spouses must allege that their partner suffered an injury that is "sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired." *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); *Anderson v. Northrop Corp.*, 203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury may be physical or psychological, but psychological injury must "rise [ ] to the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be] sufficient to substantially disturb the marital relationship." *Anderson*, 250 Cal.Rptr. at 195, quoting *Molien*, 167 Cal.Rptr. 831, 616 P.2d at 813.

1  Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008)

2  (modifications in original), cert. denied, 129 S. Ct. 174 (2008).

3         The undersigned recommends that plaintiffs' loss of consortium claim be

4  dismissed with prejudice, to the extent that it is not barred by California's litigation privilege (see

5  discussion above), because plaintiffs failed to allege a plausible claim for relief.  First, plaintiffs

6  have not alleged any facts that would suggest that any conjugal or marital relationship has been

7  more than superficially affected.  Second, plaintiffs have not alleged any facts regarding how

8  Harpainter's acts proximately caused any loss of consortium.  Plaintiffs' allegations of causation

9  are general as to all defendants and are conclusory in nature.  Third, under California law, parents

10 may not pursue a claim loss of filial consortium, and children may not pursue a claim for loss of

11 parental consortium.  See Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563 P.2d 871, 874

12 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858, 866 (1977); Meighan v.

13 Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App. 1995).  Fourth, plaintiffs

14 have improperly re-pled claims on behalf of Joy, Clark, and Jill Winters, as the court previously

15 ordered that references to these minors be stricken from the Third Amended Complaint.

16 Moreover, the minor defendants have more recently been dismissed from this action.  Finally, it

17 would appear facially improper that plaintiffs could recover for loss of consortium with "their

18 grandmother," Virginia Armstrong, who they have named as a defendant in this case.  Plaintiffs

19 have failed to meet the pleading requirements to state a cognizable claim for relief, and the

20 undersigned has no reason to believe that these deficiencies could be cured through amendment.

21     G.     Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress
              (Claim 38)
22

23         Harpainter also moves to dismiss plaintiffs' thirty-eighth claim for relief, which

24 seeks damages for intentional infliction of emotional distress ("IIED") against "All Defendants."

25 (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED claim

26 contains only bare factual allegations and legal conclusions, which are stated generally against all

1 defendants:

> Paragraphs above incorporated by reference.All [*sic*] Defendants acted
> with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
> Defendants' conduct on dates referenced above was extreme and
> outrageous. Defendants' conduct is the proximate cause of their distress.
> Each Plaintiff suffers severe emotional distress as a result of all
> Defendants' conduct.

6 (Id.)

7    To state a claim for intentional infliction of emotional distress under California

8 law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

9 conduct by the defendant with the intention of causing, or reckless disregard of the probability of

10 causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

11 (3) actual and proximate causation of the emotional distress by the defendant's outrageous

12 conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

13 quotation marks omitted).  The California Supreme Court has explained that "outrageous"

14 conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

15 civilized community," and that "the defendant's conduct must be intended to inflict injury or

16 engaged in with the realization that injury will result."  Id. (citations and quotation marks

17 omitted).

18    As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare

19 factual allegations that incorporate the remainder of the Third Amended Complaint by reference.

20 Plaintiffs do not allege facts demonstrating that Harpainter's acts rose to the level of "extreme

21 and outrageous" behavior as defined under California, that any of plaintiffs suffered severe of

22 extreme emotional distress, or that Harpainter's conduct proximately caused any particular

23 plaintiff's emotional distress.  Accordingly, the undersigned will recommend that this claim be

24 dismissed with prejudice to the extent that it is not barred by California's litigation privilege, as

25 discussed above.  The undersigned will recommend dismissal with prejudice because nothing in

26 the Third Amended Complaint or plaintiffs' written opposition suggests that the identified

pleading deficiencies can be cured through amendment.

IV.    <u>CONCLUSION</u>

      For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

      1.     Defendant Dewey Harpainter's motion to dismiss the Third Amended Complaint (Dkt. No. 131) be granted in part and denied in part; and

      2.     All of plaintiffs' claims alleged against Defendant Dewey Harpainter, except the claim of trespass on land asserted by plaintiffs Cacey and Jennifer Winters, be dismissed with prejudice.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see also</u> E. Dist. Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

      IT IS SO RECOMMENDED.

DATED:  March 8, 2011

                           KENDALL J. NEWMAN
                           UNITED STATES MAGISTRATE JUDGE