1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLEN WINTERS, et al.,

11              Plaintiffs,                 No. 2:09-cv-00522 JAM KJN PS

12        v.

13   DELORES JORDAN, et al.,

14              Defendants.                 FINDINGS AND RECOMMENDATIONS
     _____/

15

16              Presently before the court is a motion to dismiss plaintiffs' Third Amended

17   Complaint and/or for a more definite statement filed by the following defendants pursuant to

18   Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(e): Adult Protective Services

19   ("APS"), Jeffrey S. Brown, Tamaran Cook, Kelly Carpenter, Keith Royal, Richard Kimball, Guy

20   Selleck, Joe McCormack, Zsa Zsa Wied, Robert Bringolf, Dominic La Fountain, Theresa

21   Kingsbury, Jeff Martin, Daniel Saunders, Nathan Hutson, Jesse King, Micah Arbaugh, Chris

22   Sharp, Matt Steen, Elaine LaCroix, Alicia Milhous, Clifford Newell, Charles O'Rourke, Jason

23   Jones, and Susan McGuire.[1]  (See Mot. to Dismiss and/or for More Definite Statement ("Mot. to

24   Dismiss"), Dkt. No. 116.)  These proposed findings and recommendations only address the

25   _____

26        [1] This action proceeds before this court pursuant to Eastern District of California Local Rule
     302(c)(21) and 28 U.S.C. § 636(b)(1).

1   motion to the extent it is brought by defendants APS, Jeffrey S. Brown, Kelly Carpenter, and

2   Tamaran Cook (collectively, the "APS defendants").  As to the remaining moving defendants, the

3   motion will be addressed by a separate order or findings and recommendations.

4          Because oral argument would not materially aid the resolution of the pending

5   motion, this matter was submitted on the briefs and record without a hearing.  See Fed. R. Civ.

6   P. 78(b); E. Dist. Local Rule 230(g).  The undersigned has fully considered the parties' briefs and

7   appropriate portions of the record in this case and, for the reasons that follow, recommends that

8   the APS defendants' motion to dismiss be granted in part and denied in part.  Specifically, the

9   undersigned recommends that: (1) all of plaintiffs' claims alleged against defendant Jeffrey S.

10  Brown be dismissed with prejudice; and (2) all of plaintiffs' claims alleged against APS, Kelly

11  Carpenter, and Tamaran Cook, except plaintiff Susan Winters's equal protection claim, be

12  dismissed with prejudice.

13  I.     BACKGROUND

14         Plaintiffs' Third Amended Complaint[2] is a wide-ranging, 25-page complaint that

15  alleges, in eight-point font, over two-dozen claims for relief against over 60 defendants.[3]  (Dkt.

16  No. 66.)  Several of plaintiffs' claims are alleged against "All Defendants," with no

17  differentiation in regards to the alleged conduct of each defendant that supports each such claim.

18

19         [2]   Plaintiffs filed the operative complaint under the title "Amended Complaint,"
    notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt.
20  No. 66 with Order and Findings & Recommendations, Aug. 24, 2009, at 4, Dkt No. 56.)  The Third
    Amended Complaint supersedes plaintiffs' "Second Amended Complaint" (Dkt. No. 15).  As the
21  court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment
    of the original complaint (Order and Findings & Recommendations, Aug. 24, 2009, at 1 n.1), and
22  the operative Third Amended Complaint represents plaintiffs' second amendment of the original
    complaint.
23
           [3]   In an order dated September 24, 2009, the court ordered that all references to the minor
24  plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs'
    Third Amended Complaint because those minors were not represented by an attorney or attorneys.
25  (Order, Sept. 24, 2009, Dkt. No. 68; see also Order, Nov. 13, 2009, at 2 n.1, Dkt. No. 89.)  On
    February 1, 2011, the court dismissed these minor plaintiffs from this action without prejudice.
26  (Order, Feb. 1, 2011, Dkt. No. 221.)

1   In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages

2   and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could

3   not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the

4   requirement that the pleading contain a short and plain statement of the claims alleged instead of

5   recounting all of the evidence and arguments in support of those claims.  (Order and Findings &

6   Recommendations, Aug. 24, 2009, at 3.)  The court had stated that "[t]his will be plaintiffs' last

7   chance to comply."  (Id.)[4]

8           Generally, the claims against the APS defendants arise out of an underlying family

9   dispute between the Winters family and defendant Virginia Armstrong, who is, among other

10  things, the mother of plaintiff Susan Winters and grandmother to other plaintiffs.  The Third

11  Amended Complaint alleges that in or around the year 2002, plaintiff Susan Winters's elderly

12  parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to sell their

13  house in Illinois and move to Nevada City, California, to live with the Armstrongs.  (Third Am.

14  Compl. at 4.)  Plaintiffs allege that before plaintiffs permanently returned to California, Joe

15  Armstrong passed away and that Virginia Armstrong eventually transferred properties, including

16  the residence at 11318 Via Vista in Nevada City, California, from the Armstrong Living Trust

17  dated July 29, 1994, to the Virginia Armstrong Living Trust.  (Id.)  Plaintiffs allege that Virginia

18  Armstrong took these actions due, in part, to the undue influence of defendants Valerie Logsdon,

19  who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia Armstrong's son.

20  (Id.)

21          The relationship between Virginia Armstrong and plaintiffs, which apparently

22  gave rise to allegations of possible elder abuse committed by plaintiffs against Virginia

23  Armstrong, resulted in several proceedings in the Nevada County Superior Court.  Relevant here,

24

25          [4] It appears that plaintiffs employed eight-point font size in their Third Amended Complaint
    in an attempt to meet the page limit set by the court without sacrificing the voluminous and, in large
26  part, confusing allegations that persist therein.

1   plaintiffs allege that on October 15, 2007, APS filed a petition for a temporary restraining order

2   in Virginia Armstrong's name and "against her daughter Susan Winters and her son-in-law Brent

3   Winters." (Third Am. Compl. ¶ 22.)  Plaintiffs allege that APS was assisted by defendant

4   Delores Jordan, who was "unduly influencing" Virginia Armstrong. (Id.)  Susan Winters then

5   filed a petition for a restraining order against Delores Jordan. (Id. ¶ 23.)  These dueling petitions

6   led to ongoing proceedings in the Nevada County Superior Court. (See id. ¶¶ 23-26.)

7          Additionally, on April 21, 2008, a judge of the Nevada County Superior Court,

8   Judge Thomas Anderson, "instituted proceedings for restraining orders" against plaintiffs Susan

9   Winters, Brent Winters, and all of their children, and such restraining order was allegedly for the

10  protection of Virginia Armstrong. (Third Am. Compl. ¶ 46.)  That same day, Judge Anderson,

11  on his own motion, appointed an attorney, defendant Dewey Harpainter, to represent Virginia

12  Armstrong "to prosecute the restraining orders." (Id. ¶ 47.)  In connection with these various

13  court proceedings, Cook and Carpenter, who are allegedly social workers with APS, allegedly

14  made representations in court and also filed reports with the court. (See id. ¶¶ 6, 43, 70, 73.)

15         Also in April of 2008, plaintiff Susan Winters allegedly contacted APS to seek

16  assistance in protecting Virginia Armstrong from defendant Delores Jordan. (Third Am. Compl.

17  at 14.)  Someone with APS allegedly told Susan Winters that APS could not assist Susan Winters

18  unless she was a conservator for Virginia Armstrong. (Id. at 14.)

19         Plaintiffs' Third Amended Complaint alleges only one claim against APS that is

20  specific to APS's alleged conduct: the violation of plaintiffs' rights of equal protection (claim 7).

21  The remaining claims against APS are alleged generically and conclusorily against "All

22  Defendants" and consist of the following claims: trespass to chattels (claim 13); violation of 42

23  U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim 15); civil

24  conspiracy (claim 18); conspiracy to violate the Racketeer Influenced and Corrupt Organizations

25  Act ("RICO"), 18 U.S.C. 1962(d) (claim 31); loss of consortium (claim 36); and intentional

26  infliction of emotional distress, or "IIED" (claim 38).

4

1    In regards to defendant Jeffrey S. Brown, who is alleged to be the "Nevada

2    County Adult Protective Services Agency Director" (Third Am. Compl. at 25), plaintiffs only

3    allege one claim that provides any facts specific to Brown: a claim for "respondeat superior"

4    liability (claim 34).  Plaintiffs clarify in their written opposition that the claim against Brown is

5    only for common law tort liability and is not addressed to any alleged civil rights violations

6    committed by APS, Carpenter, or Cook.  (Pls.' Opp'n to Mot. to Dismiss at 9 ("The Winters'

7    Respondeat Superior claims are civil torts not § 1983 civil-rights claims."), Dkt. No. 118.)  The

8    remaining claims alleged against Brown are the generic claims alleged against "All Defendants":

9    trespass to chattels (claim 13); violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in

10   violation of 42 U.S.C. § 1983 (claim 15); civil conspiracy (claim 18); conspiracy to violate the

11   RICO statute (claim 31); loss of consortium (claim 36); and IIED (claim 38).

12   As to defendants Carpenter and Cook, plaintiffs' Third Amended Complaint

13   alleges that Carpenter and Cook: abused the court's process (claim 6); violated plaintiffs' rights

14   of equal protection (claim 7); and committed "Slander, Libel, and Slander & Libel Per Se"

15   (claim 21).  Plaintiffs further allege that Cook violated plaintiffs' First Amendment rights to

16   petition for the redress of grievances (claim 26).  The remaining claims alleged against Carpenter

17   and Cook are the generic claims alleged against "All Defendants": trespass to chattels (claim 13);

18   violation of 42 U.S.C. § 1983 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983 (claim

19   15); civil conspiracy (claim 18); conspiracy to violate the RICO statute (claim 31); loss of

20   consortium (claim 36); and IIED (claim 38).

21   II.    LEGAL STANDARDS

22   A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or

23   12(h)(3) challenges the court's subject matter jurisdiction.  Federal district courts are courts of

24   limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

25   jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

26   contrary affirmatively appears."  A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003)

1   (citations and quotation marks omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court

2   determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

3   action.").  When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court

4   takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.

5   2004).  However, the court is not restricted to the face of the pleadings and "may review any

6   evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

7   jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489

8   U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.

9   2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

10  pleadings or by presenting extrinsic evidence.").  "When subject matter jurisdiction is challenged

11  under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

12  order to survive the motion."  Tosco Corp. v. Communities for a Better Env't., 236 F.3d 495, 499

13  (9th Cir. 2001) (per curiam), abrogated on other grounds by Hertz Corp v. Friend, 130 S. Ct.

14  1181 (2010); see also Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir.

15  2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit

16  'affidavits or any other evidence properly before the court . . ..  It then becomes necessary for the

17  party opposing the motion to present affidavits or any other evidence necessary to satisfy its

18  burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation

19  omitted, modification in original)).

20          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

21  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

22  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

23  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

24  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

25  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

26  (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

III.   DISCUSSION

A.   The APS Defendants' Jurisdiction and Abstention Arguments

At the outset, the APS defendants argue that this court lacks jurisdiction over plaintiffs' claims or should abstain from adjudicating those claims on the basis of the Rooker-

1   Feldman doctrine, the Younger abstention doctrine, the trust and domestic relations exception to

2   federal subject matter jurisdiction, and the probate exception to federal subject matter

3   jurisdiction.  (See Mot. to Dismiss at 5-7.)  It readily appears that the APS defendants simply

4   copied the same unsuccessful arguments offered by other defendants who previously moved to

5   dismiss plaintiff's Third Amended Complaint.  (See, e.g., Mot. to Dismiss, Feb. 16, 2010, Dkt.

6   No. 107.)  The APS defendants' jurisdictional and abstention arguments premised on the above-

7   referenced doctrines and principles are unpersuasive for the same reasons provided in the

8   undersigned's previously entered findings and recommendations, which were adopted in full.

9   (See Findings & Recommendations, July 20, 2010, at 11-17, Dkt. No. 144, adopted by, Order,

10  Sept. 14, 2010, Dkt. No. 177.)

11          B.      Defendants Carpenter and Cook's Arguments Premised on California's Absolute
                    Litigation Privilege
12

13          Next, the APS defendants argue that claims six, fourteen, fifteen, eighteen,

14  twenty-one, and thirty-one should be dismissed with prejudice as to Carpenter and Cook, who

15  were social workers that participated in proceedings in the Nevada County Superior Court related

16  to the protection of Virginia Armstrong.  Briefly stated, they argue that Carpenter's and Cook's

17  acts that underlie these claims were absolutely privileged under California's litigation privilege

18  found in California Civil Code § 47(b).  Although the undersigned agrees that claims six and

19  twenty-one should be dismissed pursuant to the litigation privilege, claims fourteen, fifteen,

20  eighteen, and thirty-one are not subject to that privilege.

21          California's litigation privilege, found at California Civil Code § 47(b), provides,

22  in part, that a publication or broadcast made as part of a judicial proceeding is privileged.  See

23  also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241, 163 P.3d 89,

24  95 (2007).  The California Supreme Court recently summarized this litigation privilege as

25  follows:

26          This privilege is absolute in nature, applying to all publications,

8

irrespective of their maliciousness.  The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.  The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.

Id. (citations and internal quotation marks omitted, modification in original).  "[W]here the gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily related noncommunicative acts. . . ."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1062, 128 P.3d 713, 722 (2006).  The California Supreme Court has given this privilege "a broad interpretation" in furtherance of the purpose of the privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241, 163 P.3d at 95.  Thus, although the privilege was originally enacted with reference to claims of defamation, "'the privilege is now held applicable to any communication, whether or not it amounts to a publication . . . , and all torts except malicious prosecution.'"  Rusheen, 37 Cal. 4th at 1057, 128 P.3d at 718 (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)).  "Any doubt as to whether the privilege applies is resolved in favor of applying it."  Adams v. Superior Court, 2 Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992); accord Sengchanthalangsy v. Accelerated Recovery Specialists, Inc., 473 F. Supp. 2d 1083, 1087 (S.D. Cal. 2007).

Plaintiffs' sixth claim for relief alleges that Carpenter and Cook abused the court's process and their twenty-first claim alleges that Cook and Carpenter defamed plaintiffs by making false spoken and written accusations or allegations to the Nevada County Superior Court.  (See Third Am. Compl. at 13, 21.)  Generally, the Third Amended Complaint alleges that Carpenter and Cook filed reports or declarations with, and made representations to, the Nevada County Superior Court in the context of seeking a temporary restraining order pertaining to Virginia Armstrong and/or in response to a request by a judge of the Nevada County Superior Court.  (See id. ¶¶ 6, 43, 70, 73.)  Specifically, plaintiffs allege in their sixth claim for relief that

on March 21, 2008, Carpenter and Cook, among other defendants, abused the court's process by

asserting "false allegations against Plaintiffs in order to impose false restraining orders." (Third

Am. Compl. at 13.)  Plaintiffs' twenty-first claim for relief alleges that from December 2007 to

present, Carpenter and Cook defamed plaintiffs by making false spoken and written accusations

or allegations to the Nevada County Superior Court. (See Third Am. Compl. at 21.)  Carpenter's

and Cook's actions, which were made in their official capacities as social workers and in the

course of judicial proceedings, meet all of the requirements of California's absolute litigation

privilege.  Accordingly, the undersigned recommends that claims six and twenty-one be

dismissed with prejudice as to Carpenter and Cook.

        The APS defendants also urge the court to apply California's litigation privilege

to claims fourteen, fifteen, eighteen, and thirty-one insofar as those claims are alleged against

Carpenter and Cook.[5]  These claims allege violations of federal statutes: 42 U.S.C. § 1983 and 31

U.S.C. § 1962(d).[6]  California's litigation privilege does not apply to alleged violations of federal

statutes such as 42 U.S.C. § 1983.  See Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996); see

also Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 851 (9th Cir. 2004); Oei v. N. Star

Capital Acquisitions, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006).  Accordingly, claims

fourteen, fifteen, eighteen, and thirty-one are not subject to dismissal on the grounds that those

claims are barred by California's litigation privilege.

        C.     Plaintiffs' Generic and Conclusory Section 1983 Claims (Claims 14, 15, and 18)

                Plaintiffs' fourteenth, fifteenth, and eighteenth claims for relief allege that "All

Defendants" violated plaintiffs' constitutional rights.  These claims, which are expressly or

_____

        [5]  The APS defendants do not argue that any other sort of immunity applies with respect to the federal claims alleged against Carpenter and Cook.

        [6]  Plaintiffs' eighteenth claim alleges a claim for "civil conspiracy."  As stated in previous dispositions, the undersigned construes this claim as an additional claim brought pursuant to Section 1983. (See, e.g., Findings & Recommendations, July 27, 2010, at 6-10, Dkt. No. 147, adopted by, Order, Sept. 14, 2010, Dkt. No. 180.)

1  impliedly brought pursuant to 42 U.S.C. § 1983, are subject to dismissal with prejudice.

2          "Section 1983 imposes civil liability upon an individual who under color of state

3  law subjects or causes, any citizen of the United States to the deprivation of any rights, privileges

4  or immunities secured by the Constitution and laws." Franklin v. Fox, 312 F.3d 423, 444 (9th

5  Cir. 2002) (citing 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege two

6  essential elements: (1) that a right secured by the Constitution or laws of the United States was

7  violated, and (2) that the alleged violation was committed by a person acting under the color of

8  State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v.

9  Atkins, 487 U.S. 42, 48 (1988)); accord Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir.

10  2009), cert. denied, 130 S. Ct. 1937 (2010).  Conclusory allegations of a violation of Section

11  1983 or a conspiracy to violate Section 1983 will not survive a motion to dismiss.  See, e.g.,

12  Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming

13  dismissal of plaintiff's second amended complaint as a result of plaintiff's "conclusory

14  allegations" of a conspiracy to deprive him of his constitutional rights in violation of Section

15  1983).

16          Plaintiffs' allegations in support of their fourteenth, fifteenth, and eighteenth

17  claims for relief are so conclusory that they should be dismissed.  With respect to plaintiffs'

18  fourteenth claim, alleging that "All Defendants" individually violated plaintiffs' constitutional

19  rights, plaintiffs only allege the following:

20          Paragraphs above incorporated by reference.  Defendants, by their actions
           and acting under the color of law, subjected Plaintiffs, and caused
21          Plaintiffs to be subjected, to the deprivations of their rights, privileges, and
           immunities secured by the Constitution and laws of the State of California
22          and of the United States of America, Plaintiffs claim damages under 42
           U.S.C. § 1983 for their injuries set forth above.

23

24  (Third Am. Compl. at 19.)  These allegations consist of bare legal conclusions, and not factual

25  allegations that state a plausible claim under Section 1983.  Plaintiffs do not allege which

26  particular constitutional right of which particular plaintiff was purportedly violated.  Moreover,

1   plaintiffs have not alleged how APS, Brown, Carpenter, or Cook were specifically involved in

2   the purported deprivation of each plaintiff's civil rights at issue in claim fourteen.  See, e.g.,

3   James v. Rowlands, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability

4   on a defendant only if he or she personally participated in or directed a violation."); Jones v.

5   Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state

6   law to be liable under section 1983 there must be a showing of personal participation in the

7   alleged rights deprivation . . . ."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A

8   plaintiff must allege facts, not simply conclusions, that show that an individual was personally

9   involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the

10  personal involvement of the defendant.").  Accordingly, plaintiffs' fourteenth claim should be

11  dismissed.

12          Plaintiffs' conspiracy claims alleged in claims fifteen and eighteen are also fatally

13  flawed.  Again, plaintiffs do not allege that they were deprived of any specific constitutional

14  right.  They simply incorporate the rest of their complaint by reference and leave it to defendants

15  and the court to sort out.  Additionally, plaintiffs' allegations of an agreement among "All

16  Defendants" to commit a violation of plaintiffs' rights is conclusory so as to be legally

17  insufficient.  See Simmons, 318 F.3d at 1161 ("Plaintiff's conclusory allegations that the lawyer

18  was conspiring with state officers to deprive him of due process are insufficient."); Burns v.

19  County of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam) ("Burns' claims against all the

20  defendants for a conspiracy to violate his constitutional rights under section 1983 also fail

21  because they were supported only by conclusory allegations."); see, cf., Degrassi v. City of

22  Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (stating that "a bare allegation of . . . joint action

23  will not overcome a motion to dismiss" (citation and quotation marks omitted)); Price v. Hawaii,

24  939 F.2d 702, 707-08 (9th Cir. 1991) (stating that "[c]onclusory allegations, unsupported by

25  facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act" (citation and

26  quotation marks omitted, modifications in original).), cert. denied, 503 U.S. 938 (1992), and Paty

1  v. Price, 503 U.S. 938 (1992).  Plaintiffs simply allege a series of distinct acts committed by

2  different defendants and attempt to tie those acts together in an alleged conspiracy through the

3  use of empty buzzwords such as "in concert" and "colluding."

4          In light of the deficient nature of plaintiffs' allegations in claims fourteen, fifteen,

5  and eighteen, the undersigned recommends that these claims be dismissed as to APS, Brown,

6  Carpenter, and Cook.  Nothing in plaintiffs' Third Amended Complaint suggests that these

7  pleading deficiencies could be cured through amendment and, accordingly, the undersigned

8  recommends that these claims be dismissed with prejudice.

9          D.      Plaintiffs' Equal Protection Claim Against APS, Carpenter, and Cook (Claim 7)

10         Plaintiffs' seventh claim for relief alleges that fourteen defendants, including

11  APS, Carpenter, and Cook, violated plaintiffs' rights of equal protection provided in the

12  Fourteenth Amendment to the U.S. Constitution.  (See Third Am. Compl. at 14.)  In essence,

13  plaintiffs allege that APS, Carpenter, and Cook arbitrarily provided assistance to certain

14  individuals in regards to the protection of Virginia Armstrong, but refused to provide assistance

15  to plaintiff Susan Winters in her attempts to allegedly protect Virginia Armstrong.  In relevant

16  part, plaintiffs allege:

17         **04/08**— Paragraphs above incorporated by reference.  In violation of equal
               protection of the laws, Plaintiff Susan Winters called APS to report the
18             physical (medication), financial, and emotional abuse and undue influence
               of Delores Jordan and attorney Valerie Logsdon over her elderly mother
19             Virginia Armstrong.  In response, Nevada County Adult Protective
               Services instructed Susan that she must obtain conservatorship of Virginia
20             Armstrong before Susan could allege abuse and undue influence of others
               over her mother Virginia Armstrong.  Susan had the right to the assistance
21             of Adult Protective Services to stop the abuse of her mother by Delores
               Jordan and Valerie Logsdon.  Adult Protective Services was assisting
22             Delores Jordan against Susan, but APS refused to assist Susan in her
               lawful complaint against Jordan and Logsdon. . . .

23

24  (Id.)

25         The APS defendants only move to dismiss this claim on the grounds that plaintiffs

26  fail "to allege what County Defendants did that was tantamount to discrimination."  (Mot. to

13

1   Dismiss at 18.)  The APS defendants' argument consists of a single sentence unsupported by any

2   authority or analysis of the allegations in the Third Amended Complaint.

3              It is fairly clear from plaintiffs' Third Amended Complaint that plaintiffs believe

4   that Susan Winters was discriminated against because she was entitled to assistance from APS

5   vis-a-vis Virginia Armstrong and was denied such assistance while, at the same time, Delores

6   Jordan and Valerie Logsdon were provided such assistance.  See, e.g., Elliot-Park v. Manglona,

7   592 F.3d 1003, 1007 (9th Cir. 2010) (holding that the provision of diminished police services as

8   a result of the requesting party's race does not satisfy the government's obligation to provide

9   services on a non-discriminatory basis); N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486

10  (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on

11  a classification, the Supreme Court has described it as a 'class of one' claim.  In order to claim a

12  violation of equal protection in a class of one case, the plaintiff must establish that the City

13  intentionally, and without rational basis, treated the plaintiff differently from others similarly

14  situated.") (citation omitted).  Thus, the basis for Susan Winters's claim is apparent.  It might be

15  that the APS defendants have some other pleading-based defenses to such an equal protection

16  claim.  But they have not clearly offered any such defenses here, and the undersigned will not

17  speculate as to what such defenses might be.  Accordingly, plaintiff Susan Winters's equal

18  protection is not subject to dismissal on the grounds forwarded by the APS defendants, and this

19  claim may go forward against APS, Carpenter, and Cook.  The undersigned recommends that this

20  claim be dismissed insofar as it is alleged by any plaintiff other than Susan Winters against APS,

21  Carpenter, or Cook.

22         E.    Plaintiffs' First Amendment Claims Against Cook (Claim 26)

23              In their twenty-sixth claim for relief, plaintiffs allege that Cook, along with judges

24  and court staff at the Nevada County Superior Court, Virginia Armstrong, and a courthouse

25  security guard, among others, violated plaintiffs' First Amendment rights to petition for the

26  redress of grievances by preventing plaintiffs' access to the Superior Court to file papers and

otherwise respond to written and spoken allegations in proceedings before that court.  (See Third
Am. Compl. at 23 ("Defendants herein . . . by persistent and systematic, individual, and
institutional device have denied and refused the Winters' petitions to the court for redress of
grievances.").)  This claim necessarily alleges a violation of 42 U.S.C. § 1983.

The APS defendants move to dismiss this claim on the grounds that plaintiffs'
claim does not meet the pleading standards set forth in Federal Rule of Civil Procedure 8(a).
(See Mot. to Dismiss at 18.)  Although the APS defendants provided little in the way of analysis
or authority, it is readily apparent from the face of plaintiffs' pleading that this claim fails.

The First Amendment to the U.S. Constitution provides a constitutional right to
petition the government for a redress of grievances, which includes a "reasonable right of access
to the courts." Hudson v. Palmer, 468 U.S. 517, 523 (1984); see also Cal. Motor Transport Co v.
Trucking Unlimited, 404 U.S. 508, 612 (1972) ("The right of access to the courts is indeed but
one aspect of the right of petition."); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th
Cir. 1989) (stating, in the context of a First Amendment retaliation claim, that "[t]he right of
access to the courts is subsumed under the first amendment right to petition the government for
redress of grievances").  Although a right of reasonable access to the courts exists generally,
plaintiffs' claim, as alleged against Cook, fails because plaintiffs have not alleged how Cook
deprived plaintiffs of their access to a court.[7]  Plaintiffs' Third Amended Complaint in no way
alleges how Cook, a social worker who made appearances in the Nevada County Superior Court
and filed reports with that court, actually prevented plaintiffs from either entering the Nevada
County Superior Court or filing papers with that court.  Plaintiffs allege no facts whatsoever as to
Cook, and Cook is simply lumped together with the other eleven defendants against whom this
claim is alleged.  Plaintiffs' claim fails because plaintiffs have not alleged how Cook was
personally involved in the alleged deprivation of plaintiffs' First Amendment rights of access.

---

[7]  The court has already dismissed this claim with prejudice as to ten other defendants:
including the court staff, the courthouse security guard, and Virginia Armstrong.

See James, 606 F.3d at 653 n.3; Jones, 297 F.3d at 934; Barren, 152 F.3d at 1194.  Accordingly,
plaintiffs have failed to allege a plausible First Amendment claim against Cook.  Because
nothing in the Third Amended Complaint or plaintiffs' opposition[8] suggests that these
deficiencies can be cured through amendment, the undersigned recommends that plaintiffs'
twenty-sixth claim for relief be dismissed with prejudice.

F.     Plaintiffs' Claim of Trespass to Chattels (Claim 13)

In their thirteenth claim for relief, plaintiffs further allege that "All Defendants,"
including the APS defendants, committed the tort of trespass to chattels.  (Third Am. Compl. at
19.)  "[T]he tort of trespass to chattels allows recovery for interferences with possession of
personal property not sufficiently important to be classed as conversion, and so to compel the
defendant to pay the full value of the thing with which he has interfered."  Intel Corp. v. Hamidi,
30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has stated that
"[t]respass remains as an occasional remedy for minor interferences, resulting in some damage,
but not sufficiently serious or sufficiently important to amount to the greater tort" of conversion."
Id. at 1351, 71 P.3d at 302 (citation omitted, modification in original).

As to the APS defendants, and indeed as to all defendants, plaintiffs have not
specified the chattel or chattels with which each defendant interfered, which in turn proximately
caused them harm.  See Intel Corp., 30 Cal. 4th at 1350-51, 71 P.3d at 302 ("Under California
law, trespass to chattels lies where an intentional interference with the possession of personal
property has proximately caused injury" (citation and quotation marks omitted).).  Accordingly,
plaintiffs' claim for trespass to chattels should be dismissed with prejudice as to the APS
defendants.

G.     Plaintiffs' RICO Conspiracy Claim (Claim 31)

The APS defendants move to dismiss plaintiffs' thirty-first claim for relief, which

---

[8]  Plaintiffs' opposition simply reasserts the same conclusory allegations that render this
claim subject to dismissal.  (See Pls.' Opp'n at 4-5, Dkt. No. 118.)

1   alleges that "All Defendants"—over sixty defendants including private actors, state court judges

2   and employees, law enforcement, and local agencies—conspired to commit racketeering activity

3   in violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am. Compl. at

4   24.)  Plaintiffs allege that all defendants in this case conspired to "maintain a federal prosecution

5   against Plaintiff Brent Winters in Illinois."  (Id.)  They further allege that on July 9, 2002,

6   defendant Jan Paul Miller agreed with an individual named Michael McCuskey and defendant

7   Assistant United States Attorney Frooman "to investigate and prosecute Brent Winters on false

8   charges" knowing that the presiding judge was biased.  (Id.)  They also allege that "Agent Pogue"

9   contributed to the conspiracy by testifying based on "conjecture" at Brent Winters's sentencing

10   hearing.  (Id.)  In addition, they vaguely allege an undefined "pattern of misrepresentation"

11   intended to "defraud the Winters of their rights and their property."  (Id.)  Moreover, plaintiffs

12   allege the "concealment of critical data," including a memorandum drafted by Judge Anderson of

13   the Nevada County Superior Court.  (Id.)  Other than including Carpenter's and Cook's names in

14   a laundry list of over 40 defendants, plaintiffs do not allege any specific facts with respect to the

15   APS defendants' participation in this alleged conspiracy.

16        "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

17   enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

18   (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

19   Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted), cert.

20   denied, 547 U.S. 1192 (2006).  "To state a RICO claim, one must allege a 'pattern' of

21   racketeering activity, which requires at least two predicate acts."  Clark v. Time Warner Cable,

22   523 F.3d 1110, 1116 (9th Cir. 2008) (citations omitted).  Furthermore, a plaintiff must also show

23   that the injury to his business or property was proximately caused by the prohibited conduct and

24   that he has suffered a concrete financial loss.  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083,

25   1086 (9th Cir. 2002).

26        Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

the allegations are of such a vague and conclusory nature that they do not state a plausible claim

for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

"racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

alleged a "concrete financial loss" or injury to business or property proximately caused by the

conspiracy.  Nothing contained in plaintiffs' Third Amended Complaint or opposition brief

suggests that they could amend their pleading to state a plausible claim for relief.  Accordingly,

plaintiffs' thirty-first claim for relief should be dismissed with prejudice as to the APS

defendants.

        H.     Plaintiffs' State Law Claim for Loss of Consortium (Claim 36)

        In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

liable for loss of consortium.  (Third Am. Compl. at 25.)  Although plaintiffs incorporate the

remainder of their complaint by reference, their allegations are limited to the following:

> Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan, Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered loss of consortium with each other and their grandmother as a result of the actions of the Defendants.

(Id.)

        One California court has cited with approval a California practice manual that

defines the tort of loss of consortium as having the following four elements:

> (1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury;
>
> (2) a tortious injury to the plaintiff's spouse;
>
> (3) loss of consortium suffered by the plaintiff; and
>
> (4) the loss was proximately caused by the defendant's act.

Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App.

2007) (citation omitted); see also Malone v. Marriott Int'l., Inc., No. EDCV 09-01980 VAP

(DTBx), 2010 WL 4537828, at *6 (C.D. Cal. Oct. 29, 2010) (unpublished) (citing Hahn for the

1    elements of a claim of loss of consortium).  Additionally, "[a] cause of action for loss of

2    consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to

3    a spouse."  Hahn, 147 Cal. App. 4th at 746, 54 Cal. Rptr. 3d at 531.  Additionally, the Ninth

4    Circuit Court of Appeals has explained:

5            To support a loss of consortium claim, marital spouses must allege that
             their partner suffered an injury that is "sufficiently serious and disabling to
6            raise the inference that the conjugal relationship is more than superficially
             or temporarily impaired."  *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916,
7            167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); *Anderson v. Northrop Corp.*,
             203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury
8            may be physical or psychological, but psychological injury must "rise [ ] to
             the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be]
9            sufficient to substantially disturb the marital relationship."  *Anderson*, 250
             Cal.Rptr. at 195, quoting *Molien*, 167 Cal.Rptr. 831, 616 P.2d at 813.

10

11   Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008)

12   (modifications in original), cert. denied, 129 S. Ct. 174 (2008).

13           The undersigned recommends that plaintiffs' loss of consortium claim be

14   dismissed with prejudice because plaintiffs failed to allege a plausible claim for relief.  First,

15   plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship

16   has been more than superficially affected.  Second, plaintiffs have not alleged any facts regarding

17   how the APS defendants acts proximately caused any loss of consortium.  Plaintiffs' allegations

18   of causation are general as to all defendants and are conclusory in nature.  Third, under California

19   law, parents may not pursue a claim loss of filial consortium, and children may not pursue a

20   claim for loss of parental consortium.  See Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563

21   P.2d 871, 874 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858, 866

22   (1977); Meighan v. Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App.

23   1995).  Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark, and Jill

24   Winters, as the court previously ordered that references to these minors be stricken from the

25   Third Amended Complaint.  Moreover, the minor defendants have more recently been dismissed

26   from this action.  Finally, it would appear facially improper that plaintiffs could recover for loss

1  of consortium with "their grandmother," Virginia Armstrong, who they have named as a

2  defendant in this case.  Plaintiffs have failed to meet the pleading requirements to state a

3  cognizable claim for relief, and the undersigned has no reason to believe that these deficiencies

4  could be cured through amendment.

5       I.      Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress
               (Claim 38)

6

7              The APS defendants also move to dismiss plaintiffs' thirty-eighth claim for relief,

8  which seeks damages for intentional infliction of emotional distress against "All Defendants."

9  (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED claim

10  contains only bare factual allegations and legal conclusions, which are stated generally against all

11  defendants:

12              Paragraphs above incorporated by reference.All [*sic*] Defendants acted
               with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
13              Defendants' conduct on dates referenced above was extreme and
               outrageous. Defendants' conduct is the proximate cause of their distress.
14              Each Plaintiff suffers severe emotional distress as a result of all
               Defendants' conduct.

15

16  (Id.)

17              To state a claim for intentional infliction of emotional distress under California

18  law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

19  conduct by the defendant with the intention of causing, or reckless disregard of the probability of

20  causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

21  (3) actual and proximate causation of the emotional distress by the defendant's outrageous

22  conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

23  quotation marks omitted).  The California Supreme Court has explained that "outrageous"

24  conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

25  civilized community," and that "the defendant's conduct must be intended to inflict injury or

26  engaged in with the realization that injury will result."  Id. (citations and quotation marks

1    omitted).

2           As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare

3    factual allegations that incorporate the remainder of the Third Amended Complaint by reference.

4    Plaintiffs do not allege facts demonstrating that the APS defendants' acts rose to the level of

5    "extreme and outrageous" behavior as defined under California, that any of plaintiffs suffered

6    severe of extreme emotional distress, or that the APS defendants' conduct proximately caused

7    any particular plaintiff's emotional distress.  Accordingly, the undersigned will recommend that

8    this claim be dismissed.  The undersigned will recommend dismissal with prejudice because

9    nothing in the Third Amended Complaint or plaintiffs' written opposition brief suggests that the

10   identified pleading deficiencies could be cured through amendment.

11          J.      Respondeat Superior Liability of Defendant Jeffrey S. Brown (Claim 34)

12          Finally, plaintiffs allege that defendant Jeffrey S. Brown is vicariously liable for

13   the acts of Carpenter and Cook.  They allege:

14          Paragraphs above incorporated by reference.  Defendant Jeffrey S. Brown,
            Nevada County Adult Protective Services Agency Director, is liable for
15          abuse of process by Defendants Cook and Carpenter, who abused legal
            process, all while acting in the scope of their employment.  Defendant
16          Brown is liable and is aware, or should have been aware, of Defendant's
            [*sic*] pattern of creation of false testimony in their reports, which led to the
17          unlawful deprivation of the Winters' fundamental, constitutional, and civil
            rights, property and rights in their property.
18

19   (Third Am. Compl. at 25.)  As noted above, plaintiffs' written opposition makes clear that the

20   claim against Brown is only for common law tort liability and is not addressed to any alleged

21   civil rights violations.  (Pls.' Opp'n to Mot. to Dismiss at 9 ("The Winters' Respondeat Superior

22   claims are civil torts not § 1983 civil-rights claims.").)  Indeed, plaintiffs' allegation limits

23   Brown's vicarious liability to Carpenter's and Cook's abuse of legal process.

24          Plaintiffs' "respondeat superior" claim—to the extent it even is a claim as

25   opposed to a theory of liability—should be dismissed with prejudice.  As an initial matter, the

26   respondeat superior doctrine generally does not impose vicarious liability on a supervising

1  employee for the acts of subordinate employees.  See, e.g., Malloy v. Fong, 37 Cal. 2d 356, 378,

2  232 P.2d 241, 254 (1951) ("The doctrine of respondeat superior is not applicable to the

3  realationship [sic] between a supreisor [sic] and his subordinate employees."); George F.

4  Hillenbrand, Inc. v. Ins. Co. of N. Am., 104 Cal. App. 4th 784, 823, 128 Cal. Rptr. 2d 586, 615-

5  16 (Ct. App. 2002); Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1326, 58 Cal. Rptr. 2d 308, 312-13

6  (Ct. App. 1996).  In any event, even if the doctrine applied here, the undersigned has already

7  concluded above that all of the common law tort claims alleged against Carpenter and Cook

8  should be dismissed with prejudice and specifically that Carpenter and Cook are immune from

9  liability insofar as plaintiffs' abuse of process claim is concerned.  Accordingly, if the district

10  judge adopts the recommendations stated herein, there are no torts for which Brown could be

11  vicariously liable.

12  IV.   CONCLUSION

13        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

14        1.    Defendants' motion to dismiss the Third Amended Complaint (Dkt.

15  No. 116) be granted in part as to the following named defendants: Adult Protective Services,

16  Kelly Carpenter, Tamaran Cook, and Jeffrey S. Brown.

17        2.    All of plaintiffs' claims alleged against defendants Adult Protective

18  Services, Kelly Carpenter, and Tamaran Cook—except plaintiff Susan Winters's equal protection

19  claim (claim 7)—be dismissed with prejudice.

20        3.    All of plaintiffs' claims alleged against defendant Jeffrey S. Brown be

21  dismissed with prejudice, and that defendant Jeffrey S. Brown be dismissed from this action.

22        These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

24  days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

26  Such a document should be captioned "Objections to Magistrate Judge's Findings and

22

Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

           IT IS SO RECOMMENDED.

DATED:  March 11, 2011

                                       KENDALL J. NEWMAN
                                       UNITED STATES MAGISTRATE JUDGE