IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENT ALLAN WINTERS, et al.,

    Plaintiff,                        No. 2:09-cv-00522 JAM KJN PS

    v.

DELORES JORDAN, et al,

    Defendants.                ORDER
_____/

        Presently before the court are separate motions for attorneys' fees and costs filed by defendants Judy Ford and Valerie Logsdon. (Dkt. Nos. 202, 204.) Ford and Logsdon seek attorneys' fees and costs in connection with their successful special motions to strike, which each of them filed pursuant to California's anti-SLAPP statute, California Code of Civil Procedure 425.16.[1] For the reasons stated below, the undersigned: (1) denies Ford's motion without prejudice; and (2) grants Logsdon's motion and awards her a total of $12,126.00 in attorneys' fees, and $368.70 in costs.

I.    BACKGROUND

        The operative complaint is plaintiffs' Third Amended Complaint, which alleged

---

[1] The acronym "SLAPP" stands for "strategic lawsuit against public participation." Jarrow Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 732 n.1, 74 P.3d 737, 739 n.1 (2003).

1

numerous claims against Ford and Logsdon premised on state law and federal law.  (See generally Third Am. Compl., Dkt. No. 66.)  Underlying the pending motions for fees and costs are pleading motions filed separately by Ford and Logsdon, each of which included a special motion to strike pursuant to California's anti-SLAPP statute and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

      A.      <u>Ford's Combined Motion to Dismiss and Special Motion to Strike</u>

Although plaintiffs' Third Amended Complaint is the operative pleading, plaintiffs' Second Amended Complaint is also implicated by Ford's motion for attorneys' fees and costs. (Second Am. Compl., Dkt. No. 15.)  On July 24, 2009, Ford filed a special motion to strike the Second Amended Complaint pursuant to the anti-SLAPP statute.  (Dkt. No. 34.)  That anti-SLAPP motion was not resolved on the merits; the then-presiding magistrate judge denied the motion as moot and granted plaintiffs leave to file a Third Amended Complaint as a less drastic alternative to involuntary dismissal stemming from plaintiffs' inability to follow the court's orders.  (<u>See</u> Order, Aug. 24, 2009, Dkt. No. 56.)

Plaintiffs' Third Amended Complaint alleged several claims against Ford.  It alleged four state law claims for relief and four claims premised on violations of federal law.

In response to the Third Amended Complaint, Ford filed a special motion to strike pursuant to the anti-SLAPP statute and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 69.)  This motion was substantially similar to Ford's special motion to strike the Second Amended Complaint.

On July 20, 2010, the undersigned entered findings and recommendations that recommended the dismissal, with prejudice, of all of the claims asserted against Ford in the Third Amended Complaint.  (Order and Findings & Recommendations, Jul. 20, 2010, Dkt. No. 143.)  Specifically relevant to Ford's pending motion, the undersigned recommended the dismissal of plaintiffs' state law claims—for abuse of process, trespass to chattels, loss of consortium, and intentional infliction of emotional distress—on the basis of the well-taken anti-SLAPP motion.

1  (See id. at 6-11.)

2  On September 14, 2010, United States District Judge John A. Mendez adopted the findings and recommendations in full and dismissed all of the claims alleged against Ford, including the four state law claims for relief.  (Order, Sept. 14, 2010, Dkt. No. 176.)  On October 14, 2010, plaintiffs filed an notice of interlocutory appeal of several of Judge Mendez's orders.  (Notice of Appeal, Dkt. No. 187.)  Plaintiffs' interlocutory appeal is presently pending before the United States Court of Appeals for the Ninth Circuit.  (See Winters v. Jordan, No. 10-17829 (9th Cir.).)

On October 18, 2010, Ford requested the entry of judgment in her favor.  (Req. for Entry of J., Dkt. No. 193.)  On October 21, 2010, Judge Mendez entered judgment in Ford's favor.  (Judgment, Oct. 21, 2010, Dkt. No. 194.)

On November 17, 2010, Ford filed the pending motion for anti-SLAPP attorneys' fees and costs.  Plaintiffs filed a written opposition, but that opposition does not address the basis for the fee and cost award sought, i.e., the anti-SLAPP statute.  (Dkt. No. 219.)  On February 17, 2011, the undersigned conducted a hearing on several motions, including Ford's motion for fees and costs, and plaintiffs failed to appear.  (See Minutes, Feb. 17, 2011, Dkt. No. 255.)  In light of a recent decision of the Ninth Circuit Court of Appeals addressing the apportionment of fees incurred where an anti-SLAPP motion to strike is filed along with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), see Fabbrini v. City of Dunsmuir, 631 F.3d 1299 (9th Cir. 2011), the undersigned ordered Ford's counsel to file a supplemental declaration addressing whether the fee and cost award previously sought should be reduced.  On February 24, 2011, Ford filed, as ordered by the court, a supplemental declaration attempting to clarify the basis for the amount of fees and costs sought.  (Second Suppl. Sommer Decl., Feb. 24, 2011, Dkt. No. 259.)

B.  Logsdon's Combined Motion to Dismiss and Special Motion to Strike

Plaintiffs' Third Amended Complaint alleged several claims against defendant

3

1  Valerie Logsdon.  It alleged six state law claims for relief and four claims premised on violations
2  of federal law.  In response to the Third Amended Complaint, Ford filed a special motion to
3  strike pursuant to the anti-SLAPP statute and a motion to dismiss pursuant to Federal Rule of
4  Civil Procedure 12(b)(6).  (Dkt. No. 72.)
5        On July 22, 2010, the undersigned entered findings and recommendations that
6  recommended the dismissal, with prejudice, of several of the claims asserted against Logsdon in
7  the Third Amended Complaint.  (Order and Findings & Recommendations, Jul. 22, 2010, Dkt.
8  No. 145.)  Specifically relevant to Logsdon's present motion for fees and costs, the undersigned
9  recommended the dismissal of plaintiffs' state law claims against Logsdon except for a single
10 claim of civil battery alleged by plaintiff Christy Winters.  (Id. at 22-23.)  The undersigned
11 recommended that plaintiffs' state law claims for abuse of process, trespass to chattels, loss of
12 consortium, intentional infliction of emotional distress, and breach of contract be dismissed with
13 prejudice.  (Id.)  As to all of the state claims subject to dismissal, the undersigned recommended
14 that all but the breach of contract claim be dismissed on the basis of Logsdon's well-taken anti-
15 SLAPP motion.  (See id. at 5-10.)
16       On September 14, 2010, Judge Mendez adopted the findings and
17 recommendations in full and dismissed all of the claims alleged against Logsdon, including the
18 four state law claims for relief.  (Order, Sept. 14, 2010, Dkt. No. 178.)  Plaintiffs' notice of
19 interlocutory appeal, filed on October 14, 2010, included an attempt to appeal Judge Mendez's
20 September 14, 2010 order.  (See Notice of Appeal.)  However, on January 25, 2011, the Ninth
21 Circuit Court of Appeals entered an order stating that the scope of the appeal does not include the
22 order on Logsdon's motion because no judgment had been entered as to Logsdon.  (See Winters
23 v. Jordan, No. 10-17829, Order, Jan. 25, 2011, Dkt. No. 4 (9th Cir.); see also Exhibit to Suppl.
24 Bacon Decl., Feb. 10, 2011, Dkt. No. 244.)
25       On November 12, 2010, Logsdon filed the pending motion for anti-SLAPP
26 attorneys' fees and costs.  Plaintiffs filed a written opposition, but that opposition, as with

4

1 plaintiffs' opposition to Ford's motion, does not address the basis for the fee and cost award
2 sought, i.e., the anti-SLAPP statute. (Dkt. No. 220.) On February 17, 2011, the undersigned
3 conducted a hearing on several motions, including Logsdon's motion for fees and costs, and
4 plaintiffs failed to appear. (See Minutes, Dkt. No. 255.) On February 24, 2011, Logsdon filed,
5 as ordered by the court, a supplemental declaration clarifying the basis for the amount of fees and
6 costs sought. (See Suppl. Bacon Decl., Feb. 24, 2011 ("Second Suppl. Bacon Decl."), Dkt. No.
7 262.)

## II. LEGAL STANDARDS

A party may bring an anti-SLAPP special motion to strike in federal court. Thomas v. Fry's Elecs., Inc., 400 F. 3d 1206, 1206 (9th Cir. 2005) (per curiam); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003). A party may seek to specially strike state law claims brought in federal court on the basis of the court's diversity subject matter jurisdiction and state law claims that are supplemental to federal claims in an action premised on federal question jurisdiction. See Hilton v. Hallmark Cards, 599 F.3d 894, 900 n.2 (9th Cir. 2010) (stating that "we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction") (citing United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999)); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the *Erie* analysis set forth in *Lockheed* the anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims.").[2]

In regards to attorneys' fees and costs, California's anti-SLAPP statute provides,

---

[2] However, a party may not use an anti-SLAPP special motion to strike to seek the dismissal of claims based on federal law, such as claims brought pursuant to 42 U.S.C. § 1983. See, e.g., Hilton, 599 F.3d at 901 (stating that "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"); Summit Media LLC v. City of Los Angeles, 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008) ("Several District Courts have determined that the Anti-SLAPP statute does not apply to federal question claims in federal court because such application would frustrate substantive federal rights.").

5

in part, that except in circumstances not present here, "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c) (emphasis added). Under California law, "any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." Ketchum v. Moses, 24 Cal. 4th 1122, 1131, 17 P.3d 735, 741 (2001). A California Court of Appeal has persuasively held that the "the Legislature intended that a prevailing defendant on a motion to strike be allowed to recover attorney fees and costs only on the motion to strike, not the entire suit." Lafayette Morehouse, Inc. v. Chronicle Publ'g Co., 39 Cal. App. 4th 1379, 1383, 46 Cal. Rptr. 2d 542, 544 (Ct. App. 1995). The successful defendant is also entitled to fees incurred in filing the motion for anti-SLAPP fees, also referred to as "fees on fees." Ketchum, 24 Cal. 4th at 1141, 17 P.3d at 747.

      The California Supreme Court has presumed that the Legislature intended for anti-SLAPP fees to be calculated using the "lodestar" approach, but does not require use of the lodestar approach. See Ketchum, 24 Cal. 4th at 1136, 17 P.3d at 744; accord Mann v. Quality Old Time Serv., Inc., 139 Cal. App. 4th 328, 342, 42 Cal. Rptr. 3d 607, 616 (Ct. App. 2006). The undersigned finds that the lodestar approach is appropriate here. In addressing fee-shifting statutes other than the anti-SLAPP statute, the Ninth Circuit Court of Appeals has stated that the "'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). It has further held that "[a]lthough in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Id. (citation omitted). The California Supreme Court's description of the lodestar method, as applied in the anti-SLAPP context, is in accord. See Ketchum, 24 Cal. 4th at 1131-32, 17 P.3d at 741 (stating that "a court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly

6

1  compensation of each attorney . . . involved in the presentation of the case.") (citations and
2  quotation marks omitted).  That court has considered adjustment of the lodestar in consideration
3  of factors such as: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed
4  in presenting them, (3) the extent to which the nature of the litigation precluded other
5  employment by the attorneys, (4) the contingent nature of the fee award."  Id. at 1132, 17 P.3d
6  at 741.

7  In diversity jurisdiction cases, the Ninth Circuit Court of Appeals has held that the
8  anti-SLAPP statute's fee provision applies in federal court.  See Thomas, 400 F.3d at 1206;
9  Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).  Although the
10 Court of Appeals has not expressly held that the anti-SLAPP statute's fees provision applies to
11 state law claims over which the district court has supplemental jurisdiction, it recently
12 acknowledged that a party who prevailed on its anti-SLAPP motion that was combined with a
13 motion to dismiss a Section 1983 claim was entitled to anti-SLAPP fees.  See Fabbrini, 631 F.3d
14 at 1302 ("In the district court, the City filed in a single pleading the motion to dismiss the § 1983
15 malicious prosecution claim and the anti-SLAPP motion to strike the defamation claim.  It is
16 undisputed that the City is entitled to fees for having prevailed on the anti-SLAPP motion.").

17 III.   DISCUSSION

18 There can be no legitimate dispute that Ford and Logsdon are prevailing parties in
19 regards to their respective anti-SLAPP motions.  Ford successfully moved the court to specially
20 strike all four state law claims pursuant to California's anti-SLAPP statute and obtained a
21 judgment in her favor.  Logsdon successfully moved to specially strike the four of six state law
22 claims alleged against her.  See Mann, 139 Cal. App. at 340, 42 Cal. Rptr. 3d at 614 (holding that
23 "a party who partially prevails on an anti-SLAPP motion must generally be considered a
24 prevailing party unless the results of the motion were so insignificant that the party did not
25 achieve any practical benefit from bringing the motion").  Plaintiffs offer no substantive basis in
26 opposition to an award of fees and costs under California's anti-SLAPP statute; their opposition

briefs do not even acknowledge the anti-SLAPP statute. Accordingly, what remains is the calculation of the appropriate fee award to which Ford and Logsdon are entitled, respectively. Plaintiffs have not opposed any specific amount of fees and costs claimed by Ford or Logsdon.

        A.        <u>Ford's Motion For Attorneys' Fees and Costs</u>

Although Ford is entitled to recover mandatory attorneys' fees and costs pursuant to the anti-SLAPP statute, the records submitted in support of her motion simply do not substantiate that Ford is entitled to recover the roughly $33,500 sought. Among other things, the billing records submitted are vague, and Ford appears to seek fees for work that was not performed in connection with the filing of the anti-SLAPP portion of her pleading motion. Accordingly, the undersigned denies Ford's motion at this time, but without prejudice. Ford may submit supplemental materials in support of a request for attorneys' fees and costs that is consistent with the principles stated in this order.

Ford's lead defense counsel, Jason Sommer of the firm Hansen, Kohls, Jones, Sommer & Jacob LLP, filed three declarations and a table of exhibits in support of Ford's request for a total of $33,540.65 in attorneys' fees and costs incurred by Ford in connection with the portion of Ford's pleading motion consisting of a special motion to strike filed pursuant to California's anti-SLAPP statute. (<u>See</u> Sommer Decl., Nov. 17, 2010 ("Sommer Decl."), Dkt. No. 204, Doc. No. 204-1; Ford's Table of Exhibits & Ex. A, Dkt. No. 204, Doc. No. 204-3; Suppl. Sommer Decl., Feb. 8, 2011, Dkt. No. 231, Doc. No. 231-1; Second Suppl. Sommer Decl. & Ex. B.)

Mr. Sommer's declarations provide that three attorneys in his law firm represented Ford in connection with her special motion to strike: Mr. Sommer, who bills his time at a rate of $275 per hour; Christopher Becker, who bills his time at a rate of $200 per hour; and Amanda Uhrhammer, who bills her time at a rate of $225 per hour. (Sommer Decl. ¶ 3; Suppl. Sommer Decl. ¶ 4; Second Suppl. Sommer Decl. ¶ 15.) Based on the representations contained in these declarations, the undersigned finds that the hourly rates provided are reasonable.

However, the undersigned cannot arrive at the same conclusion insofar as the number of hours billed by Ford's attorneys. It is apparent to the undersigned that rather than seeking attorneys' fees specifically incurred in connection with the filing of the anti-SLAPP portion of Ford's pleading motion, Ford is attempting to recover attorneys' fees and costs incurred in connection with all of the work her attorneys performed in her defense of this case. Accordingly, the undersigned denies Ford's motion for attorneys' fees and costs, but without prejudice to filing yet another supplemental declaration and/or brief substantiating the hours actually spent on the anti-SLAPP portion of Ford's combined anti-SLAPP motion to strike and motion to dismiss.

At the outset, the undersigned notes that the billing entries submitted are truncated, in that the entries only contain the first line of text of the entry. Thus, the undersigned has had difficulty in ascertaining whether all of the time billed in a particular entry truly pertains to only the anti-SLAPP portion of Ford's motions to dismiss and specially strike.

The undersigned is also concerned that Ford is attempting to recover all of the fees incurred in connection with initial client meetings, strategy calls, general internet research, etc.[3] The undersigned has no basis to believe that these entire entries relate solely to the preparation of the anti-SLAPP special motion to strike. The undersigned acknowledges that it might be difficult to precisely segregate this time, but Ford seems to have taken an avoidably overbroad approach.

A substantial issue, which was highlighted at the February 17, 2011 hearing, is whether Ford should be able to recover for preparation of a motion to dismiss and specially strike the Second Amended Complaint in addition to preparation of a motion to dismiss and specially strike the Third Amended Complaint. As expressed at the hearing, the undersigned is inclined to permit some recovery for fees incurred in preparing the first motion to the extent that work

---

[3] The undersigned refers Ford to billing entries including those dated June 24, 2009, and June 25, 2009. (See Second Suppl. Sommer Decl., Ex. B.)

would have been duplicated in preparing the substantially similar subsequent motion. However, Ford's counsel spent nearly the same amount of time preparing the second motion as the first. One of Mr. Sommer's declarations represents that Ford's attorneys spent 9.7 billable hours preparing the first motion and 5.9 hours preparing the first reply brief. (Second Suppl. Sommer Decl. ¶¶ 5-6.) It further declares that the attorneys spent 7.1 billable hours preparing the second motion and 6.6 hours preparing the second reply brief. (Id. ¶¶ 7-8.) Thus, Ford's counsel spent only 1.9 fewer hours preparing the second set of moving papers, which constitutes an apparent duplication of efforts.

The undersigned could simply deduct large blocks of time and fees from the award. However, the undersigned would prefer to provide Ford's attorneys with an additional opportunity to review their bills and resubmit their calculation of time.

As further guidance, the undersigned provides Ford with the following examples of additional types of tasks that do not support an award of attorneys' fees. First, numerous entries in the billing records pertain to an interlocutory appeal filed by plaintiffs that had no connection to Ford's special motion to strike. Ford has provided no persuasive reason why she is entitled to recover these fees under the anti-SLAPP statute, and the undersigned concludes that she is not entitled to recover those fees and costs. After careful review of Ford's attorneys' billing entries, the undersigned concludes that, in this regard, Ford is not entitled to $707.50 of the fees and costs claimed.[4]

Similarly, Ford attempts to recover attorneys' fees and costs in connection with her attorneys' review of plaintiffs' application to proceed in forma pauperis, review of plaintiffs' motion to appoint a guardian ad litem, and preparation of a status report prepared in advance of a scheduling conference. Those fees and costs bear no material relation to Ford's anti-SLAPP

---

[4] The undersigned refers Ford to billing entries including those dated August 5, 2009, August 28, 2009, September 21, 2009, October 22, 2009, October 27, 2009, November 16, 2009, November 18, 2009, and January 6, 2010. (See Second Suppl. Sommer Decl., Ex. B.)

10

motion, and, accordingly, the undersigned will not award those fees totaling $625.00.[5]

Additionally, Ford attempts to recover attorney's fees and costs incurred in connection with communicating with Ford's insurance carrier and preparing internal litigation reports and budgets. The undersigned finds that those fees and costs do not appear to be legitimately recoverable as reasonably incurred in preparing Ford's anti-SLAPP motion. Accordingly, absent further clarification, Ford is not entitled to an award of $3,042.30 in attorneys' fees and costs as reflected in the billing entries submitted.[6]

Furthermore, Ford has attempted to recover thousands of dollars in attorneys' fees incurred in connection with her attorneys' review of other defendants' filings in this action, and plaintiffs' responses, for briefing material that would assist Ford with her anti-SLAPP motion. (See Second Suppl. Sommer Decl. ¶ 9.) Additionally, Ford attempts to recover for her attorneys' review of orders of the court that relate to case management, such as orders of reassignment and waivers of service filed by other parties. The undersigned finds that Ford is not entitled to attorneys' fees and costs that fall within this category of billing entries. An award of fees for review of other parties' filings is especially inappropriate in light of Ford's attorneys' representation about the cost efficiencies gained as a result of their extensive knowledge and experience handling anti-SLAPP motions. (See Sommer Decl. ¶¶ 8, 11.) Accordingly, Ford is not entitled to as award of $3,817.50 in attorneys' fees sought in connection with Ford's attorneys' review of other parties' filings and non-relevant court orders.[7]

---

[5] The undersigned refers Ford to billing entries including those dated July 31, 2009, August 3, 2009, September 15, 2009, October 16, 2009, and March 31, 2010. (See Second Suppl. Sommer Decl., Ex. B.)

[6] The undersigned refers Ford to billing entries including those dated June 25, 2009, July 16, 2009, September 29, 2009, September 30, 2009, October 5, 2009, January 5, 2010, and January 6, 2010. (See Second Suppl. Sommer Decl., Ex. B.)

[7] The undersigned refers Ford to billing entries including those dated August 3, 2009, August 21, 2009, August 25, 2009, October 14, 2009, October 15, 2009, October 27, 2009, November 9, 2009, November 10, 2009, January 15, 2010, February 17, 2010, March 10, 2010, March 21, 2010,

Ford is also entitled to fees incurred in preparing Ford's motion for attorneys' fees and costs, otherwise known as "fees on fees." Although Ford is entitled to an award of attorneys' fees incurred in preparing the motion for fees and costs, nothing in the papers submitted by Ford and her counsel substantiates the number of hours spent on the motion, and the resulting fees incurred. Ford's motion contends that Amanda Uhrhammer spent six hours, at a rate of $225 per hour, preparing the motion for attorneys' fees, with total fees of $1,350. (Memo of P. & A. In Supp. of Ford's Mot. for Attorney's Fees at 5:2-5.) Ford relies on the partial billing entries to substantiate Ms. Uhrhammer's work on the fees motion other than the reply brief. (See id. at 5 n.1; Sommer Decl. ¶ 2; see also Suppl. Sommer Decl. ¶ 3; Second Suppl. Sommer Decl. ¶ 11 & Ex. B; Ford's Table of Exhibits, Ex. A.) However, the partial billing entries submitted by Ford do not support that Ms. Uhrhammer spent any time on the motion for attorneys' fees and costs; none of the three entries reflecting Ms. Uhrhammer's billing suggests work on the fees motion. Nor has Ford submitted any declaration under penalty of perjury that supports that she incurred $1,350 for the work performed by Ms. Uhrhammer on the opening brief in support of the motion for fees and costs. Accordingly, the undersigned cannot presently award the $1,350 in unsubstantiated attorneys' fees that Ford contends she incurred in connection with filing the moving papers in support of the motion for fees.

However, Mr. Sommer's declarations state under penalty of perjury that Ford incurred a total of $675 in attorneys' fees in connection with three hours of time billed for the preparation of Ford's reply brief and Mr. Sommer's supplemental declaration in support of the motion for attorneys' fees and costs. (Suppl. Sommer Decl. ¶ 3; Second Suppl. Sommer Decl. ¶ 11.) The undersigned finds that this these fees are reasonable and that Ford is entitled to $675 in reasonable attorneys' fees for preparation of the reply brief and Mr. Sommer's supplemental

---

April 5, 2010, May 17, 2010, July 2, 2010, July 12, 2010, July 26, 2010, July 30, 2010, August 2, 2010, August 9, 2010, August 12, 2010, August 13, 2010, August 27, 2010, and September 7, 2010. (See Second Suppl. Sommer Decl., Ex. B.)

declaration in support of the fees motion.  The undersigned reserves such an award, however, in light of the deficiencies noted above and the potential for the submission of additional briefing by Ford.

Additionally, Ford seeks an award of attorneys' fees related to Mr. Sommer's time spent preparing for, traveling to and from, and attending the hearing on Ford's motion for attorneys' fees and costs.  Mr. Sommer declares under penalty of perjury that he billed a total of $742.50 for these tasks, representing 2.7 hours of his time billed at $275 per hour.  (Second Suppl. Sommer Decl. ¶ 12.)  The undersigned finds that the fees incurred in this regard are reasonable and that Ford is entitled to an award of $742.50.

Finally, Ford requests an award in connection with Mr. Sommer's review of: (1) legal authorities requiring the segregation of fees and costs incurred in connection with the filing of a Rule 12(b)(6) motion and a special motion to strike pursuant to the anti-SLAPP statute; and (2) billing entries and preparing Exhibit B to Mr. Sommer's second supplemental declaration.  (See Second Suppl. Sommer Decl. ¶ 13.)  Ford seeks an award of $1,347.50 in attorneys' fees, which represents 4.9 hours of Mr. Sommer's time, billed at $275 per hour.  (Id.) At this time, and absent some persuasive explanation by Ford, the undersigned is not inclined to award Ford attorneys' fees for this time spent by Mr. Sommer.  This determination is because, as demonstrated above, Ford's attorneys do not appear to have truly embraced the task of segregating their time as ordered by the court.  In that same vein, Mr. Sommer's second supplemental declaration did not materially assist the court in apportioning the fees and costs at issue.

In sum, Ford is doubtlessly entitled to an award of attorneys' fees and costs pursuant to California's anti-SLAPP statute.  However, because the declarations and billing entries do not support an award of over $33,500 in attorneys' fees and costs, and do not reliably establish what fees and costs Ford is legitimately entitled to, the undersigned denies Ford's motion.  However, Ford may file a supplemental brief and declarations substantiating a

13

1  reasonable award of attorneys' fees and costs.

2        B.      <u>The Award of Fees and Costs To Which Logsdon Is Entitled</u>

3        Counsel for Logsdon, Kenneth Bacon, of the law firm Lewis & Bacon, a
4  Professional Corporation, submitted three declarations under penalty of perjury, which
5  substantiate his per-hour billing rate and the number of hours he expended in connection with
6  Logsdon's anti-SLAPP motion and motion for attorney's fees and costs. In regards to his hourly
7  rate, Mr. Bacon declares that he has billed his time in this case at a rate of $235 per hour, in
8  accordance with Logsdon's insurance carrier's defense counsel rate. (See Bacon Decl. ¶ 4,
9  Nov. 12, 2010 ("Bacon Decl."), Dkt. No. 202, Doc. No. 202-2.) He declares that his current rate
10 for representation of private clients in professional liability matters ranges from $300 to $375 per
11 hour. (Id.) Here, the claims dismissed pursuant to Logsdon's anti-SLAPP motion all relate to
12 alleged wrongs committed by Logsdon in connection with her legal representation of her client in
13 connection with court proceedings. Mr. Bacon has been licensed to practice in California since
14 1982 and, since September 1988, "a primary emphasis of [his] practice has been in the field of
15 professional liability." (Bacon Decl. ¶ 2.) The undersigned finds that Mr. Bacon's reduced
16 hourly rate of $235 per hour is a reasonable.

17       In support of Logsdon's motion for anti-SLAPP attorney's fees and costs, Mr.
18 Bacon filed a declaration representing that Mr. Bacon had billed "at least 47.5 hours, totaling
19 $11,162.50" for work in connection with researching, preparing, and filing Logsdon's anti-
20 SLAPP motion, and performing other tasks in relation to Logsdon's defense of this action. (See
21 Bacon Decl. ¶ 15 (summarizing tasks).) As noted above, at the February 17, 2011 hearing, the
22 undersigned ordered Mr. Bacon to review his billing records submit a supplemental declaration
23 attesting to the hours spent specifically on the anti-SLAPP portion of Logsdon's motion to
24 specially strike and dismiss the claims alleged against her in the Third Amended Complaint.
25 (See Minutes, Feb. 17, 2011.)

26       On February 24, 2011, Mr. Bacon submitted a supplemental declaration in support

of Logsdon's motion, which reflects that Mr. Bacon reviewed his time entries after the hearing. (Second Suppl. Decl. ¶ 5.) Mr. Bacon's supplemental declaration states that he has "determined that 6.8 hours of the 47.5 hours" previously claimed "arguably could be allocated to the Rule 12(b)(6) portion of [Logsdon's] motion." (Id.) These 6.8 hours relate to two billing entries, and it is apparent from Mr. Bacon's candid supplemental declaration that Mr. Bacon cannot discern with certainty what portion of these billing entries actually relate to the anti-SLAPP motion. (See id. ¶¶ 5-6.) Mr. Bacon offers a mathematical means by which the court might separate those hours billed in connection with the anti-SLAPP portion of Logsdon's motion from hours billed in connection with the Rule 12(b)(6) portion of the motion, which allots 85% of Mr. Bacon's time to the anti-SLAPP portion of the motion based on the number of pages devoted to the anti-SLAPP portion of the motion relative to the number of pages devoted to the 12(b)(6) portion of the motion. (See id.) The undersigned finds that this methodology is not a sound basis upon which to apportion hours within a billing entry, and may be overly favorable to Logsdon. Instead, the undersigned apportions 50% of those hours to the anti-SLAPP portion of the motion, and therefore deducts 3.4 hours from the total 47.5 hours that Mr. Bacon previously declared he spent on the anti-SLAPP portion of Logsdon's pleading motion. Accordingly, the undersigned finds that Logsdon is entitled to fees for 44.1 hours of Mr. Bacon's time at an hourly rate of $235 per hour, for a total of $10,363.50.

As noted above, Logsdon is also entitled to her costs incurred in successfully striking claims under California's anti-SLAPP statute. Mr. Bacon's declarations claim a total of $368.70 in costs, which consists of $333.00 incurred in photocopying voluminous exhibits that were specifically filed in connection with the anti-SLAPP portion of Logsdon's pleading motion and $35.70 in postage. (Bacon Decl. ¶ 17; Second Suppl. Decl. ¶ 8.) The undersigned finds that Logsdon is entitled to recover all of these reasonable costs.

Logsdon is also entitled to "fees on fees." Mr. Bacon's declarations aver under penalty of perjury that Mr. Bacon spent a total of 10.9 hours of billable attorney time, again at a

15

1  rate of $235 per hour, preparing Logsdon's motion for attorney's fees and costs, her reply brief,
2  related declarations, and in preparing for and attending the hearing on the motion. Specifically,
3  Mr. Bacon declares that he spent 5.3 hours researching and preparing the motion for fees and
4  costs. (Bacon Decl. ¶ 16; accord Second Suppl. Bacon Decl. ¶ 7.) Mr. Bacon further declares
5  that he spent 2.2 hours reviewing plaintiffs' opposition to Logsdon's motion and preparing a
6  reply brief. (Suppl. Bacon Decl. ¶ 3; see also Second Suppl. Bacon Decl. ¶ 9.) Additionally, Mr.
7  Bacon avers that he spent 0.6 hours preparing for and attending the February 17, 2011 hearing on
8  Logsdon's motion. (Second Suppl. Decl. ¶ 10.) Finally, Mr. Bacon declares that he spent an
9  additional 2.8 hours reviewing his time and billing entries in order to prepare his supplemental
10 declaration after the hearing, as required by the court. (Id.) The undersigned finds that the
11 number of hours spent on the fee and cost-related motion is reasonable and not subject to any
12 reduction. Accordingly, Logsdon is entitled to a total of $2,561.50 in "fees on fees."
13         In total, the undersigned concludes that Mr. Bacon reasonably spent a total of 51.6
14 hours in preparing Logsdon's anti-SLAPP motion and the pending motion for attorney's fees and
15 costs. Accordingly, the undersigned awards Logsdon a total of $12,925.00 in attorney's fees, and
16 $368.70 in costs.

17 IV.    CONCLUSION
18         For the foregoing reasons, IT IS HEREBY ORDERED that:
19         1.    Defendant Judy Ford's motion for attorneys' fees and costs (Dkt. No. 204)
20 is denied without prejudice. Ford may file and serve supplemental materials substantiating a
21 revised award of attorneys' fees and costs sought. Plaintiffs' may file objections to any
22 supplemental filing, and shall do so within seven days of being served with the supplemental
23 filing. Plaintiff's objections shall not exceed ten pages.
24         2.    Defendant Valerie Logsdon's motion for attorney's fees and costs (Dkt.
25 No. 202) is granted.
26         3.    Defendant Valerie Logsdon is awarded a total of $12,925.00 in attorney's

fees and $368.70 in costs, to be paid jointly and severally by the following plaintiffs: Brent Allan Winters, Cacey Winters, Christy Winters, Jennifer Winters, Jeremiah Winters,[8] and Susan Winters.

IT IS SO ORDERED.

DATED: April 20, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[8] On December 2, 2010, plaintiff Jeremiah Winters filed a notice of voluntary dismissal of his claims against all defendants. (Notice of Withdrawal as Pl., Dkt. No. 207.) The undersigned previously concluded that Jeremiah Winters's notice of dismissal was not automatically effective as to defendants Judy Ford, Valerie Logsdon, Ryan Arbuckle, and Burrows Security Force. (Order Feb. 11, 2011, Dkt. No. 246.) By separate findings and recommendations, the undersigned recommended that the court impose conditions on Jeremiah Winters's withdrawal pursuant to Federal Rule of Civil Procedure 41(a)(2), including that Jeremiah Winters be subject to the award of attorneys' fees and costs awarded to Ford and Logsdon. (Findings & Recommendations, Apr. 15, 2011, Dkt. No. 281.)