IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENT ALLAN WINTERS, et al.,

    Plaintiff,                   No. 2:09-cv-00522 JAM KJN PS

    v.

DELORES JORDAN, et al,

    Defendants.             FINDINGS AND RECOMMENDATIONS

/

Presently before the court[1] are the following three motions: (1) plaintiffs' motion for default judgment (Dkt. No. 189); (2) a motion to dismiss (Dkt. No. 186) filed by defendants Jan Paul Miller, Bernard Coleman, Sue Roderick, Kathi Jo McBride, Stephen Tinsley, Kevin Martens, Phillip Johnson, Hilda Molnar, Robert Anderson, Donald Staggs, James Pogue, Patrick Chelsey, and Hilary Frooman, all of whom are or were federal prosecutors or internal revenue agents involved in the criminal investigation and prosecution of plaintiff Brent Winters in the Central District of Illinois[2] (collectively, "Federal Defendants"); and (3) a motion to dismiss filed by defendant John Taylor, who served as appointed federal defense counsel for one of Brent

---

[1] This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2] See United States v. Hills, 618 F.3d 619 (7th Cir. 2010).

1

Winters's co-defendants in the criminal prosecution in Illinois. (Dkt. No. 199). The court heard this matter on its law and motion on February 17, 2011. Although all of the defendants concerned appeared through their respective counsel at the hearing, plaintiffs did not appear and had signaled in prior filings that they did not intend to appear at the hearing. For the reasons stated below, the undersigned recommends that: (1) plaintiffs' motion for default judgment be denied; (2) the Federal Defendants' motion to dismiss be granted on the grounds that this court lacks personal jurisdiction over those defendants; and (3) Taylor's motion to dismiss be granted on the grounds that this court lacks personal jurisdiction over Taylor. The undersigned further recommends that the Federal Defendants and Taylor be dismissed from this action.

I.   BACKGROUND[3]

      Plaintiffs allege eight claims for relief against Taylor. Claims 13, 14, 15, 18, 31, 36, and 38 are plaintiffs' generic claims that are alleged against "all defendants."[4] None of these claims allege any specific facts about Taylor. Plaintiffs' only claim specifically alleged against Taylor is claim 23, which relates to the federal prosecution of plaintiff Brent Winters and two co-defendants, Kenton Tylman and Debra Hills, in the United States District Court for the Central District of Illinois. Taylor is, and was at the relevant time, an Assistant Federal Public Defender who was appointed to represent Tylman in a tax fraud prosecution in the Illinois federal court. (See Third Am. Compl. at 22; Taylor Decl. ¶ 1, Dkt. No. 199, Doc. No. 199-2.) Plaintiffs contend that Taylor conspired with the prosecutor in the tax fraud case to prevent Tylman and Brent Winters from exercising their rights to a speedy trial under the U.S. Constitution and the Speedy Trial Act. (Third Am. Compl. at 22.) Plaintiff Brent Winters was ultimately convicted

---

[3] Because the undersigned resolves plaintiffs' motion for default judgment on largely procedural grounds and resolves the pending motions to dismiss on personal jurisdiction grounds, a lengthy recitation of plaintiff's factual allegations is not included here.

[4] Claims 13, 14, 15, 18, 31, 36, and 38 respectively allege claims for trespass to chattels, violation of 42 U.S.C. § 1983, conspiracy to violate 42 U.S.C. § 1983, civil conspiracy, conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1962(d), loss of consortium, and intentional infliction of emotional distress.

of tax fraud in that prosecution and appealed that conviction on grounds including those related to speedy trial concerns. The Seventh Circuit Court of Appeals affirmed Brent Winters's conviction over allegations that Taylor violated Tylman's and Brent Winters's rights to a speedy trial. See generally Hills, 618 F.3d 619.

Relevant to Taylor's arguments in favor of dismissal for lack of personal jurisdiction, Taylor filed a declaration describing his contacts with the state of California. Taylor declares that he has lived nearly his entire life in Illinois, but lived in Indiana for six years in the 1950s. (Taylor Decl. ¶ 2.) He further declares that he has spent his entire career as an attorney in Illinois and that his representation of Tylman in the Central District of Illinois arose out of activities taking place solely in Illinois. (Id. ¶¶ 3-4.) Taylor declares that he has visited California twice on personal vacations. (Id. ¶ 5.) His first visit to California occurred in 1971 and consisted of a road trip along the California coast. (Id.) His second visit occurred "over ten years ago," when Taylor and his family spent one week visiting the San Francisco Bay area. (Id.)

Plaintiffs allege numerous claims against the Federal Defendants and Taylor in the Third Amended Complaint. Plaintiffs' claims against the various Federal Defendants implicate the claims for relief numbered 4, 13, 14, 15, 18, 21, 23, 27, 31, 36, and 38. Relevant to the Federal Defendants' arguments in favor of dismissal for lack of personal jurisdiction, plaintiffs' Third Amended Complaint does not allege that any of the Federal Defendants, other than Assistant United States Attorney Patrick J. Chelsey, had any contacts with California. Chelsey was a federal prosecutor who was involved in the criminal prosecution of Brent Winters. As to Chelsey, plaintiffs allege that on February 22, 2008, Chelsey sent a letter to attorney Valerie Logsdon (also a named defendant in this action) "confirming previous phone conversation and offering any aid to help evict the Winters" from the home that the Winters were occupying in

////

////

////

Nevada City, California.[5]  (Third Am. Compl. ¶ 33, at p. 6.)  Plaintiffs allege that Logsdon subsequently "entered" this letter into an unlawful detainer action involving plaintiffs.  (Id.)

Because plaintiffs are proceeding pro se, service in this case has been effectuated through the United States Marshal.  The Federal Defendants were served with the Third Amended Complaint by the U.S. Marshal at various points during the Summer and Fall of 2010.  (See Dkt. Nos. 134, 136, 137, 139, 157, 159, 172, 182, 191, 195.)  Defendant John Taylor was served on June 28, 2010.  (Dkt. No. 142.)

On August 11, 2010, the Federal Defendants and Taylor, through Assistant United States Attorney J. Earlene Gordon, filed an ex parte motion for a 60-day extension of time to respond to the Third Amended Complaint on the grounds that these defendants, all of whom are former or current federal employees, were then seeking representation by the United States Attorney's Office.  (Dkt. No. 151.)  The court granted the extension and ordered that responses to the Third Amended Complaint be filed no later than October 15, 2010.  (Order, Aug. 12, 2010, Dkt. No. 152.)

On October 14, 2010, defendant John Taylor requested, through AUSA Gordon, another extension, until November 15, 2010, to file a response to the Third Amended Complaint.  (Dkt. No. 184.)  Taylor did so on the ground that the United States Attorney's Office declined the representation of Taylor, and Taylor would have to find private counsel.  The court granted the extension.  (Order, Oct. 15, 2010, Dkt. No. 190.)

Also on October 14, 2010—one day *before* the Federal Defendants' deadline to respond to the Third Amended Complaint—plaintiffs filed a motion for default judgment against the Federal Defendants and Taylor, among other defendants.  (Mot. for Default J., Dkt. No. 189.)  Plaintiffs did not seek a clerk's entry of default prior to moving for default judgment.

On October 15, 2010, the Federal Defendants filed a timely motion to dismiss

---

[5] The subject letter was attached to plaintiffs' Second Am. Complaint as Attachment 3.  (Dkt. No. 15 at 168.)

4

plaintiff's claims against them for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. On November 4, 2010, John Taylor filed a timely motion to dismiss on substantially similar grounds as the Federal Defendants.

II.     DISCUSSION

    A.     Plaintiffs' Motion for Default Judgment

In relevant part, plaintiffs move this court for a default judgment against the Federal Defendants and Taylor.[6] The undersigned recommends that the court deny plaintiffs' motion.

        1.     Plaintiffs' Motion for Default Judgment Is Procedurally Improper

Plaintiffs' motion for default judgment is procedurally improper because plaintiffs did not seek a clerk's entry of default prior to filing their motion for default judgment. Thus, plaintiff's motion should be denied for this reason alone.

Federal Rule of Civil Procedure 55 governs the entry of default by the clerk and the subsequent entry of default judgment by either the clerk or the district court. In relevant part, Rule 55 provides:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> **(b) Entering a Default Judgment.**
>
>   **(1) *By the Clerk.*** If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
>   **(2) *By the Court.*** In all other cases, the party must apply to the court for a default judgment. . . .

---

[6] Plaintiffs' sought a default judgment against United State Attorney General Eric Holder, Jr., who is not a party to this action. The court should summarily deny plaintiffs' motion insofar as Attorney General Holder is concerned. Plaintiffs' motion for a default judgment as against Delores Jordan will be addressed by a separate disposition.

Fed. R. Civ. P. 55(a)-(b). As the Ninth Circuit Court of Appeals has stated, Rule 55 requires a "two-step process" consisting of: (1) seeking a clerk's entry of default, and (2) filing a motion for the entry of default judgment. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) ("Eitel apparently fails to understand the two-step process required by Rule 55."); accord Symantec Corp. v. Global Impact, Inc., 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(a) and (b) provide a two-step process for obtaining a default judgment); see also Norman v. Small, No. 09cv2235 WQH , 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (unpublished) (denying plaintiff's motion for default judgment because the clerk had not yet entered a default); Cramer v. Target Corp., No. 1:08-cv-01693-OWW-SKO, 2010 WL 2898996, at *1 (E.D. Cal. July 22, 2010) (unpublished) ("Obtaining a default judgment in federal court is a two-step process that includes: (1) entry of default and (2) default judgment."); Bach v. Mason, 190 F.R.D. 567, 574 (D. Idaho 1999) ("Plaintiffs have improperly asked this court to enter a default judgment without first obtaining an entry of default by the clerk. Since plaintiffs' motion for entry of default judgment is improper, it is denied."), aff'd, 3 Fed. Appx. 656 (9th Cir. 2001), cert. denied, 534 U.S. 1083 (2002).

Here, plaintiffs did not request or obtain a clerk's entry of default from the Clerk of Court upon a showing by affidavit or otherwise that defendants failed to plead or otherwise defend themselves. Accordingly, the undersigned recommends that plaintiff's motion for default judgment be denied because that motion is not properly before the court.

    2. <u>The Federal Defendants and Taylor Filed Timely Motions to Dismiss</u>

The undersigned further recommends that plaintiffs' motion for default judgment be denied as to the Federal Defendants and Taylor because those defendants filed timely responses to the Third Amended Complaint. The Federal Defendants sought and received an extension for good cause, until October 15, 2010, to file an answer or other response to the Third Amended Complaint. The Federal Defendants filed their motion to dismiss on October 15, 2010. Accordingly, the Federal Defendants' motion to dismiss was timely filed pursuant to this court's

6

order.

Taylor also filed a timely response to the Third Amended Complaint. Taylor sought and received two extensions of time to respond to the Third Amended Complaint, both of which were supported by good cause. Taylor's response was due on November 15, 2010, and Taylor filed his motion to dismiss on November 4, 2010. Accordingly, Taylor's motion to dismiss was timely filed per this court's orders.

Accordingly, plaintiffs' motion is subject to denial for the additional reason that the Federal Defendants and Taylor filed responses to the Third Amended Complaint as provided by the court's orders.[7] For the foregoing reasons, the undersigned recommends that plaintiffs' motion for default judgment be denied as to the Federal Defendants, Taylor, and Eric Holder, Jr.

B.   Taylor's and the Federal Defendants' Motions to Dismiss

Taylor and the Federal Defendants each move to dismiss plaintiffs' claims against them on several grounds. The undersigned recommends that Taylor's and the Federal Defendants' respective motions to dismiss be granted on the grounds that the court lacks personal jurisdiction over these defendants, and that these defendants be dismissed from this action.

A motion to dismiss for lack of personal jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(2). "Although the burden is on the plaintiff to demonstrate that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). "Uncontroverted allegations in the plaintiff's complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citations and quotation

---

[7] Plaintiffs' argument premised on application of the Westfall Act, 28 U.S.C. § 2679(d), in this case is not well-taken.

7

marks omitted).

In cases such as this one, where "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (en banc); accord Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). And "[b]ecause California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger, 374 F.3d at 800-01. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Id. at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Because plaintiffs here cannot legitimately claim that general jurisdiction over the non-resident Federal Defendants or Taylor exists,[8] only specific jurisdiction is considered in detail here. The Ninth Circuit Court of Appeals uses a three-part test to determine whether a party has sufficient minimum contacts with the forum to subject him or her to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

---

[8] Relying on decisions of the U.S. Supreme Court, the Ninth Circuit Court of Appeals has stated: "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts[]' that 'approximate physical presence' in the forum state." Schwarzenegger, 374 F.3d at 801 (citations omitted). Plaintiffs have not alleged any facts substantiating that Taylor or the Federal Defendants had continuous and systematic contacts with California.

    (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP, 606 F.3d at 1127 (footnote omitted); accord Yahoo! Inc., 433 F.3d at 1205-06. "The plaintiff bears the burden on the first two prongs." Boschetto, 539 F.3d at 1016. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." Id. (citations omitted).

    1.  This Court Lacks Personal Jurisdiction Over Taylor

Here, Taylor's contacts with California consist of a road trip that he took along the California coast in 1971 and a family trip to the San Francisco Bay area that occurred over ten years ago. (See Taylor Decl. ¶ 5.) These contacts, which were made in the context of personal vacations, are not sufficient minimum contacts with the forum that provide this court with personal jurisdiction over Taylor.

First, plaintiffs have not demonstrated that Taylor's contacts with California satisfy the first prong of the minimum contacts test. Taylor has not "purposefully availed" himself of the privilege of conducting activities in California such that he has invoked the benefits and protections of California law. Plaintiffs do not make an argument premised on the "purposeful availment" portion of the first prong. Instead, plaintiffs focus on the "purposeful direction" aspect of the first prong of the test.[9]

Plaintiffs argue that this court has personal jurisdiction over Taylor because of Taylor's "purposeful direction" of his activities into California, and they rely on the "effects test" announced in Calder v. Jones, 465 U.S. 783 (1984). The Ninth Circuit Court of Appeals recently

---

[9] "The first prong is satisfied by either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, are, in fact, two distinct concepts." Brayton Purcell LLP, 606 F.3d at 1128 (citation and quotation marks omitted).

9

summarized the "effects test" as follows:

> This court evaluates purposeful direction using the three-part "Calder-effects" test, taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 . . . (1984). Under this test, the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. There is no requirement that the defendant have any physical contacts with the forum.

Brayton Purcell LLP, 606 F.3d at 1128 (citations and quotation marks omitted); see also Love v. Assoc. Newspapers, Ltd., 611 F.3d 601, 609 (9th Cir. 2010) ("The effects test is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state.").

Plaintiffs technically satisfy the "intentional act" component of the "effects test" by alleging that Taylor engaged in a biased prosecution of Brent Winters, Tylman, and Hills in an Illinois district court. However, plaintiffs do not satisfy the second prong of that test, i.e., they have not demonstrated that Taylor expressly aimed his intentional acts at California. Taylor's acts were directed at federal litigation proceedings in Illinois, which arose out of events that occurred in Illinois, and had nothing to do with California.

Plaintiffs allege in their written opposition (but not the Third Amended Complaint) that Taylor targeted a "known forum resident"—Brent Winters—and that this satisfies the second part of the test from Calder. Plaintiffs cite Gordy v. Daily News, L.P., 95 F.3d 829 (9th Cir. 1996), and Brainerd v. Governors of the University of Alberta, 873 F.2d 1257 (9th Cir. 1989), in support of their argument. In Gordy, the Court of Appeals held that the Calder test was satisfied where a New York-based newspaper that was circulated in California published an allegedly defamatory article about music producer Barry Gordy, who the newspaper knew was a California resident. See Gordy, 95 F.3d at 832-33. In Brainerd, the Court of Appeals held that an Arizona district court could exercise personal jurisdiction over a Canadian defendant based on the defendant's communications to and from the University of Arizona regarding rumors

10

1  surrounding the plaintiff's departure from a Canadian university.  As Taylor contends, these
2  cases are distinguishable from the present case in that Taylor's acts occurred in the context of a
3  federal criminal proceeding in Illinois that arose from activities that occurred in Illinois.  The acts
4  in this case were not undertaken for the express purpose of having Brent Winters feel them in
5  California.  See, e.g., Schwarzenegger, 374 F.3d at 807 ("It may be true that Fred Martin's
6  intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may
7  have known that Schwarzenegger lived in California.  But this does not confer jurisdiction, for
8  Fred Martin's express aim was local.").  Accordingly, plaintiffs cannot meet the requirements of
9  the Calder "effects test."

10              As to the second prong of the minimum contacts jurisdictional test, plaintiffs'
11  claims against Taylor do not arise from Taylor's contacts with California.  Taylor's activities in
12  California consist only of two vacations that occurred well in the past.  His contacts with
13  California have nothing to do with plaintiffs' claims.  Plaintiffs' claims—really, Brent Winters's
14  claim regarding speedy trial issues—are exclusive to Taylor's acts performed in Illinois, not
15  California.  Accordingly, plaintiffs have not met their burden under the first two prongs of the
16  minimum contacts test for personal jurisdiction.

17              Based on the foregoing, the undersigned recommends that the court dismiss John
18  Taylor from this action for lack of personal jurisdiction.  Because of this recommendation, the
19  undersigned does not reach Taylor's additional arguments in favor of dismissal.

20              2.      This Court Lacks Personal Jurisdiction Over the Federal Defendants

21              The Federal Defendants do not have minimum contacts with California that
22  provide this court with personal jurisdiction over them.  As an initial matter, there are no
23  allegations in the Third Amended Complaint that establish that the following defendants had any
24  contact with the forum state: Jan Paul Miller, Bernard Coleman, Sue Roderick, Kathi Jo
25  McBride, Stephen Tinsley, Kevin Martens, Phillip Johnson, Hilda Molnar, Robert Anderson,
26  Donald Staggs, James Pogue, and Hilary Frooman.  The only contact by one of the Federal

11

Defendants with the forum is the February 22, 2008 letter from Chelsey to Logsdon, which generally or generically offered Chelsey's and Frooman's assistance.

Plaintiffs cannot legitimately argue that personal jurisdiction exists under the "purposeful availment" portion of the first prong of the test. Instead, and as with Taylor, plaintiffs focus on the "purposeful direction" aspect of the first prong of the test. As with Taylor, plaintiffs argue that this court has personal jurisdiction over the Federal Defendants because of the Federal Defendants' "purposeful direction" of their activities into California, and rely on the Calder "effects test."

Assuming for the sake of argument that plaintiffs satisfy the "intentional act" component of the "effects test," plaintiffs do not satisfy the second prong of that test in that they have not demonstrated that the Federal Defendants expressly aimed their intentional acts at California, with the possible exception of defendant Chelsey. Much of plaintiffs' allegations relate to two search warrants that were executed in Illinois in the year 2000. Those warrants related to, in part, the prosecution of Brent Winters for tax fraud in an Illinois district court, arising from acts that occurred exclusively in Illinois. Moreover, it appears that Brent Winters did not even live in California in 2000. (See Third Am. Compl. at 4 (noting visits to California beginning in 2003).)

As for the letter sent by Chelsey to Logsdon, that letter was quite arguably aimed at the forum of California. Even assuming that plaintiffs have met the first two steps of the Calder test, however, personal jurisdiction falters at the third step. Chelsey's act of sending the letter to California did not cause harm to plaintiffs. That letter: (1) purports to enclose a copy of the criminal complaint against Brent Winters, (2) requests a copy of the unlawful detainer complaint and answer, and (3) states, "If you feel that the government can be of any assistance to you in your case or if you have any questions, please contact me or Hilary Frooman." This letter does not, as plaintiffs' suggest, offer help to "throw plaintiffs out of their home." And although plaintiffs have alleged that this letter was ultimately filed in the unlawful detainer action, they do

not allege actual harm as a result of this letter. Accordingly, plaintiffs have not met their burden under the Calder "effects test" and, as a result, failed to satisfy the first prong of the minimum contacts test. Therefore, the undersigned recommends that the Federal Defendants be dismissed from this action for lack of personal jurisdiction. Because of this recommendation, the undersigned does not reach the Federal Defendants' additional arguments in favor of dismissal.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for default judgment (Dkt. No. 189) be denied as to the following defendants: Jan Paul Miller, Bernard Coleman, Sue Roderick, Kathi Jo McBride, Stephen Tinsley, Kevin Martens, Phillip Johnson, Hilda Molnar, Robert Anderson, Donald Staggs, James Pogue, Patrick Chelsey, Hilary Frooman, John Taylor, and Eric Holder, Jr.

2. Defendant John Taylor's motion to dismiss (Dkt. No. 199) be granted on the ground that this court lacks personal jurisdiction over him, and that Taylor be dismissed from this action.

3. The motion to dismiss filed by defendants Jan Paul Miller, Bernard Coleman, Sue Roderick, Kathi Jo McBride, Stephen Tinsley, Kevin Martens, Phillip Johnson, Hilda Molnar, Robert Anderson, Donald Staggs, James Pogue, Patrick Chelsey, and Hilary Frooman (Dkt. No. 186) be granted on the ground that this court lacks personal jurisdiction over them, and that these defendants be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d).

1 Failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d
3 1153, 1156-57 (9th Cir. 1991).
4             IT IS SO RECOMMENDED.
5 DATED:  June 17, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE