1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLEN WINTERS, et al.,

11            Plaintiffs,              No. 2:09-cv-00522 JAM KJN PS

12        v.

13   DELORES JORDAN, et al.,

14            Defendants.              FINDINGS AND RECOMMENDATIONS
                                 /
15

16            Presently before the court is a motion to dismiss plaintiffs' Third Amended

17   Complaint and/or for a more definite statement filed by the following defendants pursuant to

18   Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(e): Adult Protective Services

19   ("APS"), Jeffrey S. Brown, Tamaran Cook, Kelly Carpenter, Keith Royal, Richard Kimball, Guy

20   Selleck, Joe McCormack, Zsa Zsa Wied, Robert Bringolf, Dominic La Fountain, Theresa

21   Kingsbury, Jeff Martin, Daniel Saunders, Nathan Hutson, Jesse King, Micah Arbaugh, Chris

22   Sharp, Matt Steen, Elaine LaCroix, Alicia Milhous, Clifford Newell, Charles O'Rourke, Jason

23   Jones, and Susan McGuire.[1]  (See Mot. to Dismiss and/or for More Definite Statement, Dkt.

24   No. 116.)  The court has already resolved the motion as it pertains to defendants APS, Brown,

25   ───────────────────
26        [1] This action proceeds before this court pursuant to Eastern District of California Local Rule
     302(c)(21) and 28 U.S.C. § 636(b)(1).

                                      1

1   Carpenter, and Cook.  (See Findings & Recommendations, Mar. 14, 2011, Dkt. No. 268, adopted

2   by Order, May 10, 2011, Dkt. No. 288.)  Accordingly, these proposed findings and

3   recommendations address the motion to the extent it relates to the remaining defendants, who are

4   alleged to be law enforcement personnel with Nevada County and are collectively referred to

5   herein as the "County Defendants."

6           Because oral argument would not materially aid the resolution of the pending

7   motion, this matter was submitted on the briefs and record without a hearing.  See Fed. R. Civ.

8   P. 78(b); E. Dist. Local Rule 230(g).  The undersigned has fully considered the parties' briefs and

9   appropriate portions of the record in this case and, for the reasons that follow, recommends that

10  the County Defendants' motion to dismiss be granted in part and denied in part as more

11  specifically discussed below.

12  I.      BACKGROUND

13          Plaintiffs' Third Amended Complaint[2] is a wide-ranging, 25-page complaint that

14  alleges, in eight-point font, over two-dozen claims for relief against over 60 defendants (Dkt.

15  No. 66.).[3]  Several of plaintiffs' claims are alleged against "All Defendants," with no

16  differentiation in regards to the alleged conduct of each defendant that supports each such claim.

17  In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages

18

19          [2]   Plaintiffs filed the operative complaint under the title "Amended Complaint,"
    notwithstanding this court's order that it be labeled "Third Amended Complaint."  (Compare Dkt.
20  No. 66 with Order and Findings & Recommendations, Aug. 24, 2009, at 4, Dkt No. 56.)  The Third
    Amended Complaint supersedes plaintiffs' "Second Amended Complaint" (Dkt. No. 15).  As the
21  court noted in a prior order, the Second Amended Complaint represented plaintiffs' first amendment
    of the original complaint (Order and Findings & Recommendations, Aug. 24, 2009, at 1 n.1), and
22  the operative Third Amended Complaint represents plaintiffs' second amendment of the original
    complaint.

23          [3]   In an order dated September 24, 2009, the court ordered that all references to the minor
    plaintiffs in this action—Joy Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs'
24  Third Amended Complaint because those minors were not represented by an attorney or attorneys.
    (Order, Sept. 24, 2009, Dkt. No. 68; see also Order, Nov. 13, 2009, at 2 n.1, Dkt. No. 89.)  On
25  February 1, 2011, the court dismissed these minor plaintiffs from this action without prejudice.
    (Order, Feb. 1, 2011, Dkt. No. 221.)  Additionally, plaintiff Jeremiah Winters was dismissed from
26  this action on July 1, 2011.  (See Order, July 1, 2011, Dkt. No. 295.)

1   and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could

2   not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the

3   requirement that the pleading contain a short and plain statement of the claims alleged instead of

4   recounting all of the evidence and arguments in support of those claims.  (Order and Findings &

5   Recommendations, Aug. 24, 2009, at 3.)  The court had stated that "[t]his will be plaintiffs' last

6   chance to comply."  (Id.)[4]

7            Generally, the claims against the County Defendants arise out of an underlying

8   family dispute between the Winters family and defendant Virginia Armstrong, who is, among

9   other things, the mother of plaintiff Susan Winters and grandmother to other plaintiffs.  The

10  Third Amended Complaint alleges that in or around the year 2002, plaintiff Susan Winters's

11  elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and Brent Winters to

12  sell their house in Illinois and move to Nevada City, California, to live with the Armstrongs.

13  (Third Am. Compl. at 4.)  Plaintiffs allege that before they permanently returned to California,

14  Joe Armstrong passed away and that Virginia Armstrong eventually transferred properties,

15  including the residence at 11318 Via Vista in Nevada City, California, from the Armstrong

16  Living Trust dated July 29, 1994, to the Virginia Armstrong Living Trust.  (Id.)  Plaintiffs allege

17  that Virginia Armstrong took these actions due, in part, to the undue influence of defendants

18  Valerie Logsdon, who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia

19  Armstrong's son.  (Id.)

20            In short, plaintiffs' claims against the County Defendants largely center on

21  plaintiffs' interactions with various Nevada County law enforcement personnel.  As noted above,

22  several of plaintiffs' claims against the County Defendants take the form of generic and

23  conclusory claims alleged against "All Defendants."  Many of plaintiffs' claims against the

24  _____

25        [4]  It appears that plaintiffs employed eight-point font size and a table format in their Third
     Amended Complaint in an attempt to meet the page limit set by the court without sacrificing the
26  voluminous and, in large part, confusing allegations that persist therein.

1   County Defendants are set forth in a table format in the Third Amended Complaint.  Because

2   plaintiffs have asserted so many claims against so many of the County Defendants, the

3   undersigned relates the facts supporting each claim specifically challenged by the County

4   Defendants in the discussion section below.

5   II.      LEGAL STANDARDS

6              A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or

7   12(h)(3) challenges the court's subject matter jurisdiction.  Federal district courts are courts of

8   limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

9   jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

10  contrary affirmatively appears."  A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003)

11  (citations and quotation marks omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court

12  determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

13  action.").  When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court

14  takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.

15  2004).  However, the court is not restricted to the face of the pleadings and "may review any

16  evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

17  jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489

18  U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.

19  2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

20  pleadings or by presenting extrinsic evidence.").  "When subject matter jurisdiction is challenged

21  under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

22  order to survive the motion."  Tosco Corp. v. Communities for a Better Env't., 236 F.3d 495, 499

23  (9th Cir. 2001) (per curiam), abrogated on other grounds by Hertz Corp v. Friend, 130 S. Ct.

24  1181 (2010); see also Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir.

25  2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit

26  'affidavits or any other evidence properly before the court . . . .  It then becomes necessary for the

4

party opposing the motion to present affidavits or any other evidence necessary to satisfy its

burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation

omitted, modification in original)).

        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

1949).  The court accepts all of the facts alleged in the complaint as true and construes them in

the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).

The court is "not, however, required to accept as true conclusory allegations that are contradicted

by documents referred to in the complaint, and [the court does] not necessarily assume the truth

of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen,

559 F.3d at 1071 (citations and quotation marks omitted).

        The court must construe a pro se pleading liberally to determine if it states a claim

and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss

pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

quotation marks omitted).

III.    DISCUSSION

     A.    The County Defendants' Jurisdictional and Abstention-Related Arguments

     At the outset, the County Defendants argue that this court lacks jurisdiction over

plaintiffs' claims or should abstain from adjudicating those claims on the basis of the Rooker-

Feldman doctrine, the Younger abstention doctrine, the trust and domestic relations exception to

federal subject matter jurisdiction, and the probate exception to federal subject matter

jurisdiction.  (See Memo. of P. & A. In Supp. of Mot. to Dismiss ("Defs.' Memo.") at 5-7, Dkt.

No. 116, Doc. No. 116-2.)  As previously noted in findings and recommendations addressing the

motion to dismiss as brought by defendants APS, Brown, Carpenter, and Cook, it readily appears

that the moving defendants simply copied the same unsuccessful arguments offered by other

defendants who previously moved to dismiss plaintiffs' Third Amended Complaint.  (See, e.g.,

Mot. to Dismiss, Feb. 16, 2010, Dkt. No. 107; see also Findings & Recommendations, Mar. 14,

2011.)  The County Defendants' jurisdictional and abstention arguments premised on the above-

referenced doctrines and principles are unpersuasive for the same reasons provided in the

undersigned's previously entered findings and recommendations, which were adopted in full.

(See Findings & Recommendations, July 20, 2010, at 11-17, Dkt. No. 144, adopted by, Order,

Sept. 14, 2010, Dkt. No. 177.)

     B.    Plaintiffs' Claims of Assault and Battery by the County Defendants (Claims 5, 9, 10, and 11)

     Next, the County Defendants move to dismiss plaintiffs' fifth, ninth, tenth, and

eleventh claims for relief.  The County Defendants argue that all of these claims are, or implicate,

6

1    claims for civil assault or civil battery, but that none of the conduct alleged arises to the level

2    required to substantiate a claims for civil assault or civil battery.  (See Defs.' Memo. at 9-10.)

3    The undersigned sets forth the relevant legal standards for claims of civil assault and civil battery

4    below, and then addresses each claim in turn.  The undersigned notes preliminarily that the

5    County Defendants' argument, which is premised on the degree of offensiveness of contact

6    between law enforcement personnel and some of the plaintiffs, is better suited to a motion for

7    summary judgment than it is a motion to dismiss.

8         Before reaching the specific claims, the undersigned notes that insofar as the

9    County Defendants are concerned, plaintiffs' fifth, ninth, tenth, and eleventh claims for relief

10   only allege facts that implicate assaults or batteries against plaintiffs Susan Winters, Christy

11   Winters, Jennifer Winters, and Cacey Winters.  (See Third Am. Compl. at 12-13, 15-19.)

12   Accordingly, the undersigned recommends that plaintiffs' fifth, ninth, tenth, and eleventh claims

13   for relief be summarily dismissed with prejudice as to the remaining plaintiff, Brent Winters.

14   These claims potentially implicate former plaintiffs Jill, Joy, and Clark Winters (see Third Am.

15   Compl. at 17-18), but Jill, Joy, and Clark Winters have been dismissed from this action and the

16   allegations pertaining to them have been stricken from the Third Amended Complaint.

17        "'A civil action for assault is based upon an invasion of the right of a person to

18   live without being put in fear of personal harm.'"  Thing v. La Chusa, 48 Cal. 3d 644, 649, 771

19   P.2d 814, 816 (1989) (quoting Lowry v. Standard Oil Co. of Cal., 63 Cal. App. 2d 1, 7, 146 P.2d

20   57, 60 (Ct. App. 1944)).  "Generally speaking, an assault is a demonstration of an unlawful intent

21   by one person to inflict immediate injury on the person of another then present."  Lowry, 63 Cal.

22   App. 2d at 6-7, 146 P.2d at 60.  "The tort of assault is complete when the anticipation of harm

23   occurs."  Kiseskey v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d 222, 232, 192 Cal. Rptr.

24   ////

25   ////

26   ////

7

492, 498 (Ct. App. 1983).[5]  "Mere words, however threatening, will not amount to an assault."

B.E. Witkin et al., 5 Witkin Summ. of Cal. Law (Torts) § 383 (10th ed. 2005 & 2009 Supp.)

(citing Restatement (Second) of Torts § 31 (2010)).]

Under California law, "[t]he elements of civil battery are: (1) defendant

intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's

person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact

caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler, 171 Cal. App. 4th 516,

526-27, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); accord Tekle v. United States, 511 F.3d 839,

855 (9th Cir. 2007).

1.    Plaintiffs' Fifth Claim for Relief

Plaintiffs' fifth claim is alleged against defendants Lafountain, Kingsbury, Sharp,

McCormack, and Wied, who are alleged to be officers with the Nevada County Sheriff's

Department, and relates to these officers' interactions with plaintiffs Susan and Cacey Winters on

January 13, 2009.  (See Third Am. Compl. at 12-13.)  Although labeled "Personal Injury," this

claim appears to allege a claim for civil battery.

Plaintiffs' allegations of a battery on Susan Winters relate to Susan Winters's

arrest on January 13, 2009, effectuated by Lafountain.  There are no allegations in the fifth claim

for relief that Kingsbury, Sharp, McCormack, or Wied battered Susan Winters.  Plaintiffs allege

that in arresting Susan Winters, Lafountain tightly handcuffed Susan Winters's hands behind her

back for an excessive amount of time and in a manner that caused permanent, debilitating, and

painful injuries to Susan Winters's right shoulder.  (See Third Am. Compl. at 12.)

In regards to Cacey Winters, plaintiffs allege that Cacey Winters was battered in

---

[5]  In an appeal involving an allegation of an assault by law enforcement personnel, the Ninth
Circuit Court of Appeals stated that the plaintiff "would need to establish that (1) the officers
threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to him that they
were about to carry out the threat; (3) he did not consent to the conduct; (4) he was harmed; and (5)
the officers' conduct was a substantial factor in causing the harm."  Tekle, 511 F.3d at 855 (citing
Judicial Council of Cal., Civil Jury Instructions No. 1301 (2006)).

the course of being arrested on January 13, 2009.  They allege that Cacey Winters suffered

physical injuries and mental anguish as a result of the following conduct:

> Defendant Joe McCormack twisted Plaintiff Cacey Winters's right arm
> behind her back while Defendant Wied forcefully held Cacey's other arm
> bending her wrist beyond normal range of motion until Cacey bent over
> double at the waist for an excessive amount of time in an attempt to
> relieve the pain in her right wrist, arm, shoulder, and neck: [*sic*] from the
> time she was removed from the Sheriff's car, frisked in a perverted and
> unnecessary way by Defendant Kingsbury.

(Third Am. Compl. at 12.)  Plaintiffs allege that Cacey Winters never resisted arrest and

informed McCormack that he was hurting her.  (<u>Id.</u> at 13.)

In seeking dismissal of claims including the fifth claim for relief, the County

Defendants only argue that "[n]one of the alleged incidents in Plaintiffs' complaint rise to the

level of contact, imminent or otherwise, 'that would offend a person of ordinary sensitivity and

be unwarranted by the social usages prevalent' at this time." (Defs.' Memo. at 10.)  They further

argue that the allegations "reveal typical or normal, unpleasant contact with law enforcement

personnel; contact which is typically not desired."  (<u>Id.</u>)  The County Defendants offer this same,

terse argument as to plaintiffs' ninth, tenth, and eleventh claims for relief.

Briefly stated, the County Defendants have offered no legal authority suggesting

that the court may conclude, as a matter of law at this point in the proceedings, that the conduct

alleged would not support claims of battery.  For example, the allegations that plaintiff Susan

Winters was handcuffed in an excessive manner that caused a permanent shoulder injury would

appear to support a claim of battery.  Moreover, allegations that Cacey Winters's arm was twisted

in an excessive way and that she was frisked in a "perverted" manner, also appear to support, at

least at the pleadings stage, a battery claim.[6]  Although the County Defendants might ultimately

prevail on a motion for summary judgment, they have not persuasively argued that the fifth claim

for relief should be dismissed in its entirety through a pleadings-based motion.

---

[6]   The Third Amended Complaint subsequently alleges that Kingsbury fondled Cacey
Winters's breasts and groin.  (Third Am. Compl. at 18.)

9

1    Notwithstanding the foregoing, certain aspects of plaintiffs' fifth claim for relief

2  are subject to dismissal.  First, as noted above, the fifth claim for relief should be dismissed with

3  prejudice to the extent that it is alleged on behalf of plaintiffs Brent and Jennifer Winters.

4  Second, the undersigned recommends that Susan Winters's fifth claim for relief be dismissed

5  with prejudice as to Kingsbury, Sharp, McCormack, and Wied for want of any factual allegations

6  supporting such a claim.  Third, the undersigned recommends that Cacey Winters's fifth claim

7  for relief be dismissed with prejudice as to Kingsbury for want of any factual allegations

8  supporting such a claim.  And fourth, the undersigned recommends that the fifth claim for relief

9  be dismissed with prejudice as to Sharp because nothing in plaintiffs' fifth claim for relief alleges

10  any acts by defendant Sharp.  The only aspects of the fifth claim for relief that should proceed

11  are: (1) Susan Winters's claim of battery against defendant Lafountain; and (2) Cacey Winters's

12  claim of battery against defendants Kingsbury, McCormack, and Wied.

13               2.    Plaintiffs' Ninth Claim for Relief

14    Relevant here, plaintiffs' ninth claim for relief, entitled "Battery," is alleged

15  against defendants Kingsbury, Wied, McCormack, Sharp, Arbaugh, and LaCroix, who are

16  alleged to be law enforcement officers.  (Third Am. Compl. at 15-17.)  This claim relates to

17  incidents that occurred on January 13, 2009, and February 6, 2009.

18    A portion of the ninth claim for relief is redundant of the fifth claim for relief.

19  Specifically, Cacey Winters's again alleges offensive touching during her arrest by Kingsbury,

20  Wied, and McCormack on January 13, 2009.  (Third Am. Compl. at 15.)  In this claim, Cacey

21  Winters repeats her allegations of her wrist being excessively twisted by Kingsbury, Wied, and

22  McCormack during arrest, and adds allegations that Kingsbury pushed her forehead against a

23  wall at the jail and also fondled her breasts and groin.  (Id.)  Cacey Winters also alleges that on

24  February 6, 2009, during a law enforcement search of the home where the Winters were residing,

25  Sharp got within six inches of Cacey Winters's nose, screamed at her, and grabbed her arm in a

26  manner that caused bruising.  (Id. at 15-16.)  In seeking dismissal of this claim, the County

1   Defendants offer the same perfunctory and unpersuasive argument as they did in response to the

2   fifth claim for relief.  Accordingly, Cacey Winters's battery claim alleged in the sixth claim for

3   relief should proceed against Kingsbury, Wied, McCormack, and Sharp.[7]

4          The ninth claim for relief also includes allegations of a battery of Susan Winters

5   by Sharp and Arbaugh on February 6, 2009, committed during the allegedly warrantless search of

6   the home where the Winters were residing.  (Third Am. Compl. at 15.)  In short, Susan Winters

7   alleges that during the search, Sharp grabbed her arm without permission and with the use of

8   excessive force.  Susan Winters further alleges that Arbaugh approached her from behind during

9   this altercation and was so close to her that he bumped her further into Sharp.  Although a close

10  call as to Arbaugh, the County Defendants have not made any persuasive argument that this

11  aspect of the ninth claim for relief should be presently dismissed as a matter of law.

12         The ninth claim for relief includes an allegation of a battery by Sharp against

13  Christy Winters during the search of the home on February 6, 2009.  (Third Am. Compl. at 15.)

14  Briefly stated, Christy Winters alleges that for whatever reason she was changing her clothes at

15  the time of the search, that she partially closed a door for privacy, and that Sharp "slammed into

16  the door open [*sic*] with his hands and at the same time kicked it with his foot, causing the door

17  to smash into Christy's leg, shoulder, face."  (Id.)  Other than the generalized argument in

18  support of dismissal, the County Defendants have not offered any argument regarding why these

19  allegations do not support a battery.  Accordingly, this aspect of Christy Winters's battery claim

20  should proceed against Sharp.

21         Plaintiffs' ninth claim also includes an allegation of a battery by LaCroix on

22  plaintiff Jill Winters.  However, because Jill Winters has been dismissed from this case without

23  prejudice and allegations pertaining to Jill Winters have been stricken, LaCroix's alleged battery

24  ───────────────────

25         [7]  Although it does not appear that Cacey Winters intended to allege this claim against
    Arbaugh or LaCroix, this claim should be dismissed if such is the case—there are no allegations of
26  contact between Cacey Winters and Arbaugh or LaCroix.

is not before the court.

The undersigned recommends that certain aspects of the ninth claim for relief be dismissed with prejudice, and that other be allowed to proceed. To summarize, the undersigned recommends that only the following claims should proceed past the pleadings stage: (1) Cacey Winters's battery claim alleged against Kingsbury, Wied, McCormack, and Sharp; (2) Susan Winters's battery claim alleged against Sharp and Arbaugh; and (3) Christy Winters's battery claim against Sharp. The ninth claim for relief should be dismissed with prejudice in all other respects as to the County Defendants.

3.     Plaintiffs' Tenth Claim for Relief

Plaintiffs' tenth claim for relief alleges several civil assaults committed by several law enforcement personnel against various plaintiffs between October 2007 and February 2009. (See Third Am. Compl. at 17-18.) The defendants who are the subject of this claim are LaCroix, Sharp, Klutz, Selleck, Bringholf, Lafountain, Steen, and Hutson. The undersigned addresses each alleged incident involving the County Defendants in turn.

First, plaintiffs allege that in October 2007, LaCroix assaulted Jill Winters through the use of "apprehensive mannerisms and fierce, excessive questioning." (Third Am. Compl. at 17.) Because Jill Winters has been dismissed from this case without prejudice and allegations pertaining to Jill Winters have been stricken from the Third Amended Complaint, LaCroix's alleged assault is not before the court.

Second, plaintiffs allege that during the search of the Winters's residence on February 6, 2009, plaintiffs Susan, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters were assaulted by Sharp. (Third Am. Compl. at 18.) Plaintiffs incorporate by reference the allegations pertaining to the battery claim stated in the ninth claim for relief. As to former plaintiffs Joy, Clark, and Jill Winters, those plaintiffs have been dismissed and allegations pertaining to them have been stricken from the Third Amended Complaint. Accordingly, those former plaintiffs' claims are not properly before the court. As to Susan, Cacey, and Christy Winters, their

12

respective claims of assault allegedly occurring on February 6, 2009, should proceed to the extent that their battery claims have been permitted to proceed, as discussed above. As to the Jennifer Winters, there are no allegations substantiating that she was assaulted by Sharp and, accordingly, Jennifer Winters's assault claim in the tenth claim for relief should be dismissed with prejudice.

Third, plaintiffs allege that on May 6, 2008, defendant Klutz threatened "Susan Winters and her children with arrest in their own home." (Third Am. Compl. at 18.) The mere threat of arrest does not, by itself, rise to the level of a civil assault. Accordingly, this aspect of the tenth claim for relief should be dismissed with prejudice.

Fourth, plaintiffs allege that on June 2, 2008, defendants Selleck and Bringholf refused to enforce a restraining order against defendant Delores Jordan and thereby assaulted Susan Winters. (See Third Am. Compl. at 18.) Susan Winters also include a conclusory allegation of an assault premised on the threat of arrest. This aspect of the tenth claim for relief does not plead a plausible claim for assault. Accordingly, this aspect of the tenth claim for relief should be dismissed with prejudice.

Fifth, plaintiffs allege that on January 13, 2009, defendants Bringholf, Lafountain, Steen, and Hutson assaulted Jennifer Winters. (Third Am. Compl. at 18.) This assault is alleged to have occurred after Susan and Cacey Winters had been arrested and were in a squad car. Plaintiffs allege that while Susan and Cacey Winters were inside the squad car, Hutson unsuccessfully attempted to "bait" Jennifer Winters into a fight using words and gestures. They further allege that Steen threatened to arrest Jennifer Winters's minor siblings. No facts are alleged as to defendants Bringholf or Lafountain vis-a-vis Jennifer Winters. None of these allegations rises to the level of a civil assault. Accordingly, Jennifer Winters's claim of assault contained in the tenth claim for relief should be dismissed with prejudice.

4.    Plaintiffs' Eleventh Claim for Relief

Part of plaintiffs' eleventh claim for relief alleges a sexual assault and battery of Cacey Winters on January 13, 2009, by Kingsbury at the jail after her arrest. (Third Am. Compl.

at 18-19.)  This claim repeats the allegation that Kingsbury groped or fondled Cacey Winters's breasts and groin area during a search.  The undersigned recommends that this aspect of the eleventh claim be allowed to proceed for the reasons stated above.  However, the undersigned notes that Cacey Winters's claim stated in the eleventh claim for relief is duplicative of the allegations in the fifth and ninth claims for relief.  Moreover, the undersigned recommends that the eleventh claim for relief be dismissed with prejudice as to McCormack and Wied because there are no allegations in this claim that either of those defendants made contact with Cacey Winters.

        C.      Plaintiffs' Trespass Claims (Claims 12 and 13)

The County Defendants next argue that plaintiffs' twelfth and thirteenth claims for relief, alleging trespass to land and trespass to chattels, respectively, are subject to dismissal.  With no citation to any legal authority, the County Defendants only argue that plaintiffs "lack standing or fail to allege facts to support a cause of action for trespass" because although plaintiffs "allege that they were residing at Virginia Armstrong's residence, they were not owners of the property."  (Defs.' Memo. at 10.)  The undersigned address the claims of trespass to land and trespass to chattels in turn.

        1.      Plaintiffs' Claim of Trespass to Land

Plaintiffs' claim of trespass to land is alleged against defendants King, Martin, Saunders, Salisbury, Arbaugh, and Sharp, all of whom are alleged to be law enforcement personnel.  Plaintiffs allege that on February 6, 2009:

> Defendants Sharp, Arbaugh, King, Saunders, Salisbury, and Martin broke and entered the residence of the Winters and the Law Offices of Brent Allan Winters in the basement of 11318 Via Vista, Nevada City, California, without a warrant knowing they were neither licensed nor privileged to enter.  They were told they could not come in and yet did enter intentionally and knowingly without permission conducting an unlawful search of the offices and premises.

(Third Am. Comp. at 19.)

California Courts of Appeal have summarized the tort of trespass onto land as

14

1  follows:  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land

2  of another.  Such invasions are characterized as intentional torts, regardless of the actor's

3  motivation.  Where there is a consensual entry, there is no tort, because lack of consent is an

4  element of the [theory underlying the tort]. . . ."  <u>Church of Christ in Hollywood v. Superior</u>

5  <u>Court</u>, 99 Cal. App. 4th 1244, 1252, 121 Cal. Rptr. 2d 810, 815-16 (Ct. App. 2002); <u>accord</u>

6  <u>Mangini v. Aerojet-General Corp.</u>, 230 Cal. App. 3d 1125, 1141, 281 Cal. Rptr. 827, 837 (Ct.

7  App. 1991); <u>Civic W. Corp. v. Zila Indus., Inc.</u>, 66 Cal. App. 3d 1, 16-17, 135 Cal. Rptr. 915,

8  925 (Ct. App. 1977).  As derived from an applicable California jury instruction, the elements of

9  the intentional tort of trespass can be stated as follows in this case: (1) plaintiffs owned, leased,

10 occupied, or controlled the property; (2) King, Martin, Saunders, Salisbury, Arbaugh, and Sharp

11 intentionally, recklessly, or negligently entered plaintiffs' property; (3) King, Martin, Saunders,

12 Salisbury, Arbaugh, and Sharp lacked permission for the entry or exceeded the scope of such

13 permission; (4) plaintiffs were actually harmed; and (5) King, Martin, Saunders, Salisbury,

14 Arbaugh, and Sharp's entry was a substantial factor in causing plaintiffs' harm.  <u>See</u> Judicial

15 Council of Cal. Civ. Jury Instruction 2000 (Sept. 2010 Suppl.).[8]

16       Here, the County Defendants only argue that plaintiffs' lack standing to pursue a

17 claim of trespass to land because they did not "own" the property entered by King, Martin,

18 Saunders, Salisbury, Arbaugh, and Sharp on February 6, 2009.  Their assertion that plaintiffs lack

19 standing to pursue a trespass claim because they do not own the property is unavailing at this

20 stage in the proceedings because it is not an essential element of a claim of trespass that the

21 plaintiff actually "own" the property in question.  <u>See</u> <u>Capogeannis v. Superior Court</u>, 12 Cal.

22 App. 4th 668, 674, 15 Cal. Rptr. 2d 796, 799 (Ct. App. 1993) ("California has adhered firmly to

23

24       [8]  <u>See also</u> <u>Johnson v. County of Contra Costa</u>, No. C 09-01241 WHA, 2010 WL 3491425,
    at *15 (N.D. Cal. Sept. 3, 2010) (unpublished) ("Under California law, a plaintiff must prove: (1)

25 the plaintiff's ownership or control of the property, (2) the defendant's intentional, reckless, or
    negligent entry on the property, (3) lack of permission to enter the property, or acts in excess of the

26 permission, (4) actual harm, and (5) the defendant's conduct as a substantial factor in causing the
    harm.").

the view that [the] cause of action for trespass is designed to protect *possessory*–not necessarily

ownership–interests in land from unlawful interference.") (citation and quotation marks omitted);

Smith v. Cap Concrete, Inc., 133 Cal. App. 3d 769, 184 Cal. Rptr. 308, 310 (Ct. App. 1982)

("The proper plaintiff in an action for trespass to real property is the person in actual possession;

no averment or showing of title is necessary."); see also 5 Witkin, Cal. Proc., Pleading, §§ 631-

32 (5th ed. 2008).  Plaintiffs have alleged enough facts to substantiate a possessory interest in the

property at issue.  The County Defendants offer no authority to the contrary; indeed, their

argument is entirely unsupported by legal authority.  Accordingly, the claim of trespass on land

asserted by plaintiffs should proceed against King, Martin, Saunders, Salisbury, Arbaugh, and

Sharp.

### 2.   Plaintiffs' Claim For Trespass to Chattels

In their thirteenth claim for relief, plaintiffs allege in conclusory fashion that "All

Defendants," including the County Defendants, committed the tort of trespass to chattels.  (Third

Am. Compl. at 19.)  "[T]he tort of trespass to chattels allows recovery for interferences with

possession of personal property not sufficiently important to be classed as conversion, and so to

compel the defendant to pay the full value of the thing with which he has interfered."  Intel Corp.

v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003).  The California Supreme Court has

stated that "[t]respass remains as an occasional remedy for minor interferences, resulting in some

damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of

conversion."  Id. at 1351, 71 P.3d at 302 (citation omitted, modification in original).

As to the County Defendants, and indeed as to all defendants, plaintiffs have not

specified the chattel or chattels with which each defendant interfered, which in turn proximately

caused them harm.  See Intel Corp., 30 Cal. 4th at 1350-51, 71 P.3d at 302 ("Under California

law, trespass to chattels lies where an intentional interference with the possession of personal

property has proximately caused injury" (citation and quotation marks omitted).).  Accordingly,

plaintiffs' claim for trespass to chattels should be dismissed with prejudice as to the County

1    Defendants.

2          D.      Plaintiffs' Generic and Conclusory Section 1983 Claims (Claims 14, 15, and 18)

3                  Plaintiffs' fourteenth, fifteenth, and eighteenth claims for relief allege that "All

4    Defendants" violated plaintiffs' constitutional rights.  These claims, which are expressly or

5    impliedly brought pursuant to 42 U.S.C. § 1983, are subject to dismissal with prejudice.

6                  "Section 1983 imposes civil liability upon an individual who under color of state

7    law subjects or causes, any citizen of the United States to the deprivation of any rights, privileges

8    or immunities secured by the Constitution and laws." Franklin v. Fox, 312 F.3d 423, 444 (9th

9    Cir. 2002) (citing 42 U.S.C. § 1983).  "To state a claim under § 1983, a plaintiff must allege two

10   essential elements: (1) that a right secured by the Constitution or laws of the United States was

11   violated, and (2) that the alleged violation was committed by a person acting under the color of

12   State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v.

13   Atkins, 487 U.S. 42, 48 (1988)).  Conclusory allegations of a violation of Section 1983 or a

14   conspiracy to violate Section 1983 will not survive a motion to dismiss.  See, e.g., Simmons v.

15   Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of

16   plaintiff's second amended complaint as a result of plaintiff's "conclusory allegations" of a

17   conspiracy to deprive him of his constitutional rights in violation of Section 1983).

18                 Plaintiffs' allegations in support of their fourteenth, fifteenth, and eighteenth

19   claims for relief are so conclusory that they should be dismissed.  With respect to plaintiffs'

20   fourteenth claim, alleging that "All Defendants" individually violated plaintiffs' constitutional

21   rights, plaintiffs only allege the following:

22              Paragraphs above incorporated by reference.  Defendants, by their actions
               and acting under the color of law, subjected Plaintiffs, and caused
23              Plaintiffs to be subjected, to the deprivations of their rights, privileges, and
               immunities secured by the Constitution and laws of the State of California
24              and of the United States of America, Plaintiffs claim damages under 42
               U.S.C. § 1983 for their injuries set forth above.
25

26   (Third Am. Compl. at 19.)  These allegations consist of bare legal conclusions, and not factual

17

1   allegations that state a plausible claim under Section 1983.  Plaintiffs do not allege which

2   particular constitutional right of which particular plaintiff was purportedly violated.  Moreover,

3   plaintiffs have not alleged how any of the County Defendants were specifically involved in the

4   purported deprivation of each plaintiffs' civil rights at issue in claim fourteen.  See, e.g., James v.

5   Rowlands, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability on a

6   defendant only if he or she personally participated in or directed a violation."); Jones v.

7   Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state

8   law to be liable under section 1983 there must be a showing of personal participation in the

9   alleged rights deprivation . . . ."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A

10  plaintiff must allege facts, not simply conclusions, that show that an individual was personally

11  involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the

12  personal involvement of the defendant.").  Accordingly, plaintiffs' fourteenth claim should be

13  dismissed.

14          Plaintiffs' conspiracy claims alleged in claims fifteen and eighteen are also fatally

15  flawed.  Again, plaintiffs do not allege that they were deprived of any specific constitutional

16  right.  They simply incorporate the rest of their complaint by reference and leave it to defendants

17  and the court to sort out.  Additionally, plaintiffs' allegations of an agreement among "All

18  Defendants" to commit a violation of plaintiffs' rights is conclusory so as to be legally

19  insufficient.  See Simmons, 318 F.3d at 1161 ("Plaintiff's conclusory allegations that the lawyer

20  was conspiring with state officers to deprive him of due process are insufficient."); Burns v.

21  County of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam) ("Burns' claims against all the

22  defendants for a conspiracy to violate his constitutional rights under section 1983 also fail

23  because they were supported only by conclusory allegations."); see, cf., Degrassi v. City of

24  Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (stating that "a bare allegation of . . . joint action

25  will not overcome a motion to dismiss" (citation and quotation marks omitted)); Price v. Hawaii,

26  939 F.2d 702, 707-08 (9th Cir. 1991) (stating that "[c]onclusionary allegations, unsupported by

18

facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act" (citation and

quotation marks omitted, modifications in original).), <u>cert. denied</u>, 503 U.S. 938 (1992), and <u>Paty</u>

<u>v. Price</u>, 503 U.S. 938 (1992).  Plaintiffs simply allege a series of distinct acts committed by

different defendants and attempt to tie those acts together in an alleged conspiracy through the

use of empty buzzwords such as "in concert" and "colluding."

         In light of the deficient nature of plaintiffs' allegations in claims fourteen, fifteen,

and eighteen, the undersigned recommends that these claims be dismissed as to the County

Defendants.  Nothing in plaintiffs' Third Amended Complaint suggests that these pleading

deficiencies could be cured through amendment and, accordingly, the undersigned recommends

that these claims be dismissed with prejudice.[9]

     E.   <u>Plaintiffs' "Bivens Allegation" in the Fourth Claim for Relief</u>

         Relevant here, plaintiffs' fourth claim for relief alleges a violation of plaintiffs'

Fourth Amendment rights to be free from unreasonable searches and seizures by Lafountain,

Steen, Bringholf, Hutson, Milhous, McCormack, Kingsbury, Wied, Sharp, Saunders, Martin,

Arbaugh, Salisbury, and King.  (<u>See</u> Third Am. Compl. at 11-12.)  In regards to this claim, the

County Defendants move to dismiss the "<u>Bivens</u> allegation in Claim No. 4"[10] on the grounds that

none of the County Defendants is alleged to be a federal agent, and there are no facts supporting

that the County Defendants acted in concert with any federal agents.  (Defs.' Memo. at 11-12.)

The County Defendants also argue in conclusory fashion that even if the law enforcement

personnel in question were federal agents, "no action by County Defendants amounts to a 4th

Amendment violation."  (<u>Id.</u> at 12.)

      "A <u>Bivens</u> action seeks to hold *federal* officers individually liable for

---

[9]  Notably, plaintiffs allege additional Section 1983 claims against particular defendants
elsewhere in the complaint, which are separately addressed in these findings and recommendations.
(<u>See</u> Third Am. Compl. at 20-21, 22-23, 24.)

[10]  <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388
(1971).

1    constitutional violations.  Although 'more limited in some respects,' a <u>Bivens</u> action is the

2    federal analog to an action against state or local officials under § 1983."  <u>Starr v. Baca</u>, 652 F.3d

3    1202, 1206 (9th Cir. 2011) (emphasis added) (citing <u>Hartman v. Moore</u>, 547 U.S. 250, 254 n.2

4    (2006)).

5           The County Defendants' argument that plaintiffs have not alleged, for the purpose

6    of the fourth claim for relief, that any of the County Defendants is a federal agent or was acting in

7    concert with federal agents.  The County Defendants' argument is well-taken, at least as far as it

8    goes.  However, plaintiffs' fourth claim for relief is not limited to a <u>Bivens</u> claim; it more broadly

9    alleges violations of plaintiffs' Fourth Amendment rights by state actors and thus implicates 42

10   U.S.C. § 1983.  The County Defendants have only offered a conclusory argument that their

11   alleged actions did not violate the Fourth Amendment.  Without more, plaintiffs' fourth claim for

12   relief should proceed against the County Defendants to the extent that it is a Section 1983 claim

13   and not a <u>Bivens</u> claim.

14          F.      <u>Plaintiffs RICO Conspiracy Claim (Claim 31)</u>

15          The County Defendants move to dismiss plaintiffs' thirty-first claim for relief,

16   which alleges that "All Defendants"—over sixty defendants including private actors, state court

17   judges and employees, law enforcement, and local agencies—conspired to commit racketeering

18   activity in violation of the RICO statute, <u>see</u> 18 U.S.C. §§ 1962(d), 1964(c).  (<u>See</u> Third Am.

19   Compl. at 24; <u>see also</u> Defs.' Memo. at 12-13.)  Plaintiffs allege that all defendants in this case

20   conspired to "maintain a federal prosecution against Plaintiff Brent Winters in Illinois."  (<u>Id.</u>)

21   They further allege that on July 9, 2002, defendant Jan Paul Miller agreed with an individual

22   named Michael McCuskey and defendant Assistant United States Attorney Frooman "to

23   investigate and prosecute Brent Winters on false charges" knowing that the presiding judge was

24   biased.  (<u>Id.</u>)  They also allege that "Agent Pogue" contributed to the conspiracy by testifying

25   based on "conjecture" at Brent Winters's sentencing hearing.  (<u>Id.</u>)  In addition, they vaguely

26   allege an undefined "pattern of misrepresentation" intended to "defraud the Winters of their

rights and their property." (Id.)  Moreover, plaintiffs allege the "concealment of critical data,"

including a memorandum drafted by Judge Anderson of the Nevada County Superior Court.  (Id.)

Other than including some of the County Defendants' names in a laundry list of over 40

defendants, plaintiffs do not allege any specific facts with respect to the County Defendants'

participation in this alleged conspiracy.

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

(5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted), cert.

denied, 547 U.S. 1192 (2006).  "To state a RICO claim, one must allege a 'pattern' of

racketeering activity, which requires at least two predicate acts."  Clark v. Time Warner Cable,

523 F.3d 1110, 1116 (9th Cir. 2008) (citations omitted).  Furthermore, a plaintiff must also show

that the injury to his business or property was proximately caused by the prohibited conduct and

that he has suffered a concrete financial loss.  Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083,

1086 (9th Cir. 2002).

Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

the allegations are of such a vague and conclusory nature that they do not state a plausible claim

for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

"racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

alleged a "concrete financial loss" or injury to business or property proximately caused by the

conspiracy.  Nothing contained in plaintiffs' Third Amended Complaint or opposition brief

suggests that they could amend their pleading to state a plausible claim for relief.  Accordingly,

plaintiffs' thirty-first claim for relief should be dismissed with prejudice as to the County

Defendants.

        G.    Plaintiffs' Claim of "Respondeat Superior" Against Defendant Royal (Claim 32)

The County Defendants next attack plaintiffs' thirty-second claim for relief, which

21

1    is entitled "Respondeat Superior of Nevada County Sheriff Keith Royal."  (Third Am. Compl.

2    at 24; <u>see also</u> Defs.' Memo. at 14.)  In this "claim," plaintiffs allege that Royal is individually

3    liable for the acts of "assault, battery, false arrest, false imprisonment, search and seizure without

4    warrant, and sexual assault and harassment by the unlawful acts of Defendants Bringholf,

5    Lafountain, Steen, Hutson, Milhous, Wied, McCormack, Kingsbury, Kimball, Sharp, Martin,

6    King, Saunders, Salisbury, Arbaugh, LaCroix, Klutz."  (Third Am. Compl. at 24.)

7            The County Defendants only move to dismiss this claim on the ground that 42

8    U.S.C. § 1983 does not provide for vicarious liability.  Although the allegations in the Third

9    Amended Complaint suggest otherwise, plaintiffs' written opposition makes clear that the

10    "respondeat superior" claim against Royal is *only* premised on plaintiffs' common law tort

11    claims and is not addressed to any alleged civil rights violations under federal law.  (Pls.' Opp'n

12    to Mot. to Dismiss at 9 ("The Winters' Respondeat Superior claims are civil torts not § 1983

13    civil-rights claims.").)  Accordingly, plaintiffs' claim premised on Royal's respondeat superior

14    liability shall not proceed against Royal to the extent it is premised on plaintiffs' remaining

15    Section 1983 claims.  However, without more from the County Defendants, Royal may still be

16    liable under a respondeat superior theory to the extent such liability would be premised on

17    plaintiffs' common law claims that survive the motion to dismiss.

18        H.    <u>Plaintiffs' Claim of Loss of Consortium (Claim 36)</u>

19            In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

20    liable for loss of consortium.  (Third Am. Compl. at 25.)  Although plaintiffs incorporate the

21    remainder of their complaint by reference, their allegations are limited to the following:

22
23         Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan, Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered loss of consortium with each other and their grandmother as a result of the actions of the Defendants.

24

25    (<u>Id.</u>)

26            One California court has cited with approval a California practice manual that

defines the tort of loss of consortium as having the following four elements:

> (1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury;
>
> (2) a tortious injury to the plaintiff's spouse;
>
> (3) loss of consortium suffered by the plaintiff; and
>
> (4) the loss was proximately caused by the defendant's act.

Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App. 2007) (citation omitted); see also Malone v. Marriott Int'l., Inc., No. EDCV 09-01980 VAP (DTBx), 2010 WL 4537828, at *6 (C.D. Cal. Oct. 29, 2010) (unpublished) (citing Hahn for the elements of a claim of loss of consortium).  Additionally, "[a] cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse."  Hahn, 147 Cal. App. 4th at 746, 54 Cal. Rptr. 3d at 531.  Additionally, the Ninth Circuit Court of Appeals has explained:

> To support a loss of consortium claim, marital spouses must allege that their partner suffered an injury that is "sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired."  *Molien v. Kaiser Found. Hosp.*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); *Anderson v. Northrop Corp.*, 203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury may be physical or psychological, but psychological injury must "rise [ ] to the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be] sufficient to substantially disturb the marital relationship."  *Anderson*, 250 Cal.Rptr. at 195, quoting *Molien*, 167 Cal.Rptr. 831, 616 P.2d at 813.

Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008) (modifications in original).

The undersigned recommends that plaintiffs' loss of consortium claim be dismissed with prejudice because plaintiffs failed to allege a plausible claim for relief.  First, plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship has been more than superficially affected.  Second, plaintiffs have not alleged any facts regarding how the County Defendants acts proximately caused any loss of consortium.  Plaintiffs'

23

allegations of causation are general as to all defendants and are conclusory in nature.  Third,

under California law, parents may not pursue a claim loss of filial consortium, and children may

not pursue a claim for loss of parental consortium.  See Baxter v. Superior Court, 19 Cal. 3d 461,

466, 563 P.2d 871, 874 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858,

866 (1977); Meighan v. Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App.

1995).  Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark, and Jill

Winters, as the court previously ordered that references to these minors be stricken from the

Third Amended Complaint.  Moreover, the minor defendants have more recently been dismissed

from this action.  Finally, it would appear facially improper that plaintiffs could recover for loss

of consortium with "their grandmother," Virginia Armstrong, whom they have named as a

defendant in this case.  Plaintiffs have failed to meet the pleading requirements to state a

cognizable claim for relief, and the undersigned has no reason to believe that these deficiencies

could be cured through amendment.

   I.   Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress
        (Claim 38)

        The County Defendants also move to dismiss plaintiffs' thirty-eighth claim for

relief, which seeks damages for intentional infliction of emotional distress against "All

Defendants."  (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED

claim contains only bare factual allegations and legal conclusions, which are stated generally

against all defendants:

>           Paragraphs above incorporated by reference.All [sic] Defendants acted
>           with reckless and intentionally [sic] disregard of Plaintiffs' rights.
>           Defendants' conduct on dates referenced above was extreme and
>           outrageous. Defendants' conduct is the proximate cause of their distress.
>           Each Plaintiff suffers severe emotional distress as a result of all
>           Defendants' conduct.

(Id.)

        To state a claim for intentional infliction of emotional distress under California

24

law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and quotation marks omitted).  The California Supreme Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and that "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." Id. (citations and quotation marks omitted).

As noted above, plaintiffs' IIED claim is a collection of legal conclusions and bare factual allegations that incorporate the remainder of the Third Amended Complaint by reference. However, plaintiffs have incorporated their other allegations into their IIED claim.  Plaintiffs' allegations related to some of the plaintiffs' respective assault and battery claims may support an IIED claim.  And the County Defendants have only offered a generalized argument in regards to this claim.  At a minimum, dismissal of the IIED claim against the County Defendants at this point in the proceedings is not warranted.  Accordingly, the undersigned recommends that the County Defendants' motion to dismiss the IIED claim be denied.

J.   Plaintiffs' Remaining Claims

The undersigned addresses the remaining claims alleged against the County Defendants in the Third Amended Complaint.  The County Defendants have not offered any substantial argument in support of the dismissal of plaintiffs' first, second, third, sixth, seventh, nineteenth, twentieth, twenty-fourth, twenty-fifth, or thirtieth claims for relief.  Instead, the County Defendants offer several broad-based arguments seeking the dismissal of claims including those listed immediately above.  They argues that: (1) plaintiffs' allegations do not meet the pleading standards of Federal Rules of Civil Procedure 8 and 9; (2) that there is no basis

25

1   for exercising supplemental jurisdiction over plaintiffs' state law claims; and that (3) the County

2   Defendants are entitled to certain immunities under California law.  (See Defs.' Memo. at 16-20.)

3   Although the undersigned shares the County Defendants' frustration in regards to the manner in

4   which plaintiffs have pled their claims, the County Defendants' generalized manner of seeking

5   dismissal on the grounds stated above is simply insufficient to grant the motion to dismiss on any

6   of these bases.  In essence, the County Defendants have placed the burden of sifting through

7   plaintiffs' claims and the County Defendants' general arguments on the court.  The undersigned

8   declines the invitation take on the task of substantiating the details of the County Defendants'

9   arguments for them.  Accordingly, the undersigned rejects the County Defendants' general

10   arguments stated above.

11        K.        Motion for a More Definite Statement

12        Finally, the undersigned addresses the County Defendants' motion for a more

13   definite statement, which spans one paragraph in the County Defendants' memorandum.  (See

14   Defs.' Memo. at 19.)  The undesigned also recommends that the motion for a more definite

15   statement be denied.

16        In regards to a motion for a more definite statement, Federal Rule of Civil

17   Procedure 12(e) provides:

18        A party may move for a more definite statement of a pleading to which a
         responsive pleading is allowed but which is so vague or ambiguous that
19        the party cannot reasonably prepare a response.  The motion must be made
         before filing a responsive pleading and must point out the defects
20        complained of and the details desired.  If the court orders a more definite
         statement and the order is not obeyed within 14 days after notice of the
21        order or within the time the court sets, the court may strike the pleading or
         issue any other appropriate order.
22

23   See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("If a pleading fails to specify

24   the allegations in a manner that provides sufficient notice, a defendant can move for a more

25   definite statement under Rule 12(e) before responding."); C.B. v. Sonora Sch. Dist., 691 F. Supp.

26   2d 1170, 1191 (E.D. Cal. 2010) ("A Rule 12(e) motion is proper only if the complaint is so

26

1  indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague

2  that the defendant cannot begin to frame a response.").   A court should deny a motion for a more

3  definite statement "if the complaint is specific enough to notify defendant of the substance of the

4  claim being asserted" or "if the detail sought by a motion for more definite statement is

5  obtainable through discovery."  <u>C.B.</u>, 691 F. Supp. 2d at 1191.

6          The undersigned concludes that the allegations in the Third Amended

7  Complaint—at least as to those claims that are not subject to dismissal as discussed above—are

8  sufficiently specific and much of the detail of the remaining claims can be obtained through

9  discovery.  Accordingly, the undersigned recommends that the County Defendants' motion for a

10  more definite statement be denied.

11  IV.    <u>CONCLUSION</u>

12          For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

13          1.    The County Defendants' motion to dismiss (Dkt. No. 116)—as it relates to

14  defendants Keith Royal, Richard Kimball, Guy Selleck, Joe McCormack, Zsa Zsa Wied, Robert

15  Bringolf, Dominic La Fountain, Theresa Kingsbury, Jeff Martin, Daniel Saunders, Nathan

16  Hutson, Jesse King, Micah Arbaugh, Chris Sharp, Matt Steen, Elaine LaCroix, Alicia Milhous,

17  Clifford Newell, Charles O'Rourke, Jason Jones, and Susan McGuire—be granted in part and

18  denied in part.  Specifically, the undersigned recommends that:

19          a.    Plaintiffs' thirteenth, fourteenth, fifteenth, eighteenth, thirty-first,

20  and thirty-sixth claims for relief be dismissed with prejudice in their entirety.

21          b.    Plaintiffs' fourth claim for relief be dismissed with prejudice only

22  to the extent that it alleges a "<u>Bivens</u> claim" against the County Defendants, but proceed insofar

23  as it alleges a claim pursuant to 42 U.S.C. § 1983.

24          c.    Plaintiffs' fifth, ninth, tenth, and eleventh claims for relief be

25  dismissed with prejudice, except as described in more detail above.

26          d.    The County Defendants' motion to dismiss be denied in all other

27

1   respects.

2            2.      The County Defendants' motion for a more definite statement be denied.

3            These findings and recommendations are submitted to the United States District

4   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5   days after being served with these findings and recommendations, any party may file written

6   objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

7   Such a document should be captioned "Objections to Magistrate Judge's Findings and

8   Recommendations."  Any response to the objections shall be filed with the court and served on

9   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

10  Failure to file objections within the specified time may waive the right to appeal the District

11  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

12  1153, 1156-57 (9th Cir. 1991).

13           IT IS SO RECOMMENDED.

14  DATED:  November 9, 2011

15

16  _____
    KENDALL J. NEWMAN

17  UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

28