1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRENT ALLAN WINTERS, et al.,

11          Plaintiffs,          No. 2:09-cv-00522 JAM KJN PS

12   v.

13   DELORES JORDAN, et al,

14          Defendants.          FINDINGS AND RECOMMENDATIONS
     _____/

15

16          Presently before the court are motions to dismiss plaintiffs' Third Amended

17   Complaint filed by defendants Delores Jordan and David Silber (Dkt. Nos. 257, 258).[1]  In

18   addition to being named as a defendant in this action, Silber is also a private attorney who

19   represents Jordan and two other defendants in this action, Virginia and Michael Armstrong.  The

20   court previously granted Jordan and Silber leave to file their motions to dismiss late, but also

21   permitted plaintiffs to object to the court's grant of such leave.  (Order, Feb. 18, 2011, Dkt. No.

22   256.)  Accordingly, these findings and recommendations address the propriety of permitting to

23   Jordan and Silber leave to file their motions to dismiss, as well as a motion for default judgment

24

25          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Because oral argument would not materially aid
     the resolution of the pending motions, these matters were submitted on the briefs and record without
26   a hearing.  See Fed. R. Civ. P. 78(b); E. Dist. Local Rule 230(g).

1

that plaintiffs filed in regards to Jordan.

The undersigned has considered the parties' submissions addressed to Jordan's and Silber's motions to dismiss, as well as those submissions pertaining to plaintiffs' objections to the grant of leave to file the motions.  For the reasons that follow, the undersigned concludes that it is appropriate to consider Jordan's and Silber's motions to dismiss, which were filed late due to Silber's excusable neglect.  Additionally, the undersigned recommends that Jordan's motion to dismiss be granted in part and denied in part, as explained below.  The undersigned further recommends that Silber's motion to dismiss be granted and that all of plaintiff's claims alleged against Silber be dismissed with prejudice.  Finally, the undersigned recommends that plaintiffs' motion for default judgment be denied as to Jordan.

I.      CONSIDERATION OF JORDAN'S AND SILBER'S MOTIONS TO DISMISS

The court granted Jordan's and Silber's ex parte motions seeking leave to file late motions to dismiss, and plaintiffs object to the granting of such leave.  Under the peculiar circumstances of this case, the relevant factors weighed to determine whether excusable neglect warrants relief from a filing deadline support a finding that Silber's failure to timely file the motions to dismiss was the result of excusable neglect.  Accordingly, the undersigned concludes that Silber's excusable neglect supports the grant of leave to file those motions to dismiss pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), and those motions will be considered on the merits.  Due to the long and tortured history of this case, spanning over 300 docket entries to date, some relevant background is provided below.

On July 3, 2009, Silber appeared in this action on behalf of Jordan and filed Jordan's answer to plaintiffs' Second Amended Complaint (Dkt. No. 29).  On July 6, 2009, Silber appeared on his own behalf and filed an answer to the Second Amended Complaint (Dkt. No. 30).  Silber also filed answers to the Second Amended Complaint on behalf of his clients, defendants Virginia and Michael Armstrong (Dkt. Nos. 24, 28).

The court subsequently struck plaintiffs' Second Amended Complaint and ordered

plaintiffs to file a further amended complaint, which would serve as "plaintiffs' last chance to comply" with the court's orders and relevant procedural rules.  (Order, Aug. 24, 2009, Dkt. No. 56.)  Plaintiffs subsequently filed their Third Amended Complaint (Dkt. No. 66).

In November 2009, Silber filed motions to dismiss the Third Amended Complaint on behalf of Virginia and Michael Armstrong (Dkt. Nos. 82-85).[2]  However, Silber did not file motions to dismiss or answers to the Third Amended Complaint at that time.  Plaintiffs did not seek a clerk's entry of default against Jordan or Silber, but filed a procedurally improper motion for default judgment that did encompass Jordan, among numerous other defendants (Dkt. No. 189).[3]

On February 17, 2011, the undersigned held a hearing addressing numerous motions, including plaintiffs' motion for default judgment (Dkt. No. 255).  Silber appeared at the hearing seeking leave to file motions to dismiss the Third Amended Complaint on his and Jordan's behalf, citing his excusable neglect.  That same morning, Silber filed ex parte applications seeking leave to file the subject motions, which appended the proposed motions to dismiss (Dkt. Nos. 253, 254).  Silber's declarations in support of his requests, signed under penalty of perjury, represent that Silber had "just discovered that [he] had not filed a Responsive Pleading in this matter for [his] case or for the case against Delores Jordan."  (Silber Decl. In Supp. of Jordan's Ex Parte Appl. ¶ 3 ("Silber Decl.").)[4]  Silber further declares that he had drafted responses to the Third Amended Complaint on Jordan's behalf and his own behalf, but

---

[2]  Michael Armstrong's motion to dismiss was granted in its entirety, and Michael Armstrong has been dismissed from this action with prejudice.  (Order, Sept. 13, 2010, Dkt. No. 179.)  Virginia Armstrong's motion to dismiss was granted in nearly all respects, except that plaintiff Christy Winters's state law claim of civil battery and plaintiffs' state law claim of breach of contract were permitted to proceed.  (Order, Sept. 13, 2010, Dkt. No. 180.)

[3]  The court resolved the motion for default judgment as to the numerous other defendants by separate order, but deferred ruling on the motion as to Jordan.  (See Findings & Recommendations, June 20, 2011, Dkt. No. 292, adopted by Order, Sept. 20, 2011, Dkt. No. 300.)

[4]  Silber's declaration in support of his own ex parte application (Dkt. No. 254) is not materially different from the declaration he filed in support of Jordan's request for relief.

3

that "[d]ue to the amount of pleadings filed and the number of defendants [he] lost track of the fact that [he] had not actually filed the pleadings despite the fact that [he] had drafted them at the end of November 2009."  (Id. ¶5.)  Moreover, Silber declares: "During the last year I have been through a series of personal problems that included divorce from my wife, moving from my house in Texas and a series of other unfortunate events that caused me to lose track of the events in this matter."[5]  (Id. ¶ 6.)

Relevant here, Federal Rule of Civil Procedure 6(b) provides:

**(b) Extending Time.**

**(1)** *In General.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:

**(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

**(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.

**(2)** *Exceptions.*  A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

The undersigned concludes that although it presents a relatively close call, the peculiar circumstances of this case justify, on the basis of excusable neglect, relief pursuant to Rule 6(b)(1)(B).  The undersigned considers the factors supporting such relief, and plaintiffs' primary objections, below.

Plaintiffs first object to the granting of any relief on the grounds that such relief would violate the limitation on extensions of time provided in Rule 6(b)(2).  Plaintiffs appear to

---

[5]   The undersigned notes that, based on the court's independent research, Silber was the subject of a publicly filed, stipulated disciplinary order entered by the State Bar Court of California. (See Stayed Suspension Order, July 11, 2011, filed in In Re David S. Silber, Nos. 10-O-00366, 10-O-03134 (State Bar Court of Cal.).)  That order, which does not concern Silber's representation of any defendants here, reflects that Silber's divorce caused him "psychological stress" during the period relevant here.  The district court may take judicial notice of documents filed in a state court action where, as here, the state court proceedings have a direct relation to the matters at issue.  See, e.g., Betker v. U.S. Trust Corp. (In re Heritage Bond Litig.), 546 F.3d 667, 670 n.1, 673 n.8 (9th Cir. 2008); Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007); Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002).

1  argue that Jordan's and Silber's requests for relief are premised on an assertion of "excusable

2  neglect" and thus implicate Federal Rule of Civil Procedure 60(b)(1), which permits a court to

3  "relieve a party or its legal representative from a final judgment, order, or proceeding for . . .

4  mistake, inadvertence, surprise, or excusable neglect."  In turn, Rule 60(c)(1) places a one-year

5  time limit on motions made pursuant to Rule 60(b)(1), which runs from the date of entry of the

6  subject judgment or order or the date of the subject proceeding.  See Fed. R. Civ. P. 60(c)(1) ("A

7  motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3)

8  no more than a year after the entry of the judgment or order or the date of the proceeding.").

9  Plaintiffs appear to argue that because Silber filed the requests for relief more than one year after

10 the deadline for his and Jordan's response to the Third Amended Complaint, Silber's requests for

11 relief violate Rule 60(c)(1).

12        The undersigned finds plaintiffs' argument premised on the interplay between

13 Rule 6(b)(2) and Rule 60(c)(1) unpersuasive.  In short, Jordan's and Silber's requests for relief

14 do not implicate Rule 60(b) and, accordingly, the restrictions set forth in Rules 6(b)(2) and

15 60(c)(1) do not apply here.  Relief granted pursuant to Rule 60(b) is relief from a "*final*

16 judgment, order, or proceeding." Fed. R. Civ. P. 60(b) (emphasis added).  The term "final"

17 modifies not only the term "judgment," but also the terms "order" and "proceeding."  See Fed. R.

18 Civ. P. 60(b) advisory committee's notes to 1946 amend. ("The addition of the qualifying word

19 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b)

20 affords relief . . . ."); Kapco Mfg. Co. v. C & O Enters., Inc., 773 F.2d 151, 154 (7th Cir. 1985)

21 (stating that "'final' in Rule 60(b) must modify 'order, or proceeding' as well as 'judgment,'"

22 and that Rule 60(b) "is a method of reopening a closed case").  Here, neither Silber nor Jordan is

23 seeking relief from a final judgment, final order, or final proceeding.  Accordingly, the relief

24 sought is not pursuant to Rule 60(b), and plaintiffs' argument premised on Rules 6(b)(2)

25 and 60(c)(1) fails.

26        Plaintiffs also object on the grounds that Silber has not sufficiently demonstrated

excusable neglect.  "The test for whether neglect is excusable under Rule 6(b)(1)(B) is the same

as under Rule 60(b)(1)."  Molina v. Potter, No. 10-CV-454 JLS (BGS), 2011 WL 1261547, at *1

(S.D. Cal. Apr. 5, 2011) (unpublished) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.

P'ship, 507 U.S. 380, 392-93 (1993); and Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d

814, 825 n.4 (9th Cir. 1996)).  The Ninth Circuit Court of Appeals has stated that:

> In evaluating whether neglect is excusable, a district court must consider
> the four factors established by the Supreme Court in Pioneer Investment
> Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380,
> 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993): "(1) the danger of prejudice to the
> non-moving party, (2) the length of delay and its potential impact on
> judicial proceedings, (3) the reason for the delay, including whether it was
> within the reasonable control of the movant, and (4) whether the moving
> party's conduct was in good faith."

Mendez v. Knowles, 556 F.3d 757, 765 (9th Cir. 2009) (quoting Pincay v. Andrews, 389 F.3d

853, 855 (9th Cir. 2004) (en banc) (citing Pioneer Inv. Servs. Co., 507 U.S. at 395)).  These four

factors are not the only ones the court may consider.  The Supreme Court has noted that

"[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually

constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat

'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the

control of the movant."  Pioneer Inv. Servs. Co., 507 U.S. at 392 (footnotes omitted).  "The

determination of whether neglect is excusable 'is at bottom an equitable one, taking account of

all relevant circumstances surrounding the party's omission.'"  Lemoge v. United States, 587

F.3d 1188, 1192 (9th Cir. 2009) (quoting Pioneer Inv. Servs. Co., 507 U.S. at 395).

       Silber's failure to file already-prepared motions to dismiss is unfortunate at best.

However, upon consideration of all four factors identified above, the undersigned concludes that

Silber has, even if barely so, demonstrated excusable neglect warranting relief under

Rule 6(b)(1).

       First, despite plaintiffs' generalized protests, there is an insufficient danger of

prejudice to plaintiffs to preclude relief.  This case is still at the pleading stage due to the sheer

1    number of defendants, numerous pleadings-based motions filed by approximately 60 named

2    defendants, and multiple amendments of complaints.  At most, Silber's late-filed motions

3    decreased plaintiffs' ability to default Jordan and Silber and obtain a quick victory—a potentially

4    un-meritorious victory—which is not sufficient to support a finding of prejudice to the non-

5    moving party.  See, e.g., Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1262 (9th Cir. 2010)

6    (citing Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000)).  Moreover, as stated

7    below, the undersigned recommends that any motion for default judgment be denied as to Jordan

8    on procedural and substantive grounds.

9            Second, in terms of the length of delay and its potential impact on judicial

10    proceedings, the length of the delay totaling over one year is quite substantial.  However, that

11    delay has not materially impacted these proceedings, which, as noted above, are still at the

12    pleading stage.  Over the course of nearly two years, the court has been addressing various

13    pleadings-based motions filed by defendants and numerous other motions filed by plaintiffs.

14    Moreover, there is no impending trial date or other deadlines that must be continued if relief is

15    granted.

16            Third, the court considers the reason for the delay and whether it was in the

17    reasonable control of the moving party.  Silber's reasons are many and of a very "human" variety,

18    and explain Silber's failure to act.  Whatever those reasons, the delay was caused by Silber and

19    was within his control.  At bottom, Silber forgot to file two documents that he had already

20    prepared, apparently due to the myriad number of filings and defendants in this action that

21    confused Silber.  The undersigned finds that this factor weighs against granting relief.  However,

22    such a finding is not dispositive of the inquiry into excusable neglect, which must consider all of

23    the relevant factors and circumstances.

24            Fourth, the undersigned cannot conclude that Silber's acts or omissions were the

25    result of bad faith.  Silber has declared under penalty of perjury that his failures were a very

26    unfortunate oversight, and that he did not "take the actions to interfere with the proceedings in

7

1   this case or to cause any unnecessary delay, or to interfere with the plaintiff's [*sic*] rights." (<u>E.g.</u>,

2   Silber Decl. ¶ 8.)  Even if Silber's declarations are viewed skeptically as containing self-serving

3   representations, the undersigned finds no other evidence in the record suggesting that Silber acted

4   in bad faith, especially where he actually filed two largely successful motions to dismiss on

5   behalf of Virginia and Michael Armstrong.

6           Although Silber's actions clearly fell below the level of conduct expected of

7   attorneys appearing before this court, the undersigned finds that the four relevant factors support,

8   on balance, a finding of excusable neglect.  Accordingly, the undersigned orders that Jordan and

9   Silber are entitled to relief pursuant to Federal Rule of Civil Procedure 6(b)(1)(B).  Accordingly,

10  the undersigned will consider and address the merits of Jordan's and Silber's motions to dismiss

11  plaintiffs' Third Amended Complaint.

12          Before turning to the motions to dismiss, the undersigned briefly addresses

13  plaintiffs' motion for default judgment against Jordan (Dkt. No. 189).  To the extent that the

14  motion for default judgment is before the court, the undersigned recommends that it be denied on

15  procedural and substantive grounds.

16          First, plaintiffs' motion for default judgment is procedurally improper, and thus

17  subject to denial, because plaintiffs did not seek a clerk's entry of default prior to filing their

18  motion for default judgment.  Federal Rule of Civil Procedure 55 governs the entry of default by

19  the clerk and the subsequent entry of default judgment by either the clerk or the district court.  In

20  relevant part, Rule 55 provides:

21          **(a) Entering a Default.**  When a party against whom a judgment for
            affirmative relief is sought has failed to plead or otherwise defend, and
22          that failure is shown by affidavit or otherwise, the clerk must enter the
            party's default.

23
            **(b) Entering a Default Judgment.**
24
            **(1) *By the Clerk*.**  If the plaintiff's claim is for a sum certain or a sum
25          that can be made certain by computation, the clerk--on the plaintiff's
            request, with an affidavit showing the amount due--must enter judgment
26          for that amount and costs against a defendant who has been defaulted for

                                                    8

1  not appearing and who is neither a minor nor an incompetent person.

2      **(2) *By the Court.*** In all other cases, the party must apply to the court
   for a default judgment. . . .

3

4  Fed. R. Civ. P. 55(a)-(b). The Ninth Circuit Court of Appeals has stated that Rule 55 requires a

5  "two-step process" consisting of: (1) seeking a clerk's entry of default, and (2) filing a motion for

6  the entry of default judgment. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) ("Eitel

7  apparently fails to understand the two-step process required by Rule 55."); accord Symantec

8  Corp. v. Global Impact, Inc., 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(a) and (b)

9  provide a two-step process for obtaining a default judgment); see also Norman v. Small, No.

10 09cv2235 WQH , 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (unpublished) (denying

11 plaintiff's motion for default judgment because, in part, the clerk had not yet entered a default);

12 Cramer v. Target Corp., No. 1:08-cv-01693-OWW-SKO, 2010 WL 2898996, at *1 (E.D. Cal.

13 July 22, 2010) (unpublished) ("Obtaining a default judgment in federal court is a two-step

14 process that includes: (1) entry of default and (2) default judgment."); Bach v. Mason, 190

15 F.R.D. 567, 574 (D. Idaho 1999) ("Plaintiffs have improperly asked this court to enter a default

16 judgment without first obtaining an entry of default by the clerk. Since plaintiffs' motion for

17 entry of default judgment is improper, it is denied."), aff'd, 3 Fed. Appx. 656 (9th Cir. 2001),

18 cert. denied, 534 U.S. 1083 (2002).

19      Here, plaintiffs did not request or obtain a clerk's entry of default from the Clerk

20 of Court upon a showing by affidavit or otherwise that defendants failed to plead or otherwise

21 defend themselves. Instead, they simply filed their motion for default judgment. Accordingly,

22 the undersigned recommends that plaintiffs' motion for default judgment be denied as to Jordan

23 on procedural grounds.

24      Were the motion for default judgment properly before the court, the undersigned

25 would further recommend that it be denied as a substantive matter. One of the factors to be

26 considered in evaluating a motion for default judgment is "the strong policy underlying the

9

1    Federal Rules of Civil Procedure favoring decisions on the merits." See Eitel, 782 F.2d at 1471-

2    72.  Moreover, defaults judgments are generally disfavored.  See id. at 1472; United States v.

3    Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010)

4    ("Crucially, . . . judgment by default is a drastic step appropriate only in extreme circumstances;

5    a case should, whenever possible, be decided on the merits.") (citation and quotation marks

6    omitted); Westchester Fire Ins. Co. v. Mendez, 585 F.3d 1183, 1189 (9th Cir. 2009) ("As a

7    general rule, default judgments are disfavored; cases should be decided upon their merits

8    whenever reasonably possible.").  The undersigned concludes that these policies favor denying

9    plaintiffs' motion for default judgment.  Such a conclusion is warranted especially where Jordan

10   had actually appeared in the action and answered the Second Amended Complaint.

11           Based on the foregoing, the undersigned affirms the grant of Jordan's and Silber's

12   requests for extensions to file their motions to dismiss, and deems those motions timely filed.

13   Additionally, the undersigned recommends that plaintiffs' motion for default judgment be denied

14   as to Jordan to the extent it is properly before the court.  The undersigned next addresses Jordan's

15   and Silber's motions to dismiss.

16   II.     BACKGROUND RE: MOTIONS TO DISMISS[6]

17           Plaintiffs' operative complaint, the Third Amended Complaint,[7] is a wide-ranging,

18   

19       [6] The court previously ordered that all references to three minor plaintiffs in this action—Joy
     Winters, Clark Winters, and Jill Winters—be stricken from plaintiffs' Third Amended Complaint
20   because those minors were not represented by an attorney or attorneys.  (Order, Sept. 24, 2009, Dkt.
     No. 68; see also Order, Nov. 12, 2009, at 2 & n.1, Dkt. No. 89.)  The court subsequently dismissed
21   those minors from this action.  (Order, Feb. 1, 2011, Dkt. No. 221.)  Additionally, plaintiff Jeremiah
     Winters was dismissed from this action at his request, subject to certain judgments and attorneys'
22   fees awards.  (Findings & Recommendations, Apr. 15, 2011, Dkt. No. 281, adopted by Order, July
     1, 2011, Dkt. No. 295.)
23   
         [7] Plaintiffs filed the operative complaint under the title "Amended Complaint,"
24   notwithstanding this court's order that it be labeled "Third Amended Complaint."  (See Order and
     Findings and Recommendations, Aug. 24, 2009, at 4, Dkt No. 56.)  The Third Amended Complaint
25   supersedes plaintiffs' "Second Amended Complaint."  As the court noted in a prior order, the Second
     Amended Complaint represented plaintiffs' first amendment of the original complaint (Id. at 1 n.1),
26   and the operative Third Amended Complaint represents plaintiffs' second amendment of the original

                                                    10

1     25-page complaint that alleges, in eight-point font, over two dozen claims for relief against over

2     60 defendants.  Several of plaintiffs' claims are alleged against "All Defendants," with no

3     differentiation in regards to the alleged conduct of each defendant that supports each such claim.

4     In dismissing plaintiffs' Second Amended Complaint (Dkt. No. 15), which spanned 163 pages

5     and 607 numbered paragraphs, the court ordered that plaintiffs' Third Amended Complaint could

6     not exceed 25 pages and must conform to Federal Rule of Civil Procedure 8(a), including the

7     requirement that the pleading contain a short and plain statement of the claims alleged instead of

8     recounting all of the evidence and arguments in support of those claims.  (Order and Findings

9     and Recommendations, Aug. 24, 2009, at 3.)  The court stated that "[t]his will be plaintiffs' last

10    chance to comply."  (Id.)

11        The claims alleged in the Third Amended Complaint against Jordan and Silber

12    arise from an underlying family dispute between plaintiffs, who are part of the Winters family,

13    and defendant Virginia Armstrong.  Virginia Armstrong is the mother of plaintiff Susan Winters

14    and grandmother to other plaintiffs.

15        The Third Amended Complaint alleges that in or around the year 2002, plaintiff

16    Susan Winters's elderly parents, Joe and Virginia Armstrong, encouraged plaintiffs Susan and

17    Brent Winters to sell their house in Illinois and move to Nevada City, California, to live with the

18    Armstrongs.  (Third Am. Compl. ¶ 12.)  Plaintiffs allegedly visited Joe and Virginia Armstrong

19    between October and December of 2003, and then apparently returned to Illinois.  (Id. ¶ 13.)

20    Plaintiffs allege that before plaintiffs permanently moved to California, Joe Armstrong passed

21    away and that Virginia Armstrong eventually transferred properties, including the residence at

22    11318 Via Vista in Nevada City, California, from the Armstrong Living Trust dated July 29,

23    1994, to the Virginia Armstrong Living Trust.  (Id. ¶¶ 18, 21.)  Plaintiffs allege that Virginia

24    Armstrong took these actions in 2007, due, in part, to the undue influence of defendants Valerie

25    _____

26    complaint.

1   Logsdon, who was Virginia Armstrong's attorney, and Michael Armstrong, Virginia Armstrong's

2   son.  (Id. ¶ 21.)

3          The relationship between Virginia Armstrong and plaintiffs, which appears to

4   have given rise to allegations of possible elder abuse committed by plaintiffs against Virginia

5   Armstrong, resulted in several proceedings in the Nevada County Superior Court.  Relevant here,

6   plaintiffs allege that on October 15, 2007, Nevada County Adult Protective Services ("APS")

7   filed a petition for a temporary restraining order in Virginia Armstrong's name and "against her

8   daughter Susan Winters and her son-in-law Brent Winters."  (Third Am. Compl. ¶ 22.)  Plaintiffs

9   allege that APS was assisted by defendant Delores Jordan, who was "unduly influencing"

10  Virginia Armstrong.  (Id.)  The next day, Susan Winters filed a petition for a restraining order

11  against Jordan.  (Id. ¶ 23.)  These dueling petitions led to ongoing proceedings in the Nevada

12  County Superior Court, which are generally recounted below.  (See id. ¶¶ 23-26.)

13         Plaintiffs allege that on October 18, 2007, the Nevada County Superior Court

14  entered a permanent restraining order in favor of plaintiffs and against Jordan.  (Third Am.

15  Compl. ¶ 26.)  However, they allege that Jordan thereafter directed a "handyman" to change the

16  locks to Virginia Armstrong's home without permission from plaintiffs and in violation of the

17  restraining order.  (Id. ¶ 27.)  As discussed further below, plaintiffs allege that on February 10,

18  2008, May 26, 2008, and June 2, 2008, Jordan trespassed onto the home while plaintiffs were

19  living there with Virginia Armstrong, also allegedly in violation of the restraining order against

20  Jordan.  (See, e.g., id. ¶¶ 28, 58-61, and at p. 19.)[8]  Plaintiffs allege that on August 8, 2008, a

21  judge of the Nevada County Superior Court ultimately vacated the restraining order against

22  Jordan and "dismissed" the trespass committed by Jordan.  (Id. ¶ 74.)

23
        _____

24        [8]  Additionally, on April 21, 2008, a judge of the Nevada County Superior Court, Judge
        Thomas Anderson, "instituted proceedings for restraining orders" against plaintiffs Susan Winters,
25        Brent Winters, and all of their children, and such restraining order was allegedly for the protection
        of Virginia Armstrong.  (Third Am. Compl. ¶ 46.)  That same day, Judge Anderson, on his own
26        motion, appointed an attorney, defendant Dewey Harpainter, to represent Virginia Armstrong "to
        prosecute the restraining orders."  (Id. ¶ 47.)

                                              12

1    Plaintiffs' Third Amended Complaint alleges the following claims against Jordan:

2 abuse of process (claim 6); violation of plaintiffs' rights of equal protection of the law secured by

3 the Fourteenth Amendment of the U.S. Constitution (claim 7); civil battery (claim 9); civil

4 assault (claim 10); trespass to land (claim 12); trespass to chattels, alleged against "All

5 Defendants" (claim 13); violation of 42 U.S.C. § 1983, alleged against "All Defendants"

6 (claim 14); civil conspiracy in violation of 42 U.S.C. § 1983, alleged against "All Defendants"

7 (claim 15); civil conspiracy, alleged against "All Defendants" (claim 18); "Slander, Libel, and

8 Slander & Libel Per Se" (claim 21); invasion of privacy (claim 25); conspiracy to violate the

9 Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(d), alleged

10 against "All Defendants" (claim 31); loss of consortium, alleged against "All Defendants"

11 (claim 36); and intentional infliction of emotional distress, alleged against "All Defendants"

12 (claim 38).

13    Plaintiffs allege the following claims against Silber, who is only alleged to have

14 acted as Jordan's attorney: abuse of process (claim 6); violation of plaintiffs' rights of equal

15 protection of the law secured by the Fourteenth Amendment of the U.S. Constitution (claim 7);

16 violation of plaintiffs' rights of due process secured by the Fifth and Fourteenth Amendment of

17 the U.S. Constitution (claim 8); trespass to chattels, alleged against "All Defendants" (claim 13);

18 violation of 42 U.S.C. § 1983, alleged against "All Defendants" (claim 14); civil conspiracy in

19 violation of 42 U.S.C. § 1983, alleged against "All Defendants" (claim 15); civil conspiracy,

20 alleged against "All Defendants" (claim 18); invasion of privacy (claim 25); violation of

21 plaintiffs' rights secured by the First Amendment of the U.S. Constitution (claim 26); violation

22 of plaintiffs' rights secured by the Second Amendment of the U.S. Constitution (claim 28);

23 conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

24 U.S.C. 1962(d), alleged against "All Defendants" (claim 31); loss of consortium, alleged against

25 "All Defendants" (claim 36); and intentional infliction of emotional distress, alleged against "All

26 Defendants" (claim 38).

III.     LEGAL STANDARDS, FED. R. CIV. P. 12(b)(6)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

14

1   Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica

2   Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

3   construed, particularly where civil rights claims are involved").

4   IV.   DISCUSSION

5        A.   Plaintiffs' Federal Claims Against Jordan and Silber

6             1.   Plaintiffs' Generic and Conclusory Section 1983 Claims (Claims 14, 15,
                   and 18)

7

8             Plaintiffs' fourteenth, fifteenth, and eighteenth claims for relief allege that "All

9   Defendants" violated plaintiffs' constitutional rights.  (Third Am. Compl. at 19-20.)  These

10  claims, which are expressly or impliedly brought pursuant to 42 U.S.C. § 1983, are subject to

11  dismissal with prejudice.[9]

12            "Section 1983 imposes civil liability upon an individual who under color of state

13  law subjects or causes, any citizen of the United States to the deprivation of any rights, privileges

14  or immunities secured by the Constitution and laws."  Franklin v. Fox, 312 F.3d 423, 444 (9th

15  Cir. 2002) (citing 42 U.S.C. § 1983).  "To state a claim under § 1983, a plaintiff must allege two

16  essential elements: (1) that a right secured by the Constitution or laws of the United States was

17  violated, and (2) that the alleged violation was committed by a person acting under the color of

18  State law."  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v.

19  Atkins, 487 U.S. 42, 48 (1988)).  Conclusory allegations of a violation of Section 1983 or a

20  conspiracy to violate Section 1983 will not survive a motion to dismiss.  See, e.g., Simmons v.

21  Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (affirming dismissal of

22  plaintiff's second amended complaint as a result of plaintiff's "conclusory allegations" of a

23  conspiracy to deprive him of his constitutional rights in violation of Section 1983).

24

25       [9] Plaintiffs allege additional claims against Jordan and Silber pursuant to 42 U.S.C. § 1983
    elsewhere in the Third Amended Complaint.  (See Third Am. Compl. at 14-151, 23-24.)  The
26  undersigned separately addresses those claims in these findings and recommendations.

1    Plaintiffs' allegations in support of their fourteenth, fifteenth, and eighteenth

2   claims for relief are so conclusory that they should be dismissed.  With respect to plaintiffs'

3   fourteenth claim, alleging that "All Defendants" individually violated plaintiffs' constitutional

4   rights, plaintiffs only allege the following:

5              Paragraphs above incorporated by reference.  Defendants, by their actions
             and acting under the color of law, subjected Plaintiffs, and caused
6             Plaintiffs to be subjected, to the deprivations of their rights, privileges, and
             immunities secured by the Constitution and laws of the State of California
7             and of the United States of America, Plaintiffs claim damages under 42
             U.S.C. § 1983 for their injuries set forth above.

8

9   (Third Am. Compl. at 19.)  These allegations consist of bare legal conclusions, and not factual

10  allegations that state a plausible claim under Section 1983.  Plaintiffs do not allege which

11  particular constitutional right of which particular plaintiff was purportedly violated.  Moreover,

12  plaintiffs have not alleged how Jordan, Silber, or any other defendant was specifically involved

13  in the purported deprivation of each plaintiff's civil rights at issue in claim fourteen.  See, e.g.,

14  James v. Rowlands, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability

15  on a defendant only if he or she personally participated in or directed a violation."); Jones v.

16  Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state

17  law to be liable under section 1983 there must be a showing of personal participation in the

18  alleged rights deprivation . . . ."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A

19  plaintiff must allege facts, not simply conclusions, that show that an individual was personally

20  involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the

21  personal involvement of the defendant.").  Accordingly, plaintiffs' fourteenth claim should be

22  dismissed.

23    Plaintiffs' conspiracy claims alleged in claims fifteen and eighteen are also fatally

24  flawed.  Again, plaintiffs do not allege that they were deprived of any specific constitutional

25  right.  They simply incorporate the rest of their complaint by reference and leave it to defendants

26  and the court to sort out.  Additionally, plaintiffs' allegations of an agreement among "All

16

1   Defendants" to commit a violation of plaintiffs' rights is conclusory so as to be legally

2   insufficient.  See Simmons, 318 F.3d at 1161 ("Plaintiff's conclusory allegations that the lawyer

3   was conspiring with state officers to deprive him of due process are insufficient."); Burns v.

4   County of King, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam) ("Burns' claims against all the

5   defendants for a conspiracy to violate his constitutional rights under section 1983 also fail

6   because they were supported only by conclusory allegations."); see, cf., Degrassi v. City of

7   Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (stating that "a bare allegation of . . . joint action

8   will not overcome a motion to dismiss" (citation and quotation marks omitted)); Price v. Hawaii,

9   939 F.2d 702, 707-08 (9th Cir. 1991) (stating that "[c]onclusionary allegations, unsupported by

10  facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act" (citation and

11  quotation marks omitted, modifications in original).).  Plaintiffs simply allege a series of distinct

12  acts committed by different defendants and attempt to tie those acts together in an alleged

13  conspiracy through the use of empty buzzwords such as "in concert" and "colluding."

14          In light of the deficient nature of plaintiffs' allegations in claims fourteen, fifteen,

15  and eighteen, the undersigned recommends that these claims be dismissed as to Jordan and

16  Silber.  Nothing in plaintiffs' Third Amended Complaint suggests that these pleading

17  deficiencies could be cured through amendment and, accordingly, the undersigned recommends

18  that these claims be dismissed with prejudice.

19          2.      Plaintiffs' Remaining Constitutional Claim Against Jordan (Claim 7)

20          Plaintiffs allege one additional, specific claim for relief against Jordan pursuant to

21  42 U.S.C. § 1983.  Plaintiffs' seventh claim for relief alleges that fourteen defendants, including

22  Jordan, violated plaintiffs' rights of equal protection provided in the Fourteenth Amendment to

23  the U.S. Constitution.  (See Third Am. Compl. at 14.)  In essence, plaintiffs allege that APS and

24  two of its employees arbitrarily provided assistance to certain individuals in regards to the

25  protection of Virginia Armstrong, but refused to provide assistance to plaintiff Susan Winters in

26  her attempts to allegedly protect Virginia Armstrong.  In relevant part, plaintiffs allege:

17

1   **04/08**— Paragraphs above incorporated by reference.  In violation of equal
2   protection of the laws, Plaintiff Susan Winters called APS to report the
    physical (medication), financial, and emotional abuse and undue influence
    of Delores Jordan and attorney Valerie Logsdon over her elderly mother
3   Virginia Armstrong.  In response, Nevada County Adult Protective
    Services instructed Susan that she must obtain conservatorship of Virginia
4   Armstrong before Susan could allege abuse and undue influence of others
    over her mother Virginia Armstrong.  Susan had the right to the assistance
5   of Adult Protective Services to stop the abuse of her mother by Delores
    Jordan and Valerie Logsdon.  Adult Protective Services was assisting
6   Delores Jordan against Susan, but APS refused to assist Susan in her
    lawful complaint against Jordan and Logsdon. . . .

7

8   (Id.)

9          Jordan moves to dismiss plaintiffs' equal protection claim on the ground that

10  Jordan is not a state actor and did not act under color of state law.  Although it presents a close

11  call, the undersigned construes plaintiffs' allegations liberally and concludes that plaintiffs'

12  seventh claim for relief should proceed against Jordan insofar as it is alleged by Susan Winters.

13         As noted above, "[t]o state a claim under § 1983, a plaintiff must allege two

14  essential elements: (1) that a right secured by the Constitution or laws of the United States was

15  violated, and (2) that the alleged violation was committed by a person acting under the color of

16  State law."  Long, 442 F.3d at 1185.  Although "[a] civil rights plaintiff suing a private

17  individual under § 1983 must demonstrate that the private individual acted under color of state

18  law," Franklin, 312 F.3d at 444, it is well-settled that "even a private entity can, in certain

19  circumstances, be subject to liability under section 1983," Villegas v. Gilroy Garlic Festival

20  Ass'n, 541 F.3d 950, 954 (9th Cir. 2008) (en banc).  "A private individual may be liable under

21  § 1983 if she conspired or entered joint action with a state actor."  Crowe v. County of San

22  Diego, 608 F.3d 406, 440 (9th Cir. 2010) (citation and quotation marks omitted); see also Kirtley

23  v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) ("While generally not applicable to private

24  parties, a § 1983 action can lie against a private party when he is a willful participant in joint

25  action with the State or its agents.") (citation and quotation marks omitted).  Although the United

26  States Supreme Court has articulated several alternative tests that may be used to determine

18

whether a private individual's actions amount to state action, see Franklin, 312 F.3d at 445, the "joint action test" is appropriate here.  The joint action test applies where, as here, state officials and private parties are alleged to have acted in concert to effectuate a deprivation of constitutional rights, and "focuses on whether the state has so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity."  Id. (citation, quotation marks, and modifications omitted).

At the pleading stage, and construing plaintiffs' allegations liberally, the undersigned concludes that the joint action test supports plaintiffs' equal protection claim.  Plaintiffs have specifically alleged that APS was assisting Jordan in regards to substantiating that Susan Winters and other plaintiffs were abusing Virginia Armstrong.  They allege that APS assisted Jordan and filed reports relating Jordan's allegedly false statements about Susan and Brent Winters, denied any assistance to Susan Winters in regards to her allegations that Jordan was abusing Virginia Armstrong, and that this disparate treatment deprived Susan Winters of equal protection of the law.  At this early stage of the proceedings, the undersigned finds that plaintiffs have alleged enough facts to satisfy the joint action test, and recommends that Susan Winters's equal protection claim proceed against Jordan.  However, the undersigned recommends that this claim be dismissed with prejudice as to every other plaintiff because plaintiffs have not alleged any facts substantiating that any other plaintiff was deprived of equal protection of the law.

    3.    Plaintiffs' Remaining Constitutional Claims Against Silber (Claims 7, 8, 26, and 28)

In regards to their remaining constitutional claims alleged against Silber, plaintiffs allege that Silber violated plaintiffs' equal protection rights as provided in the Fourteenth Amendment (claim 7), plaintiffs' due process rights as provided in the Fifth and Fourteenth Amendments (claim 8), plaintiffs' First Amendment rights as provided in the First Amendment, and plaintiffs' right to bear arms as provided in the Second Amendment (claim 26).  (See Third

19

1   Am. Compl. at 14-15, 23-24.)  The undersigned recommends that all of these claims be

2   dismissed as to Silber on the grounds that he is not a state or federal actor, that he did not act

3   under color of state law, and that the joint action test does not support plaintiffs' claims.

4          At the outset, plaintiffs' Fifth Amendment claim fails because plaintiffs have not

5   alleged, and in no way appear to be able to allege, that Silber is a federal actor.  The Ninth

6   Circuit Court of Appeals has plainly held that "[t]he Due Process Clause of the Fifth Amendment

7   . . . [applies] only to actions of the federal government—not to those of state or local

8   governments."  Lee v. City of L.A., 250 F.3d 668, 687 (9th Cir. 2001); see also Bingue v.

9   Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due process clause

10  only applies to the federal government."); Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir.

11  2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due

12  process, while the Fourteenth Amendment explicitly prohibits deprivations without due process

13  by the several States.").  Here, plaintiffs have not alleged facts suggesting that Silber, a private

14  attorney representing private individuals, was at any relevant time a federal actor.  Accordingly,

15  the undersigned recommends that plaintiffs' eighth claim for relief be dismissed with prejudice

16  to the extent that it is premised on the Fifth Amendment.

17         In regards to plaintiffs' remaining equal protection, due process, First

18  Amendment, and Second Amendment claims, plaintiffs have not plausibly alleged that Silber

19  was a state actor or acted under color of state law.  Moreover, plaintiffs have not alleged facts

20  that support a finding of joint action between Silber and a state actor.  At most, plaintiffs suggest

21  in connection with their seventh claim for relief that the Nevada Superior Court entered or

22  modified a restraining order following an ex parte hearing at which Silber was present and of

23  which plaintiffs lacked notice.  These facts are insufficient to establish joint action.  Accordingly,

24  the undersigned recommends that plaintiffs' seventh, eighth, twenty-sixth, and twenty-eighth

25  claims for relief be dismissed with prejudice.

26  ////

1          4.      Plaintiffs RICO Conspiracy Claim (Claim 31)

2          Jordan and Silber move to dismiss plaintiffs' thirty-first claim for relief, which

3   alleges that "All Defendants"—over sixty defendants including private actors, state court judges

4   and employees, law enforcement, and local agencies—conspired to commit racketeering activity

5   in violation of the RICO statute, see 18 U.S.C. §§ 1962(d), 1964(c).  (See Third Am. Compl.

6   at 24; see also Defs.' Memo. at 12-13.)  Plaintiffs allege that all defendants in this case conspired

7   to "maintain a federal prosecution against Plaintiff Brent Winters in Illinois."[10]  (Id.)  They

8   further allege that on July 9, 2002, defendant Jan Paul Miller agreed with an individual named

9   Michael McCuskey and defendant Assistant United States Attorney Frooman "to investigate and

10  prosecute Brent Winters on false charges" knowing that the presiding judge was biased.  (Id.)

11  They also allege that "Agent Pogue" contributed to the conspiracy by testifying based on

12  "conjecture" at Brent Winters's sentencing hearing.  (Id.)  In addition, they vaguely allege an

13  undefined "pattern of misrepresentation" intended to "defraud the Winters of their rights and

14  their property."  (Id.)  Moreover, plaintiffs allege the "concealment of critical data," including a

15  memorandum drafted by a judge of the Nevada County Superior Court.  (Id.)  Other than

16  including Jordan's name in a laundry list of over 40 defendants, plaintiffs do not allege any

17  specific facts with respect to Jordan's or Silber's participation in this alleged, vast conspiracy.

18          "The elements of a civil RICO claim are as follows: (1) conduct (2) of an

19  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

20  (5) causing injury to plaintiff's 'business or property.'"  Living Designs, Inc., E.I. Dupont de

21  Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted).  "To

22  state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least

23  two predicate acts."  Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations

24  omitted).  Furthermore, a plaintiff must also show that the injury to his business or property was

25
26          [10]  Plaintiff Brent Allan Winters was convicted of tax fraud in an Illinois federal court.  See
generally United States v. Hills, 618 F.3d 619 (7th Cir. 2010).

21

1   proximately caused by the prohibited conduct and that he has suffered a concrete financial loss.

2   Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083, 1086 (9th Cir. 2002).

3          Plaintiffs' RICO conspiracy claim should be dismissed for several reasons.  First,

4   the allegations are of such a vague and conclusory nature that they do not state a plausible claim

5   for relief under the RICO statute.  Second, plaintiffs have not pled two predicate acts of

6   "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).  Third, plaintiffs have not

7   alleged a "concrete financial loss" or injury to business or property proximately caused by the

8   conspiracy.  Nothing contained in plaintiffs' Third Amended Complaint suggests that they could

9   amend their pleading to state a plausible claim for relief.  Accordingly, plaintiffs' thirty-first

10  claim for relief should be dismissed with prejudice as to Jordan and Silber.

11      B.     Plaintiffs' State Law Claims Against Jordan and Silber

12          1.     Plaintiffs' Abuse of Process Claim Against Jordan and Silber (Claim 6),
                   and Defamation Claim Against Jordan (Claim 21)
13

14          In their sixth claim for relief, plaintiffs allege that Jordan and Silber are liable for

15  the state law tort of abuse of process.  (Third Am. Compl. at 13-14.)  In regards to Jordan,

16  plaintiffs allege that on February 13, 2008, defendants Virginia Armstrong, Valerie Logsdon, and

17  Jordan violated California law by causing an unlawful detainer action to be filed seeking to evict

18  members of the Winters from Virginia Armstrong's home.  (Id. at 13.)  In addition, plaintiffs

19  allege that on March 21, 2008, several named defendants—not including Jordan or Silber—filed

20  declarations and other documents containing false or malicious statements in a restraining order

21  action filed by the Winters against Jordan.  (Id.)  Plaintiffs also allege in their twenty-first claim

22  for relief that Jordan, among others, committed "Slander, Libel, Slander & Libel Per Se" through

23  "false accusations, both spoken and written to the court" between December 2007 and the

24  present.  (See id. at 21.)  As to Silber, plaintiffs allege that Silber, acting in his capacity as

25  Virginia Armstrong's attorney, along with several other defendants who are judges or staff at the

26  Nevada County Superior Court "abused the court's judicial process" on February 5, 2009, by:

22

1    (1) hiding from the Winters family "all knowledge of a hearing of David Silber before biased

2    Judge Anderson" related to an application for a restraining order; and (2) "improperly and with

3    malice assert[ing] false allegations against Plaintiffs without evidence in order to impose

4    restraining orders on the Winters."  (Id. at 13-14.)

5            Jordan and Silber argue that plaintiffs' claims for abuse of process and defamation

6    should be dismissed with prejudice as to them because their respective conduct is protected by

7    California's absolute litigation privilege.  That privilege, found at California Civil Code § 47(b),

8    provides, in part, that a publication or broadcast made as part of a judicial proceeding is

9    privileged.  See also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232,

10   1241, 163 P.3d 89, 95 (2007).  The California Supreme Court has summarized the litigation

11   privilege as follows:

12           This privilege is absolute in nature, applying to all publications,
             irrespective of their maliciousness.  The usual formulation is that the
13           privilege applies to any communication (1) made in judicial or
             quasi-judicial proceedings; (2) by litigants or other participants authorized
14           by law; (3) to achieve the objects of the litigation; and (4) that [has] some
             connection or logical relation to the action.  The privilege is not limited to
15           statements made during a trial or other proceedings, but may extend to
             steps taken prior thereto, or afterwards.

16

17   Id. (citations and internal quotation marks omitted, modification in original).  "[W]here the

18   gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily

19   related noncommunicative acts. . . ."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1062, 128 P.3d 713,

20   722 (2006).  The California Supreme Court has given this privilege "a broad interpretation" in

21   furtherance of the purpose of the privilege, which is "to afford litigants and witnesses . . . the

22   utmost freedom of access to the courts without fear of being harassed subsequently by derivative

23   tort actions."  Id.  "Any doubt as to whether the privilege applies is resolved in favor of applying

24   it."  Adams v. Superior Court, 2 Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992);

25   accord Sengchanthalangsy v. Accelerated Recovery Specialists, Inc., 473 F. Supp. 2d 1083, 1087

26   (S.D. Cal. 2007); Lambert v. Carneghi, 158 Cal. App. 4th 1120, 1138, 70 Cal. Rptr. 3d 626, 639

1   (Ct. App. 2008).  Thus, although the privilege was originally enacted with reference to claims of

2   defamation, "'the privilege is now held applicable to any communication, whether or not it

3   amounts to a publication . . . , and all torts except malicious prosecution.'"  Rusheen v. Cohen,

4   37 Cal. 4th 1048, 1057, 128 P.3d 713, 718 (2006) (quoting Silberg v. Anderson, 50 Cal. 3d 205,

5   212, 786 P.2d 365 (1990)); see also Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241-42 (noting

6   that the litigation privilege applies to claims of slander, libel, and abuse of process, among other

7   types of claims).  The privilege applies "regardless whether the communication was made with

8   malice or the intent to harm" and "does not depend on the publisher's motives, morals, ethics or

9   intent."  Kashian v. Harriman, 98 Cal. App. 4th 892, 913, 120 Cal. Rptr. 2d 576, 592 (Ct. App.

10   2002) (citation and quotation marks omitted).

11          The litigation privilege bars plaintiffs' abuse of process claims alleged against

12   Jordan and Silber, as well as plaintiffs' slander and libel claims alleged against Jordan.

13   Plaintiffs' allegations in support of these claims reveal that Jordan's and Silber's respective

14   actions underlying the abuse of process claims occurred in the context of: (1) providing

15   assistance to Virginia Armstrong in filing an unlawful detainer action to evict individuals from

16   her home; (2) communicating with the Nevada County Superior Court in connection with

17   judicial proceedings, whether by filing declarations or documents or making statements to that

18   court; or (3) appearing at a hearing in the Nevada County Superior Court.  (See Third Am.

19   Compl. at 13-14, 21.)  All of this conduct was made in judicial or quasi-judicial proceedings by a

20   party or her attorney to achieve the objects of the litigation, and it has some connection or logical

21   relation to the action.  See Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241-42.  Accordingly,

22   California's absolute litigation privilege applies to Jordan's and Silber's respective alleged

23   conduct.  The undersigned thus recommends that plaintiffs' sixth claim for relief be dismissed

24   with prejudice as to Jordan and Silber, and that plaintiffs' twenty-first claim for relief be

25   dismissed with prejudice as to Jordan.

26   ////

1              2.      Plaintiffs' Claim of Battery Against Jordan (Claim 9)

2              Plaintiffs allege several acts of civil battery committed by Jordan on various

3    plaintiffs on various dates.  (Third Am. Compl. at 16.)  Four alleged acts of battery are relevant

4    here.[11]  First, plaintiffs allege that on October 14, 2007, Jordan battered plaintiff Cacey Winters

5    by physically pushing Cacey Winters out of her way so that Jordan could enter the family room

6    of the home where Virginia Armstrong and the Winters were living.  (Id. at 16.)  Second,

7    plaintiffs allege that on November 19, 2007, Jordan battered plaintiff Susan Winters while

8    Jordan's handyman was changing the locks in the home.  They allege that Jordan aggressively

9    shoved or pushed past Susan Winters.  (Id.)  Third, plaintiffs allege that on November 19, 2007,

10   Jordan "shove[d] Cacey and Christy out of her way" several times while Jordan tried to enter

11   Cacey and Christy Winters's bedroom in violation of a restraining order.  (Id.)  Fourth, plaintiffs

12   allege that on November 21, 2007, Jordan intentionally ran a shopping cart into the back of

13   plaintiff Jennifer Winters, who was then working at the market and assisting a customer.  (Id.)

14           Under California law, "[t]he elements of civil battery are: (1) defendant

15   intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's

16   person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact

17   caused injury, damage, loss or harm to plaintiff."  Brown v. Ransweiler, 171 Cal. App. 4th 516,

18   526-27, 89 Cal. Rptr. 3d 801, 811 (Ct. App. 2009); accord Tekle v. United States, 511 F.3d 839,

19   855 (9th Cir. 2007) (same).

20           Jordan simply moves to dismiss plaintiffs' assorted battery claims on the grounds

21   that: (1) "there are no factual allegations concerning any physical contact between moving parties

22   [sic] and Plaintiffs"; and (2) "[i]t is ridiculous to think or believe that [Jordan] could or would

23   commit a battery against any of the Plaintiffs."  (Jordan's Memo. of P. & A. at 13.)  The

24   _____

25         [11]  The undersigned does not address plaintiffs' allegations that concern Jordan's alleged
     battery of Jill, Clark, and Joy Winters because Jill, Clark, and Joy Winters have been dismissed from
26   this action.  (See Third Am. Compl. at 16-17; Order, Feb. 1, 2011.)

                                              25

1    undersigned addresses Jordan's first argument below, but need not address her second argument,

2    which is legally and factually unsupported in any way.

3              In short, Jordan's argument that plaintiffs have not alleged any physical contact

4    between Jordan and any of the plaintiffs is entirely meritless.  In each of the four incidents

5    addressed above, plaintiffs alleged physical contact between Jordan and Susan, Cacey, Christy, or

6    Jennifer Winters.  Accordingly, the battery claims alleged by Susan, Cacey, Christy, and Jennifer

7    Winters should be permitted to proceed.

8                    3.    Plaintiffs' Claim of Assault Against Jordan (Claim 10)

9              In regards to their claims of civil assault, plaintiffs allege that each battery alleged

10   to have been committed by Jordan in their ninth claim for relief also gives rise to a claim for civil

11   assault. (Third Am. Compl. at 17-18.)  In short, Jordan's argument in support of dismissal of

12   plaintiffs' assault claims is indecipherable.  (See Jordan's Memo. of P. & A. at 13-14.)  Although

13   Jordan argues that "the assault claim lacks adequate supporting facts," it is unclear which

14   element or elements of an assault claim Jordan believes is factually unsupported.[12]  Accordingly,

15   the undersigned recommends that Jordan's motion be denied in this respect and that the assault

16   claims alleged by Susan, Cacey, Christy, and Jennifer Winters should be permitted to proceed,

17   consistent with their associated battery claims.

18                    4.    Plaintiffs' Claim of Trespass to Land Against Jordan (Claim 12)

19             Plaintiffs allege that Jordan trespassed onto Virginia Armstrong's property at

20   11318 Via Vista in Nevada City on three occasions while plaintiffs were residing in that home.

21   ───────────────────

22        [12]  "'A civil action for assault is based upon an invasion of the right of a person to live
     without being put in fear of personal harm.'"  Thing v. La Chusa, 48 Cal. 3d 644, 649, 771 P.2d 814,
     816 (1989) (quoting Lowry v. Standard Oil Co. of Cal., 63 Cal. App. 2d 1, 7, 146 P.2d 57, 60 (Ct.
23   App. 1944)).  "Generally speaking, an assault is a demonstration of an unlawful intent by one person
     to inflict immediate injury on the person of another then present."  Lowry, 63 Cal. App. 2d at 6-7,
24   146 P.2d at 60.  "The tort of assault is complete when the anticipation of harm occurs."  Kiseskey
     v. Carpenters' Trust for S. Cal., 144 Cal. App. 3d 222, 232, 192 Cal. Rptr. 492, 498 (Ct. App. 1983).
25   "Mere words, however threatening, will not amount to an assault."  B.E. Witkin et al., 5 Witkin
     Summ. of Cal. Law (Torts) § 383 (10th ed. 2005 & 2009 Supp.) (citing Restatement (Second) of
26   Torts § 31 (2010)).

1    (Third Am. Compl. ¶¶ 28, 58, and at p. 19.)  As noted above, plaintiffs allege that on

2    February 10, 2008, May 26, 2008, and June 2, 2008, Jordan entered the home to either check on

3    Virginia Armstrong's condition, accuse the Winters of wrongdoing, or "find evidence to use in

4    retaliation against Susan Winters for asking for an obtaining a restraining order against her."

5    (See id. at 19.)  Plaintiffs further allege that Jordan entered the home without invitation or

6    permission.  (Id.)  Although plaintiffs allege that these trespasses were in violation of a

7    restraining order entered against Jordan, they also allege that the restraining order precluded

8    Jordan from entering the premises "in any way except through Virginia's sliding glass door to her

9    bedroom, and only at Virginia's permission."  (Id. ¶ 58.)  Jordan moves to dismiss plaintiffs'

10   trespass to land claim on the grounds that: (1) the land entered upon "is owned, possessed and

11   occupied by" Virginia Armstrong; and (2) Jordan had the "express consent" of Virginia

12   Armstrong to enter the property.  (Jordan's Memo. of P. & A. at 14.)

13             California Courts of Appeal have summarized the tort of trespass onto land as

14   follows:  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land

15   of another.  Such invasions are characterized as intentional torts, regardless of the actor's

16   motivation.  Where there is a consensual entry, there is no tort, because lack of consent is an

17   element of the [theory underlying the tort]. . . ."  Church of Christ in Hollywood v. Superior

18   Court, 99 Cal. App. 4th 1244, 1252, 121 Cal. Rptr. 2d 810, 815-16 (Ct. App. 2002); accord

19   Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1141, 281 Cal. Rptr. 827, 837 (Ct.

20   App. 1991); Civic W. Corp. v. Zila Indus., Inc., 66 Cal. App. 3d 1, 16-17, 135 Cal. Rptr. 915,

21   925 (Ct. App. 1977).  As derived from an applicable California jury instruction, the elements of

22   the intentional tort of trespass can be stated as follows in this case: (1) plaintiffs owned, leased,

23   occupied, or controlled the property; (2) Jordan intentionally, recklessly, or negligently entered

24   plaintiffs' property; (3) Jordan lacked permission for the entry or Jordan exceeded the scope of

25   such permission; (4) plaintiffs were actually harmed; and (5) Jordan's entry was a substantial

26   factor in causing plaintiffs' harm.  See Judicial Council of Cal. Civ. Jury Instruction 2000 (Fall

1  2011).  However, at least one California Court of Appeal has held "that an action for trespass

2  will support an award of nominal damages where actual damages are not shown."  <u>Staples v.</u>

3  <u>Hoefke</u>, 189 Cal. App. 3d 1397, 1406, 235 Cal. Rptr. 165, 171 (Ct. App. 1987).

4        Here, taking plaintiffs' allegations as true, plaintiffs have alleged a prima facie

5  case of trespass against Jordan.  Plaintiffs allege that on three occasions, Jordan intentionally

6  entered the home or areas in a manner prohibited by the retraining order then in effect, that

7  plaintiffs were lawfully residing in the home, and that Jordan entered the home without

8  permission or invitation.

9        The undersigned finds that Jordan's two arguments in favor of dismissal lack

10  merit, at least at the pleading stage.  First, Jordan essentially argues that plaintiffs lack standing

11  to pursue a trespass claim because they do not own the property.  Such an argument is presently

12  unavailing because a plaintiff's actual ownership of the property at issue is not an essential

13  element of a claim of trespass.  <u>See Capogeannis v. Superior Court</u>, 12 Cal. App. 4th 668, 674,

14  15 Cal. Rptr. 2d 796, 799 (Ct. App. 1993) ("California has adhered firmly to the view that [the]

15  cause of action for trespass is designed to protect *possessory*–not necessarily ownership–interests

16  in land from unlawful interference.") (citation and quotation marks omitted); <u>Smith v. Cap</u>

17  <u>Concrete, Inc.</u>, 133 Cal. App. 3d 769, 774, 184 Cal. Rptr. 308, 310 (Ct. App. 1982) ("The proper

18  plaintiff in an action for trespass to real property is the person in actual possession; no averment

19  or showing of title is necessary."); <u>see also</u> 5 Witkin, Cal. Proc., Pleading, §§ 631-32 (5th ed.

20  2008).  Jordan offers no authority to the contrary; indeed, her argument is entirely unsupported

21  by legal authority.

22        Second, Jordan argues in conclusory fashion that she entered the property with

23  Virginia Armstrong's consent or permission.  However, the allegations in the Third Amended

24  Complaint, taken as true, do not support that Jordan entered the property with Virginia

25  Armstrong's consent.  Jordan has pointed to no supporting allegations in the Third Amended

26  Complaint, and has not requested that the court take judicial notice of any facts, that support her

1  argument regarding consent.  Accordingly, the undersigned recommends that plaintiffs' trespass

2  to land claim be allowed to proceed against Jordan.

3          5.      Plaintiffs' Claim of Trespass to Chattels Against Jordan and Silber
                   (Claim 13)
4

5          In their thirteenth claim for relief, plaintiffs allege that "All Defendants"

6  committed the tort of trespass to chattels.  (Third Am. Compl. at 19.)  "[T]he tort of trespass to

7  chattels allows recovery for interferences with possession of personal property not sufficiently

8  important to be classed as conversion, and so to compel the defendant to pay the full value of the

9  thing with which he has interfered."  Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296,

10  302 (2003).  The California Supreme Court has stated that "[t]respass remains as an occasional

11  remedy for minor interferences, resulting in some damage, but not sufficiently serious or

12  sufficiently important to amount to the greater tort" of conversion."  Id. at 1351, 71 P.3d at 302

13  (citation omitted, modification in original).

14          As to Jordan and Silber, and indeed as to all defendants, plaintiffs have not

15  specified the chattel or chattels with which each defendant interfered, which in turn proximately

16  caused them harm.  See Intel Corp., 30 Cal. 4th at 1350-51, 71 P.3d at 302 ("Under California

17  law, trespass to chattels lies where an intentional interference with the possession of personal

18  property has proximately caused injury" (citation and quotation marks omitted).).  Accordingly,

19  plaintiffs' claim for trespass to chattels should be dismissed with prejudice as to Jordan and

20  Silber.

21          6.      Plaintiffs' Claim of Invasion of Privacy Claims Against Jordan and Silber
                   (Claim 25)
22

23          Plaintiffs allege that Jordan and Silber each invaded plaintiffs' privacy in

24  violation of California law.  The undersigned addresses the generally applicable law and then

25  addresses Jordan's and Silber's respective, alleged acts in turn.

26          The California Supreme Court has stated that California common law generally

29

recognizes four types of acts that can give rise to a claim of invasion of privacy: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 24, 865 P.2d 633, 647 (1994); accord Forsher v. Bugliosi, 26 Cal. 3d 792, 808, 608 P.2d 716, 725 (1980) ("Our courts have dealt with four distinct factual settings under the heading of invasion of privacy."). Relevant here, the elements of the "intrusion" tort are: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." Shulman v. Group W Prods., Inc., 18 Cal. 4th 200, 231, 955 P.2d 490 (1998); accord Hernandez v. Hillsides, Inc., 47 Cal. 4th 272, 286, 211 P.3d 1063, 1072 (2009). In regards to the first element, the California Supreme Court has held that "[t]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." Shulman, 18 Cal. 4th at 232, 955 P.2d at 490. As to the second element of an intrusion claim, "[t]he tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." Id., 955 P.2d at 490. The California Supreme Court has further stated that "[t]he second common law element essentially involves a 'policy' determination as to whether the alleged intrusion is 'highly offensive' under the particular circumstances," and "[r]elevant factors include the degree and setting of the intrusion, and the intruder's motives and objectives." Hernandez, 47 Cal. 4th at 287, 211 P.3d at 1073. California's high court has further stated that this "cause of action recognizes a measure of personal control over the individual's autonomy, dignity, and serenity," and that the "gravamen is the mental anguish sustained when both conditions of liability exist." Id. at 286, 211 P.3d at 1072.

In regards to Jordan, plaintiffs allege that Jordan invaded plaintiffs' privacy on October 14, 2007, May 26, 2008, and June 2, 2008. (Third Am. Compl. at 23.) The latter two dates correspond to dates that plaintiffs allege Jordan trespassed on Virginia Armstrong's home

1   while the Winters were living there, and in violation of a restraining order.  The undersigned

2   recommended above that the trespass claims corresponding to those dates be permitted to

3   proceed against Jordan.  Similarly, the undersigned recommends that plaintiffs' invasion of

4   privacy claim should also proceed as to those alleged intrusions because plaintiffs' allegations

5   concerning the trespasses plausibly support an invasion of privacy claim, at least at this point in

6   the proceedings.  Plaintiffs allege that Jordan unlawfully entered a home in which they had a

7   possessory interest and reasonable expectation of privacy, and in a manner offensive to them.  As

8   to Jordan's alleged invasion of privacy on October 14, 2007, however, such alleged invasion of

9   privacy occurred prior to the alleged entry of a restraining order against Jordan.  Plaintiffs have

10  not otherwise substantiated an invasion of privacy claim as to that date.  Accordingly, the

11  undersigned recommends that plaintiffs' invasion of privacy claims proceed against Jordan as to

12  the alleged intrusions occurring on May 26, 2008, and June 2, 2008, but not as to October 14,

13  2007.

14          As to Silber, plaintiffs' allege that Silber, among other defendants, invaded

15  plaintiffs' privacy by serving Susan, Cacey, and Christy Winters with a court-issued restraining

16  order that led to the eviction of some of the plaintiffs from Virginia Armstrong's home.  (See

17  Third Am. Compl. at 23.)  Silber's alleged act of serving a restraining order on three of the

18  plaintiffs constitutes a communication or related non-communicative act that is absolutely

19  privileged pursuant to the litigation privilege contained in California Civil Code § 47(b).  See

20  Jacob B. v. County of Shasta, 40 Cal. 4th 948, 962, 154 P.3d 1003, 1012 (2007) ("Section

21  47(b)'s litigation privilege bars a privacy cause of action whether labeled as based on common

22  law, statute, or Constitution."); see also Hagberg v. Cal. Fed. Bank, FSB, 32 Cal. 4th 350, 361,

23  81 P.3d 244, 249 (2004) ("In its application to communications made in a "judicial proceeding,"

24  section 47(b) is not limited to statements made in a courtroom."); Heller v. Norcal Mut. Ins. Co.,

25  8 Cal. 4th 30, 45, 876 P.2d 999, 1007 (1994) ("We have consistently held that communications

26  occurring during the course of litigation are absolutely privileged under section 47(b) and cases

1  interpreting the statute."); see also, cf., GeneThera, Inc. v. Troy & Gould Prof. Corp., 171 Cal.

2  App. 4th 901, 909-10, 90 Cal. Rptr. 3d 218, 223-24 (Ct. App. 2009) (holding that a letter sent in

3  furtherance of settlement among litigants and counsel was subject to California's absolute

4  privilege).  Accordingly, plaintiffs' invasion of privacy claim should be dismissed with prejudice

5  as alleged against Silber.

6         7.   Plaintiffs' Claim of Loss of Consortium Against Silber and Jordan
             (Claim 36)

7

8         In their thirty-sixth claim for relief, plaintiffs allege that "All Defendants" are

9  liable for loss of consortium.  (Third Am. Compl. at 25.)  Although plaintiffs incorporate the

10  remainder of their complaint by reference, their specific allegations are limited to the following:

11       Paragraphs above incorporated by reference.  Plaintiffs Brent, Susan,
        Jeremiah, Cacey, Jennifer, Christy, Joy, Clark, and Jill Winters suffered
12       loss of consortium with each other and their grandmother as a result of the
        actions of the Defendants.

13

14  (Id.)

15         One California court has cited with approval a California practice manual that

16  defines the tort of loss of consortium as consisting of the following four elements:

17       (1) a valid and lawful marriage between the plaintiff and the person
        injured at the time of the injury;
18
        (2) a tortious injury to the plaintiff's spouse;
19
        (3) loss of consortium suffered by the plaintiff; and
20
        (4) the loss was proximately caused by the defendant's act.
21

22  Hahn v. Mirda, 147 Cal. App. 4th 740, 746 & n.2, 54 Cal. Rptr. 3d 527, 530 & n.2 (Ct. App.

23  2007) (citation omitted).  Additionally, "[a] cause of action for loss of consortium is, by its

24  nature, dependent on the existence of a cause of action for tortious injury to a spouse."  Id. at

25  746, 54 Cal. Rptr. 3d at 531 (Ct. App. 2007).  Additionally, the Ninth Circuit Court of Appeals

26  has explained:

> To support a loss of consortium claim, marital spouses must allege that
> their partner suffered an injury that is "sufficiently serious and disabling to
> raise the inference that the conjugal relationship is more than superficially
> or temporarily impaired." Molien v. Kaiser Found. Hosp., 27 Cal.3d 916,
> 167 Cal.Rptr. 831, 616 P.2d 813, 823 (1980); Anderson v. Northrop Corp.,
> 203 Cal.App.3d 772, 250 Cal.Rptr. 189, 195 (1988) (same).  The injury
> may be physical or psychological, but psychological injury must "rise [ ] to
> the level of a 'neurosis, psychosis, chronic depression, or phobia' [to be]
> sufficient to substantially disturb the marital relationship." Anderson, 250
> Cal.Rptr. at 195, quoting Molien, 167 Cal.Rptr. 831, 616 P.2d at 813.

Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1039 (9th Cir. 2008)

(modifications in original).

The undersigned recommends that plaintiffs' loss of consortium claim be dismissed with prejudice because they have failed to allege a plausible claim for relief.  First, plaintiffs have not alleged any facts that would suggest that any conjugal or marital relationship has been more than superficially affected.  Second, plaintiffs have not alleged or identified any facts regarding how Jordan's or Silber's acts proximately caused any loss of consortium. Plaintiffs' allegations of causation are general as to all defendants and are conclusory in nature. Third, under California law, parents may not pursue a claim loss of filial consortium, and children may not pursue a claim for loss of parental consortium.  See Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563 P.2d 871, 874 (1977); Borer v. Am. Airlines, Inc., 19 Cal. 3d 441, 453, 563 P.2d 858, 866 (1977); Meighan v. Shore, 34 Cal. App. 4th 1025, 1034, 40 Cal. Rptr. 2d 744, 749 (Ct. App. 1995).  Fourth, plaintiffs have improperly re-pled claims on behalf of Joy, Clark, and Jill Winters, as the court previously ordered that references to these minors be stricken from the Third Amended Complaint, and those plaintiffs have been dismissed from this action. Finally, it would appear facially improper that plaintiffs could recover for loss of consortium with Virginia Armstrong, "their grandmother," who they have named as a defendant in this case. Plaintiffs have failed to meet the pleading requirements to state a plausible claim for relief, and the undersigned has no reason to believe that these deficiencies could be cured through amendment.

8.    Plaintiffs' Claim of Intentional Infliction of Emotional Distress Against
Silber and Jordan (Claim 38)

Finally, Jordan and Silber move to dismiss plaintiffs' thirty-eighth claim for relief,

which seeks damages for intentional infliction of emotional distress ("IIED") against "All

Defendants." (Third Am. Compl. at 25.)  As with their loss of consortium claim, plaintiffs' IIED

claim contains only bare factual allegations and legal conclusions, which are stated generally

against all defendants:

> Paragraphs above incorporated by reference.All [*sic*] Defendants acted
> with reckless and intentionally [*sic*] disregard of Plaintiffs' rights.
> Defendants' conduct on dates referenced above was extreme and
> outrageous. Defendants' conduct is the proximate cause of their distress.
> Each Plaintiff suffers severe emotional distress as a result of all
> Defendants' conduct.

(Id.)

To state a claim for intentional infliction of emotional distress under California

law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous

conduct by the defendant with the intention of causing, or reckless disregard of the probability of

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

(3) actual and proximate causation of the emotional distress by the defendant's outrageous

conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (citations and

quotation marks omitted).  The California Supreme Court has explained that "outrageous"

conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a

civilized community," and that "the defendant's conduct must be intended to inflict injury or

engaged in with the realization that injury will result." Id. (citations and quotation marks

omitted).

As noted above, the specific portion of the Third Amended Complaint pertaining

to plaintiffs' IIED claim is a collection of legal conclusions and bare factual allegations that

incorporate the remainder of the Third Amended Complaint by reference.  Plaintiffs do not allege

34

1    facts demonstrating that Jordan's or Silber's respective acts rose to the level of "extreme and

2    outrageous" behavior as defined under California, that any of plaintiffs suffered severe extreme

3    emotional distress, or that Jordan's or Silber's conduct proximately caused any particular

4    plaintiff's emotional distress.  Accordingly, the undersigned recommends that this claim be

5    dismissed as to Jordan and Silber.  The undersigned recommends dismissal with prejudice

6    because nothing in the Third Amended Complaint suggests that the identified pleading

7    deficiencies can be cured through amendment.

8    V.    CONCLUSION

9          For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

10         1.    Defendant Delores Jordan's motion to dismiss (Dkt. No. 257) be granted

11   in part and denied in part.  Specifically, the following claims should be permitted to proceed:

12         a.    Plaintiffs' seventh claim for relief (violation of rights of Equal

13   Protection), only to the extent that it is alleged by plaintiff Susan Winters against defendant

14   Delores Jordan;

15         b.    Plaintiffs' ninth claim for relief (civil battery), only to the extent

16   that it is alleged by plaintiffs Susan, Cacey, Christy, and Jennifer Winters against defendant

17   Delores Jordan;

18         c.    Plaintiffs' tenth claim for relief (civil assault), only to the extent

19   that it is alleged by plaintiffs Susan, Cacey, Christy, and Jennifer Winters against defendant

20   Delores Jordan;

21         d.    Plaintiffs' twelfth claim for relief (trespass); and

22         e.    Plaintiffs' twenty-fifth claim for relief (invasion of privacy), only

23   to the extent that it concerns alleged intrusions on May 26, 2008, and June 2, 2008.

24   Plaintiffs' remaining claims alleged against Jordan should be dismissed with prejudice in all

25   other respects.

26         2.    Defendant David Silber's motion to dismiss (Dkt. No. 258) be granted,

35

1   that all of plaintiffs' claims alleged against Silber be dismissed with prejudice, and that Silber be

2   dismissed from this action.

3          3.      Plaintiffs' motion for default judgment (Dkt. No. 189) be denied as to

4   defendant Delores Jordan.

5          These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

9   Such a document should be captioned "Objections to Magistrate Judge's Findings and

10  Recommendations."  Any response to the objections shall be filed with the court and served on

11  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

12  Failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

14  1153, 1156-57 (9th Cir. 1991).

15          IT IS SO RECOMMENDED.

16  DATED:  February 1, 2012

17

18                                      _Kendall J. Newman_____

19                                      KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26